No. 24-3188

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

———————————

MI FAMILIA VOTA, *et al.*,

Plaintiffs-Appellees

v.

ADRIAN FONTES, *et al.*,

Defendants-Appellees

WARREN PETERSEN, *et al.*,

Intervenors-Defendants-Appellants

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

———————————

APPELLEE UNITED STATES' OPPOSITION TO INTERVENORS-DEFENDANTS'
EMERGENCY MOTION UNDER RULE 27-3 FOR PARTIAL STAY OF
INJUNCTION PENDING APPEAL

———————————

KRISTEN CLARKE
  Assistant Attorney General

BONNIE I. ROBIN-VERGEER
JONATHAN L. BACKER
  Attorneys
  U.S. Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C.  20044-4403
  (202) 532-3528

## TABLE OF CONTENTS

**PAGE**

INTRODUCTION ................................................................. 1

BACKGROUND ................................................................. 2

ARGUMENT

    I.     Intervenors are unlikely to succeed on the merits. ................................ 8

          A.     Congress has authority to apply the NVRA to presidential elections. ................................................ 8

                 1.     Congress possesses power to regulate presidential elections. ..................................... 9

                 2.     The NVRA is a valid exercise of Congress's power to enforce the Fourteenth and Fifteenth Amendments. ................................ 13

          B.     Because Arizona uses the Federal Form to determine eligibility to vote by mail, it must accept that Form for that purpose. ....................... 15

    II.    Intervenors will suffer no irreparable harm. ...................................... 16

    III.   The balance of the equities tips decisively against intervenors. ......... 18

CONCLUSION ................................................................. 20

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**CASES:**                                             **PAGE**

*Al Otro Lado v. Wolf*, 952 F.3d 999 (9th Cir. 2020)................................18

*Arizona v. Inter Tribal Council of Ariz., Inc.* 570 U.S. 1 (2013).................. 3, 15-16

*Association of Cmty. Orgs. for Reform Now* (*ACORN*) *v. Edgar*,
    880 F. Supp. 1215 (N.D. Ill.), *aff'd in relevant part*,
    56 F.3d 791 (7th Cir. 1995) ...........................................................14

*Association of Cmty. Orgs. for Reform Now v. Edgar*,
    56 F.3d 791 (7th Cir. 1995) ...........................................................12

*Association of Cmty. Orgs. for Reform Now v. Miller*,
    129 F.3d 833 (6th Cir. 1997) .........................................................12

*Association of Cmty. Orgs. for Reform Now v. Miller*,
    912 F. Supp. 976 (W.D. Mich. 1995),
    *aff'd*, 129 F.3d 833 (6th Cir. 1997) ...............................................14

*Bear Valley Mut. Water Co. v. Jewell*, 790 F.3d 977 (9th Cir. 2015) ....................13

*Buckley v. Valeo*, 424 U.S. 1 (1976) (per curiam)........................................... 6, 11

*Burroughs v. United States*, 290 U.S. 534 (1934) .......................................... *passim*

*Bush v. Gore*, 531 U.S. 98 (2000) (per curiam).........................................................11

*Condon v. Reno*, 913 F. Supp. 946 (D.S.C. 1995)....................................................14

*Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181 (2008)................................14

*Crosby v. National Foreign Trade Council*, 530 U.S. 363 (2000) ...........................6

*Doe #1 v. Trump*, 957 F.3d 1050 (9th Cir. 2020) ...................................................17

*Ex Parte Yarbrough*, 110 U.S. 651 (1883) ...................................................... 1, 8-10

**CASES (continued):**                                              **PAGE**

*Fish v. Kobach*, 840 F.3d 710 (10th Cir. 2016)....................................................12

*In re Quarles*, 158 U.S. 532 (1895) ..................................................................14

*Katzenbach v. Morgan*, 384 U.S. 641 (1966) .................................................14

*Leiva-Perez v. Holder*, 640 F.3d 962 (9th Cir. 2011).....................................13

*Maryland v. King*, 567 U.S. 1301 (2012) .......................................................16

*McConnell v. FEC*, 540 U.S. 93 (2003),
    *overruled on other grounds by Citizens United v. FEC*,
    558 U.S. 310 (2010)....................................................................... 10-11

*McPherson v. Blacker*, 146 U.S. 1 (1892) ...............................................11-12

*Nken v. Holder*, 556 U.S. 418 (2009) ....................................................*passim*

*Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam) .......................... 2, 19

*Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013)...................................16

*South Carolina v. Katzenbach*, 383 U.S. 301 (1966) ..................................14

*Texas v. United States*, 787 F.3d 733 (5th Cir. 2015).....................................17

