No. 24-3188

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

---

MI FAMILIA VOTA, ET AL.,

*Plaintiffs-Appellees*,

v.

ADRIAN FONTES, ET AL.,

*Defendants-Appellants*,

WARREN PETERSEN, ET AL.,

*Intervenor-Defendant-Appellants*.

---

On Appeal from the United States District Court
for the District of Arizona, No. 2:22-CV-00509 (Bolton, J.)

---

## CERTAIN NON-U.S. PLAINTIFFS' EMERGENCY MOTION FOR RECONSIDERATION BEFORE MERITS PANEL

### Relief requested as soon as possible

---

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................1

LEGAL STANDARDS ...............................................................................4

ARGUMENT ...............................................................................................5

    I.     Intervenors Are Not Likely to Succeed on Appeal............................5

        A. The District Court Properly Enforced the *LULAC* Decree .................5

        B. A.R.S. §16-121.01(C) Violates the NVRA ..........................................9

        C. The Equal Protection Clause Prohibits Differential DPOC
           Treatment.....................................................................................13

    II.    Intervenors Did Not Show Likely Irreparable Harm ..............................16

        A. Legislators ........................................................................................16

        B. RNC ..................................................................................................19

    III.   The Remaining Equitable Factors Do Not Support a Stay ....................19

CONCLUSION.........................................................................................23

CERTIFICATE OF COMPLIANCE........................................................25

CERTIFICATE OF SERVICE .................................................................25

i

# TABLE OF AUTHORITIES

**Cases** **Pages**

*Arizona v. Inter Tribal Council of Arizona, Inc.*,
570 U.S. 1 (2013) ("ITCA") .................................................................2, 11, 12,

*Arizona Public Integrity Alliance v. Fontes*, 475 P.3d 303 (Ariz. 2020) ...............20

*BedRoc Ltd., LLC v. U.S.*, 541 U.S. 176 (2004) ............................................10

*Berger v. N.C. State Conference of the NAACP*,
597 U.S. 179 (2022)..................................................................................16, 17

*Bush v. Gore*, 531 U.S. 98 (2000)...........................................................14

*City of Cleburne v. Cleburne Living Center*, 473 U.S. 432 (1985)........................13

*Doe #1 v. Trump*, 957 F.3d 1050 (9th Cir. 2020) ......................................16, 18, 19

*Dunn v. Blumstein*, 405 U.S. 330 (1972) ...................................................14

*E.O.H.C. v. DHS Sec'y*, 950 F.3d 177 (3d Cir. 2020) .................................6

*Fish v. Kobach*, 840 F.3d 710 (10th Cir. 2016)...................................11, 12

*Henderson v. Oregon*, 203 F. App'x 45 (9th Cir. 2006) .........................7

*Hollingsworth v. Perry*, 570 U.S. 693 (2013)..........................................8

*Hook v. State of Arizona, Department of Corrections*,
972 F.2d 1012 (9th Cir. 1992) ...................................................................6, 8

*Immigrant Defenders Law Center v. U.S. Department of Homeland Security*,
2021 WL 4295139 (C.D. Cal. July 27, 2021).......................................6

*Kobach v. U.S. Election Assistance Commission*,
772 F.3d 1183 (10th Cir. 2014) .................................................................11

*League of United Latin American Citizens v. Reagan*,
17-cv-04102 (D. Ariz. 2017) (the "*LULAC* decree") ...........................3

*Manrique v. Kolc*, 65 F.4th 1037 (9th Cir. 2023) .......................................4

*Memije v. Gonzales*, 481 F.3d 1163 (9th Cir. 2007)...................................4

*Moore v. Harper*, 142 S. Ct. 1089 (2022)..................................................21

*Nken v. Holder*, 556 U.S. 418 (2009) ..............................................4, 18

*Obama for America v. Husted*, 697 F.3d 423 (6th Cir. 2012) ................................22

*Priorities USA v. Nessel*, 978 F.3d 976 (6th Cir. 2020) ...........................................18

*Purcell v. Gonzalez*, 549 U.S. 1 (2006) ....................................3, 19, 21, 22

*RNC v. DNC*, 589 U.S. 423 (2020) ...........................................19, 20, 21

*Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367 (1992)....................................5

*SEC v. Randolph*, 736 F.2d 525 (9th Cir. 1984) ..........................................7

*Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*,
    559 U.S. 393 (2010)...................................................................17

*Stanwood v. Green*, 559 F. Supp. 196 (D. Or. 1983),
    *aff'd*, 744 F.2d 714 (9th Cir. 1984).................................................7

*Taylor v. United States*, 181 F.3d 1017 (9th Cir. 1999) .........................................7, 8

*Vaughns by Vaughns v. Board of Education of Prince George's County*,
    758 F.2d 983 (4th Cir. 1985) ...............................................7

*Virginia House of Delegates v. Bethune-Hill*, 587 U.S. 658 (2019) ........................9

## Constitutional Provisions

Ariz. Const. art. II, §3(B)...................................................................17

