No. 24-3188

_____

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

_____

MI FAMILIA VOTA, et al.,

*Plaintiffs-Appellees*,

vs.

ADRIAN FONTES, et al.,

*Defendants-Appellees*,

and

REPUBLICAN NATIONAL COMMITTEE, et al.,

*Intervenor-Defendants-Appellants*.

_____

On Appeal from the United States District Court
for the District of Arizona
Hon. Susan R. Bolton
Case No. 2:22-cv-00509-SRB (Consolidated)

_____

## APPELLANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION TO RECONSIDER PARTIAL STAY

_____

Tyler Green (UT Bar # 10660)
CONSOVOY MCCARTHY PLLC
222 S. Main St., 5th Floor
Salt Lake City, UT 84101

Gilbert C. Dickey (VA Bar # 98858)
Conor D. Woodfin (VA Bar # 98937)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423

*Attorneys for Appellant RNC*

Kory Langhofer (AZ Bar # 024722)
Thomas Basile (AZ Bar # 031150)
STATECRAFT PLLC
649 North Fourth Avenue, First Floor
Phoenix, Arizona 85003
(602) 382-4078

*Attorneys for Appellants RNC, Warren
Petersen and Ben Toma*

# TABLE OF CONTENTS

Introduction .................................................................................................. 1

Legal Standards ........................................................................................... 1

Argument ...................................................................................................... 2

    I.   The Plaintiffs don't show that "legal or factual circumstances" have changed or that the motions panel "overlooked" any law or facts ..................................... 2

    II.  The motions panel did not "overlook" any law or facts on the merits .............. 4

        A.  The LULAC Consent Decree does not limit the enforceability of A.R.S. §16-121.01. .................................................................................................... 4

        B.  Documentary proof of citizenship is necessary to enabling the verification of registrants' eligibility. ............................................................ 8

        C.  *Bush v. Gore* does not apply. .......................................................... 10

    III.  The motions panel did not "overlook" any law or facts on irreparable harm. 12

        A.  Institutional Injury ........................................................................... 12

        B.  State Injury ........................................................................................ 13

        C.  Competitive Injury ............................................................................ 15

    IV.  The motions panel did not "overlook" any law or facts in weighing the equitable factors. ...................................................................................... 15

Conclusion ................................................................................................. 18

Certificate of Compliance ....................................................................... C-1

Certificate of Service ............................................................................... C-1

## INTRODUCTION

This Court should reject the Plaintiffs' attempt to re-litigate the emergency stay. Arizona law requires county recorders to reject voter-registration submissions on the Arizona-specific state form that lack documentary proof of citizenship ("DPOC"). The district court enjoined that law by the dead hand of a consent decree that "has long been closed" and that, by the decree's own terms, the court no longer has jurisdiction to enforce. The Republican Appellants "satisfied the standard for a stay pending appeal with respect to [that] portion of the injunction barring enforcement of A.R.S. §16-121.01(C)." Stay Order (Doc. 76.1) at 3. The motions panel expedited merits briefing and scheduled argument for September 10, well before the upcoming election. *Id.*

Unsatisfied with the narrow stay order, the Plaintiffs move to reconsider. But their motion is improper. The merits panel can't reconsider an order just because the Plaintiffs disagree with it. Only the en banc Court has authority to review a stay order for error. *See* Fed. R. App. P. 35. The Court should not give the Plaintiffs a second bite at the apple. In any event, section 16-121.01(C) is on solid legal ground. DPOC for registrants using the state form is necessary to verify voting eligibility, within the meaning of the National Voter Registration Act ("NVRA"). Any differential treatment of federal-form and state-form applicants not only is constitutionally sound, but is compelled by the NVRA itself.

## LEGAL STANDARDS

Motions to reconsider "orders entered by a motions panel are not favored by the Court." Advisory Comm. Note, 9th Cir. Rule 27-10. This Court may reconsider an order "only where … the Court has overlooked or misunderstood a point of law or fact,

or where there is a change in legal or factual circumstances after the order which would entitle the movant to relief." *Id.*

## ARGUMENT

### I. The Plaintiffs don't show that "legal or factual circumstances" have changed or that the motions panel "overlooked" any law or facts.

