**Case No. 24-3188 (consolidated with 24-3559 and 24-4029)**

---

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

MI FAMILIA VOTA; et al.,

*Plaintiffs-Appellees,*

*v.*

ADRIAN FONTES, Arizona Secretary of State; et al.,

*Defendants-Appellees,*

WARREN PETERSEN, Arizona Senate President; et al.,

*Intervenor-Defendants-Appellants.*

---

On Appeal from the United States District Court
for the District of Arizona

No. 2:22-cv-00509-SRB (and consolidated cases)

---

## STATE OF ARIZONA AND ARIZONA ATTORNEY GENERAL'S
## FIRST BRIEF ON CROSS-APPEAL

---

Joshua D. Bendor (AZ Bar No. 031908)
Joshua.Bendor@azag.gov
Hayleigh S. Crawford (AZ Bar No. 032326)
Hayleigh.Crawford@azag.gov
Joshua M. Whitaker (AZ Bar No. 032724)
Joshua.Whitaker@azag.gov
Kathryn E. Boughton (AZ Bar No. 036105)
Kathryn.Boughton@azag.gov
ACL@azag.gov

OFFICE OF THE ARIZONA
ATTORNEY GENERAL
2005 North Central Avenue
Phoenix, Arizona 85004
(602) 542-3333

*Counsel for State of Arizona and
Arizona Attorney General
Kristin K. Mayes*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS .......................................................................... i

TABLE OF AUTHORITIES .................................................................. iv

INTRODUCTION ................................................................................1

STATEMENT OF JURISDICTION ......................................................3

STATEMENT OF THE ISSUE .............................................................3

STATEMENT OF THE CASE................................................................4

I.      Long before 2022, Arizona had been asking voters to identify
        their state or country of birth.....................................................4

II.     In 2022, Arizona designated birth place as information
        necessary for presumptive registration.....................................9

III.    The district court ruled that the Materiality Provision
        requires Arizona to register applicants who omit their birth
        place. ..........................................................................................11

        A.      The district court denied the State's motion to dismiss and
                motion for summary judgment…..……………………………13

        B.      At trial, evidence showed that birth place is material in
                determining voter identity and citizenship………..…………16

        C.      Before and after trial, the defense argued that birth place is
                material in determining both voter identity and citizenship…33

i

D.    The district court ruled that birth place is not material in determining identity……………………………………………35

E.    The district court apparently ruled summarily that birth place is not material in determining citizenship…………………………39

STANDARD OF REVIEW ......................................................................39

SUMMARY OF ARGUMENT ...............................................................40

ARGUMENT...........................................................................................41

I.    The Materiality Provision applies when a State denies the right to vote based on an insignificant error or omission in voter registration..........................................................................41

A.    States may seek information that is significant in determining voter qualifications, even if it is not essential..........................................................................42

B.    Courts should give weight to State legislative judgments about significance of information in determining qualifications. ..............................................43

C.    Historical and common practice can support a finding of materiality, but are not required. ...............................................44

D.    States may presume that omissions on voter registration forms are intentional, especially if there is a process for curing inadvertent omissions....................................44

II.    Contrary to the district court's ruling, birth place is material in determining identity. ...............................................................48

A.    Identity is a basic voter qualification............................................49

B.    Birth place is significant in determining identity, especially when omitted on a registration form that expressly requires it. .........................................................49

ii

C.    The district court's contrary conclusion misapplied the Materiality Provision. .......................................................55

III.   Contrary to the district court's ruling, birth place is material in determining citizenship...........................................................61

    A.    U.S. citizenship is a basic voter qualification. ..............................61

    B.    Birth place is significant in determining citizenship..................62

    C.    The district court's contrary conclusion misapplied the Materiality Provision. .......................................................64

CONCLUSION ....................................................................................67

STATEMENT OF RELATED CASES ................................................69

CERTIFICATE OF COMPLIANCE ..................................................70

CERTIFICATE OF SERVICE .............................................................71

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Arizona v. Inter Tribal Council of Arizona, Inc.,*
  570 U.S. 1 (2013).................................................................................7

*Bona Fide Conglomerate, Inc. v. SourceAmerica,*
  377 F. Supp. 3d 1093 (S.D. Cal. 2019)................................................50

*Brown v. Valoff,*
  422 F.3d 926 (9th Cir. 2005) ..............................................................50

*Fla. State Conf. of N.A.A.C.P. v. Browning,*
  522 F.3d 1153 (11th Cir. 2008) ..................................... 42, 43, 46, 51

*Food & Drug Admin. v. All. for Hippocratic,*
  Med., 602 U.S. 367 (2024)...................................................................13

*In re Bammer,*
  131 F.3d 788 (9th Cir. 1997) ..............................................................39

*Isabel v. Reagan,*
  987 F.3d 1220 (9th Cir. 2021) ..............................................................8

*League of Women Voters of Arkansas v. Thurston,*
  No. 5:20-CV-05174, 2023 WL 6446015 (W.D. Ark. Sept. 29, 2023) .............61

*McKenna v. Soto,*
  250 Ariz. 469 (2021) ..........................................................................17

*O'Bannon v. Nat'l Collegiate Athletic Ass'n,*
  802 F.3d 1049 (9th Cir. 2015) ............................................................39

*Penn. State Conf. of NAACP Branches v. Sec'y Commonwealth of Pennsylvania,*
  97 F.4th 120 (3d Cir. 2024) .................................................. 41, 55, 67

*Vote. Org. v. Callanen ("Vote.Org I"),*
  *39 F.4th 297 (5th Cir. 2022)*...............................................................47

iv

*Vote.Org v. Byrd*,
No. 4:23-CV-111-AW-MAF, 2023 WL 7169095 (N.D. Fla. Oct. 30, 2023) ..44

*Vote.Org. v. Callanen* ("*Vote*.Org II"),
89 F.4th 459 (5th Cir. 2023) ...................................................................passim

**Statutes**

1913 Revised Statutes of Ariz. § 2882 ....................................................4

1913 Revised Statutes of Ariz. § 2885 ....................................................4

52 U.S.C. § 10101..................................................................................92

52 U.S.C. § 10101(a)(2)(B) ..........................................................2, 41, 47

52 U.S.C. § 21083(a)(5) ...................................................................38, 59

8 U.S.C. § 1401......................................................................................66

8 U.S.C. § 1481...............................................................................25, 62

8 U.S.C. §§ 1401, 1421, 1427 .........................................................25, 62

A.R.S. § 16-101(A)..........................................................................49, 61

A.R.S. § 16-112 ......................................................................................8

A.R.S. § 16-121.01 .....................................................................4, 48, 73

A.R.S. § 16-134 ...............................................................9, 48, 51, 76

A.R.S. § 16-152 .....................................................................................78

A.R.S. § 16-152(A).............................................................................4, 6

A.R.S. § 16-165 .....................................................................................82

A.R.S. § 16-166 ...........................................................................7, 11, 88

A.R.S. § 16-452(B) ................................................................................16

A.R.S. § 16-542(A).................................................................................25

## Constitutional provisions

Ariz. Const. art. 7, § 2 ................................................................... 49, 61

U.S. Const. amend. XIV, § 1 ............................................................. 66

## Rules

Fed. R. App. P. 4(a)(1)(B) .................................................................. 3

## Other authorities

1953 Ariz. Laws ch. 98, § 4 ................................................................ 5

1963 Ariz. Laws ch. 80, § 2 ............................................................ 5, 63

1973 Ariz. Laws ch. 183, § 17 ............................................................ 5

1974 Ariz. Laws ch. 134, § 7 .............................................................. 5

1979 Ariz. Laws ch. 209, § 3 .............................................................. 5

1984 Ariz. Laws ch. 214, § 3 .............................................................. 5

1991 Ariz. Laws ch. 310, § 13 ............................................................ 5

1993 Ariz. Laws ch. 98, § 10 ........................................................... 5, 6

1994 Ariz. Laws ch. 378, § 2 .............................................................. 6

2003 Ariz. Laws ch. 260, § 1 .............................................................. 6

2004 Ariz. Laws ch. 184, § 1 ........................................................... 6, 7

2022 Ariz. Laws ch. 370, § 2 ..................................................... passim

2022 Ariz. Laws ch. 99, § 4 ........................................................ passim

Ariz. Op. Atty. Gen. No. I13-011,
    2013 WL 5676943 ..................................................................... 7

## INTRODUCTION

May Arizona require people to identify their state or country of birth when registering to vote?  The district court said no, based on an overly restrictive application of the Civil Rights Act of 1964.

Since statehood, Arizona has asked prospective voters to identify where they were born.  In recent decades, Arizona's voter registration form has included a space for applicants to write their state or country of birth.

In the years leading up to 2022, that space was optional.  Although some applicants voluntarily wrote their state or country of birth, applicants who omitted it were still registered.

In 2022, Arizona decided to make the space required.  Under the new law, applicants who omit their state or country of birth would be notified that registration cannot be completed and would be given an opportunity to provide the missing information.

But the United States and private parties sued Arizona before the law took effect.  They argued that requiring prospective voters to identify their state or country of birth violates the Materiality Provision of the Civil Rights Act.  Under their theory, if a voter registration form instructs an applicant to write his or her state or country of birth, yet the applicant skips the space

1

instead, this omission is "not material in determining whether such individual is qualified under State law to vote." 52 U.S.C. § 10101(a)(2)(B). The district court adopted that theory and permanently enjoined Arizona from enforcing its new law.

The district court's reading of the Materiality Provision was mistaken. If an applicant skips a "state or country of birth" space that is clearly marked as required on a voter registration form, that omission is material in determining at least two voting qualifications.

The first is voter identity. Arizona has an interest in ensuring that people who fill out voter registration forms are who they say they are, as well as determining whether they are already registered voters. A person's state or country of birth is basic biographical information that can help confirm identity, both during registration and in related contexts.

The second qualification is citizenship. Arizona has an interest in ensuring that only U.S. citizens vote. A person's state or country of birth is a basic premise in verifying citizenship. People born in the United States are thereby citizens, and knowing which state they were born in helps locate vital records. Conversely, people born outside the United States can become citizens via naturalization, a process that yields different types of records.

2

This Court should vacate the district court's injunction, restoring Arizona's decision to require prospective voters to identify their birth place.

## STATEMENT OF JURISDICTION

The district court had original subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because the claims arose under the Constitution and laws of the United States.