*Trump v. Kemp*, 511 F. Supp. 3d 1325 (N.D. Ga. 2021) ...............................12

*United States v. New York*, 700 F. Supp. 2d 186 (N.D.N.Y. 2010).......................18

*Voting Rts. Coal. v. Wilson*, 60 F.3d 1411 (9th Cir. 1995)............................*passim*

*Young v. Fordice*, 520 U.S. 273 (1997) ............................................................2

*Zepeda v. INS*, 753 F.2d 719 (9th Cir. 1983).................................................16

**CONSTITUTION:**                                                      **PAGE**

U.S. Const. Amend. XIV, § 1, Cl. 2 ........................................................14

U.S. Const. Amend. XIV, § 5 .................................................................13

U.S. Const. Amend. XV, § 2 ................................................................. 13

U.S. Const. Art. I, § 8, Cl. 18................................................................10

U.S. Const. Art. II, § 1, Cl. 2 ...............................................................12

**STATUTES:**

Civil Rights Act of 1964
     52 U.S.C. 10101(a)(2)(B) ............................................................ 5

National Voter Registration Act of 1993
     52 U.S.C. 20501(a)(1) ..................................................................2
     52 U.S.C. 20501(a)(3) ........................................................... 2, 14
     52 U.S.C. 20501(b)(2) ..................................................................7
     52 U.S.C. 20502(2).......................................................................3
     52 U.S.C. 20505...........................................................................1
     52 U.S.C. 20505(a)(1) ....................................................... 3, 8, 15
     52 U.S.C. 20505(c)(1) ..................................................................7
     52 U.S.C. 20505(c)(2) ................................................................. 7
     52 U.S.C. 20507(a) ......................................................................6
     52 U.S.C. 20508(a)(2) ..................................................................3
     52 U.S.C. 20508(b)(2) ..................................................................3
     52 U.S.C. 20510.........................................................................18

52 U.S.C. 30101(3) ...............................................................................3, 6

Ariz. Rev. Stat. Ann. § 16-121.01(D) (2023) ........................................3

Ariz. Rev. Stat. Ann. § 16-121.01(E) (2023).......................................1, 4

Ariz. Rev. Stat. Ann. § 16-127(A) (2023) ..................................... 1, 4, 20

Ariz. Rev. Stat. Ann. § 16-166(F) (2023) ..............................................4

**STATUTES (continued):**                                                    **PAGE**

2022 Ariz. Sess. Laws 568...........................................................................3

## INTRODUCTION

The Republican National Committee (RNC) and Arizona's legislative leaders (collectively, intervenors) seek to stay portions of the district court's final judgment that permanently enjoin enforcement of provisions of House Bill (H.B.) 2492. That law prohibits voters who do not provide documentary proof of their citizenship from voting in presidential elections or by mail. Ariz. Rev. Stat. Ann. §§ 16-121.01(E), 16-127(A) (2023). The district court correctly held that those provisions are preempted by Section 6 of the National Voter Registration Act of 1993 (NVRA), 52 U.S.C. 20505, and denied intervenors' similar stay motion. This Court likewise should deny intervenors' motion.

Intervenors' arguments for why they satisfy the four-factor standard set forth in *Nken v. Holder*, 556 U.S. 418 (2009), for obtaining a stay pending appeal are strikingly weak. Contrary to intervenors' merits arguments, Supreme Court precedent dating back more than a century recognizes Congress's power to regulate presidential elections. *See Burroughs v. United States*, 290 U.S. 534, 545 (1934); *Ex Parte Yarbrough*, 110 U.S. 651, 662 (1883); *accord Voting Rts. Coal. v. Wilson*, 60 F.3d 1411, 1414 (9th Cir. 1995). And H.B. 2492's mail-voting provisions cannot be reconciled with the NVRA's text.

Regarding the other stay factors, intervenors suffer no irreparable harm from non-enforcement of provisions that are contrary to federal law. And—critically—

Arizona has *never implemented* the challenged provisions. Intervenors therefore effectively seek to force Arizona to implement drastic changes to its administration of federal elections after early voting has already begun for the July 30, 2024, primary election. Although intervenors' stay request purports to affect only the general election, the relief they seek would result in application of one set of requirements to federal-only voters in the primary election and another set in the general election—all in the same year. Such on-the-fly shifts would sow chaos and confuse voters. Stays pending appeal are supposed to *prevent* such disruptions to the status quo, not *cultivate* them. Particularly in the immediate leadup to a presidential election, this Court should decline to impose such significant changes. *See Purcell v. Gonzalez*, 549 U.S. 1, 4-6 (2006) (per curiam).