Ariz. Const. art. IV, §18.................................................................17

## Statutes

52 U.S.C. §20504(c)(2)(C) ...................................................................11

52 U.S.C. §20505(a)(2)..................................................................10

52 U.S.C. §20506(a)(6).................................................................13

52 U.S.C. §20507(a)(1)..................................................................10

52 U.S.C. §20508(b)(1) ................................................................10

A.R.S. §12-1841 ...........................................................16, 17, 18

A.R.S. §12-1841(D) ...................................................................16

A.R.S. §16-121.01(C) ....................... 2, 5, 9, 10, 12, 13, 14, 19

A.R.S. §16-152(A)(14) ...............................................................11

A.R.S. §16-452(c) .......................................................................20

A.R.S. §16-1021 .........................................................................16

A.R.S. §41-192(B)(4) ...................................................................9

A.R.S. §41-193(A)(3) .............................................................9, 16

**Rules**

Fed. R. Civ. P. 5.1 ......................................................................16

# INTRODUCTION

The motions panel order partially staying the district court's injunction should be vacated to avoid a manifest injustice. Intervenors' motion failed to make the requisite showing on any of the stay factors. Despite this, less than three months before the voter registration deadline, the panel upended election procedures in force since 2018, creating rampant uncertainty for voters and election officials. County recorders across Arizona will now need to establish new procedures on the fly, and will summarily reject state form voter registration applications ("State Forms") without accompanying Documentary Proof of Citizenship ("DPOC"). This change applies even when recorders can verify that the applicant is a U.S. citizen. It also applies to voters who would be guaranteed the right to vote in federal elections if they used the National Mail Voter Registration Form ("Federal Form") instead of the State Form.

Prior to the motions panel's partial stay, an otherwise eligible applicant who did not again provide DPOC with their voter registration form, yet had DPOC on file with the Arizona Motor Vehicles Division ("MVD"), became a full ballot voter whether they applied with the Federal Form or the State Form. That makes sense—such a voter has already proven their citizenship to the State's satisfaction. Similarly, before the partial stay, an otherwise eligible voter who submitted a State Form without DPOC was, at minimum, registered as a federal-only voter. That too makes

sense: the Supreme Court has held that, under the National Voter Registration Act ("NVRA"), DPOC is not required for registration with the Federal Form. *See Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 15 (2013) ("*ITCA*"). And qualified voters should not be wholly disenfranchised simply because they happen to submit a State Form rather than a Federal Form.

The partial stay abruptly changed these longstanding practices, requiring instead that State Form applicants who do not provide DPOC *must be rejected altogether* under A.R.S. §16-121.01(C), likely even if the voter has already provided DPOC to the State. And it creates a system in which similarly situated Arizonans are subject to disparate treatment: Federal Form registrants will be registered for federal elections even without submitting DPOC, but State Form applicants in the same position will be rejected entirely. Moreover, it creates a bizarre distinction between voters who submit forms without DPOC and those who submit forms without Documentary Proof of Residence ("DPOR"), which is also required by the law challenged in this case. Due to the district court's ruling, applicants who submit State Forms without DPOR will be registered for federal elections. But due to the partial stay, otherwise identical forms submitted without DPOC will be completely rejected. This inexplicable and confusing regime results entirely from the dramatic change to longstanding practice ordered mere months before a major election.

- 2 -

The partial stay directly conflicts with the consent decree entered in *LULAC v. Reagan*, 17-cv-04102 (D. Ariz. 2017) (the "*LULAC* decree"). The *LULAC* decree is like any other binding court order: should Intervenors wish to dissolve the decree, their remedy is a Rule 60(b) motion. Moreover, the partial stay cannot be squared with the NVRA or the Equal Protection Clause—alternative bases for the injunction issued by the district court below that Intervenors (and the panel—which offered no reasoning for its drastic change to the status quo) simply ignore.

The timing of the partial stay also runs headlong into *Purcell v. Gonzalez*, 549 U.S. 1 (2006), which strongly disfavors changes to election rules close to elections, due to the risks of burdening election administration and confusing voters, resulting in disenfranchisement. The Supreme Court has emphasized that such judicial tinkering with election rules close to an election should be avoided if possible. Yet the partial stay does not acknowledge *Purcell* at all.

Notably, *none* of Arizona's election officials asked for this late-breaking change. Secretary of State Fontes instead made clear that "a stay this close to an election is bound to create chaos and confusion and undermine the credibility of our elections and related processes." ECF 52 at 2. The balance of equities tips toward allowing eligible applicants to register to vote—not toward belatedly upending registration procedures and burdening election officials. The motions panel's order expressly stated it was "subject to reconsideration" by this panel; the Court should

now grant such reconsideration. And it should do so quickly—with each passing day, the partial stay results in rejection of voter registration applications in the critical time before the coming election.

## LEGAL STANDARDS

A stay pending appeal is an extraordinary remedy that is not granted as "a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009). The Court considers: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 434.