The Plaintiffs move to correct what they view as a legal error, but that's not the function of a motion to reconsider. The Plaintiffs don't argue that "legal or factual circumstances" have changed since this Court's stay order. Advisory Comm. Note, 9th Cir. Rule 27-10. And while they claim to identify "points of law or fact overlooked" by the motions panel, Mot. at 4 (quoting *Memije v. Gonzales*, 481 F.3d 1163, 1164 (9th Cir. 2007)), they don't identify anything the motions panel "overlooked." Advisory Comm. Note, 9th Cir. Rule 27-10. Instead, they re-brief the same arguments they made to the motions panel, arguing that a new panel should "correct" that order because it was "improperly granted." Mot. at 5, 22.

If the Plaintiffs want this Court to "correct" what they view as an erroneous order, *id.*, they could have petitioned for rehearing en banc. *See* Fed. R. App. P. 35. That's what the Justice Department did in *United States v. Idaho* when it disagreed with a stay entered by a motions panel. *See* United States' Emergency Motion for Reconsideration En Banc, *United States v. Idaho*, Doc. 53, No. 23-35440 (9th Cir. 2023). And an en banc rehearing would be the only procedure to correct what is now the law of the case. *E.g.*, *United States v. Idaho*, Doc. 73, No. 23-35440 (9th Cir. 2023) (en banc) (denying stay pending appeal on en banc reconsideration). But the merits panel cannot act as an en banc court, reviewing a motions-panel order for perceived error.

2

In support of their attempt at a second try, the Plaintiffs cite the stay order, which suggests that the stay will be "subject to reconsideration by the panel assigned to decide the merits of this appeal." Stay Order at 3. But that sentence just recognizes the law of this Circuit that the "motions panel order" is "not binding" on the merits panel. *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 660 (9th Cir. 2021) (en banc). That's because the motions panel evaluated "the likelihood of success of the appeal," while the merits panel will evaluate the merits of the appeal. *Id.* And under the expedited schedule, it will consider the merits well before the election. In recognizing the limits of a stay decision, the stay order did not invite the Plaintiffs to re-brief the stay motion. In fact, it *could not* invite the merits panel to reconsider "the likelihood of success of the appeal" without running afoul of circuit law. *See id.*

Apparently recognizing their motion's impropriety, the Plaintiffs claim that reconsideration is necessary to avoid a "manifest injustice." Mot. at 22. The "manifest injustice" standard is a very rare exception to the law-of-the-case doctrine. *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997). The Plaintiffs don't even try to meet that high bar. Instead, they bookend their brief with citation-less claims that their disagreements with the motions panel amount to "manifest injustice[s]." Mot. at 1, 22. But as the next sections show, the stay is eminently sensible, not manifestly unjust. "Because petitioners have not identified any points of law or fact overlooked by the court," the motion to reconsider should be "denied." *Memije*, 481 F.3d at 1164.

## II.   The motions panel did not "overlook" any law or facts on the merits.

### A.   The LULAC Consent Decree does not limit the enforceability of A.R.S. §16-121.01.

The Legislature could and did adopt statutes that are inconsistent with the consent decree entered in *League of United Latin American Citizens of Arizona v. Reagan*, Doc. 37, No. 2:17-cv-4102 (D. Ariz. 2018) ("LULAC Consent Decree)." And those statutes are enforceable laws. The Plaintiffs' theory that the A.R.S. §16-121.01(C) is inoperative unless a motion is filed to modify the LULAC Consent Decree under Rule 60 fails for at least three reasons.

***First***, the LULAC Consent Decree expired in December 2020, when the court's jurisdiction terminated. *See* Mot. Ex. 1 at 6. Plaintiffs argue that A.R.S. §16-121.01(C) must yield to the consent decree unless and until the Secretary of State or Maricopa County Recorder seek relief in those proceedings under Rule 60. But that conjoins a procedural impossibility with a logical contortion. The *LULAC* court's loss of jurisdiction terminated the proceedings and rendered the decree unenforceable. Plaintiffs insist that any question concerning the decree's relationship to A.R.S. §16-121.01(C) must be litigated in that proceeding. But Judge Campbell, who presided over *LULAC*, disagreed. When plaintiffs (including some of the parties here) sought in 2022 to have this proceeding transferred to Judge Campbell because of its intersection with the LULAC Consent Decree, he demurred. Pointing out that "[t]his case has long been closed," Judge Campbell added that "Judge Bolton is equally capable of considering the relationship between the terms of the consent decree and the challenged statute." *LULAC*, Doc. 19, No. 2:17-cv-4102, attached as Exhibit 1.