On May 2, 2024, the district court entered a final judgment disposing of the parties' claims, declaring unlawful and enjoining enforcement of A.R.S. § 16-121.01(A) insofar as it requires prospective voters to include their birth place when filling out the state registration form.  1-ER-0004.[1]

On June 3, 2024, the State of Arizona and Attorney General Kris Mayes (collectively "the State") filed a timely notice of appeal.  7-ER-1615; Fed. R. App. P. 4(a)(1)(B).  This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Arizona has an interest in confirming the identity and citizenship of voters.  For decades, Arizona's voter registration form has included a space

---

[1] All ER citations are to the Excerpts of Record filed by Intervenor-Defendant-Appellants.

3

for applicants to identify their state or country of birth. *See* A.R.S. § 16-152(A). In 2022, Arizona decided to make the space required, so that applicants who skip it will be notified that registration cannot be completed and will be given an opportunity to provide the missing information. *See* A.R.S. §§ 16-121.01(A), 16-134(B). Does the Materiality Provision prohibit this practice?

## STATUTORY ADDENDUM

The full text of statutory provisions at issue is included in the addendum at the end of this brief. *See* Ninth Circuit Rule 28-2.7.

## STATEMENT OF THE CASE

I. **Long before 2022, Arizona had been asking voters to identify their state or country of birth.**

Since statehood, Arizona has asked prospective voters to identify where they were born. *See, e.g.*, 1913 Revised Statutes of Ariz. § 2885 (requiring county recorders to record each applicant's "country of nativity" and, if the applicant is a naturalized citizen, "the legal proof thereof"); *see also id.* § 2882 (requiring that voter registration form include space for applicants to identify their "nativity" and, for naturalized applicants, to provide "naturalization papers").

4

During the mid-1900s, Arizona's voter registration form contained the following space for applicants to complete:

I was born in the state (or country) of _____.

*See, e.g.*, 1953 Ariz. Laws ch. 98, § 4 (amending § 55-205 of Arizona Code of 1939); 1963 Ariz. Laws ch. 80, § 2 (amending A.R.S. § 16-143). For applicants born outside the United States who had derived citizenship or were naturalized, the form contained spaces for them to provide more information. *See, e.g.*, 1953 Ariz. Laws ch. 98, § 4; 1963 Ariz. Laws ch. 80, § 2.

In 1973, Arizona statutes began referring to the space on the registration form as "state or country of birth." 1973 Ariz. Laws ch. 183, § 17 (amending A.R.S. § 16-143). During that time, Arizona statutes described some spaces on the registration form as "optional," but not state or country of birth. *Id.*; *see also* 1974 Ariz. Laws ch. 134, § 7 (amending A.R.S. § 16-143); 1979 Ariz. Laws ch. 209, § 3 (renumbering A.R.S. § 16-143 as § 16-152 and amending); 1984 Ariz. Laws ch. 214, § 3 (amending A.R.S. § 16-152); 1991 Ariz. Laws ch. 310, § 13 (amending A.R.S. § 16-152).

In 1993, an Arizona statute designated the "state or country of birth" space optional. *See* 1993 Ariz. Laws ch. 98, § 10 (adopting A.R.S. § 16-121.01). Specifically, the statute declared that an applicant must write his or her

5

name, address, and signature on the registration form to be "presumed to be properly registered." *Id.*  A nearby statute explained that applicants who omit any information necessary for presumptive registration will be notified, within ten business days, that registration cannot be completed until the information is provided. *Id.*, § 12 (amending A.R.S. § 16-134).  At that time, state or country of birth was not among the information necessary for presumptive registration—though it remained a space on the registration form. *See* A.R.S. § 16-152(A).

During the following years, Arizona designated additional items on the registration form as necessary for presumptive registration.  In 1994, Arizona specified that the applicant must provide his or her birth date. *See* 1994 Ariz. Laws ch. 378, § 2 (amending A.R.S. § 16-121.01).  In 2003 and 2004, Arizona specified that the applicant must provide one of the following pieces of information: (1) an Arizona driver license number or nonoperating ID number, (2) the last four digits of social security number ("SSN"), or (3) an affirmation that the applicant lacks either of these and thus requests a unique identifying number from the Secretary of State. *See* 2003 Ariz. Laws ch. 260, § 1 (amending A.R.S. § 16-121.01); 2004 Ariz. Laws ch. 184, § 1 (same).

6

Arizona also specified, in 2004, that the applicant must affirm that he or she is a U.S. citizen. *See* 2004 Ariz. Laws ch. 184, § 1 (same).

In addition, at the end of 2004, Arizona voters passed an initiative requiring county recorders to "reject" any registration form that does not include "satisfactory evidence of United States citizenship." *See* A.R.S. § 16-166(F). Satisfactory evidence of citizenship includes (1) a driver license number or nonoperating ID number from a state in which the license proves citizenship, (2) a copy of a birth certificate, (3) a copy of a passport, (4) naturalization documents or an immigration number, (5) other types of proof under federal immigration law, and (6) certain tribal information. *Id.*[2]

---

[2] The Supreme Court held that this proof of citizenship requirement cannot be enforced for applicants who use the *federal* mail registration form to register for *federal* elections, because the National Voter Registration Act requires States to accept and use such forms as is. *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 20 (2013). But the Supreme Court also clarified that "state-developed forms may require information the Federal Form does not" and "can be used to register voters in both state and federal elections." *Id.* at 12. As a result, Arizona developed "two distinct voter registration rolls." Ariz. Op. Atty. Gen. No. I13-011, 2013 WL 5676943, at *3.

Other parties will explain this distinction further. For now the point is that people seeking to register to vote in Arizona may use a state registration form or a federal registration form, and the requirements are not necessarily the same. The state registration form is more relevant to the present brief.

In sum:  By 2022, Arizona's voter registration form contained several spaces for applicants to fill out.  Some were required, as indicated by red shading or other instructions.  The space for state or country of birth, however, was not required.  To illustrate, here is a picture of the required "Birth Date" space next to the optional "State or Country of Birth" space:



The full 2022 state registration form is at 6-ER-1410.

Also, by 2022, prospective voters could register online through the Arizona Department of Transportation's website.  *See* A.R.S. § 16-112; *Isabel v. Reagan*, 987 F.3d 1220, 1223–24 (9th Cir. 2021).  On the website, state or country of birth was an optional drop-down menu.  It looked like this:



A more complete view of the website is at 7-ER-1559-93.

8

II.     **In 2022, Arizona designated birth place as information necessary for presumptive registration.**

In 2022, Arizona passed two laws at issue in these cross-appeals: House Bill 2492 and House Bill 2243.

House Bill 2492 designates "place of birth" as information necessary for presumptive voter registration. *See* 2022 Ariz. Laws ch. 99, § 4 (amending A.R.S. § 16-121.01(A)). If Arizona is permitted to enforce this law, then going forward, the "State or Country of Birth" space on the state registration form will be required, just like the "Birth Date" space next to it. So an applicant who skips either space will be notified, within ten business days, that registration cannot be completed until the information is provided. A.R.S. § 16-134(B). And if the applicant provides the missing information by election day, he or she will be deemed to have registered on the day the form was originally received. *Id.*

House Bill 2492 also makes other changes related to ensuring that voters are U.S. citizens. For example, the law directs county recorders to "reject" state registration forms that lack proof of citizenship. 2022 Ariz. Laws ch. 99, § 4 (adding A.R.S. § 16-121.01(C)). And, for federal registration forms that lack proof of citizenship, House Bill 2492 directs county recorders

9

to try to "verify the citizenship status" of the applicants. *Id.* (adding A.R.S. §§ 16-121.01(D), (E)).    Verification includes checking the "national association for public health statistics and information systems ["NAPHSIS"] electronic verification of vital events system," as well as the federal "systematic alien verification for entitlements ["SAVE"] program," if the county has access to these systems. *Id.*

House Bill 2243, in turn, focuses less on the front-end process of voter registration, and more on the back-end process of reviewing existing voter records.  In particular, the law directs county recorders to compare all voters who previously registered without proof of citizenship with two programs: "the electronic verification of vital events system maintained by [NAPHSIS]," if accessible, as well as the federal "[SAVE] program," if practicable.  2022 Ariz. Laws ch. 370, § 2 (adding A.R.S. §§ 16-165(H), (I)).[3] A county recorder must "cancel" a voter's registration if the recorder (1) "obtains information pursuant to this section and confirms" that the voter is not a United States citizen, and then (2) notifies the voter, gives the

---

[3] This language currently appears in A.R.S. §§ 16-165(I) and (J).

10

voter 35 days to provide proof of citizenship, and the voter fails to provide proof. *Id.* (amending A.R.S. § 16-165(A)(10)).[4]

The legislative history of House Bill 2492 contains little discussion of the decision to designate birth place as information necessary for presumptive voter registration.  At a Senate committee hearing, Greg Blackie of the Free Enterprise Club explained that the requirement helps confirm voter identity and citizenship.  He said: "Place of birth is useful in identifying in some of these databases, having their name, date of birth and place of birth is how you can sometimes get a better match of who the individual is, which will help us find proof of citizenship for somebody who don't provide it when they applied."  6-ER-1465:9-20.

## III.   The district court ruled that the Materiality Provision requires Arizona to register applicants who omit their birth place.

The United States sued Arizona in July 2022, to require Arizona to register applicants who skip the "state or country of birth" space on the state voter registration form.  According to the United States, Arizona's decision

---

[4] This notice and cancellation does not apply to voters who registered before Arizona began requiring proof of citizenship in 2004.  A separate statute clarifies that such voters are generally "deemed to have provided" proof of citizenship.  A.R.S. § 16-166(G).