Accordingly, this Court should deny intervenors' stay motion.

## BACKGROUND

1. The NVRA "requires States to provide simplified systems for registering to vote in *federal* elections." *Young v. Fordice*, 520 U.S. 273, 275 (1997). Congress enacted the statute in recognition that voting is a "fundamental right," and in response to concerns that "discriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter participation in elections for Federal office and disproportionately harm voter participation by various groups, including racial minorities." 52 U.S.C. 20501(a)(1) and (3).

- 2 -

Among other things, the NVRA provides that the Election Assistance Commission "shall develop a mail voter registration application form for elections for Federal office," 52 U.S.C. 20508(a)(2), including presidential elections, 52 U.S.C. 30101(3) (incorporated by 52 U.S.C. 20502(2)). Section 6 of the NVRA provides that States must "accept and use" this form, known as the Federal Form, in registering voters for federal elections. 52 U.S.C. 20505(a)(1).

The NVRA specifies certain elements that the Federal Form must contain, and otherwise limits the information that applicants must furnish. To confirm the citizenship status of individuals registering to vote in federal elections, the Form requires applicants to sign, under penalty of perjury, an attestation that they are United States citizens. 52 U.S.C. 20508(b)(2). In *Arizona v. Inter Tribal Council of Ariz., Inc.* (*ITCA*), the Supreme Court held that Arizona could not—consistent with Section 6 of the NVRA—reject Federal Form applications unaccompanied by documentary proof of citizenship. 570 U.S. 1, 15 (2013).

2. In March 2022, Arizona enacted H.B. 2492. 2022 Ariz. Sess. Laws 568. H.B. 2492 requires election officials to check certain databases to confirm whether individuals registering to vote using the Federal Form are United States citizens. Ariz. Rev. Stat. Ann. § 16-121.01(D) (2023). If officials cannot verify an applicant's citizenship, they must notify the applicant, who must then provide documentary proof of citizenship—for example, a driver's license meeting certain

conditions or a United States passport. *See id.* §§ 16-121.01(E), 16-166(F).

H.B. 2492 prohibits notified applicants who fail to provide documentary proof of

citizenship from voting in presidential elections or by mail. *Id.* § 16-121.01(E).

The statute also requires individuals who have already registered to vote using the

Federal Form to provide documentary proof of citizenship to vote in presidential

elections or by mail. *Id.* § 16-127(A). H.B. 2492 took effect on January 1, 2023

(Doc. 709, at 35), but it was never implemented (*id.* at 9, 54, 63; Mot. 21).[1]

    3. After H.B. 2492's enactment, the United States and several private

plaintiffs filed suit challenging various aspects of the statute. *E.g.*, Compl., *United

States v. Arizona*, No. 2:22-cv-1124 (D. Ariz. July 5, 2022) (ECF No. 1). The

district court consolidated the eight lawsuits. Docs. 39, 69, 79, 88, 91, 93, 164,

193. Arizona Speaker of the House Ben Toma, Arizona Senate President Warren

Petersen, and the Republican National Committee intervened. Doc. 363; Order,

*Democratic Nat'l Comm. v. Hobbs*, No. 2:22-cv-1369 (D. Ariz. Aug. 24, 2022)

(ECF No. 18). As relevant here, the United States, along with private plaintiffs,

---

[1] "Doc. __, at __" refers to the docket number and relevant pages of documents filed in *Mi Familia Vota v. Fontes*, No. 2:22-cv-509 (D. Ariz.). "Mot. __" refers to intervenors' stay motion. "Fontes Resp. __" and "State Resp. __" respectively refer to Arizona Secretary of State Adrian Fontes's and the State's responses to intervenors' stay motion in this Court.

alleged that H.B. 2492's presidential- and mail-voting provisions were preempted by Section 6 of the NVRA.  *E.g.*, Compl. 14, *United States v. Arizona*, *supra*.[2]

The district court instructed the parties to move for summary judgment on claims that involve "legal issues that do not require discovery."  Doc. 340, at 36. In its motion for partial summary judgment, the United States argued that Section 6 of the NVRA preempts H.B. 2492 to the extent that it requires voters using the Federal Form to provide documentary proof of citizenship to vote in presidential elections.  Doc. 391-1, at 1, 6-7.  The State and its Attorney General conceded that Section 6 preempts that aspect of H.B. 2492.  Doc. 364, at 2.  Intervenors argued in favor of its validity, however, because, in their view, Congress lacks power to regulate presidential elections.  Doc. 367, at 3-8; Doc. 369, at 1-2.