Under this Court's sliding-scale approach, "the required degree of irreparable harm increases as the probability of success decreases." *Manrique v. Kolc*, 65 F.4th 1037, 1041 (9th Cir. 2023). But "[e]ven with a high degree of irreparable injury"— *not* present here—a stay applicant "must show 'serious legal questions' going to the merits." *Id*.

Motions for reconsideration should identify "any points of law or fact overlooked by" the motions panel. *Memije v. Gonzales*, 481 F.3d 1163, 1164 (9th Cir. 2007).

# ARGUMENT

## I. INTERVENORS ARE NOT LIKELY TO SUCCEED ON APPEAL

Under the *LULAC* decree's terms, Arizona may not summarily reject State Forms submitted without DPOC. Instead, election officials must "immediately register" otherwise eligible applicants for federal elections. *LULAC* decree, Ex. 1, at 8. Likewise, county recorders must "check all State Form applications submitted without DPOC" against the MVD database for existing DPOC and register an applicant with DPOC as a full-ballot voter. *Id.* at 8-9. This is essentially a verification of an applicant's identity ("a HAVA check"). A HAVA check is required for all voter applicants, regardless of the form used or whether DPOC is provided. D.Ct. Dkt. 673 at 74 ¶327; *see* D.Ct. Dkt. 709 at 15.

Intervenors' stay motion was improperly granted. First, the *LULAC* decree remains a binding judgment and was properly enforced by the district court. Second, the partial stay was improper because A.R.S. §16-121.01(C) violates both the NVRA and the Equal Protection Clause. The district court recognized the NVRA violation in its partial summary judgment order. *See* D.Ct Dkt. 634 at 22 n.13. Intervenors have not meaningfully addressed that finding.

### A. The District Court Properly Enforced the *LULAC* Decree

A consent decree is "subject to the rules generally applicable to other judgments and decrees." *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 378 (1992). Consent decrees may be enforced not only in the originating case, but also

in a new lawsuit. *See Immigrant Defs. L. Ctr. v. DHS*, 2021 WL 4295139, at *6, n.7 (C.D. Cal. July 27, 2021) (rejecting argument that court lacked jurisdiction to enforce consent decree despite fact that "decree was entered by—and pending before—a different court"); *see also E.O.H.C. v. DHS Sec'y*, 950 F.3d 177, 192-94 (3d Cir. 2020) (no general jurisdictional bar for different district court to enforce consent decree terms).

That is exactly what happened here: a court entered a binding judgment under which Arizona agreed to stop unlawfully rejecting State Forms submitted without DPOC. When the Arizona Legislature subsequently enacted a statute instructing county recorders to do the opposite, Plaintiffs filed suit, and the district court correctly enforced the decree's terms.

Intervenors' cursory attempts to avoid the decree's clear terms all fail. First, while the *LULAC* court retained jurisdiction through December 31, 2020, ECF 50.1 ("Mot.") 14, Intervenors' contention that the expiration date means the decree "exerts no ongoing force" is simply wrong: Intervenors misread the decree and misunderstand the law. The decree explicitly "governs *all* voter registration applications submitted after entry of this consent decree." *LULAC* decree, Ex. 1, at 12 (emphasis added). And this Court has held that a consent decree is a final, binding judgment even after a case is "closed." *Hook v. State of Ariz., Dep't of Corr.*, 972 F.2d 1012, 1013, 1017 (9th Cir. 1992) (party "bound by the consent decree until the

district court issues an order otherwise under Rule 60(b)"); *see also Henderson v. Oregon*, 203 F. App'x 45, 48, 52 (9th Cir. 2006) (district court had supervisory jurisdiction in 2003 to enforce consent decree entered in 1978). After all, a "consent decree is a judgment [and] has the force of res judicata." *SEC. v. Randolph*, 736 F.2d 525, 528 (9th Cir. 1984).

In fact, the case on which Intervenors rely, *Taylor v. United States*, 181 F.3d 1017 (9th Cir. 1999), proves this point. *See* Mot.14. In *Taylor*, this Court explained that when a court enters a consent decree and does not retain jurisdiction, "[t]he case is over." *Id.* at 1023. But the case's end did not dissolve final judgment. Arizona agreed to implement a set of new rules, and the Court emphasized the finality of the lower court's judgment implementing those rules while holding that only *that court* could modify the judgment. *Id.* at 1020, 1023-24.

The timeline for continuing jurisdiction is thus irrelevant. A court's retention of jurisdiction to enforce a consent decree simply maintains "active supervision" of the case; the end of that period does not dissolve the court's binding final order. *Vaughns by Vaughns v. Bd. of Educ. of Prince George's Cnty.*, 758 F.2d 983, 989 (4th Cir. 1985); *see also Stanwood v. Green*, 559 F. Supp. 196, 199 (D. Or. 1983), *aff'd*, 744 F.2d 714 (9th Cir. 1984) (explaining that when court maintained jurisdiction over a consent decree, "it [did] little more than describe a court's role in enforcing compliance with its orders").