4

In declining to accept the transfer, Judge Campbell honored the terms of the LULAC Consent Decree itself, which states that "[t]he Court shall retain jurisdiction over this action until December 31, 2020 to enter such further relief as may be necessary for the effectuation of the terms of this Consent Decree." Mot. Ex. 1 at 6. The life of a consent decree is coterminous with the court's jurisdiction over it. *See Labor/Cmty. Strategy Ctr. v. L.A. Cnty. Metro. Transp. Auth.*, 564 F.3d 1115, 1120 (9th Cir. 2009) (implicitly treating expiration of jurisdiction as effective termination of decree, observing that "[b]y its express terms, the decree provided for the district court's retention of jurisdiction over compliance with the decree only until October 29, 2006"); *J.G. v. Bd. of Educ. of Rochester City Sch. Dist.*, 193 F. Supp. 2d 693, 700 (W.D.N.Y. 2002) (construing jurisdictional clause as determinative of the consent decree's duration, holding that it "expired by its own terms"). That is, of course, as it must be. The Plaintiffs' curious conception of the LULAC Consent Decree as a permanent diktat detached from the jurisdiction of any court is untenable.

The cases the Plaintiffs cite are either inapposite or affirmatively undermine their theory. There was no indication in either *Henderson v. Oregon*, 203 F. App'x 45 (9th Cir. 2006), or *Hook v. State of Ariz., Dept. of Corr.*, 972 F.2d 1012 (9th Cir. 1992), that the relevant decrees contained jurisdictional deadlines that had already lapsed. In *Vaughns by Vaughns v. Bd. of Educ. of Prince George's Cnty.*, 758 F.2d 983 (4th Cir. 1985), the court expressly distinguished the suspension of judicial ***supervision*** from the expiration of ***jurisdiction***. *See id.* at 987, 989 (agreeing that the district court's "orders did not amount to a final relinquishment of jurisdiction. Instead, the district court found that its orders

5

merely ended its active supervision, subject to resumption of jurisdiction."). But the LULAC Consent Decree categorically terminates "jurisdiction" on December 31, 2020.

Plaintiffs' misguided reliance on *Taylor v. United States*, 181 F.3d 1017 (9th Cir. 1999), is especially detrimental to its argument. That case featured something closer to the converse of the question confronting the Court now. Taylor was a plaintiff in a class action that had ended in a judgment that "explicitly granted all the relief to which Taylor was entitled," *id.* at 1023, meaning that "the judgment, in short, was executed. The case is over," *id.* In such circumstances, the Court found that Congress could not, by a later statute, "retroactively command[] the federal courts to reopen final judgments." *Id.* at 1024. Here, by contrast, the Plaintiffs (and other non-U.S. plaintiffs) argue for the continued ***prospective*** enforcement of the LULAC Consent Decree for the benefit of ***non-parties***—a far different constellation of facts than that in *Taylor*.

In short, the Plaintiffs' exertions to resurrect the LULAC Consent Decree are extinguished not only by the plain terms of that judgment, but also by Judge Campbell's order that the *LULAC* proceedings are "closed" and the consent decree's relationship to A.R.S. §16-121.01(C) hence must be adjudicated in ***this*** action.

***Second***, the Legislative Leaders and the RNC are not parties to the *LULAC* proceedings, and "the Supreme Court has held that non-parties to a consent decree can challenge the consent decree in a separate action." *Baker v. Am. Soc'y of Composers, Authors & Publishers*, 2021 WL 3290459, at *11 (D. Ariz. Aug. 2, 2021) (citing *Martin v. Wilks*, 490 U.S. 755 (1989)). Thus, even assuming that the LULAC Consent Decree continues to bind the Secretary and Maricopa County Recorder, and that those officials, as parties, cannot collaterally challenge the consent decree's terms or continued application, that

6

constraint does not extend to these Appellants. Whether still operative or not, the LU-LAC Consent Decree "does not conclude the rights of strangers to those proceedings." *Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1050 (9th Cir. 2005) (cleaned-up). The Legislative Leaders and the RNC are free to assert—and this Court is free to find—that A.R.S. §16-121.01(C) supersedes the LULAC Consent Decree.