11

not to register such applicants—and instead notify them that their registration cannot be completed and give them an opportunity to provide the missing information—"violates the Materiality Provision." U.S. Complaint at ¶ 67, D. Ariz. No. 2:22-cv-01124-SRB, Dkt. #1 (July 5, 2022). Under the United States' view, the fact that an applicant skips a box asking for state or country of birth (even if clearly labeled as required) "is not material to determining whether that applicant meets Arizona's voter qualification requirements." *Id.*

Private parties also sued, raising similar claims. *See* Mi Familia Vota et al. Second Amended Complaint, D. Ariz. No. 2:22-cv-00509-SRB, Dkt. #65, at ¶ 103 (July 18, 2022); Living United for Change in Arizona et al. First Amended Complaint, D. Ariz. No. 2:22-cv-00509-SRB, Dkt. #67, at ¶ 347 (July 18, 2022); Democratic National Committee et al. Complaint, D. Ariz. 2:22-cv-01369-SRB, Dkt. #1, at ¶ 90 (Aug. 15, 2022); Arizona Asian American

12

Native Hawaiian and Pacific Islander for Equity Coalition Complaint, D. Ariz. No. 2:22-cv-01381-SRB, Dkt. #1, at ¶ 154 (Aug. 16, 2022).[5]

The district court denied the State's motion to dismiss and motion for summary judgment, then ruled against the State after a bench trial, as explained below.

### A.    The district court denied the State's motion to dismiss and motion for summary judgment.

The State moved to dismiss the Materiality Provision challenges to the birth place provision because, among other things, birth place is material in determining voter citizenship.  *See* State's Mot. to Dismiss, Dkt #127, pgs.

---

[5] Claims by private parties were consolidated with the United States' claims.  As the district court noted, "[t]he Ninth Circuit has not decided whether private citizens may enforce" the Materiality Provision. 1-ER-0070. Because the United States is among the plaintiffs challenging the birth place provision, the State does not raise this issue on appeal.

That said, the State doubts that the private parties have standing to challenge the birth place provision.  The district court's conclusion that a private party had direct organizational standing to challenge the provision is in conflict with a recent Supreme Court decision.  *Compare* 1-ER-0063-64 *with Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 393–96 (2024).  But again, the United States is among the plaintiffs challenging the birth place provision.  Thus, the remainder of this brief will focus on the merits of the United States' challenge.

26–29 (Sept. 16, 2022); State's Reply, Dkt. #180, pgs. 27–29 (Nov. 23, 2022).[6] The district court denied the State's motion.  1-ER-0190-91.

Later, the State moved for summary judgment on the Materiality Provision claims, this time on the ground that birth place is material in determining voter identity.  *See* State's Mot. for Summ. J., Dkt. #364, pgs. 10–11, 13–14 (May 8, 2023); State's Reply, Dkt. #436, pgs. 33–35 (July 5, 2023). The State explained that birth place is basic biographical information commonly used to confirm identity in various contexts.  For example, the U.S. State Department in its Foreign Affairs Manual has long required passport applicants to provide their birth place because "it is an integral part of establishing an individual's identity": namely, it "distinguishes that individual from other persons with similar names and/or dates of birth, and helps identify claimants attempting to use another person's identity."  *See* State's Statement of Facts, Dkt. #365, ¶¶ 10–11; State's Exhibits, Dkt. #365-1,

---

[6] Now and hereafter, all citations to "Dkt." refer to the docket below in D. Ariz., 2:22-cv-00509-SRB.  In addition, all citations to page numbers refer to numbers assigned by a document's author (usually at the bottom of the page), which may differ from page numbers assigned by the district court's electronic filing system (usually at the top of the page).

.

14

Ex. H (portion of State Department's Foreign Affairs Manual on "Place of Birth"). In addition, at least nine other states have a space on their voter registration form for birth place: Alabama, Louisiana, Missouri, Nebraska, Nevada, North Carolina, Tennessee, Utah, and Vermont. *See* State's Statement of Facts, Dkt. #365, ¶ 12; State's Exhibits, Dkt. #365-1, Ex. I (images of those states' voter registration forms).[7]

The State also clarified that, though it was seeking summary judgment on the ground that birth place is material in determining voter identity, it still maintained its previous position (which the district court had rejected) that birth place is material in determining citizenship. *See* State's Reply, Dkt. #436, pg. 35 (July 5, 2023).

The district court denied the State's motion. 1-ER-0137-38, 1-ER-0144, 1-ER-0149-50. Although the State had argued that materiality means something akin to relevance, the court rejected this "low bar" and concluded that materiality requires "some probability of actually impacting an election official's eligibility determination," noting that one court had interpreted the

---

[7] No party disputed these facts. *See* Non-U.S. Plaintiffs' Controverting Statement of Facts, Dkt. #389, pg. 3 (June 5, 2023); United States' Rule 56.1 Statement, Dkt. #392, pg. 2 (June 5, 2023).

word to mean "something akin to necessary."  1-ER-0140-41 & n.17.   And,

although the State had argued that materiality is an objective question of law

for the court to decide, the court sought evidence of how election officials in

Arizona had actually been using birth place information—even though birth

place information had not been required in the recent past and only some

voters had provided it voluntarily.  1-ER-0144.

**B.    At trial, evidence showed that birth place is material in determining voter identity and citizenship.**

The district court held a bench trial in November 2023.  *See* 3-ER-0658.

By the time of trial, election officials in Arizona still had not enforced the

birth place provision in House Bill 2492, because they were waiting to see

how the court would rule.  *See, e.g.*, 3-ER-0726:7-0727:3; 3-ER-0748:3-8.  Even

though the birth place provision had not yet been implemented, evidence at

trial showed that a prospective voter's state or country of birth is material in

determining both identity and citizenship.

**1.    Birth place helps confirm voter identity during registration.**

One source of evidence was Arizona's Elections Procedures Manual,

or "EPM."  The EPM is a set of rules issued by the Secretary of State after

approval by the Governor and Attorney General.  *See* A.R.S. § 16-452(B).  The

16

EPM is binding on county recorders to the extent it addresses topics authorized by statute, and acts as guidance to the extent it addresses other topics. *McKenna v. Soto*, 250 Ariz. 469, 473–74 ¶¶ 20–21 (2021). The operative version at the time of trial was the 2019 EPM. 4-ER-0864—6-ER-1409.[8]

Under the 2019 EPM, when county recorders receive a voter registration form, they search existing voter records to determine whether the information on the form matches a voter who is already registered. 4-ER-0899. If there is a match, the new form is treated as a request to update the existing record. 4-ER-0899. If there is no match, the new form is treated as a new voter. 4-ER-0899.

It is not always clear, however, whether the registration form "matches" an existing voter record. This is because, as the 2019 EPM explains, a voter registration form need only contain "the following minimum information to be considered complete":

- Name;

---

[8] Shortly after trial, the Secretary of State issued a new version: the 2023 EPM. *See* 2-ER-0196, 2-ER-0198. The 2023 EPM resembles the 2019 EPM in the ways that matter for the present brief. Because the 2019 EPM was the version used at trial, this brief cites the 2019 EPM.

17

- Address or location;

- Date of birth;

- Signature; and

- Affirmation of citizenship.

4-ER-0894.  Although an applicant "should" provide an Arizona driver license number or nonoperating ID number or the last four digits of SSN, an applicant who omits this information is "nonetheless permitted to register" and "will be assigned a unique identifying number by the statewide voter registration database."  4-ER-0895.  And, as to proof of citizenship, the 2019 EPM explains that "[n]o voter registration application shall be rejected based solely on the failure to provide" proof of citizenship; rather, otherwise eligible applicants for whom proof of citizenship is not provided or acquired "must be register[ed] as a 'federal-only' voter."  4-ER-0897.[9]

---

[9] Parts of House Bill 2492, if enforced, would override this language in the 2019 EPM.  For example, as noted above, House Bill 2492 directs county recorders to outright "reject" state voter registration forms that lack proof of citizenship.  *See* 2022 Ariz. Laws ch. 99, § 4 (adding A.R.S. § 16-121.01(C)).  Before trial, however, the district court had declared this part of House Bill 2492 (and other parts) unlawful.  *See* 1-ER-0124-33, 1-ER-0136-42, 1-ER-0147-49.

18

Accordingly, county recorders in Arizona often receive voter registration forms that, despite containing minimum information such as name and date of birth, do not provide enough information to conclusively determine whether the applicant matches an already-registered voter. Indeed, one county recorder employee recalled that this situation "happens a lot." 4-ER-0822:15–0823:16. These situations are called "soft matches." 4-ER-0824:5-20. A soft match can occur, for example, when only the following information on the registration form matches an existing voter record:

- First name, last name, and birth date; or

- First name, birth date, and last four digits of SSN (when available); or

- Last name, birth date, and last four digits of SSN (when available); or

- First name, last name, and last four digits of SSN (when available).

7-ER-1596; *see also* 4-ER-0805:7–0806:6, 4-ER-0806:16–0807:2.

In these situations, county recorders may use "any information in the voter's record" to determine whether there is truly a match. 4-ER-0899; *see also* 4-ER-0804:11–0805:2. So, for example, if a registration form contains the same name and birth date as an existing voter record, but a *different* state or country of birth, that would be "cause for follow-up" with the applicant, as one county recorder employee explained. 4-ER-0824:5-20, 4-ER-0833:5-12.

19

On the flip side, if the name, birth date, and birth place on a registration form were all the *same* as an existing voter record, that could be treated as a match, as another county recorder employee explained.  3-ER-0739:12–0740:8.

The United States' expert, political science professor Eitan Hersh, identified several pairs of Arizona voter records in which birth place information was uniquely distinguishing.[10]  Professor Hersh identified 1,367 pairs of voter records (2,734 total) where the voter's first name, last name, and date of birth were exactly the same.  4-ER-0772:17–0773:8, 4-ER-0779:7–15; 7-ER-1547; 7-ER-1598.  Of those, he identified 342 pairs of voter records (684 total) that *also* had an exact match between driver license number, last four digits of SSN, or both.  4-ER-0783:20–0784:4; 7-ER-1551; 7-ER-1598.[11]  And of those, he identified 12 pairs of voter records (24 total records) that contained *incompatible* birthplaces—and in eight pairs, the birthplaces were

---

[10] The district court found Professor Hersh credible and afforded his opinions "significant weight."  1-ER-0028 n.22.

[11] Professor Hersh also found more than 69,000 voter records lacking a driver license or nonoperating ID number, more than 47,000 voter records lacking the last four digits of SSN, and more than 18,000 voter records lacking both.  4-ER-0799:25–0800:11.

20

unambiguously different states such as Arizona versus California.  4-ER-0796:14-20, 4-ER-0797:24–0798:15; 7-ER-1551; 7-ER-1598.