Regarding H.B. 2492's mail-voting provisions, the United States urged the district court to defer ruling on whether those provisions are preempted by Section 6 because its Materiality Provision claim challenging those same provisions required discovery.  Doc. 391-1, at 15-16.  Private plaintiffs contended, however, that their identical challenge to H.B. 2492's mail-voting provisions could be resolved at summary judgment.  *E.g.*, Doc. 393, at 5-6.  Intervenors argued that

---

[2]  The United States also successfully challenged certain provisions of H.B. 2492 under the Materiality Provision of the Civil Rights Act of 1964, 52 U.S.C. 10101(a)(2)(B).  Intervenors do not seek to stay the district court's final judgment insofar as it enjoins enforcement of those provisions.  *See* Doc. 720, at 2-3.

Section 6 does not preempt H.B. 2492's mail-voting provisions because the NVRA sets only "registration rules" and does not regulate "mechanisms" for voting. Doc. 367, at 8-9; Doc. 369, at 1-2. The State more equivocally argued that the mail-voting provisions are "likely not preempted." Doc. 364, at 3-4.

In resolving the parties' summary-judgment motions, the district court held that Section 6 of the NVRA preempts both H.B. 2492's presidential- and mail-voting provisions. Doc. 534, at 9. The court held that the "plain language of the NVRA reflects an intent to regulate all elections for '[f]ederal office,' including for 'President or Vice President.'" Doc. 534, at 10 (quoting 52 U.S.C. 20507(a), 30101(3)). And, contrary to intervenors' arguments, the court held that "binding precedent indicates that Congress has the power to control registration for presidential elections." *Id.* at 10-11 (citing *Buckley v. Valeo*, 424 U.S. 1, 13 n.16 (1976) (per curiam); *Burroughs v. United States*, 290 U.S. 534, 544 (1934); *Voting Rts. Coal. v. Wilson*, 60 F.3d 1411, 1413-1415 (9th Cir. 1995)).

The district court also held that H.B. 2492's mail-voting provisions not only were directly preempted by Section 6 but that they also present an "obstacle to the accomplishment of Congress's full objectives under the" NVRA (Doc. 534, at 14-15 (quoting *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 373 (2000))), which include "enhanc[ing] the participation of eligible citizens as voters in elections for Federal office" (*id.* at 13 (emphasis omitted) (quoting

52 U.S.C. 20501(b)(2))).  In addition, the court held that because the NVRA

enumerates specific "circumstances where a State may limit voting by mail," the

statute implicitly prohibits other limitations on mail voting in federal elections.

*Ibid.* (citing 52 U.S.C. 20505(c)(1) and (2)).[3]

The case then proceeded to a ten-day bench trial on the unresolved claims,

none of which is at issue in intervenors' stay motion.  Docs. 629-630, 635, 640,

642-645, 663, 687.  After trial, the district court entered a final judgment that, as

relevant here, permanently enjoined Arizona from enforcing H.B. 2492's

presidential- and mail-voting provisions.  Doc. 720, at 2.

Intervenors timely appealed.  Doc. 723.  Shortly thereafter, they filed in

district court a motion for a partial stay of the court's injunction (Doc. 730) similar

to this motion, which the court denied (Doc. 752, at 11-12).  While that motion was

still pending, intervenors filed this motion with this Court.

## ARGUMENT

This Court should deny intervenors' stay motion.  A stay is "an exercise of

judicial discretion" that "is dependent upon the circumstances of the particular

case."  *Nken v. Holder*, 556 U.S. 418, 433 (2009) (citation omitted).  To determine

whether a stay is warranted, courts consider:

---

[3]  The district court also held that particular provisions of H.B. 2492 violate
a consent decree.  Doc. 534, at 21-22.  The United States took no position on this
issue below and does not address it here.

(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Id.* at 426 (citation omitted).  Intervenors fail to establish any of these factors.

## I.  Intervenors are unlikely to succeed on the merits.

Intervenors' prospects of success on the merits are anything but likely.  First, Congress's enactment of the NVRA rests on multiple sources of power.  Binding precedent from both the Supreme Court and this Court recognizes Congress's authority to regulate presidential elections.  The NVRA also is a valid exercise of Congress's power to enforce the Fourteenth and Fifteenth Amendments.  Second, intervenors' argument that the NVRA does not apply to mail voting is contrary to the statute's text, which requires States to "accept and use" the Federal Form. 52 U.S.C. 20505(a)(1).