- 7 -

Nor does the *LULAC* decree require the Legislature to "forfeit [its] lawmaking power" or "irrevocably" prevent the Legislature from enacting laws inconsistent with its terms. Mot.13. The Legislature may still pass new laws. Like other judgments, the *LULAC* decree may operate to prevent some legislation from being *enforced* by state officials absent relief from judgment. *See Hollingsworth v. Perry*, 570 U.S. 693, 705-706 (2013).[1] *Hook* held that a party "cannot simply ignore the consent decree" if it believes the decree is unconstitutional; instead, "the proper procedure for seeking relief from a consent decree is a Rule 60(b) motion." 972 F.2d at 1016; *see also Taylor*, 181 F.3d at 1024 (if the law underlying a consent decree changes, "a court may decide in its discretion to reopen and set aside a consent decree under Fed.R.Civ.P. 60(b)").

Relying on *Moore v. Harper*, 600 U.S. 1 (2023), Intervenors appear to maintain that the Arizona Secretary of State's entry of the *LULAC* decree was unconstitutional. Mot.13. Again, that claim must be made in a Rule 60(b) motion to the court that entered the decree—not a stay motion here. *See Hook*, 972 F.2d at

---

[1] *Roosevelt Irr. Dist. v. Salt River Project Agr. Imp. & Power Dist.*, 39 F. Supp. 3d 1051, 1054 (D. Ariz. 2014) (Mot.13-14), is thus inapposite—any judgment may operate to limit enforcement of a legislative enactment, even if the legislature is not bound by the judgment. And unlike in *Doe v. Pataki*, 481 F.3d 69 (2d Cir. 2007) (Mot. 13), where "[t]here was no indication … that the Plaintiffs sought to have [the contested statutory provisions] remain unaltered by subsequent state legislation," *id.* at 77, the parties to the *LULAC* decree "agreed to refrain from precisely the conduct that the RNC would have Arizona participate in." D.Ct. Dkt. 534 at 22.

1016 (refusing to address party's constitutional argument "until it ha[d] been raised in a Rule 60(b)(5)-(6) motion").

Nor was the Secretary entering into the decree improper. Arizona law charges the Attorney General with litigating the enforceability of Arizona law on behalf of the Secretary, *see* A.R.S. §41-193(A)(3), and grants them the authority to settle claims against the State with the relevant department's approval, *id.* §41-192(B)(4). This arrangement is commonplace: state executives have the prerogative to make litigation decisions different from what the legislature would have chosen. The Supreme Court made that clear in *Virginia House of Delegates v. Bethune-Hill*, 587 U.S. 658 (2019), which held that the Virginia House lacked standing to defend a redistricting plan after the Commonwealth's attorney general declined to appeal an order requiring adoption of a new plan.

Thus, the district court properly relied on the *LULAC* decree to enjoin enforcement of A.R.S. §16-121.01(C). Intervenors' contention—that legislatures may nullify consent decrees at their leisure, rather than seek relief from the courts that entered them—would eviscerate judicial finality and the Attorney General's exercise of legal authority.

## B.     A.R.S. §16-121.01(C) Violates the NVRA

H.B. 2492's treatment of State-Form applicants without DPOC also violates the NVRA. Both the district court's summary judgment ruling on the State-Form

DPOC requirement, D.Ct. Dkt. 534 at 22 n.13, and its further reasoning finding that H.B. 2492's DPOR requirement for State Forms violates the NVRA, D.Ct. Dkt. 709 at 74-75, establish the NVRA as an alternative ground for enjoining A.R.S. §16-121.01(C)—one that Intervenors have not rebutted.

1. This Court's inquiry must "begin[] with the statutory text, and end[] there as well if the text is unambiguous." *BedRoc Ltd. v. U.S.*, 541 U.S. 176, 177 (2004). The NVRA unambiguously protects applicants using the State Form to register for federal elections: Section 8 requires that Arizona "ensure that *any* eligible applicant is registered to vote" if their "valid voter registration form" is received at least 30 days before an election. 52 U.S.C. §20507(a)(1) (emphasis added). And while NVRA Section 6 *allows* states to use their own state forms for federal elections, 52 U.S.C. §20505(a)(2), those forms *must* comply with NVRA Section 9. Pursuant to NVRA Sections 6 and 9, a state form "may require *only* such identifying information … and other information … as is *necessary* to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration." 52 U.S.C. §20508(b)(1) (emphasis added). Therefore, as the district court held, Arizona may *only* require additional information that is *necessary* to assessing the applicant's eligibility. *See* D.Ct. Dkt. 709 at 74-75.