***Third***, the LULAC Consent Decree does not apply to voter registrations outside Maricopa County. Even if the Plaintiffs were correct that the LULAC Consent Decree is still in effect and can be modified only in those proceedings, it binds only the defendants in that action—to wit, the Secretary of State and the Maricopa County Recorder. A.R.S. §16-121.01(C) explicitly charges "the county recorder" (or other county "officer in charge of elections") with rejecting state form registrations that lack DPOC. As the Mi Familia Vota plaintiffs acknowledged in their own complaint, "[t]he Proof of Citizenship Restriction makes county recorders responsible for implementing and enforcing the statutory provisions at issue here." Dist. Ct. Doc. 65, ¶ 24; *see also* A.R.S. §16-161(A) (registrations submitted to county recorder).

Notably, Judge Campbell already rejected an effort in the *LULAC* proceedings to conscript the Pima County Recorder under the judgment's terms pursuant to Federal Rule of Civil Procedure 71. *See* Order, *LULAC*, Doc. 53, No. 2:17-cv-4102 (D. Ariz. Nov. 14, 2018), attached as <u>Exhibit 2</u>, at 3 (explaining that the rule "does not provide a basis for the Court to hold that all County Recorders within Arizona are bound by the Consent Decree"). Whatever ongoing obligations the Plaintiffs ascribe to the LULAC Consent Decree do not extend to the Legislature or to any elections official other than the Secretary and the Maricopa County Recorder.

### B.  Documentary proof of citizenship is necessary to enabling the verification of registrants' eligibility.

The NVRA permits Arizona to require DPOC as a necessary attribute of a valid state registration form. Section 6 provides that States must, when registering individuals to vote in federal elections, "accept and use" either the federal form **or** a state-developed mail-in form "that meets all of the criteria stated in [Section 9]." 52 U.S.C. §20505(a). Section 9 authorizes States to mandate on their own registration forms any information "necessary to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration and other parts of the election process." *Id.* §20508(b)(1).

In insisting that Arizona's DPOC requirement does not comport with Section 9, the Plaintiffs' professed solicitude for prior final judgments abruptly wanes. The district court long ago held that "[d]etermining whether an individual is a United States citizen is of paramount importance when determining his or her eligibility to vote." *Gonzales v. Arizona*, 435 F. Supp. 2d 997, 1002 (D. Ariz. 2006). Reasoning that "[p]roviding proof of citizenship undoubtedly assists Arizona in assessing the eligibility of applicants," the district court concluded that "Arizona's proof of citizenship requirement does not conflict with the plain language of the NVRA." *Id.* This Court agreed that Section 9 "plainly allow[s] states, at least to some extent, to require their citizens to present evidence of citizenship when registering to vote." *Gonzalez v. Arizona*, 485 F.3d 1041, 1050-51 (9th Cir. 2007). While later holding that the NVRA prohibits Arizona from requiring DPOC as an element of a federal form submission, the Supreme Court—pointing specifically to Arizona's DPOC element in its state form—added that "state-developed forms may require information the Federal Form does not." *Arizona v. Inter-Tribal*

*Council of Ariz., Inc.* (*ITCA*), 570 U.S. 1, 12 (2013). The district court in this case did not diverge from *Gonzales*.

Scrambling to salvage their Section 9 theory, the Plaintiffs lob two out-of-circuit cases, both of which miss their mark. First, Plaintiffs cite the Tenth Circuit's conclusion that Kansas' proof of citizenship on its so-called motor-voter form did not comply with Section 5 of the NVRA. *See Fish v. Kobach*, 840 F.3d 710 (10th Cir. 2016). But as the Plaintiffs themselves admit in a footnote, Section 5's standard for the content motor-voter forms—which is not at issue in this case—"is a stricter principle than section 9's" rubric. *Id.* at 734.