Professor Hersh also acknowledged that his numbers were conservative: Arizona had not been requiring voters to identify birth place, so while some voters had voluntarily provided it, no birth place information existed at all for about one third of Arizona's voter records. 4-ER-0776:23-25.[12]

Professor Hersh acknowledged that the pairs of records containing identical information but incompatible birth places were cause for follow-up.  In his words: "We'd have to look into these 12 cases if we want to use resources to do so and figure out well, why has this happened?"  4-ER-0798:19–0799:8.

There are a few possibilities.  Each pair of records could correspond to a pair of distinct people, as Professor Hersh noted.  4-ER-0798:19–0799:2.  Another possibility is data entry error, as he suspected.  4-ER-0799:3-5.  Other less innocent possibilities could involve applicants attempting to

---

[12] So, for example, if a pair of otherwise identical voter records showed California as the birth place in one record and no birth place in the other record, Professor Hersh did not count those as incompatible birth places. 4-ER-0788:23–0789:18.

21

register as someone else, or attempting to register twice with altered information. For example, one county recorder employee recalled receiving registration forms purporting to be from voters who "had been deceased for quite some time." 4-ER-0819:8–0820:2. Several county recorder employees also recalled receiving batches of suspicious registration forms from third-party groups containing voter information that was mostly similar to existing voter records but slightly altered in some way, such as transposed SSN digits, different birth dates, or noticeably different signatures. *See, e.g.,* 3-ER-0744:19–0745:24; 4-ER-0817:7–0818:23; 4-ER-0837:6–0839:5.

To be sure, birth place information often does not distinguish voters, because two voters may well share the same state or country of birth. On this point Professor Hersh found that, in voter records for the four most common names in Arizona, self-reported birth places were often either Arizona or Mexico. 7-ER-1546.

Evidence at trial also illustrated that, in addition to helping match registration forms to existing voter records, state or country of birth can help confirm voter identity in other ways during registration. For example, if an applicant submits a registration form and includes a copy of a birth certificate as proof of citizenship, but the birth certificate shows a last name

22

different from the name on the registration form, the 2019 EPM instructs the county recorder to nevertheless accept the birth certificate if there is a match between other information, including "Place of birth." 4-ER-0881-82; *see also, e.g.*, 3-ER-0735:24–0736:16 (county recorder employee acknowledging that having birth place on the registration form could be "helpful" here).

As another example, the Maricopa County Recorder's Office, upon receiving a registration form that omits the applicant's last name or contradicts motor vehicle records, sends a notice to the applicant requesting information to help "uniquely identify your registration," including "Place of Birth." 6-ER-1493; 7-ER-1594; 3-ER-0734:4–0735:2.

## 2. Birth place also helps confirm voter identity in related contexts.

In addition to confirming voter identity during *registration*, evidence at trial also showed that a voter's state or country of birth helps confirm voter identity in related contexts. For example, if a county recorder is trying to determine whether an already-registered voter has died based on a death notice, the 2019 EPM instructs the county recorder to "match as much information as possible" between the death notice and the voter record, including "place of birth." 4-ER-0911; *see also, e.g.*, 3-ER-0735:13-21 (county

23

recorder employee acknowledging that having birth place in the voter record could be "useful" here).

A second example:  If a county recorder receives a call from someone claiming to be a voter who submitted a provisional ballot and asking whether the ballot was counted, the 2019 EPM instructs the county recorder to ensure that the caller is actually the voter, such as by "verifying the date of birth, state or country of birth, or other information that could confirm the voter's identity if compared with the voter registration information on file." 5-ER-1083-84; *see also, e.g.*, 3-ER-0742:8-16 (county recorder employee stating that her office follows this practice).

A third example:  If a county recorder receives a mail ballot from a voter, but the signature on the ballot does not match the usual signature in the voter's record, the county recorder may investigate by calling the voter and, to ensure the person who answers the phone is the voter, ask "questions that presumably only the voter would know, such as place of birth."  3-ER-0756:17–0757:5; *see also, e.g.*, 4-ER-0824:21–0826:3 (listing as security question "What is [your] place of birth?").

A fourth example:  If a county recorder is creating a form for voters to request a one-time mail ballot, the 2019 EPM instructs that the form must

24

contain a space for the voter's "State or country of birth, or another piece of information that, if compared to the voter's record, would confirm the voter's identity."  4-ER-0924; *see also, e.g.*, 3-ER-0742:25–0743:7 (county recorder employee stating that her office follows this guidance).  Similarly, for a county recorder to process a voter's request for a one-time mail ballot, the voter must have written his or her "state or country of birth" or "[a]nother piece of information that, if compared to the voter's record, would confirm the voter's identity."  4-ER-0925.[13]

### 3.    Birth place also helps verify citizenship.

Birth place is not only basic biographical information useful for confirming identity, but also relates to citizenship in an obvious way.  People born in the United States are thereby citizens, and people born outside the United States can often become citizens through naturalization.  *See, e.g.*, U.S. Const. amend. XIV, § 1; 8 U.S.C. §§ 1401, 1421, 1427.[14]

---

[13] This requirement is also statutory.  A.R.S. § 16-542(A).

[14] There are rare exceptions, such as when a U.S.-born citizen voluntarily relinquishes citizenship.  *See* 8 U.S.C. § 1481.

Evidence at trial showed more specifically how a person's birth place relates to two citizenship-related databases that House Bills 2492 and 2243 direct county recorders to use: NAPHSIS and SAVE.

**NAPHSIS vital records:**  The first database is the NAPHSIS electronic verification of vital events system.  As mentioned, House Bill 2492 directs county recorders to use this database during front-end voter registration, to try to verify citizenship of applicants who submit federal registration forms without proof of citizenship.  *See* 2022 Ariz. Laws ch. 99, § 4 (adding A.R.S. § 16-121.01(D)).  House Bill 2243, in turn, directs county recorders to use this database during back-end review of voter records, to try to verify citizenship of voters who previously registered without proof of citizenship.  *See* 2022 Ariz. Laws ch. 370, § 2 (adding A.R.S. § 16-165(I)).[15]

At trial, this database was explained by political science professors Jesse Richman and Michael McDonald.[16]  According to their testimony, NAPHSIS is a nonprofit organization that collects vital record data,

---

[15] This language currently appears in A.R.S. § 16-165(J).

[16] The district court found Professor Richman credible and afforded his opinions "considerable weight."  1-ER-0017 n.14.  The district court found Professor McDonald credible and afforded his opinions "considerable weight unless otherwise noted."  1-ER-0009 n.4.

26

including birth certificate data, from across the United States.  4-ER-0811:16–25, 4-ER-0812:20–0813:4; 4-ER-0843:1-15, 4-ER-0844:1–0845:17.    Although county recorders in Arizona did not have access to NAPHSIS data at the time of trial, the organization makes the data available to those who sign a contract.    4-ER-0812:2-16;  4-ER-0813:2-4;  4-ER-0844:1-3,  4-ER-0852:19–0853:14; *see also, e.g.*, 3-ER-0717:19–0719:16.    For example, Missouri uses NAPHSIS vital record data to establish voter identification; the U.S. Election Systems Commission has recommended that states adopt the database as a tool to improve election practices; and the Social Security Administration uses the database to verify people's statements about their birth certificates. 4-ER-0848:15–0849:7, 4-ER-0857:14-18.[17]

Professor Richman explained that the NAPHSIS database can help verify citizenship of U.S.-born voters, by matching their personal identifying information (including birth place) with birth certificate data.  4-ER-0844:16-20, 4-ER-0845:18–0846:19, 4-ER-0857:12-18.  This matching process would, for example, reduce the need for U.S.-born voters to submit copies of birth

---

[17] According to the district court, "the evidence indicates Arizona could request access to the NAPHSIS database with relative ease."  1-ER-0020.

certificates as proof of citizenship, which would be especially useful for people for whom motor vehicle records do not confirm citizenship. 4-ER-0846:20–0847:17.

Professor Richman testified that the matching process would work best if Arizona were to "increase the degree to which people are providing information on their state of birth." 4-ER-0874:2-11. This testimony is in accord with Mr. Blackie's explanation of NAPHSIS data at the Senate committee hearing on House Bill 2492: "If [prospective voters] say they were born in the US, then we can go check vital events to try and find a birth certificate for them." 6-ER-1467:1-5.

**SAVE program:** The second database is the federal SAVE program. As with the NAPHSIS database, House Bill 2492 directs county recorders to use this program during front-end voter registration, to try to verify citizenship of applicants who submit federal registration forms without proof of citizenship. *See* 2022 Ariz. Laws ch. 99, § 4 (adding A.R.S. § 16-121.01(D)). House Bill 2243, in turn, directs county recorders to use this program during back-end review of voter records, to try to verify citizenship

of voters who previously registered without proof of citizenship.  *See* 2022 Ariz. Laws ch. 370, § 2 (adding A.R.S. § 16-165(H)).[18]

At trial, the SAVE program was explained largely via stipulation.  *See* Joint Proposed Pretrial Order, Dkt. #571, pg. 26 (Oct. 16, 2023) (explaining that stipulations were attached).  The SAVE program is administered by the U.S. Citizenship and Immigration Services ("USCIS") and retrieves immigration and citizenship information from federal agencies.  3-ER-0692, ¶¶ 116–18.  For years, county recorders have enjoyed access to the SAVE program through an agreement between USCIS and the Secretary of State, which authorizes use of the program to verify citizenship of individuals "when they register to vote."  3-ER-0692, ¶¶ 119–20, 3-ER-0693, ¶128.[19]

The SAVE program and the NAPHSIS database are complementary. While NAPHSIS can confirm U.S.-born citizenship, the SAVE program can

---

[18] This language currently appears in A.R.S. § 16-165(I).

[19] Under the 2019 EPM, county recorders may use the SAVE program only during "initial registration," not "for list maintenance."  4-ER-0882 n.6. But, according to the district court, "the evidence suggests that USCIS would consider expanding Arizona's use of SAVE under an amended or new" agreement with the Secretary of State.  1-ER-0031.  And, because House Bill 2243 directs county recorders to use SAVE for list maintenance, "it is reasonable that Arizona would seek authorization for this purpose."  1-ER-0031.

confirm naturalized or derived/acquired U.S. citizenship.  3-ER-0692-63, ¶¶ 121–22.  County recorders use the SAVE program by entering a person's name, date of birth, and immigration number such as an Alien Number.  3-ER-0693, ¶¶ 131–32.  If the program matches the person with an existing record, the program reveals whether the person has citizenship status or non-citizen status (such as lawful permanent resident).  *See* 4-ER-0886-87 (2019 EPM instructing county recorders how to use SAVE program); 6-ER-1495 (SAVE guide explaining how to use SAVE program.)