### A.  Congress has authority to apply the NVRA to presidential elections.

H.B. 2492's presidential-voting restrictions squarely conflict with Section 6 of the NVRA.  Thus, to prevail in defending them, intervenors must establish that Congress is uniquely powerless to regulate presidential elections among all federal elections.  Not only is that view counterintuitive, but for well over a century, the Supreme Court has recognized Congress's power to regulate presidential elections. *See, e.g.*, *Burroughs v. United States*, 290 U.S. 534, 547-548 (1934); *Ex Parte*

*Yarbrough*, 110 U.S. 651, 662 (1883) (*Yarbrough*). This Court has followed suit in affirming the constitutionality of the very statute at issue here. *Voting Rts. Coal. v. Wilson*, 60 F.3d 1411, 1414 (9th Cir. 1995). Because controlling precedent precludes this Court from embracing intervenors' cramped view of Congress's power, they cannot prevail—much less show a "likelihood" of prevailing—in defending H.B. 2492's presidential-voting provisions. In addition, the NVRA is a valid exercise of Congress's power to enforce the Fourteenth and Fifteenth Amendments, an argument made by the United States below that intervenors elide altogether.

### 1. Congress possesses power to regulate presidential elections.

Congress's power to regulate presidential elections is beyond serious dispute. For 140 years, the Supreme Court has recognized that Congress possesses broad power to regulate presidential elections. In *Yarbrough*, the Court held that Congress had power to protect the right to vote in presidential elections against both state and private interference. 110 U.S. at 662, 666. Both "the interest of the party concerned" and "the necessity of the government itself," the Court said, require "that the votes by which its members of congress *and its president* are elected shall be the *free* votes of the electors, and the officers thus chosen the free and uncorrupted choice of those who have the right to take part in that choice." *Id.* at 662 (first emphasis added). The Court pointed directly to the Necessary and

- 9 -

Proper Clause, U.S. Const. Art. I, § 8, Cl. 18, to refute the argument that Congress has "no *express* power to provide for preventing violence exercised on the voter as a means of controlling his vote." *Yarbrough*, 110 U.S. at 658.

Fifty years later, the Supreme Court upheld a federal disclosure law for presidential campaigns. *Burroughs*, 290 U.S. at 547-548. Two individuals challenged their convictions under the law, asserting—as intervenors do here (Mot. 6)—that Congress has no power to regulate presidential elections beyond setting the time for selecting presidential electors. *Id.* at 544. But the Court held that "[s]o narrow a view of the powers of Congress . . . is without warrant." *Ibid.* Relying on *Yarbrough*, the Court determined that Congress possesses power to regulate presidential-campaign financing for the same reasons "it possesses every other power essential to preserve the departments and institutions of the general government from impairment or destruction, whether threatened by force or by corruption." *Id.* at 545, 547. The Court held that "[t]he power of Congress to protect the election of President and Vice President from corruption being clear, the choice of means to that end presents a question primarily addressed to the judgment of Congress." *Id.* at 547.

More recently, while assessing whether certain campaign-finance regulations violated First Amendment rights, the Court has reaffirmed Congress's power to enact such laws for presidential races. *See, e.g.*, *McConnell v. FEC*, 540

- 10 -

U.S. 93, 187 (2003) (plurality opinion), *overruled on other grounds by Citizens United v. FEC*, 558 U.S. 310 (2010); *Buckley v. Valeo*, 424 U.S. 1, 13 & n.16, 90 (1976) (per curiam).

Intervenors protest that the campaign-finance law at issue in *Burroughs* did not "interfere with the 'exclusive state power' over presidential elections," whereas, in their view, the NVRA does. Mot. 8-9 (quoting *Burroughs*, 290 U.S. at 544-545). But they do not explain how Congress's "power . . . to preserve the departments and institutions of the general government from impairment or destruction," *Burroughs*, 290 U.S. at 545, is simultaneously capacious enough to encompass campaign-finance regulations but too narrow to encompass the NVRA, which safeguards qualified voters' right to participate in presidential elections. And intervenors attempt to distinguish *Buckley* by arguing that it upheld the law at issue there "under the 'General Welfare Clause' and 'the Necessary and Proper Clause,'" while saying nothing about "the scope of Congress's power to regulate presidential elections." Mot. 9 (quoting *Buckley*, 424 U.S. at 90). On the contrary, *Buckley* expressly reaffirmed Congress's "broad . . . power to legislate in connection with the elections of the President and Vice President." 424 U.S. at 13 n.16; *accord id.* at 90.