At trial, Defendants failed to make that showing under any plausible definition of "necessary." First, the NVRA and Arizona law both already provide for proof of

citizenship in the form of an attestation, *see* 52 U.S.C. §20504(c)(2)(C); A.R.S. §16-152(A)(14), and "Congress has historically relied on an attestation requirement 'under penalty of perjury' as a gate-keeping requirement for access to a wide variety of important federal benefits . . . ." *Fish v. Kobach*, 840 F.3d 710, 716-17, 737 (10th Cir. 2016) (holding that attestation "is the *presumptive* minimum amount of information necessary for state election officials to carry out their eligibility-assessment and registration duties" and DPOC could not be required for voter registration at motor vehicle agencies under the NVRA).[2]

Second, the Election Assistance Commission already denied Arizona's request to include DPOC as "necessary" under NVRA Section 9. *Kobach v. U.S. Election Assistance Comm'n*, 772 F.3d 1183, 1196-97 (10th Cir. 2014) (holding that Kansas and Arizona "failed to carry the burden *ITCA* establishes for them: to convince a court conducting APA review that the denial of their request precluded them from obtaining information that is 'necessary' to enforce their respective states' voter qualifications"). And no Defendant has ever provided any rationale for why DPOC is "necessary" for processing State Forms but not Federal Forms.

Third, after a ten-day bench trial, the district court held that non-citizen registration and voting in Arizona, if it occurs at all, is extremely rare. D.Ct. Dkt. 709

---

[2] While *Fish* related to the NVRA's motor vehicle provision—which limits states to requiring only the "*minimum amount* of information necessary"—Defendants failed to make any showing of necessity to meet Section 9's requirement.

at 30 (noting lack of cases involving non-citizen voting since 2008 or any registrant who did not provide DPOC and was identified as non-citizen).

Defendants also attempt to hang their hat on a temporary restraining order in *Gonzalez v. Arizona*, 435 F. Supp. 2d 997 (D. Ariz. 2007). ECF 71.1 ("Rep.") 4-5. But that court's reasoning was explicitly overruled by *ITCA.* 570 U.S. at 7, 15, 19-20. Next, they rely on *ITCA*'s dicta recognizing that under NVRA Section 6, states may create their own registration forms that "may require information the Federal Form does not." 570 U.S. at 12; Rep.5. But those requirements still must satisfy Section 9's necessity requirement. Nothing in *ITCA* suggests otherwise.

Intervenors' position that NVRA Section 9 imposes no restriction on what states may deem necessary to determining voter eligibility renders that requirement mere surplusage. Intervenors simply adopt the dissent's reasoning in *ITCA*, *see ITCA*, 570 U.S. at 46 (Alito, J., dissenting), but Justice Alito's dissent "clearly tells [this Court] what the law is not." *Fish*, 840 F.3d at 743. And "[a]llowing the states to freely add burdensome and unnecessary requirements by giving them the power to determine what is ['necessary'] would undo the very purpose for which Congress enacted the NVRA." *Id.*

2. A.R.S. §16-121.01(C) also violates NVRA Section 7, 52 U.S.C. §20506, governing registration by public assistance agencies. Arizona agencies required to conduct voter registration services under NVRA Section 7 rely on the State Form,

- 12 -

provided to them by the Secretary. D.Ct. Dkt. 709 at 75; D.Ct. Tr. Day 1 AM, 89:9-15 (Petty). NVRA Section 7 requires public assistance agencies to distribute the Federal Form or an "equivalent" form. 52 U.S.C. §§20506(a)(6) (citing §20508(a)(2)), 20506(a)(2). As the district court held, "Section 7 is clear: if the Secretary of State supplies the State Form to public assistance agencies, the State Form must be 'equivalent,' or 'virtually identical' to the Federal Form." D.Ct. Dkt. 709 at 75. Thus, states have no discretion in what they require for registration at public assistance agencies: they must only require what the Federal Form requires and nothing more. *Id.* Since A.R.S. §16-121.01(C) demands that State Forms require DPOC where Federal Forms do not, they are not "equivalent." Therefore, A.R.S. §16-121.01(C) cannot be applied to applications originating from public assistance agencies. D.Ct. Dkt. 709 at 76 (applying same reasoning to H.B. 2492's DPOR requirement). At minimum, the stay must be lifted as applied to those voter registration applications.

### C.    The Equal Protection Clause Prohibits Differential DPOC Treatment

The stay is also improper because A.R.S. §16-121.01(C) violates the Equal Protection Clause by treating identically situated voters differently based on which registration form they happen to submit.

The Equal Protection Clause requires "all persons similarly situated . . . be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985);

*see also Dunn v. Blumstein*, 405 U.S. 330, 336 (1972) (holding that "a citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction"). In *Bush v. Gore*, 531 U.S. 98 (2000), the Supreme Court held that "arbitrary and disparate treatment" in either the "allocation of the franchise" or "the manner of its exercise" is unlawful. *Id.* at 104.

The stay ignores this command. Section 16-121.01(C) requires Arizona election officials to reject entirely State Forms without DPOC, completely depriving these applicants of the right to vote. But the same applicant using the Federal Form will be registered to vote in federal elections. *See, e.g.*, D.Ct. Dkt. 65 ¶¶86-92. And, if a Federal Form applicant's citizenship is confirmed through MVD records, the applicant can vote in *all* elections. This is classic impermissible disparate treatment.