Second, the Plaintiffs point to *Kobach v. EAC*, 772 F.3d 1183 (10th Cir. 2014), which rejected Arizona and Kansas' challenge under the Administrative Procedure Act to the Election Assistance Commission's ("EAC") decision not to add a DPOC field to the federal form. But this argument conflates the Section 9 standard with APA review of the EAC's application of it. The *Kobach* court did **<u>not</u>** hold, or even suggest, that DPOC requirements are inconsistent with Section 9. Rather, it concluded only that the EAC's Executive Director's determination that Arizona and Kansas had not established that a DPOC element must be added to the federal form was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Id.* at 1197 (quoting 5 U.S.C. §706(2)(A)). As the court emphasized, "[t]his standard of review is 'very deferential' to the agency's determination, and a presumption of validity attaches to the agency action such that the burden of proof rests of the party challenging it." 772 F.3d at 1197.

9

*Kobach*'s conclusion that Arizona had not proved that the EAC Director abused his discretion in applying Section 9 is not—legally or logically—tantamount to finding that the plaintiffs here have established that Arizona's DPOC requirement is affirmatively inconsistent with Section 9.

Finally, even if Arizona's DPOC mandate violated Section 9, such a conclusion still would not revive the LULAC Consent Decree in full. The decree provides that, if a state form applicant does not provide DPOC, the county recorder must search Department of Transportation records in an attempt to verify the applicant's citizenship. *See* Mot. Ex. 1 at 8-10. The NVRA demands no such accommodation. At most, a finding of an inconsistency with Section 9 would mean that state-form applicants lacking DPOC would be registered to vote only in federal elections.

### C. *Bush v. Gore* does not apply.

In a final move, the Plaintiffs try to recast their NVRA argument as a *Bush v. Gore* claim. But Plaintiffs cannot show that they are likely to succeed in this Court based on a decision that the Supreme Court "limited … to the present circumstances," recognizing that "the problem of equal protection in election processes generally presents many complexities." *Bush v. Gore*, 531 U.S. 98, 109 (2000) (per curiam). It considered "a state court with the power to assure uniformity" that "ordered a statewide recount with minimal procedural safeguards," causing ballots to be treated differently in different counties. *Id.* This Court has questioned whether *Bush v. Gore* is "applicable to more than the one election to which the Court appears to have limited it." *Lemons v. Bradbury*, 538 F.3d 1098, 1106 (9th Cir. 2008). The district court rejected the Plaintiffs' *Bush v. Gore*

claim. Dist. Ct. Doc. 709 at 97-99. This Court should not revive it and expand *Bush v. Gore* to prohibit different rules for federal and state registration forms.

The Constitution, the NVRA, and *Inter Tribal Council* all foreclose the Plaintiffs' argument anyway. The Constitution itself sets different rules for state and federal elections. Neither the Elections Clause nor the Electors Clause give Congress power over state elections. The NVRA thus governs "systems for registering to vote" only "in *federal* elections." *ITCA*, 570 U.S. at 5 (citation omitted). So "States retain the flexibility to design and use their own registration forms." *Id.* at 12. The federal form merely "provides a backstop," and "guarantees that a simple means of registering to vote in federal elections will be available." *Id.* at 12. Even then, the NVRA "does not preclude States from 'deny[ing] registration based on information in their possession establishing the applicant's ineligibility.'" *Id.* at 15 (alteration in original). That Arizona requires different procedures in its state-registration form is thus neither an NVRA violation nor an equal-protection problem.

The Plaintiffs' equal-protection theory would eviscerate the distinction between state and federal elections. *See id.* at 17. Under the Plaintiffs' theory, the Equal Protection Clause requires that whatever rules Congress sets for federal elections must also apply to state elections. That would destroy the Constitution's "allocation of authority" between federal and state governments. *Id.* at 16-17. And it would mean that the NVRA violates the Equal Protection Clause by "establish[ing] procedures" only for "elections for Federal office," 52 U.S.C. §20501(a)(1), a "distinction" that the Plaintiffs claim is arbitrary. Mot. at 14. But "[t]his allocation of authority sprang from the Framers'

aversion to concentrated power." *ITCA*, 570 U.S. at 17. The allocation is not arbitrary—it is required by the Constitution, the NVRA, and Supreme Court precedent.