Because NAPHSIS focuses on U.S.-born citizens and SAVE focuses on non-U.S.-born citizens, a person's birth place determines which database is more useful for verifying citizenship.  This, too, is in accord with Mr. Blackie's explanation at the Senate committee hearing on House Bill 2492: "[K]nowing that [an individual was] born in another country leads the counties to then go check the saved [sic] database for that individual so that we can obtain proof of citizenship on their behalf."  6-ER-1466:21-25.

### 4. The U.S. State Department views birth place as "integral" to establishing identity for a passport.

The defense asked the district court to take judicial notice of the U.S. State Department's publicly available Foreign Affairs Manual, which states

30

that the Department views birth place as "integral" to establishing identity for a passport application, and explains why. Specifically, the defense asked the court to take judicial notice of the following:

> The U.S. State Department Foreign Affairs Manual requires that applicants for a U.S. passport or Consular Report of Birth Abroad must provide their place of birth. The manual states that place of birth "is an integral part of establishing an individual's identity. It distinguishes that individual from other persons with similar names and/or dates of birth, and helps identify claimants attempting to use another person's identity."

3-ER-0614. No party objected to this request. *See* 3-ER-0604 (objecting only to other parts of defendants' request).

### 5.    Current use of birth place information in Arizona is limited because the information has not been required.

Although evidence at trial showed that birth place information is *useful* in confirming voter identity and citizenship, evidence also showed that *actual use* of the information by election officials in Arizona has been limited—largely because Arizona had not been requiring prospective voters to provide it.

For example, historically Arizona's voter registration form has not contained standard instructions for applicants to follow when writing their state or country of birth. *See* 6-ER-1410. Accordingly, Professor Hersh

31

noticed that some voters have provided answers that are ambiguous or unhelpful, such as "CA" which might refer to California or Canada, "San Luis" which is a city, or simply "United States" without further detail. 4-ER-0768:1–0769:18, 4-ER-0794:15-25. However, Professor Hersh acknowledged this is not an inherent problem, because it is possible to collect birth place information in a standardized way—indeed, the U.S. State Department does so. 4-ER-0792:24–0793:11.[20]

Also, because the birth place field in Arizona's voter registration form has been optional, county recorders have not regularly relied on it during registration, even though it is useful in several situations. This was clear from testimony. For example, one county recorder employee initially testified on direct examination that her office does not use birth place information "to verify someone's eligibility to vote" or "for purposes of registration." 3-ER-0728:25–0730:12. But on cross-examination she acknowledged that birth place information can be useful in certain situations, both during voter registration and in related contexts, as

---

[20] Another illustration of how standardization is possible is the existing drop-down menu for state or country of birth on the Arizona Department of Transportation's website. *See* 7-ER-1577-93.

explained above.  *See, e.g.*, 3-ER-0734:4–0735:2, 3-ER-0735:13–0736:16; 3-ER-0739:12–0740:8, 3-ER-0741:24–0743:8-16.    Accordingly, on redirect, she disagreed with the suggestion that birth place information is not useful to her office's election functions; instead she concluded that "having that information is helpful."  3-ER-0751:19–0752:3.

### C.  Before and after trial, the defense argued that birth place is material in determining both voter identity and citizenship.

To minimize duplication, the defendants allocated among themselves responsibility for briefing and arguing certain issues before and after trial. *See, e.g.*, State's Trial Memorandum, Dkt. #585, pg. 1 (Oct. 19, 2023) (explaining allocation of issues among defendants).

In a pretrial memorandum, the defense argued that birth place is material in determining both voter identity and citizenship.  *See* Republican National Committee's Trial Memorandum, Dkt. #586, pgs. 5–10 (Oct. 19, 2023).  As to citizenship, for example, the defense explained that "birthplace in the United States is highly correlated with, if not always dispositive of, citizenship status," and birth place is "typically recorded in the [NAPHSIS] database, which H.B. 2492 designates as a source for verifying citizenship status."  *Id.*, pg. 9.

Similarly, in proposed findings and conclusions, the defense argued that birth place is material in determining both voter identity and citizenship. *See*, *e.g.*, Defendants' Proposed Findings of Fact and Conclusions of Law, Dkt. #676, pgs. 31, 45–47, 77–78, 111–115, 198–200 (Dec. 12, 2023). As to citizenship, for example, the defense pointed to legislative history linking the birth place provision to citizenship verification, explained that birth place "could be material to resolving questions concerning a registrant's citizenship," and pointed out that House Bill 2243 authorizes access to "vital events records maintained by [NAPHSIS], which includes birthplace information, to verify citizenship." *Id.*, pgs. 115, 199–200.

At closing argument, the district court questioned the United States about whether birth place is material in determining citizenship. 3-ER-0586:11–0591:5. The defense, in turn, explained that birth place is valuable not only as an "identifier," but also for "confirming citizenship," as "most people who are citizens were born in the United States" and citizenship verification can occur "if there's a birthplace requirement and you join that with the Vital Records database" and "federal records." 3-ER-0596:11–0598:15.

34

### D. The district court ruled that birth place is not material in determining identity.

In its post-trial ruling, the district court summarized evidence. 1-ER-0026-29. The court cited general testimony from election officials about their current practices, namely that county recorders "do not use" birth place information to determine voter eligibility, nor do they say they "need" it to confirm voter identity. 1-ER-0026.

The court also observed, however, that county recorders "could" and "may" use birth place information during voter registration in several ways, including (1) when comparing a registration form with existing voter records, (2) when evaluating a birth certificate that shows a name different from the applicant's name, and (3) when seeking more information from an applicant to process a registration form. 1-ER-0027. The court also observed that county recorders "may" use birth place information in other voting-related contexts, including (1) when determining whether a registered voter has died, (2) when verifying the identity of a registered voter by phone, and (3) when verifying the identity of a registered voter who submits a mail-in ballot request. 1-ER-0027-28.

The court also summarized Professor Hersh's findings. 1-ER-0028-29. The court further noted that county recorders currently cannot confirm the accuracy of an applicant's answer about birth place. 1-ER-0029. In addition, the court stated that the defense did not present affirmative evidence that Arizona plans to standardize collection of birth place information, nor affirmative evidence of county recorders having trouble determining qualifications of a specific voter who had not provided birth place information. 1-ER-0029.

As for the fact that the U.S. State Department views birth place as "integral" to establishing identity for passport applicants: The court acknowledged that this is the State Department's view, acknowledged that the State Department uses birth place to "distinguish" between people with similar names and/or dates of birth, and acknowledged that the State Department uses birth place to "help[] identify claimants attempting to use another person's identity"—but dismissed these facts as "irrelevant." 1-ER-0027 n.20.[21]

---

[21] Accordingly, the district court subsequently denied the defense's request for judicial notice on this point. *See* Order, Dkt. #710 (Mar. 7, 2024).

36

Overall, the court found that county recorders "can sometimes use birthplace in Arizona's voter registration process," but the court deemed birthplace to be "of little utility" in "nearly all" cases.  1-ER-0029.

Turning to legal analysis, the court considered "whether an individual's failure to provide birthplace is material to determining that individual's eligibility to vote."  1-ER-0076-77.  The court reasoned that, in order birth for place information to be "material," it must be "more than useful or minimally relevant."  1-ER-0077.

The court then ruled that, if an applicant omits his or her state or country of birth on a voter registration form, this omission is not "material" for four reasons:

*First*, many people in Arizona previously registered without providing their state or country of birth, and they will remain registered under the new law.  The fact that Arizona deemed them qualified to vote, according to the court, "strongly indicates birthplace is immaterial."  1-ER-0077.

*Second*, the new law does not require county recorders to confirm the accuracy of an applicant's answer about state or country of birth.  Given this fact, the court found it "hard to understand" how birth place information "has any use" in determining voter qualifications.  1-ER-0077 (quoting

37

*Migliori v. Cohen*, 36 F.4th 153, 164 (3d Cir.), *cert. granted, judgment vacated sub nom. Ritter v. Migliori*, 143 S. Ct. 297 (2022)).

*Third*, birth place is not one of the matching criteria currently used in automatic electronic comparisons between the statewide voter registration database (AVID) and motor vehicle records (MVD) to verify a prospective voter's identity.  ER-0078.[22]

*Fourth*, the fact that county recorders can use birth place to verify voter identity *after* registration (e.g., as a security question on a phone call) does not make it material in determining eligibility to vote.  1-ER-0078. And in any event, county recorders can use *other* information for that purpose, as shown by the fact that one-third of all registered voters in Arizona have never provided birth place information.  1-ER-0078.

---

[22] The court was referring to the identity check required by the Help America Vote Act of 2002, or "HAVA."  Under HAVA, in order to register an applicant for federal elections, States must compare the applicant's name, date of birth, and either driver license or SSN (if the applicant has one) with motor vehicle records.  *See* 52 U.S.C. § 21083(a)(5).

### E. The district court apparently ruled summarily that birth place is not material in determining citizenship.

The district court's post-trial ruling focused more on whether birth place is material to voter identity, not so much citizenship. The ruling sheds little light on the court's thought process as to citizenship.

In its summary of evidence, the court stated that birth place is "not dispositive of citizenship status, as individuals born outside the U.S. may be derived or naturalized citizens." 1-ER-0026.

Then, in its legal analysis, the court stated that an individual's birth place "cannot be used to *directly* verify that individual's citizenship." 1-ER-0077 (emphasis added).

### STANDARD OF REVIEW

"We review the district court's findings of fact after the bench trial for clear error and review the district court's conclusions of law de novo." *O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 802 F.3d 1049, 1061 (9th Cir. 2015). "Mixed questions [of law and fact] presumptively are reviewed by us de novo because they require consideration of legal concepts and the exercise of judgment about the values that animate legal principles." *In re Bammer*, 131 F.3d 788, 792 (9th Cir. 1997) (en banc).

39

## SUMMARY OF ARGUMENT

Under the Materiality Provision, States may require prospective voters to provide information that is significant to voter qualification decisions, even if it is not essential.  Arg. § I.A.  In evaluating whether information is significant, courts should assign positive weight to States' legislative judgments, as well as historical and common practice.  Arg. §§ I.B and I.C. In addition, although omissions on voter registration forms are sometimes inadvertent (and thus potentially insignificant), States are entitled to presume instead that omissions are intentional, especially if there is a process for curing inadvertent omissions.  Arg. § I.D.