Intervenors also cite *McPherson v. Blacker*, 146 U.S. 1 (1892), and *Bush v. Gore*, 531 U.S. 98 (2000) (per curiam), for the proposition that the Electors Clause,

- 11 -

U.S. Const. Art. II, § 1, Cl. 2, reserves to the States the power to regulate the "manner" of appointing presidential electors. Mot. 9. But *McPherson* itself makes clear that the Electors Clause refers only to the power to "define the *method*" of choosing presidential electors. 146 U.S. at 27 (emphasis added); *accord Trump v. Kemp*, 511 F. Supp. 3d 1325, 1337 (N.D. Ga. 2021) ("As used in the Electors Clause, the word 'manner' refers to the '[f]orm' or 'method' of selection of the Presidential Electors." (citation omitted; alteration in original)). States therefore possess authority to choose among popular election, appointment, or any other *method* for selecting presidential electors. But once a State chooses popular elections—as all States have—those elections are subject to Congress's recognized regulatory authority. Nothing in *Bush v. Gore* is to the contrary.

This Court and its sibling courts have likewise recognized Congress's power to regulate presidential elections. Indeed, in upholding the very law at issue here, this Court held, citing *Burroughs*, that Congress's "broad power . . . over congressional elections" under the Elections Clause "has been extended to presidential elections." *Wilson*, 60 F.3d at 1414.[4] Intervenors dismiss that language as dicta. Mot. 9. But *Wilson* addressed a wholesale challenge against the

---

[4] *Accord Association of Cmty. Orgs. for Reform Now v. Miller*, 129 F.3d 833, 836 (6th Cir. 1997); *Association of Cmty. Orgs. for Reform Now v. Edgar*, 56 F.3d 791, 793 (7th Cir. 1995); *see also Fish v. Kobach*, 840 F.3d 710, 719 n.7 (10th Cir. 2016).

NVRA—including its regulation of both congressional and presidential elections—as an invalid exercise of congressional power. 60 F.3d at 1412. *Wilson*'s recognition of Congress's power to regulate presidential elections was thus essential to its upholding the statute. That the *Wilson* defendants did not invoke the Electors Clause, as intervenors here do, is therefore of no moment. Mot. 9. Because *Wilson* held that Congress possesses broad power to regulate presidential elections on par with its power to regulate congressional elections, that is the law of this circuit unless and until it is overturned en banc or by the Supreme Court. *See Bear Valley Mut. Water Co. v. Jewell*, 790 F.3d 977, 994 (9th Cir. 2015).

Intervenors' claim that "no court has decided" the question presented (Mot. 8), cannot be squared with this longstanding authority. In the face of Congress's judicially countenanced regulation of presidential elections for more than a century, intervenors can hardly be said to have a "fair prospect" of success in advancing their novel and cramped view of congressional power. *Leiva-Perez v. Holder*, 640 F.3d 962, 967 (9th Cir. 2011) (citation omitted).

### 2. The NVRA is a valid exercise of Congress's power to enforce the Fourteenth and Fifteenth Amendments.

As the United States argued below (Doc. 152, at 9-11; Doc. 391-1, at 11-12), the NVRA also is a valid exercise of Congress's power to enforce the Fourteenth and Fifteenth Amendments. *See* U.S. Const. Amend. XIV, § 5; *id.* Amend. XV, § 2. Tellingly, intervenors' stay motion ignores this alternative argument.

- 13 -

Under the Fourteenth and Fifteenth Amendments, Congress may "use any rational means to effectuate the constitutional prohibition of racial discrimination in voting." *South Carolina v. Katzenbach*, 383 U.S. 301, 324 (1966); *accord Katzenbach v. Morgan*, 384 U.S. 641, 651 (1966). Congress enacted the NVRA to combat "discriminatory and unfair registration laws" that "disproportionately harm voter participation by various groups, including racial minorities." 52 U.S.C. 20501(a)(3). Congress had a sound basis for its view that uniform procedures for registration in federal elections would prevent racial discrimination in voting, as several courts have concluded. *See Condon v. Reno*, 913 F. Supp. 946, 967 (D.S.C. 1995); *Association of Cmty. Orgs. for Reform Now* (*ACORN*) *v. Edgar*, 880 F. Supp. 1215, 1221-1222 (N.D. Ill.), *aff'd in relevant part*, 56 F.3d 791 (7th Cir. 1995); *Association of Cmty. Orgs. for Reform Now v. Miller*, 912 F. Supp. 976, 984 (W.D. Mich. 1995), *aff'd*, 129 F.3d 833 (6th Cir. 1997).[5]

---

[5] In addition to the Fourteenth Amendment's prohibition against discrimination in voting, its Privileges and Immunities Clause, U.S. Const. Amend. XIV, § 1, Cl. 2, guarantees the right to vote in presidential elections as a right and privilege of national citizenship. *In re Quarles*, 158 U.S. 532, 535 (1895). Under what is known as the *Anderson-Burdick* doctrine, the First and Fourteenth Amendments together also prohibit regulations that unjustifiably restrict the right to vote. *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 189-191 (2008) (plurality opinion). The NVRA is a valid exercise of Congress's power to enforce these aspects of the Fourteenth Amendment as well.