1. Intervenors have identified no relevant distinction that supports completely prohibiting State Form applicants from voting while allowing Federal Form applicants to vote in federal elections or, in some instances, all elections, when the two sets of applicants have provided the same information to the state. As the district court recognized when holding the "NVRA precludes states from requiring DPOC to register applicants for federal elections," the two forms are "substantively indistinguishable." D.Ct. Dkt. 534 at 22 n.13.

2. The only rationales Defendants proffered—preventing non-citizen voting and increasing voter confidence—do not justify treating identical circumstances differently.

As the district court recognized, "there is no evidence that Federal-Only Voters may be non-citizens," D.Ct. Dkt. 709 at 37; *see also* D.Ct. Dkt. 673 at 30-31 ¶119, and "[p]rior to passing the Voting Laws, the Arizona Legislature did not establish that any non-citizens were registered to vote in Arizona," D.Ct. Dkt. 709 at 34; *see also* D.Ct. Dkt. 673 at ¶¶131, 136, 180, 182. Thus, there is no evidence that continuing longstanding practice in Arizona will lead to any non-citizen registrations.

Second, the laws do not increase voter confidence. As the district court found, Defendants "adduced no evidence quantifying the likelihood that Arizonans will become aware of the Voting Laws and their purported impacts on preventing voter fraud in Arizona," and there was no "direct evidence predicting the expected effects of the Voting Laws on Arizonans' confidence in the State's elections." D.Ct. Dkt. 709 at 31; *see also* D.Ct. Dkt. 673 at 42 ¶183. And, as discussed, Federal Form applicants can still register to vote for federal elections without DPOC.

- 15 -

## II.   INTERVENORS DID NOT SHOW LIKELY IRREPARABLE HARM

### A.   Legislators

Neither of the legislators' asserted irreparable injuries (Mot.14) carries their burden for a stay.

1. The legislators' claims of irreparable injury to the State's sovereign interests fail because they are not the State and lack the authority to enforce its laws. Because the "irreparable harm standard is 'whether the *applicant* will be irreparably injured absent a stay,'" the legislators cannot rely on alleged harms to the State. *Doe #1 v. Trump*, 957 F.3d 1050, 1060 (9th Cir. 2020). The legislators' contrary arguments merely attempt to demonstrate standing and do not show irreparable harm.

Arizona law vests responsibility to represent the State's interests and implement the laws in the executive branch. *See, e.g.*, A.R.S. §16-1021 (assigning enforcement of election statutes to attorney general); A.R.S. §41-193(A)(3) (attorney general shall "[r]epresent this state in any action in a federal court"). While a State "may authorize a legislature to litigate on the State's behalf," Rep.6 (quoting *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 192, 194 (2022)), Arizona has not done so here. Section 12-1841, by its terms, only confers state-law authority to intervene in proceedings "subject to [§12-1841's] notice requirements," *id.* §12-1841(D), and this federal litigation is not subject to those requirements. *See* Fed. R.

Civ. P. 5.1 (notice requirements for federal cases challenging state laws' constitutionality); *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 406 (2010). Intervenors' argument that "any" in Section 12-1841 encompasses this litigation, Rep.7, fails to apprehend that this federal case is subject to federal, not state, rules of procedure.

By contrast, the North Carolina laws in *Berger* "expressly authorized the legislative leaders" to act "'as agents of the State'" in that lawsuit. 597 U.S. at 193 (quoting N.C. Gen. Stat. §§1-72.2(b), 120-32.6(b)). That is *not* "substantively identical" to A.R.S. §12-1841. Mot.15-16. As the legislators conceded, Rep.6-7 & n.1, their argument that they intervened "on behalf of the State itself" under Section 12-1841 rests on cases explaining that the *Attorney General* represents the State. Rep.6-7 & n.1. Moreover, the legislators never suggested in their motion to intervene that they were "intervening as agent[s] of the State." This "undermines [any] attempt to proceed before [this Court] on behalf of the State." *Bethune-Hill*, 587 U.S. at 666; D.Ct. Dkt. 348 at 4.

The legislators' citation to the Arizona Constitution, Mot.16-17, fares no better. That constitutional provision pertains to state action via initiative, legislation, or "any other available legal remedy." Ariz. Const. art. II, §3(B). Intervention here is not an "available legal remedy" to the legislature, and Intervenors have identified no case holding otherwise. *See* Ariz. Const. art. IV, §18 ("The legislature shall direct

- 17 -

by law in what manner and in what courts suits may be brought against the state.");
A.R.S. §12-1841.

2. The legislators' arguments regarding injury to the Arizona Legislature also
fail. The legislators assert that the Legislature "has sustained an injury" but have not
shown an *irreparable* one. Mot.17-19; Rep.7-8. Neither the Supreme Court nor this
Court has held that a legislature is irreparably injured any time an enacted law is
enjoined. To hold otherwise would mean any law—no matter how odious or
flagrantly invalid—could be enforced as a matter of course during the appeals
process. *Cf. Doe #1*, 957 F.3d at 1059 (explaining that it "cannot be so" that "the
irreparable harm standard is satisfied by the fact of executive action alone").