Even if federal law didn't foreclose their argument, the Plaintiffs' equal-protection claim would make no sense. Courts use the *Anderson-Burdick* test to determine whether a State's registration mechanics violate the Equal Protection Clause, not *Bush v. Gore. See Ariz. Democratic Party v. Hobbs*, 18 F.4th 1179, 1195 (9th Cir. 2021) ("The Supreme Court repeatedly has assessed challenges to election laws" under "the *Anderson/Burdick* framework."); *Dudum v. Arntz*, 640 F.3d 1098, 1106 n.15 (9th Cir. 2011). Indeed, "the *Burdick* standard had been almost universally recognized by the federal courts as the appropriate test for equal protection challenges to state election laws, particularly those dealing with the 'mechanics of elections.'" *Paralyzed Veterans of Am. v. McPherson*, 2008 WL 4183981, at *18 (N.D. Cal. Sept. 9, 2008).

## III. The motions panel did not "overlook" any law or facts on irreparable harm.

### A. Institutional Injury

The Plaintiffs' own arguments demonstrate the institutional injury to the Legislature caused by the district court's subordination of A.R.S. §16-121.01(C) to the LULAC Consent Decree. According to the Plaintiffs, the Legislature cannot enact any enforceable voter registration laws, including A.R.S. §16-121.01(C), to the extent they conflict with the LULAC Consent Decree. The notion (which the district court accepted) that A.R.S. §16-121.01(C) is denuded of legal force "'completely nullif[ies]' any vote by the Legislature" on that or substantially similar legislation. *Ariz. State Legis. v. Ariz. Indep.*

*Redistricting Comm'n*, 576 U.S. 787, 803 (2015) (citation omitted). That is the essence of an institutional injury. *Id*.[1]

This injury is definitionally irreparable in relation to the November 5, 2024 general election, registration for which closes on October 7, 2024. *See* A.R.S. §16-120. Plaintiffs cite *Doe #1 v. Trump*, 957 F.3d 1050 (9th Cir. 2020), for the proposition that the injury is not "irreparable" because a favorable resolution on the merits is possible. If there were not an imminent intervening election (and attendant voter registration deadline), that rationale might be plausible. But if *Doe* is construed to mean that the abridgment of a state legislature's constitutional prerogative to structure its state's own elections is never an "irreparable" harm, it contradicts—and must yield to—controlling Supreme Court precedent. An "injunction[] barring the State from conducting this year's elections pursuant to a statute enacted by the Legislature … would seriously and irreparably harm," *Abbott v. Perez*, 585 U.S. 579, 602 (2018), the State and its legislative institutions.

## B. State Injury

Given the institutional injury traceable to the district court's injunction, the Court need not venture further. But the injunction also inflicts an analogous harm on the State generally. *See Coal. for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997) ("[I]t is clear that a state suffers irreparable injury whenever an enactment of its people or their

---

[1] Plaintiffs offer the consolation that "the Legislature remains free to enact voting laws," Mot. 19—they just may not be enforceable. But the judiciary cannot enjoin a legislative body from voting. *See Assoc. Gen. Contractors of Am. v. City of Columbus*, 172 F.3d 411, 415 (6th Cir. 1999). The injury inheres in reducing the resulting laws to mere parchment aspirations. *See Priorities USA v. Nessel*, 978 F.3d 976, 982 (6th Cir. 2020) (finding injury where injunction prevented legislature from "enact[ing] any ***enforceable*** laws" (emphasis added)).

representatives is enjoined."). Arizona has empowered the Legislative Leaders to defend state laws in "any proceeding" implicating their constitutionality. *See* A.R.S. §12-1841. As the Supreme Court recognized when considering a similar North Carolina statute, this directive "expressly authorize[s] the legislative leaders to defend the State's practical interests in litigation of this sort." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 193 (2022). Arizona courts have confirmed that officials intervening under A.R.S. §12-1841 do so on behalf of the State itself. *See Yes on Prop. 200 v. Napolitano*, 160 P.3d 1216, 1227 (Ariz. App. 2007) (A.R.S. §12-1841 authorizes a response "on behalf of the State"); *Ethington v. Wright*, 189 P.2d 209, 213 (Ariz. 1948) ("The object … is to protect the state and its citizens should the parties be indifferent to the outcome of the litigation.").