Here, Arizona's decision to require prospective voters to identify their state or country of birth—so that applicants who skip this space will be notified and given an opportunity to provide the information—does not violate the Materiality Provision.  Birth place is material in determining voter identity, and the district court's contrary conclusion applied the Materiality Provision too strictly.  Arg. § II.  In addition, birth place is material in determining citizenship, and again, the district court's contrary conclusion applied the Materiality Provision too strictly.  Arg. § III.

40

## ARGUMENT

### I.   The Materiality Provision applies when a State denies the right to vote based on an insignificant error or omission in voter registration.

Under the Materiality Provision,

> No person acting under color of law shall . . . deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election.

52 U.S.C. § 10101(a)(2)(B).  This law was part of the federal government's larger effort to outlaw certain tactics used by States to disqualify African Americans from voting in federal elections.  *Penn. State Conf. of NAACP Branches v. Sec'y Commonwealth of Pennsylvania*, 97 F.4th 120, 126 (3d Cir. 2024).  One such tactic was to "reject would-be registrants for insignificant, hyper-technical errors in filling out application forms."  *Id.*  For example, election officials rejected applicants for failing to "calculate [their] age to the day," misspelling "Louisiana," or identifying their skin color as "Negro" instead of "brown."  *Id.* (citations omitted).

There are "few circuit court opinions that analyze the Materiality Provision."  *Vote.Org. v. Callanen* ("*Vote.Org II*"), 89 F.4th 459, 479 (5th Cir.

41

2023). And none from the Ninth Circuit. The State suggests the following principles.

**A.    States may seek information that is significant in determining voter qualifications, even if it is not essential.**

The Materiality Provision does not actually define materiality. "Roughly speaking, there appears to be two kinds of 'materiality,' one similar to minimal relevance and the other closer to outcome-determinative." *Fla. State Conf. of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1174 (11th Cir. 2008). The State suggests an inquiry between these extremes.

Last year, the Fifth Circuit consulted dictionary definitions of "material" and reasoned as follows:

> The most-used legal dictionary gives this definition: "Of such a nature that knowledge of the item would affect a person's decision-making: significant; essential." *Material*, Black's Law Dictionary (8th ed. 2004). A more comprehensive dictionary has this definition: "Of serious or substantial import; significant, important, of consequence." *Material*, Oxford English Dictionary, III.6.a. (July 2023). We reject "essential" as a reasonable meaning, but the rest of the variations seem about right.

*Vote.Org II*, 89 F.4th at 579. This reasoning is sound. An omission on a voter registration form is material in determining voter qualifications if it is "significant" to the decision whether the applicant is a qualified voter. But

42

"essential" goes too far.  *Accord Browning*, 522 F.3d at 1175 (noting that the Materiality Provision "does not establish a least-restrictive-alternative test for voter registration applications").

**B.    Courts should give weight to State legislative judgments about significance of information in determining qualifications.**

The Fifth Circuit reviewed Supreme Court case law and observed that "States have considerable discretion in establishing rules for their own elections."  *Vote.Org II*, 89 F.4th at 480.  In particular, "a State has considerable discretion in deciding what is an adequate level of effectiveness to serve its important interests in voter integrity."  *Id.* at 485.

The Fifth Circuit therefore concluded: "When we evaluate the materiality of a measure, we must give weight to the State's justification for it."  *Id.*  This reasoning, too, is sound.  A State's elected policymakers should have some leeway in deciding whether information is significant enough that it is worth requiring on a state registration form.  This leeway recognizes that significance is a matter of degree, that evaluating significance may rest in part on policy considerations, and that reasonable minds may sometimes differ on whether certain information is significant.

43

**C.    Historical and common practice can support a finding of materiality, but are not required.**

When inquiring whether certain information is significant to a decision, the fact that other decision makers have sought the same kind of information for similar decisions, either contemporaneously or historically, is evidence that the information is significant.

Indeed, one district court recently dismissed a Materiality Provision challenge to a wet signature requirement at the *pleading* stage, for this reason. *Vote.Org v. Byrd*, No. 4:23-CV-111-AW-MAF, 2023 WL 7169095, at *6–7 (N.D. Fla. Oct. 30, 2023). The court reasoned that "society is replete with original-signature requirements," "everyone has encountered some," and "no one here disputes the ubiquity of these requirements." *Id.* at *6.

The inverse does not necessarily hold, of course. If a State decides to be the first State to start seeking certain information on a voter registration form, that does not necessarily mean the information is immaterial. It could mean that the State has a good idea.

**D.    States may presume that omissions on voter registration forms are intentional, especially if there is a process for curing inadvertent omissions.**

In some situations, questions may arise about whether a person's omission on a voter registration form is inadvertent (and thus potentially

44

insignificant). But the Materiality Provision does not require States to presume that omissions are inadvertent, especially when the State has a process for notifying applicants of, and curing, inadvertent omissions.

This point is perhaps best illustrated with examples. Suppose an applicant drives to an election office and hands a voter registration form to an election official. As the applicant walks out the door, the election official calls out: "You forgot to write your address!" The applicant apologizes, turns around, writes her address on the form, then leaves. The election official then registers the applicant. All is well.

Now suppose the election official does not notice the omitted address until ten minutes after the applicant leaves. He calls the applicant's phone number to notify her. She apologizes, drives back, writes her address, then leaves. As before, the election official registers the applicant. All is well.

But now suppose, when the election official calls the applicant's phone number to notify her of the omitted address, the applicant just says "I do not know the address" and hangs up. In that situation the election official would be justified in *not* registering the applicant. The applicant has not shown she is a resident of the State, even after the omission is brought to her attention.

45

And the applicant's inability or unwillingness to answer a basic question may raise doubt about whether she is, in fact, the person named on the form.

Now modify the situation once more. When the election official calls the applicant's phone number to notify her of the omission, the election official hears an automated voice: "The number you have dialed is no longer in service." The election official tries to contact the applicant in other ways, to no avail. Here, too, the election official would be justified in *not* registering the applicant, given that she has not shown she is a resident of the State, and given doubts about the applicant's identity. While the omission of the address may be an innocent mistake, the election official need not presume this. If anything, he should presume the opposite until shown otherwise—which can be done easily if there is a notice and cure process.

The Eleventh Circuit has made a similar point. In response to a plaintiff who argued that an "error caused by a typo cannot be material," the Eleventh Circuit explained that the Materiality Provision "asks whether, accepting the error *as true and correct*, the information contained in the error is material." *Browning*, 522 F.3d at 1174–75 (emphasis in original). In other words, the better presumption is that the applicant intended to write (or

46

omit) what is written (or omitted) on the voter registration form, until proven otherwise.

The Fifth Circuit grappled with a similar issue. Texas required voter registration forms to have a wet signature (not an electronic signature), and also required election officials to notify applicants whose forms were incomplete and allow ten days to cure the deficiency. *Vote.Org II*, 89 F.4th at 467–68. A motions panel reasoned that, given the notice and cure process, "it is hard to conceive how the wet signature rule deprives anyone of the right to vote." *Vote. Org. v. Callanen* ("*Vote.Org I*"), 39 F.4th 297, 306 (5th Cir. 2022). This conclusion is significant because the Materiality Provision, by its terms, is not violated unless an applicant is "den[ied] the right . . . to vote." 52 U.S.C. § 10101(a)(2)(B).

The merits panel set aside this holding and upheld the wet signature rule on other grounds. *Vote.Org II*, 89 F.4th at 487. But the merits panel acknowledged that, when analyzing a Materiality Provision claim, the "effect of a simple means to cure" an error or omission is not "clear." *Id.* Accordingly, the panel left the issue "open for a later case." *Id.*

This is that case. The State proposes that the effect of a notice and cure process on Materiality Provision claims is as follows. In general, States may

47

presume that an omission on a voter registration form is intentional (and thus potentially significant).  And this is especially true when there is a process for notifying applicants of, and curing, inadvertent omissions.

## II. Contrary to the district court's ruling, birth place is material in determining identity.

Recall that the law at issue would make the "State or Country of Birth" space on the state registration form required, just like the "Birth Date" space next to it.  *See* A.R.S. § 16-121.01(A).  So an applicant who skips either space would be notified within ten business days that registration cannot be completed and would be given an opportunity to provide the missing information.  A.R.S. § 16-134(B).

In other words, the spaces on the form would change from this . . .



. . . to this . . .



*See* 6-ER-1410 (specifying at the top that "red shaded boxes are required").

48

If an applicant were to submit this form without writing anything in Box 13, that omission would be material in determining a basic voter qualification: identity.

### A.    Identity is a basic voter qualification.

Voters in Arizona must be U.S. citizens, Arizona residents, and at least 18 years old, among other things.  Ariz. Const. art. 7, § 2; A.R.S. § 16-101(A).  Underlying these qualifications is a basic identity requirement:  People who submit voter registration forms must be who they say they are, not someone else such as an already-registered voter.  *See, e.g.*, *Vote.Org II*, 89 F.4th at 489 (describing applicant's identity as "the most basic qualification to vote").

### B.    Birth place is significant in determining identity, especially when omitted on a registration form that expressly requires it.

A person's state or country of birth is basic biographical information.  Everyone has one.  And virtually everyone knows what their own is, and can provide it easily.  Yet it is also not the sort of thing that can be readily surmised about someone else by mere observation.