**B.** **Because Arizona uses the Federal Form to determine eligibility to vote by mail, it must accept that Form for that purpose.**

Intervenors' chances of successfully defending H.B. 2492's mail-voting provisions are no better.  The NVRA's plain language rebuts their contention that Section 6 does not regulate access to "mechanisms" for voting such as mail voting (Mot. 10 (emphasis omitted)).  Section 6 requires States to "accept and use" the Federal Form.  52 U.S.C. 20505(a)(1).  In *Arizona v. ITCA*, 570 U.S. 1 (2013), the Court held that this mandate requires more of States than merely to "receive the [Federal] form willingly and use it *somehow* in its voter registration process." *Id.* at 9-10.  Instead, Section 6 requires that the Federal Form "be accepted *as sufficient* for the requirement it is meant to satisfy." *Id.* at 10.

Under H.B. 2492, Arizona election officials would "use" the Federal Form to determine whether individuals are eligible to vote by mail in federal elections but then "accept" it for that purpose only if voters provide information as part of the registration process—documentary proof of citizenship—*beyond* what that Form requires.  In this way, H.B. 2492's mail-voting provisions impermissibly create a two-tiered registration system:  Individuals who provide documentary proof of citizenship are registered to vote by mail; those who do not are not registered to vote by mail.

Intervenors' contrary conception of the NVRA proves too much.  If, as they argue (Mot. 10), the NVRA regulates "registration" in total isolation from the rest

- 15 -

of the voting process, then States could "accept" the Federal Form solely to place individuals' names on the voting rolls but then preclude those who do not provide documentary proof of citizenship from actually casting ballots in federal elections. But *ITCA* rejected such a self-defeating interpretation of Section 6. *See* 570 U.S. at 13 (refusing to adopt Arizona's interpretation of Section 6 under which the provision would "cease[] to perform any meaningful function"). Because Arizona *uses* the Federal Form to determine eligibility to vote by mail in federal elections, it must *accept* the Form as sufficient for that purpose.

## II. Intervenors will suffer no irreparable harm.

The sole injury that the legislative leaders assert is the harm inherent in enjoining a statute's enforcement. Mot. 14-15. Although a State *may* "suffer[] a form of irreparable injury" when a statute is enjoined, *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers), this Court has long held that a governing body "cannot suffer harm from an injunction that merely ends an unlawful practice," *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013); *see also Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983).

Even if the legislative leaders had standing to invoke the State's sovereign interests—and, as the State suggests and the district court held, they do not (*see* State Resp. 7-9; Doc. 752, at 3-5)—their argument is unavailing. "[T]he harm of such a perceived institutional injury is not 'irreparable,' because the government

'may yet pursue and vindicate its interests in the full course of litigation.'" *Doe #1 v. Trump*, 957 F.3d 1050, 1059 (9th Cir. 2020) (citation omitted). Intervenors' mistaken view that States have plenary power over all aspects of presidential elections is "at the core of this dispute, to be resolved at the merits stage of this case." *Ibid.*; *see also Texas v. United States*, 787 F.3d 733, 767-768 (5th Cir. 2015) ("[I]t is the resolution of the case on the merits, not whether the injunction is stayed pending appeal, that will affect [sovereignty] principles.").

The RNC fares no better. It says that it will suffer a "[c]ompetitive [i]njury" if federal-only voters are permitted to cast ballots without providing documentary proof of citizenship because Republicans make up a smaller share of these voters than of the population of registered Arizona voters as a whole. Mot. 19. Intervenors cite no case relying on a competitive injury asserted for Article III standing purposes as the foundation for preliminary-injunctive or stay relief. *See* Doc. 752, at 5. Their argument also is entirely speculative. It assumes, for example, that federal-only voters would not be able to provide documentary proof of citizenship if necessary. But intervenors elsewhere argue that a stay would impose no "countervailing harm" because, in their view, no evidence shows that H.B. 2492 would actually prevent anyone from voting. Mot. 20-21. The RNC cannot have it both ways, and it is not harmed by qualified voters participating in the electoral process.