Moreover, "[i]n the context of a stay request, 'simply showing some
possibility of irreparable injury' is insufficient." *Doe #1*, 957 F.3d at 1058-59
(quoting *Nken*, 556 U.S. at 434). Nowhere have the legislators explained how
implementing the *LULAC* decree creates irreparable injury. Where cases have found
irreparable injury to a legislature, it was because the legislature was deprived entirely
of its legislative power in a particular sphere. *See, e.g.*, *Priorities USA v. Nessel*, 978
F.3d 976, 982 (6th Cir. 2020) ("While the injunction is in effect, Michigan's
legislature cannot enact any enforceable laws that even *regulate* hired voter
transportation for federal elections."); *see also Bethune-Hill*, 587 U.S. at 667-68
(distinguishing between law that "permanently deprived" legislature of dominant

- 18 -

role in redistricting and court order that did not). By contrast, here the Legislature remains free to enact voting laws. Thus, "the harm of such a perceived institutional injury is not 'irreparable,' because the [legislators] 'may yet pursue and vindicate [their] interests in the full course of this litigation.'" *Doe #1*, 957 F.3d at 1059 (quoting *Washington v. Trump*, 847 F.3d 1151, 1168 (9th Cir. 2017)).

## B.    RNC

In its stay motion, the RNC failed to argue that an injunction preventing enforcement of A.R.S. §16-121.01(C) would cause it *any* irreparable injury. Its meritless "competitive injury" argument applied only to an injunction involving a separate provision on which the stay motion was properly denied. *See* Mot.19-20; Rep.8-9. Even if the RNC's alleged competitive injury were somehow construed to relate to A.R.S. §16-121.01(C), the district court's injunction is unrelated to the existence of the federal-only voter list—the source of the RNC's alleged irreparable harm.

## III.   THE REMAINING EQUITABLE FACTORS DO NOT SUPPORT A STAY

The ramifications of the partial stay directly implicate *Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam). The Supreme Court "has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." *RNC v. DNC*, 589 U.S. 423, 424 (2020) (per curiam). It is not the district court's injunction, but rather this Court's stay order, that changes how Arizona has

run its elections since 2018. The Supreme Court has made clear courts must "avoid this kind of judicially created confusion." *RNC*, 589 U.S. at 425.

The partial stay has already caused just such confusion. Shortly after the stay was entered, the Maricopa County Recorder stated that all 15 county recorders would begin rejecting State Forms without DPOC. Ex. 2. But as of the date of this filing, both the State Form (which is also available on the Maricopa County Recorder's website) and the Secretary's website still provide information consistent with the *LULAC* decree in explaining the DPOC requirement. *See* Ex. 3 ("If you do not submit proof of citizenship and we cannot acquire your proof of citizenship from the [MVD] or the statewide voter registration database, you will receive a 'federal-only' ballot. . . ."); Ex. 4.

Moreover, the 2023 Elections Procedures Manual (EPM) contains provisions consistent with the *LULAC* decree. Ex. 5. And "[o]nce adopted, the EPM has the force of law," *Arizona Public Integrity Alliance v. Fontes*, 475 P.3d 303, 308 (Ariz. 2020), "is binding on county recorders," D.Ct. Dkt. 709 at 8, and anyone who violates it "is guilty of a class 2 misdemeanor," A.R.S. §16-452(c). As Secretary Fontes has declared, his office "understands that Counties across Arizona have implemented processes and procedures, or are well into the process of doing so, reliant and complaint [sic] with those set forth in the [EPM]" and "[s]uch confusion and chaos on the cusp of an election will undoubtedly cause voters to harbor doubts

about our election procedures, our election officials, and our elections themselves."
ECF 52.2 ¶17. Thus, because of the partial stay, Arizonans seeking to register and
election officials who process registrations will be inundated with inconsistent
information and forced to roll the dice on which law to follow to avoid criminal
charges.

The partial stay turns *Purcell* on its head—*Purcell* "seeks to avoid this kind of
judicially created confusion." *RNC*, 589 U.S. at 425. For example, Justice
Kavanaugh concurred with a stay in *Merrill v. Milligan*, 142 S. Ct. 879 (2022)
(Mem.), despite ultimately affirming the district court's ruling on the merits because
the "districting plan . . . employ[ed] the same basic districting framework that the
State ha[d] maintained for several decades." *Id.* at 879. He explained that "[w]hen
an election is close at hand, the rules of the road must be clear and settled. Late
judicial tinkering with elections laws can lead to disruption and to unanticipated and
unfair consequences." *Id.* at 880-81.

Intervenors' motion quoted out-of-context language to suggest the state's
statutory law always takes precedence under *Purcell*. But *Purcell* does not question
whether a state statute is enjoined; it asks whether the *status quo* of election
procedures would be disrupted. *See, e.g.*, *Moore v. Harper*, 142 S. Ct. 1089, 1089-
90 (2022) (Kavanaugh, J., concurring) (agreeing that under *Purcell* it was too late to
implement state legislature's redistricting map enjoined by State Supreme Court that

drew its own map). Here, however, the partial stay changes the practices in place since 2018—too close to an election.