The Plaintiffs proffer two infirm responses. First, they assert that federal proceedings are not subject to state-law rules of procedure. *See* Mot. at 16-17. That misses the point. The same could be said of the North Carolina statute in *Berger*. The import of A.R.S. §12-1841(A)'s expansive authorization of intervention "in any proceeding in which a state statute … is alleged to be unconstitutional" is that it imparts the Legislature's decision to "reserve[] to itself some authority to defend state law on behalf of the State" in federal court. *Berger*, 597 U.S. at 194. Second, the Plaintiffs contend that *Yes on Prop. 200* and *Ethington* confirm that only "the *Attorney General* represents the State." Mot. at 17. That is incorrect. Those cases are predicated specifically on A.R.S. §12-1841—not the statute governing the Attorney General's powers, *see* A.R.S. §41-193—and hold that an official who intervenes pursuant to A.R.S. §12-1841 acts to defend the State's interests, rather than his own. While those cases happened to feature intervention by the Attorney General—the amendment that extended the statutory

14

authorization to the Legislative Leaders was not adopted until 2006—the Plaintiffs are at a loss to articulate why the exact same statutory language carries a different meaning when applied to the Legislative Leaders.

### C. Competitive Injury

Because federal-only voters undeniably skew significantly less Republican than the electorate as a whole, their inclusion in the November 5, 2024 general election on terms prohibited by the Arizona Legislature competitively injures the RNC. *See Mecinas v. Hobbs*, 30 F.4th 890, 899 (9th Cir. 2022) (a competitive injury is "the burden of being forced to compete under the weight of a state-imposed [or, here, court-imposed] disadvantage"). The Plaintiffs retort that "the district court's injunction is unrelated to the existence of the federal-only voter list." Mot. at 19. This assertion is baffling. The crux of the LULAC Consent Decree is that, as the Plaintiffs themselves recounted, "an otherwise eligible voter who submitted a State Form without DPOC was, at minimum, registered as a federal-only voter." Mot. at 1. By contrast, A.R.S. §16-121.01(C) mandates the rejection of such submissions. Stated another way, a central effect—if not purpose—of the LULAC Consent Decree is to expand the rolls of federal-only voters.

### IV. The motions panel did not "overlook" any law or facts in weighing the equitable factors.

When, as here, a governmental party seeks a stay, "its interest and harm merge with that of the public." *Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017); *see also E. Bay Sanctuary Covenant*, 993 F.3d at 668 (preliminary injunction context). "States have 'an interest in protecting the integrity, fairness, and efficiency of their ballots and election

processes.'" *Mi Familia Vota v. Hobbs*, 977 F.3d 948, 954 (9th Cir. 2020) (citation omit-
ted).

The Plaintiffs point out the truism that those who don't follow the rules for the
state-registration form will not be registered to vote for state elections. Mot. at 22. But
"the Federal Form guarantees … a simple means of registering to vote in federal elec-
tions" without DPOC. *ITCA*, 570 U.S. at 12. And for state elections, DPOC is just one
more step in the registration process. The district court found that the extra DPOC
step does "not impose an excessive burden on any specific subgroup of voters." Dist.
Ct. Doc. 709 at 95. The Plaintiffs complain that the district court "excluded evidence"
on the burden, Mot. at 22, but they offer no evidence in their motion—admissible or
not. The district court found that there was no burden for federal-only voters because
"Plaintiffs offered no witness testimony or other 'concrete evidence' to corroborate
that the Voting Laws' DPOC Requirements will in fact impede any qualified elector
from registering to vote or staying on the voter rolls." Dist. Ct. Doc. 709 at 92 (emphasis
added). The Plaintiffs repeat that error here. And any marginal burden would be out-
weighed by the "state's interest in running its elections without judicial interference."
*League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, 32 F.4th 1363, 1372 (11th Cir.
2022).

The motions panel also did not overlook *Purcell* issues. The *Purcell* doctrine pro-
tects States' election laws against last-minute interference by federal courts. *Purcell v.
Gonzalez*, 549 U.S. 1, 4-5 (2006). It instructs that "lower federal courts should ordinarily
not alter the election rules on the eve of an election." *RNC v. DNC*, 589 U.S. 423, 424
(2020) (per curiam). *Purcell* does not, as the Plaintiffs suggest, prohibit courts of appeals

from correcting the errors of "lower federal courts." *Id.* "That argument defies common sense and would turn *Purcell* on its head." *DNC v. Wis. State Legis.*, 141 S. Ct. 28, 31 (2020) (Kavanaugh, J., concurral). It's "obviously not the law." *Id.* at 32.