For these and other reasons, birth place is a common question on government forms.   Perhaps the most well-known is the passport application.  As the U.S. State Department explains in its Foreign Affairs

Manual, birth place is "an integral part of establishing an individual's identity," as it "distinguishes that individual from other persons with similar names and/or dates of birth" and "helps identify claimants attempting to use another person's identity." *See* State's Statement of Facts, Dkt. #365, ¶¶ 10–11 (May 8, 2023); State's Exhibits, Dkt. #365-1, Ex. H (May 8, 2023) (portion of Foreign Affairs Manual on "Place of Birth"); 3-ER-0614.[23]

Indeed, at least nine states other than Arizona ask for birth place information on voter registration forms. *See* State's Statement of Facts, Dkt. #365, ¶ 12; State's Exhibits, Dkt. #365-1, Ex. I (images of those states' voter

---

[23] No party disputes that the Foreign Affairs Manual says this. *See* Non-U.S. Plaintiffs' Controverting Statement of Facts, Dkt. #389, pg. 3 (June 5, 2023); United States' Rule 56.1 Statement, Dkt. #392, pg. 2 (June 5, 2023); 3-ER-0604.  This portion of the Manual is publicly available at https://fam.state.gov/fam/08fam/08fam040304.html.  To the extent this Court believes judicial notice is necessary to consider the Manual, judicial notice is warranted. *See, e.g.*, *Brown v. Valoff*, 422 F.3d 926, 931 n.7 (9th Cir. 2005) ("We take judicial notice of [state] Department [of Corrections] Operations Manual."); *Bona Fide Conglomerate, Inc. v. SourceAmerica*, 377 F. Supp. 3d 1093, 1111 n.6 (S.D. Cal. 2019) (taking judicial notice of U.S. Department of Defense Manual).

registration forms).[24]  And Arizona has been asking prospective voters about birth place since statehood, as detailed earlier.  *See* Statement of the Case § I.

If someone were to submit a voter registration form that skips the "State or Country of Birth" space, even though it is expressly required, there are two possibilities:  The omission could be inadvertent or intentional.

Arizona is entitled to presume that the omission is intentional, as explained above.  *See Browning*, 522 F.3d at 1174–75 (explaining that States should "accept[] the error *as true and correct*" under the Materiality Provision).  This is especially so because Arizona has a notice and cure process:  County recorders must notify applicants within ten business days if a registration form is incomplete, and the applicant can then provide the missing information.  A.R.S. § 16-134(B).

And an intentional omission of birth place would raise doubts about identity.  If a person submits a registration form with the name John Smith but refuses to write a state or country of birth, one wonders whether the

---

[24] This fact, too, is undisputed.  *See* Non-U.S. Plaintiffs' Controverting Statement of Facts, Dkt. #389, pg. 3 (June 5, 2023); United States' Rule 56.1 Statement, Dkt. #392, pg. 2 (June 5, 2023).  To the extent this Court believes that judicial notice is necessary to consider other states' forms, judicial notice is warranted for the same reasons.

person is indeed John Smith—or in the words of the State Department, whether the person is "attempting to use another person's identity." This situation is unlikely but not impossible. At trial, county recorder employees recalled receiving registration forms purporting to be from voters long deceased, as well as suspicious registration forms from third-party groups containing voter information mostly similar to existing records but slightly altered in some way. *See, e.g.*, 3-ER-0744:19–0745:24; 4-ER-0817:7–0818:23; 4-ER-0837:6–0839:5.

Even setting aside doubts that would be raised by an intentional omission, a person's birth place helps determine identity in several additional ways, as illustrated at trial. For starters, county recorders try to match voter registration forms with existing records to determine whether the applicant is a new or existing voter. 4-ER-0899. It is not always clear whether there is a match, given the relatively minimal amount of information required on the form. *See* 4-ER-0894-97; 4-ER-0822:15–0823:16. For example, if only the first name, last name, and birth date match, this is generally considered only a "soft match." 7-ER-1596; *see also* 4-ER-0805:7–0806:6, 4-ER-0806:16–0807:2; 4-ER-0824:5-20. Birth place can be useful data in these situations. 3-ER-0739:12–0740:8; 4-ER-0824:5-20, 4-ER-0833:5-12; *see*

52

*also* 4-ER-0899 (authorizing county recorders to use "any information in the voter's record" to determine whether there is truly a match).  As the State Department puts it, birth place may distinguish an applicant "from other persons with similar names and/or dates of birth."

Indeed, the United States' expert identified eight pairs of voter records in Arizona that contained not only the same first name, last name, and date of birth, but *also* the same driver license or last four digits of SSN, yet unambiguously *different* birth states such as Arizona versus California.  4-ER-0772:17–0773:8, 4-ER-0779:7-15, 4-ER-0783:20–0784:4, 4-ER-0796:14-20, 4-ER-0797:24–0798:15; 7-ER-1547, 7-ER-1551; 7-ER-1598.[25]  Although this is a tiny percentage of overall records, it is also a conservative estimate because Arizona has not been requiring birth place, so one third of Arizona voter records have no birth place at all.  4-ER-0776:23-25.

---

[25] He also found more than 69,000 voter records lacking a driver license or nonoperating ID number, more than 47,000 voter records lacking the last four digits of SSN, and more than 18,000 voter records lacking both.  4-ER-0799:25–0800:11.

53

All of this suffices to show that birth place is significant in determining voter identity. Yet evidence also showed *more* situations in which birth place is useful to country recorders, such as when they do the following tasks:

- Evaluate a birth certificate submitted by an applicant that shows a last name different from the applicant's last name (4-ER-0881-82; *see also, e.g.*, 3-ER-0735:24–0736:16);

- Seek more information from an applicant to process an incomplete registration form (6-ER-1492; 7-ER-1594; 3-ER-0734:4–0735:2);

- Try to determine whether a registered voter has died based on a death notice (4-ER-0911; *see also, e.g.*, 3-ER-0735:13-21);

- Verify the identity of a registered voter by phone (5-ER-1083-84; *see also, e.g.*, 3-ER-0743:8-16; 3-ER-0756:17–0757:5; 4-ER-0824:21–0826:3); and

- Verify the identity of a registered voter who submits a mail-in ballot request (4-ER-0924-25; *see also, e.g.*, 3-ER-0742:25–0743:7).

These are all situations in which birth place is *already* useful to county recorders in determining voter identity, even though Arizona has not been requiring prospective voters to write their birth place.

In sum, omission of birth place is not the sort of "insignificant, hyper-technical" error targeted by the Materiality Provision. *Penn. State Conf. of NAACP Branches*, 97 F.4th at 126. Rather, birth place is significant in determining the "most basic qualification": voter identity. *Vote.Org II*, 89 F.4th at 489.

## C. The district court's contrary conclusion misapplied the Materiality Provision.

The district court's conclusion that birth place is immaterial rested on an overly restrictive application of the Materiality Provision.

As an initial matter, the district court apparently assigned no positive weight to the fact that, since statehood, Arizona has been asking prospective voters to identify where they were born. The court mentioned this practice as historical background, but its legal analysis did not treat this as evidence of materiality. *See* 1-ER-0026, 1-ER-0076-78.

Nor did the district court assign weight to the fact that birth place is used in determining identity in other contexts. Indeed, the court dismissed as irrelevant the fact that the State Department views birth place as "integral" to establishing identity in passport applications. *See* 1-ER-0027 n.20.

55

Nor, apparently, did the district court assign weight to the fact that (1) Arizona made a legislative judgment about the significance of birth place, and (2) Arizona has a notice and cure process for incomplete voter registration forms. *See generally* 1-ER-0076-78.

Instead, the district court gave four reasons for concluding that birth place on a voter registration form is immaterial. Each fails as a matter of law.

*First*, according to the district court, the fact that Arizona has previously allowed people to vote without requiring them to provide their state or country of birth "strongly indicates birthplace is immaterial." 1-ER-0077. But this rationale confuses two inquiries: whether information is *significant* to a decision, versus whether it is *essential*.

The fact that Arizona has allowed people to vote without requiring birth place shows, at most, that the information is not essential. But the Materiality Provision asks whether information is significant, not essential. *See, e.g.*, *Vote.Org II*, 89 F.4th at 579 ("We reject 'essential' as a reasonable meaning."). Indeed, the fact that Arizona historically has asked prospective voters for their birth place indicates that the information is, and has long been, significant to voter qualification decisions.

56

Moreover, under the district court's theory, the Materiality Provision would have a one-way ratchet effect: if a State stops requiring certain information but still registers voters, the State could not resume requiring that information in the future. That cannot be right.

*Second*, according to the district court, the fact that county recorders in Arizona cannot currently verify an applicant's self-reported birth place makes it "hard to understand" how birth place "has any use" in determining voter qualifications. 1-ER-0077 (quoting *Migliori v. Cohen*, 36 F.4th 153, 164 (3d Cir.), *cert. granted, judgment vacated sub nom. Ritter v. Migliori*, 143 S. Ct. 297 (2022)).

But this is not hard to understand. For one, requiring applicants to write basic biographical information that "presumably only the voter would know, such as place of birth," (3-ER-0756:17–0757:5), has value in deterring those who might try to register as someone else. *See, e.g.*, *Vote.Org II*, 89 F.4th at 490 (reasoning that wet signature requirement "may dissuade improper individuals from registering").

In addition, a voter registration form that omits birth place (despite a clear instruction to provide the information) raises doubt about the applicant's identity, especially given Arizona's process for curing

57

inadvertent omissions, as explained above. This doubt would exist regardless of any ability to verify an answer, for in that situation the applicant has provided no birth place answer.

Moreover, birth place on a voter registration form makes it easier to determine whether the form matches existing voter records, as explained above. This matching process does not require independent verification of birth place; rather, it requires comparing two records submitted by applicants. A similar point can be made about other situations in which birth place information is useful to county recorders in determining identity, including when county recorders (1) compare a registration form with a birth certificate submitted by an applicant, (2) compare a death notice that contains birth place information to an existing voter record, (3) compare an answer to a security question about birth place to an existing voter record, and (4) compare birth place information on a mail-in ballot request to an existing voter record—all of which are explained above.[26]

---

[26] In addition, state of birth information can be compared with NAPHSIS, as discussed below.

The fact that birth place information would have *more* value if county recorders could verify its accuracy does not make it insignificant in determining voter identity.

*Third*, the district court pointed out that birth place is not one of the matching criteria currently used in electronic comparisons between the statewide voter registration database (AVID) and motor vehicle records (MVD) to verify an applicant's identity, pursuant to the Help America Vote Act of 2002 (HAVA). 1-ER-0078.

This criticism is a variant of the previous one and fails for similar reasons. Again, while birth place information would have *more* value if it could be confirmed by motor vehicle records, that does not make the information insignificant in determining voter identity.

Moreover, the fact that HAVA requires States to compare certain information to motor vehicle records—namely an applicant's name, date of birth, and either driver license or SSN (if the applicant has one)—does not mean States cannot require other information from the applicant. *See* 52 U.S.C. § 21083(a)(5).