Nor do intervenors cite any other harm that has occurred or would continue to occur absent a stay. As this Court has emphasized, the "best evidence of harms likely to occur because of the injunction" is "evidence of harms that *did* occur because of the injunction." *Al Otro Lado v. Wolf*, 952 F.3d 999, 1007 (9th Cir. 2020) (emphasis omitted). The stay motion describes no such damage, and for good reason: The injunction maintains the status quo and bars the unlawful provisions of H.B. 2492 from taking effect. The injunction *prevents* harm rather than inflicting it.

## III. The balance of the equities tips decisively against intervenors.

Where, as here, the Government is the party opposing a stay, the third and fourth *Nken* factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Here, the public interest is best served by maintaining the status quo while the appeal is pending: By precluding it from obtaining relief, a stay would prejudice the United States' *own* sovereign interest in enforcing federal laws protecting constitutional rights, while impairing the interests of Arizona voters who would face additional, impermissible barriers to voting in federal elections. *See* 52 U.S.C. 20510 (charging the Attorney General with enforcing the NVRA); *United States v. New York*, 700 F. Supp. 2d 186, 197 (N.D.N.Y. 2010) ("[T]he NVRA provides broad authority to the United States in ensuring compliance with the provisions of the statute.").

Moreover, a stay would introduce chaos to election administration and confuse voters after early and mail voting have already begun in Arizona's primary election. *See* Fontes Resp. Ex. 1, at 2; Doc. 752, at 8-10 & n.6; *see also Purcell v. Gonzalez*, 549 U.S. 1, 4-6 (2006) (per curiam). As intervenors admit, Arizona has *never implemented* H.B. 2492. Doc. 709, at 6, 54, 63; Mot. 21.[6] And as Arizona's Secretary of State explains, 2024 electoral processes and procedures are well under way as a result of the parties' and the district court's diligent efforts to resolve this litigation in advance of 2024 election-related deadlines. *See* Fontes Resp. 2-4. Arizona's current Elections Procedures Manual (Doc. 699), approved on December 30, 2023, has the force of law and incorporates the district court's summary-judgment ruling. Fontes Resp. Ex. 1, at 2-3. The Manual thus provides no procedures for disenfranchising thousands of Arizona's already-registered federal-only voters and any new voters who might seek to register using the Federal Form. Election officials across Arizona have already implemented, or are in the process of implementing, procedures reliant on the Manual's directives. *Ibid.*

Intervenors do not mention the Manual. Nor do they suggest an orderly way forward for election officials who would suddenly be tasked with implementing

---

[6] Intervenors fault the State for "willfully refusing for more than a year to implement duly enacted state laws." Mot. 21. But the State hardly can be blamed for delaying during the pendency of this lawsuit implementation of a law so transparently preempted by the NVRA.

H.B. 2492's provisions for the very first time.  Unable to rely on prior practice, the Manual, or any other uniform guidance, election officials would be unmoored and yet subject to significant time restraints in suddenly implementing the statute.

That intervenors ask this Court to stay the district court's injunction only for the November general election (Mot. 1 n.1) does not alter the analysis.  If this Court were to grant their request, federal-only voters would have to follow one set of requirements in the primary election and another set in the general election—all in the same year, which necessarily will cause voter confusion.  For example, a federal-only voter who regularly votes by mail would be able to cast their ballot as they always have in the primary election.  But come the general election, they would find that they cannot do so unless they provide documentary proof of citizenship.  Ariz. Rev. Stat. Ann. § 16-127(A) (2023).

Stays are meant to *prevent* such chaos, not *promote* it.  *Nken*, 556 U.S. at 429 (stating that stays "suspend[] judicial alteration of the status quo" (citation omitted)).  The balance of the equities thus tips decisively against intervenors.

## CONCLUSION

This Court should deny intervenors' motion for a stay.

Respectfully submitted,

KRISTEN CLARKE
  Assistant Attorney General

s/ Jonathan L. Backer
BONNIE I. ROBIN-VERGEER
JONATHAN L. BACKER
  Attorneys
  U.S. Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C.  20044-4403
  (202) 532-3528

## CERTIFICATE OF COMPLIANCE

This response complies with the type-volume limits of Federal Rule of Appellate Procedure 27(d)(2)(A) and Ninth Circuit Rules 27-1(1)(d) and 32-3(2) because the response does not exceed 20 pages, excluding the parts exempted by Federal Rules of Appellate Procedure 27(d)(2) and 32(f) and Ninth Circuit Rule 27-1(1)(d). This response also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it was prepared in Times New Roman 14-point font using Microsoft Office Word 365.

s/ Jonathan L. Backer
JONATHAN L. BACKER
 Attorney

Date: July 5, 2024