Aside from *Purcell*, the balance of equities and public interest demonstrate that a stay was inappropriate here. Intervenors' argument that "no countervailing harm" would result from a stay is nonsense: between now and the election, any State Form applicant who does not submit DPOC to a county recorder will be denied registration altogether—even if their DPOC is already on file. Intervenors misleadingly cite the district court's findings about the burden imposed by DPOC (Mot.20-21) but elide that the court excluded evidence on this issue from trial specifically because it had already granted summary judgment based on the *LULAC* decree. D.Ct. Dkt. 607 (removing "H.B. 2492 § 4's rejection of State-Form applications lacking DPOC" "from the scope of issues for trial").

In contrast, the public has a "strong interest in exercising the 'fundamental political right' to vote," *Purcell*, 549 U.S. at 4, and the "public interest" thus "favors permitting as many qualified voters to vote as possible," *Obama for America v. Husted*, 697 F.3d 423, 437 (6th Cir. 2012). The partial stay means that, for the first time since at least 2018, U.S. citizens who have already provided documentation to the State or would otherwise qualify to vote in federal elections will be barred from registering. This Court should correct that manifest injustice.

# CONCLUSION

The partial stay of the district court's injunction should be dissolved.

July 26, 2024                                    Respectfully submitted,

                                    /s/ Brent Ferguson

DANIELLE LANG
JONATHAN DIAZ
BRENT FERGUSON
KATHRYN HUDDLESTON
CAMPAIGN LEGAL CENTER
1101 14th Street N.W.
Suite 400
Washington, D.C. 20005
(202) 736-2200
dlang@campaignlegalcenter.org
jdiaz@campaignlegalcenter.org
bferguson@campaignlegelcenter.org
khuddleston@campaignlegalcenter.org

RACHEL J. LAMORTE
MAYER BROWN LLP
1999 K Street N.W.
Washington, D.C. 20006
(202) 362-3000
rlamorte@mayerbrown.com

LEE H. RUBIN
MAYER BROWN LLP
Two Palo Alto Square
Suite 300
3000 El Camino Real
Palo Alto, CA 94306-2112
(650) 331-2000
lrubin@mayerbrown.com

NIYATI SHAH
TERRY AO MINNIS
ASIAN AMERICANS ADVANCING
  JUSTICE-AAJC
1620 L Street N.W.
Suite 1050
Washington, D.C. 20036
(202) 296-2300
nshah@advancingjustice-aajc.org
tminnis@advancingjustice-aajc.org

SADIK HUSENY
AMIT MAKKER
LATHAM & WATKINS LLP
505 Montgomery Street
Suite 2000
San Francisco, CA 94111-6538
(415) 391-0600
sadik.huseny@lw.com
amit.makker@lw.com

SPENCER FANE
ANDREW M. FEDERHAR
2415 East Camelback Road
Suite 600 Phoenix, AZ 85016
(602) 333-5430
afederhar@spencerfane.com

*Counsel for Arizona Asian American
Native Hawaiian and Pacific Islander
for Equity Coalition*

- 23 -

GARY A. ISAAC
DANIEL T. FENSKE
WILLIAM J. MCELHANEY, III
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
dfenske@mayerbrown.com
gisaac@mayerbrown.com
jglickstein@mayerbrown.com

*Counsel for Living United for Change
in Arizona; League of United Latin
American Citizens Arizona; Arizona
Students' Association; ADRC Action;
Inter Tribal Council of Arizona, Inc.;
San Carlos Apache Tribe; and Arizona
Coalition for Change*

MARC E. ELIAS
ELISABETH C. FROST
CHRISTOPHER D. DODGE
DANIELA LORENZO
QIZHOU GE
ELIAS LAW GROUP LLP
250 Massachusetts Ave N.W.
Suite 400
Washington, D.C. 20001
(202) 968-4513
melias@elias.law
efrost@elias.law
cdodge@elias.law
dlorenzo@elias.law
age@elias.law

ROY HERRERA
DANIEL A. ARELLANO
JILLIAN L. ANDREWS
HERRERA ARELLANO LLP
1001 North Central Avenue
Suite 404
Phoenix, AZ 85004-1935
(602) 567-4820
roy@ha-firm.com
daniel@ha-firm.com
jillian@ha-firm.com

*Counsel for Mi Familia Vota and Voto
Latino*

## CERTIFICATE OF COMPLIANCE

This motion complies with the applicable provisions of both the Federal Rules of Appellate Procedure and this Court's rules in that: (1) according to the word-count feature of the word-processing system used to generate the motion (Microsoft Word), the motion contains 5,198 words, excluding the portions exempted from the count by the rules, and (2) the motion has been prepared in a proportionally spaced typeface using Times New Roman 14-point font.

<u>/s/ Brent Ferguson</u>
Brent Ferguson


## CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system, which will notify all registered counsel.

<u>/s/ Brent Ferguson</u>
Brent Ferguson