The Plaintiffs' focus on "judicially created confusion" misses the other half of *Purcell*, which requires deference to state sovereignty. *RNC*, 589 U.S. at 425. "The Constitution provides that state legislatures—not federal judges, not state judges, not state governors, not other state officials—bear primary responsibility for setting election rules." *DNC*, 141 S. Ct. at 29 (Gorsuch, J., concurral); *see also id.* at 31 (Kavanaugh, J., concurral) ("It is one thing for state legislatures to alter their own election rules in the late innings and to bear the responsibility for any unintended consequences. It is quite another thing for a federal district court to swoop in and alter carefully considered and democratically enacted state election rules when an election is imminent."). And contrary to the Plaintiffs' argument, Mot. at 21, "the state legislature" sets the status quo for *Purcell* purposes, *Carson v. Simon*, 978 F.3d 1051, 1062 (8th Cir. 2020).

Thus, "when a lower court intervenes and alters the election rules" with an erroneous order, this Court must "correct that error," even if it "would prefer not to do so." *RNC*, 589 U.S. at 425. That's why "[c]orrecting an erroneous lower court injunction of a state election rule cannot itself constitute a *Purcell* problem." *DNC*, 141 S. Ct. at 31-32 (Kavanaugh, J., concurral). The cases Plaintiffs cite prove that rule. *See Merrill v. Milligan*, 142 S. Ct. 879 (2022) (Kavanaugh, J., concurral) ("The stay order follows this Court's election-law precedents, which establish … that federal appellate courts should stay injunctions when, as here, lower federal courts contravene [the *Purcell*] principle.");

17

*Moore v. Harper*, 142 S. Ct. 1089 (2022) (Kavanaugh, J., concurral) (citing *Purcell* in declining to stay an order by the North Carolina Supreme Court).

The Plaintiffs argue that the stay order "has already caused" confusion. Mot. at 20. As proof of "confusion," they say that the county recorders and the Secretary of State have not yet updated their websites. *See* Mot. at 20. But at most, that shows administrative delay—not confusion. The 2023 Elections Procedures Manual ("EPM") is also irrelevant to this Court's stay order. *See* Mot. at 20-21. That the Secretary issued an election manual that conflicts with State law is not an issue in this appeal. That issue is being litigated in other cases, *see RNC v. Fontes*, No. 2024-cv-50553 (Super. Ct. Ariz. 2024) (on appeal), but this Court need not—and cannot—resolve whether the Elections Procedures Manual causes confusion by conflicting with state law.

In any event, *Purcell* concerns "voter confusion," *Purcell*, 549 U.S. at 4-5, not state officials' refusal to enforce state law. To the extent it applies at all, *Purcell* directs the federal judiciary to remove itself from Arizona's administration of its laws in the November 2024 general election.

## CONCLUSION

The Court should deny the Plaintiffs' motion to reconsider the partial stay.

18

Dated: July 29, 2024                    CONSOVOY MCCARTHY PLLC

By: */s/ Tyler Green*
     Tyler R. Green
     222 S. Main St., 5th Floor
     Salt Lake City, UT 84101
     tyler@consovoymccarthy.com

     Gilbert C. Dickey
     Conor D. Woodfin
     1600 Wilson Blvd., Ste. 700
     Arlington, VA 22209
     (703) 243-9423
     gilbert@consovoymccarthy.com
     conor@consovoymccarthy.com

     *Attorneys for Appellant RNC*


     STATECRAFT PLLC

By: */s/ Thomas Basile*
     Kory Langhofer
     Thomas Basile
     649 North Fourth Avenue
     First Floor
     Phoenix, Arizona 85003
     kory@statecraftlaw.com
     tom@statecraftlaw.com

     *Attorneys for Appellants Arizona Speaker of
     the House of Representatives Benjamin Toma,
     Arizona Senate President Warren Petersen,
     and RNC*

## CERTIFICATE OF COMPLIANCE

This Motion complies with the type-volume limitation of Rule 27(d)(2)(A) because it contains 5,121 words, excluding the parts that can be excluded. This Motion further complies with the typeface requirements of Rules 27(d)(1)(E) and 32(a)(5)-(6) because it has been prepared in a proportionally spaced typeface using the Microsoft Word in 14-point Garamond font.

Dated: July 29, 2024          */s/ Thomas Basile*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on July 29, 2024. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: July 29, 2024          */s/ Thomas Basile*