*Fourth*, according to the district court, the fact that county recorders can use birth place to help determine voter identity *after* registration (e.g., as

59

a security question on the phone) does not make it material to determining voter eligibility.  1-ER-0078. And in any event, county recorders "can" use other information for post-registration verification, as shown by the fact that many registered voters in Arizona never provided birth place information. 1-ER-0078.

This criticism misses the mark in several ways.  For starters, birth place information is useful in determining voter identity *during* registration, as explained above.  A voter registration form that omits birth place (despite a clear instruction to provide it) raises doubt about the applicant's identity *during* registration.  County recorders try to match a voter registration form with existing voter records *during* registration.  County recorders try to match a voter registration form with a birth certificate submitted by the applicant *during* registration.

True, birth place information also remains useful after registration, including (for example) as a security question to be asked over the phone, or as information to help confirm that a registered voter has died based on a death notice.  But this is further proof that the information is significant in determining voter qualifications.  As one district court recently explained, States are tasked with "assessing the qualifications of those who *vote*, not

60

only of those who plan to." *League of Women Voters of Arkansas v. Thurston*, No. 5:20-CV-05174, 2023 WL 6446015, at *17 (W.D. Ark. Sept. 29, 2023) (emphasis added). Accordingly, States may evaluate voter identity "at multiple points in the voting process." *Id.* The fact that birth place information is useful at multiple points confirms its significance.

And the district court's observation that county recorders "can" use other information for post-registration verification, such as a voter's birth date, confirms that the court was asking the wrong question all along. Again, the Materiality Provision asks whether information is significant, not whether it is essential. *Vote.Org II*, 89 F.4th at 479. The fact that Arizona *can* use other information for post-registration verification "does not mean that [it] should be legally required to do so." *Thurston*, 2023 WL 6446015, at *17.

## III. Contrary to the district court's ruling, birth place is material in determining citizenship.

A person's state or country of birth is significant not only in determining voter identity, but also in determining citizenship.

### A. U.S. citizenship is a basic voter qualification.

Voters in Arizona must be U.S. citizens. Ariz. Const. art. 7, § 2; A.R.S. § 16-101(A).

61

## B.    Birth place is significant in determining citizenship.

Birth place relates to U.S. citizenship in an obvious way:  People born in the United States are thereby citizens, and people born outside the United States can often become citizens through naturalization.  *See, e.g.*, U.S. Const. amend. XIV, § I; 8 U.S.C. §§ 1401, 1421, 1427.[27]

Accordingly, a person's state or country of birth generally determines the potential basis for a person's citizenship, which in turn determines the types of proof that are relevant.  People born in the United States generally may claim birthright citizenship, which can be proved by a birth certificate, for example.  *See, e.g.*, 4-ER-0881-82.  People born outside the United States generally cannot claim birthright citizenship, so other forms of proof are relevant, such as a certificate of naturalization.  *See, e.g.*, 4-ER-0882.

In this way, a person's state or country of birth is significant (and thus material) in determining citizenship.  This connection between birth place and citizenship is apparent in Arizona's history of asking prospective voters to identify their birth place.  *See, e.g.*, 1913 Revised Statutes of Ariz. § 2885 (requiring county recorders to record each applicant's "country of nativity"

---

[27] There are rare exceptions, such as when a U.S.-born citizen voluntarily relinquishes citizenship.  *See* 8 U.S.C. § 1481.

and "[i]f naturalized, the time, the place and court of naturalization or declaration, as evidenced by the legal proof thereof"); 1963 Ariz. Laws ch. 80, § 2 (amending A.R.S. § 16-143) (requiring that registration form include space for "[s]tate or country of nativity" and other information depending on whether applicant is "naturalized," or "citizenship is claimed by virtue of father's naturalization," or "citizenship by marriage is claimed").

In the modern world, there are databases with citizenship-related information. Relevant here, NAPHSIS is an organization that collects vital record data, including birth certificate data, from across the United States. 4-ER-0811:16-25, 4-ER-0812:21–0813:4; 4-ER-0843:1-15, 4-ER-0844:1–0845:17. Such data can help verify citizenship of *U.S.-born* voters, by matching personal information (including birth place) with birth certificate data. 4-ER-0844:16-20, 4-ER-0845:18–0846:19, 4-ER-0846:20–0847:17, 4-ER-0848:15–0849:7, 4-ER-0857:12-18. Conversely, SAVE is a federal program that retrieves immigration and citizenship information from federal agencies. 3-ER-0692, ¶¶ 116–18. This program can help verify citizenship of *non-U.S.-born* voters, by matching personal information (name, birth date, and an immigration-related number) to a federal record. 3-ER-0692-93, ¶¶ 119–22, 128, 131–32; *see also, e.g.*, 6-ER-1495.

63

House Bills 2492 and 2493 direct county recorders to use these databases as part of citizenship verification—both during the front-end process of voter registration (for applicants who submit federal registration forms without proof of citizenship) and during the back-end process of reviewing voter records (for voters who previously registered without proof of citizenship). *See* 2022 Ariz. Laws ch. 99, § 4 (adding A.R.S. §§ 16-121.01(D), (E)); 2022 Ariz. Laws ch. 370, § 2 (adding A.R.S. §§ 16-165(H), (I))[28]). And a person's birth place determines which database is more useful, as explained above. Legislative history confirms that part of the reason for requiring birth place on a voter registration form was to facilitate use of these databases. *See* ER-1465-67. This further illustrates that birth place is significant (and thus material) in determining citizenship.

## C. The district court's contrary conclusion misapplied the Materiality Provision.

The district court's post-trial ruling said little about whether birth place is material in determining citizenship. Still, based on what little the court did say, it is clear that the court relied on an overly restrictive view of the Materiality Provision.

---

[28] This language currently appears in A.R.S. §§ 16-165(I) and (J).

64

As an initial matter, as explained above, the district court apparently assigned no positive weight to (1) Arizona's practice since statehood of asking prospective voters to identify their birth place, (2) Arizona's legislative judgment about the significance of birth place, or (3) Arizona's process for curing incomplete voter registration forms.

Instead, the district court made two statements about the relationship between birth place and citizenship. Neither statement supports the conclusion that birth place is immaterial.

*First*, the district court stated (in its summary of evidence) that birth place is "not dispositive of citizenship status, as individuals born outside the U.S. may be derived or naturalized citizens." 1-ER-0026.

This statement is true as far as it goes. But it does not go far. As before, the court confused two inquiries: whether information is *significant* to a decision, versus whether it is *essential*. The Materiality Provision asks whether information is significant, not essential. *See, e.g.*, *Vote.Org II*, 89 F.4th at 479 ("We reject 'essential' as a reasonable meaning."). The fact that birth place is not dispositive of citizenship status for people born outside the United States does not make it immaterial to the citizenship inquiry.

65

And in any event, the district court's statement about people born *outside* the United States has an obvious corollary: For people born *inside* the United States, birth place is indeed generally dispositive of citizenship. *See* U.S. Const. amend. XIV, § I; 8 U.S.C. § 1401. This fact by itself makes birth place, at minimum, significant in determining citizenship, even if not always dispositive.

*Second*, the district court stated (in its legal analysis) that a person's birth place "cannot be used to *directly* verify that individual's citizenship." 1-ER-0077 (emphasis added).

But the Materiality Provision does not limit States to seeking information that *directly* verifies voter qualifications. Again, the proper focus is on whether information is significant, not whether it is essential. *Vote.Org II*, 89 F.4th at 479. In other words, States may require information that "meaningfully, even if quite imperfectly, corresponds" to the decision whether a voter is qualified. *Id.* at 489.

Moreover, evidence at trial showed that birth place *can* be used to directly verify citizenship. If a U.S.-born citizen provides his or her state of birth, this information can be used to match birth certificate data collected by NAPHSIS. *See* 4-ER-0844:16-20, 4-ER-0845:18–0847:17, 4-ER-0848:15–

66

0849:7, 4-ER-0857:14-18.  Indeed, elsewhere in its ruling, the district court acknowledged that NAPHSIS can be used for this purpose.  1-ER-0019-20.  Conversely, if a non-U.S.-born citizen provides his or her country of birth, then the county recorder would at least know that the federal SAVE program is the more useful database.  *See* 3-ER-0692-93, ¶¶ 119–22, 128, 131–32.  And as the district court acknowledged, SAVE can be used to verify citizenship for naturalized and derived U.S. citizens.  1-ER-0017-19.

Again, omission of birth place is not the sort of "insignificant, hyper-technical" error contemplated by the Materiality Provision.  *Penn. State Conf. of NAACP Branches*, 97 F.4th at 126.  Rather, a person's state or country of birth is significant in determining citizenship.

## CONCLUSION

This Court should vacate the part of the district court's judgment declaring unlawful and enjoining enforcement of A.R.S. § 16-121.01(A) insofar as it requires prospective voters to identify their birth place when filling out the state registration form.

67

Respectfully submitted this 29th day of July, 2024.

KRISTIN K. MAYES
  ARIZONA ATTORNEY GENERAL

By */s/ Joshua M. Whitaker*

Joshua D. Bendor (AZ Bar No. 031908)
Hayleigh S. Crawford (AZ Bar No. 032326)
Joshua M. Whitaker (AZ Bar No. 032724)
Kathryn E. Boughton (AZ Bar No. 036105)
 OFFICE OF THE ARIZONA
   ATTORNEY GENERAL
2005 N. Central Ave.
Phoenix, AZ 85004
(602) 542-3333
Joshua.Bendor@azag.gov
Hayleigh.Crawford@azag.gov
Joshua.Whitaker@azag.gov
Kathryn.Boughton@azag.gov
ACL@azag.gov

*Counsel for State of Arizona and Arizona
  Attorney General Kristin K. Mayes*

68

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, other than the fact that Case No. 24-3188 has been consolidated with Case No. 24-3559 and Case No. 24-4029, the State is not aware of any related cases.

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Circuit Rule 28-1.1(b) and 32-1(a) because it contains <u>13,136</u> words according to the word-processing system used to prepare the brief.

2.  This brief complies with the typeface and typestyle requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in fourteen-point Book Antiqua type style.

Dated this 29th day of July, 2024.


By <u>*/s/ Joshua M. Whitaker*</u>

70

## CERTIFICATE OF SERVICE

I certify that I presented the above and foregoing for filing and uploading to the ACMS system which will send electronic notification of such filing to all counsel of record.

Dated this 29th day of July, 2024.

*/s/ Joshua M. Whitaker*