Nos. 24-3188, 24-3559, 24-4029
(Consolidated)

# In the United States Court of Appeals for the Ninth Circuit

MI FAMILIA VOTA; et al.,
*Plaintiffs-Appellees,*

vs.

ADRIAN FONTES, Arizona Secretary of State; et al.,
*Defendants-Appellees,*

WARREN PETERSEN, Arizona Senate President; et al.,
*Intervenor-Defendants-Appellants.*

On Appeal From U.S. District Court for the District of Arizona
No. 2:22-Cv-00509-SRB (and Consolidated Cases)

**BRIEF FOR *AMICUS CURIAE* IMMIGRATION REFORM
LAW INSTITUTE IN SUPPORT OF APPELLANTS/CROSS-
APPELLEES IN SUPPORT OF REVERSAL**

Christopher J. Hajec
Director of Litigation
Immigration Reform Law Institute
25 Massachusetts Ave, NW, Ste 335
Washington, DC 20001
Tel: 202-232-5590
Fax: 202-464-3590
Email: chajec@irli.org

Lawrence J. Joseph
Cal. Bar #154908
1250 Connecticut Av NW, Ste 700-1A
Washington, DC 20036
Tel: 202-669-5135
Fax: 202-318-2254
Email: ljoseph@larryjoseph.com

*Counsel for Amicus Curiae Immigration
Reform Law Institute*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the FEDERAL RULES OF APPELLATE PROCEDURE, *amicus curiae* Immigration Reform Law Institute makes the following disclosures:

1)      For non-governmental corporate parties please list all parent corporations: <u>None</u>.

2)      For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock: <u>None</u>.

Dated: August 5, 2024                    Respectfully submitted,

/s/ Lawrence J. Joseph
Lawrence J. Joseph, Cal. Bar #154908
1250 Connecticut Ave, NW, Suite 700-1A
Washington, DC 20036
Tel: 202-355-9452
Fax: 202-318-2254
Email: ljoseph@larryjoseph.com

*Counsel for Amicus Curiae Immigration Reform Law Institute*

# **TABLE OF CONTENTS**

Corporate Disclosure Statement ...................................................................i

Table of Contents .................................................................................. ii

Table of Authorities ............................................................................. iii

Identity, Interest and Authority to File ......................................................1

Statement of the Case ............................................................................1

     Jurisdictional Background ...............................................................3

     Substantive Legal Background .........................................................5

     Factual Background ......................................................................8

Standard of Review ...............................................................................9

Summary of Argument...........................................................................11

Argument...........................................................................................12

I.     This Court and the District Court lack Article III jurisdiction over the Non-Federal Complainants' actions. .............................................12

    A.    The Non-Federal Complainants lack associational standing. ..................................................................................13

    B.    The Non-Federal Complainants lack standing in their own right.........................................................................13

II.    HB 2492 complies with federal law. .................................................13

    A.    The Constitution gives States significant power over voting. ................................................................................14

    B.    The NVRA does not preempt HB 2492. .................................16

        1.    Arizona law does not conflict with the NVRA's requirement that States accept and use the Federal Form. .......................................................................16

        2.    States retain the power to create and use their own mail-in voter registration forms under the NVRA....................18

        3.    NVRA does not prevent the States from purging ineligible voters from the voter rolls.........................................20

    C.    HB 2492 does not violate the Materiality Clause. .............................20

    D.    The Court should not apply the Anderson-Burdick test, but—if the Court considers that test—HB 2492 meets the test.................................................................................24

Conclusion ........................................................................................26

# TABLE OF AUTHORITIES

## CASES

*Acevedo v. Cook Cnty. Officers Electoral Bd.*,
    925 F.3d 944 (7th Cir. 2019) ........................................................24

*Allen v. Wright*,
    468 U.S. 737 (1984) .........................................................................3

*Anderson v. Celebrezze*,
    460 U.S. 780 (1983) ............................................................ 11, 24-26

*Ariz. Democratic Party v. Hobbs*,
    18 F.4th 1179 (9th Cir. 2021) ......................................................24

*Ariz. Dream Act Coalition v. Brewer*,
    855 F.3d 957 (9th Cir. 2017) ..........................................................1

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
    570 U.S. 1 (2013) ....................................... 6-7, 11, 15-19, 22-23, 25

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) .......................................................................21

*Buckley v. Am. Constitutional Law Found.*,
    525 U.S. 182 (1999) ......................................................................14

*Burdick v. Takushi*,
    504 U.S. 428 (1992) ............................................................ 11, 24-26

*Burson v. Freeman*,
    504 U.S. 191 (1992) ......................................................................26

*Cascade Health Solutions v. PeaceHealth*,
    515 F.3d 883 (9th Cir. 2008) ..........................................................9

*Chevron, U.S.A., Inc. v. NRDC, Inc.*,
    467 U.S. 837 (1984) ......................................................................23

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ..................................................................4, 13

*Crawford v. Marion Cty. Election Bd.*,
    553 U.S. 181 (2008) ................................................................14, 26

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006) .........................................................................4

*Davis v. Fed. Election Comm'n*,
  554 U.S. 724 (2008) ...................................................................3

*Dudum v. Arntz*,
  640 F.3d 1098 (9th Cir. 2011) .......................................................24

*Ex parte Siebold*,
  100 U.S. 371 (1880) .............................................................. 22-23

*Foley v. Connelie*,
  435 U.S. 291 (1978) .................................................................14

*Food & Drug Admin. v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024) ..................................................................4

*FW/PBS, Inc. v. City of Dallas*,
  493 U.S. 215 (1990) .................................................................10

*Gonzales v. Oregon*,
  546 U.S. 243 (2006) .................................................................23

*Gonzalez v. U.S. Immigration & Customs Enf't*,
  975 F.3d 788 (9th Cir. 2020) ............................................... 3, 12-13

*Hall v. Hall*,
  584 U.S. 59 (2018) ................................................................5, 12

*Hunt v. Washington Apple Advertising Comm'n*,
  432 U.S. 333 (1977) ..................................................................4

*Husted v. A. Philip Randolph Inst.*,
  584 U.S. 756 (2018) .................................................................15

*Illinois Bd. of Elections v. Socialist Workers Party*,
  440 U.S. 173 (1979) .................................................................14

*In re Kieslich*,
  258 F.3d 968 (9th Cir. 2001) ........................................................12

*Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*,
  456 U.S. 694 (1982) ..............................................................10, 12

*Kowalski v. Tesmer*,
  543 U.S. 125 (2004) ..................................................................4

*Lewis v. Casey*,
  518 U.S. 343 (1996) ..................................................................4

*Loper Bright Enters. v. Raimondo*,
  144 S.Ct. 2244 (2024) ...............................................................23

iv

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ........................................................3

*Massachusetts v. Environmental Prot. Agency*,
    549 U.S. 497 (2007) ........................................................4

*Matter of C-T-L-*,
    25 I. & N. Dec. 341 (B.I.A. 2010)...................................1

*Matter of Silva-Trevino*,
    26 I. & N. Dec. 826 (B.I.A. 2016)...................................1

*Munro v. Socialist Workers Party*,
    479 U.S. 189 (1986) ......................................................26

*Muskrat v. United States*,
    219 U.S. 346 (1911) ........................................................3

*Oregon v. Mitchell*,
    400 U.S. 112 (1970) ......................................................15

*Pennsylvania v. New Jersey*,
    426 U.S. 660 (1976) ........................................................4

*Purcell v. Gonzalez*,
    549 U.S. 1 (2006) ..........................................................14

*Renne v. Geary*,
    501 U.S. 312 (1991) ...............................................10, 12

*Rice v. Santa Fe Elevator Corp.*,
    331 U.S. 218 (1947) ......................................................22

*Save Jobs USA v. U.S. Dep't of Homeland Sec.*,
    942 F.3d 504 (D.C. Cir. 2019).........................................1

*Steel Co. v. Citizens for a Better Environment*,
    523 U.S. 83 (1998) ..........................................9-10, 12-13

*Storer v. Brown*,
    415 U.S. 724 (1974) ......................................................14

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ...................................................5, 13

*Timmons v. Twin Cities Area New Party*,
    520 U.S. 351 (1997) ......................................................26

*Town of Chester v. Laroe Estates, Inc.*,
    581 U.S. 433 (2017) ...................................................5, 12

*Trump v. Hawaii*,
    585 U.S. 667 (2018) ........................................................................1

*United States v. Bass*,
    404 U.S. 336 (1971) ......................................................................23

*United States v. Bathgate*,
    246 U.S. 220 (1918) ......................................................................23

*United States v. Gradwell*,
    243 U.S. 476 (1917) ......................................................................23

*United States v. Texas*,
    579 U.S. 547 (2016) ........................................................................1

*Washington All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*,
    74 F. Supp. 3d 247 (D.D.C. 2014) ................................................1

*Wesberry v Sanders*,
    376 U.S. 1 (1964) ..........................................................................14

*Wittman v. Personhuballah*,
    578 U.S. 539 (2016) ........................................................................4

*YCS Invs. v. United States Fish & Wildlife Serv.*,
    833 F.App'x 712 (9th Cir. 2021) ....................................................4

*Yick Wo v. Hopkins*,
    118 U.S. 356 (1886) ......................................................................14

*Young v. Fordice*,
    520 U.S. 273 (1997) ......................................................................18

## **STATUTES**

U.S. Const. art. I .................................................................................15

U.S. Const. art. I, § 2, cl. 2 ........................................5-6, 18, 21-23, 25

U.S. Const. art. I, § 4, cl. 1 ................................................ 6, 15, 22-23

U.S. Const. art. I, § 4, cl. 2 ................................................ 6, 15, 22-23

U.S. Const. art. II ..................................................................................6

U.S. Const. art. II, § 1, cl. 4 ................................................................6

U.S. Const. art. III.................................................................2-3, 5, 11-13

U.S. Const. art. III, § 2 .........................................................................3

U.S. Const. art. VI, cl. 2 .....................................................................15

U.S. CONST. amend. XVII, cl. 2 ................................................................6

42 U.S.C. § 1988(b) ...............................................................................13

52 U.S.C. § 10101(a)(2)(B) ..............................................7-9, 20-21

National Voter Registration Act,
    52 U.S.C. §§ 20501-20511 ......................6, 8, 11, 16-20, 24-25

52 U.S.C. § 20501(b)(3) ...........................................................................6

52 U.S.C. § 20505 ...............................................................................8, 16

52 U.S.C. § 20505(a)(1) .................................................................. 6-9, 16

52 U.S.C. § 20505(a)(2) .........................................................................18

52 U.S.C. § 20507(a)(4) .........................................................................20

52 U.S.C. § 20507(c) ..............................................................................20

52 U.S.C. § 20507(d) .............................................................................20

52 U.S.C. § 20508(b)(1) .........................................................................18

52 U.S.C. § 20508(b)(2) .........................................................................19

52 U.S.C. § 20508(b)(3) .........................................................................19

52 U.S.C. § 20510(c) ..............................................................................13

Civil Rights Act of 1964,
    PUB. L. NO. 88-352, 78 Stat. 241 .............................7-9, 11, 20-21, 24

Civil Rights Act of 1964 §101(a),
    PUB. L. NO. 88-352, §101(a), 78 Stat. 241 ...................7-9, 20-21, 24

A.R.S. § 16-101(A)(1) ...............................................................................7

A.R.S. § 16-121.01(C) .........................................................................7, 17

A.R.S. § 16-121.01(D) ............................................................................17

A.R.S. § 16-121.01(D)(1)-(5) .................................................................17

A.R.S. § 16-121.01(E) ....................................................................... 17-18

A.R.S. § 16-165 .........................................................................................8

A.R.S. § 16-165(K) ....................................................................................8

A.R.S. § 16-579(A)(1) ...............................................................................7

2022 Ariz. Laws ch. 99 (House Bill 2492) ........... 7-9, 11, 13, 16-17, 20, 24-26

2022 Ariz. Laws ch. 370 (House Bill 2243) .............................................7

vii

## **RULES AND REGULATIONS**

Fed. R. Civ. P. 42(a)....................................................................5

## **OTHER AUTHORITIES**

Black's Law Dictionary (11th ed. 2019) .............................................21

Gloria J. Browne-Marshall, The Voting Rights War: The NAACP and the Ongoing Struggle for Justice (2016) .......................................22

Pamela S. Karlan, *Discrete and Relational Criminal Representation: The Changing Vision of the Right to Counsel*, 105 Harv. L. Rev. 670 (1992)......21

## IDENTITY, INTEREST AND AUTHORITY TO FILE

*Amicus curiae* Immigration Law Reform Institute ("IRLI") seeks to file this brief pursuant to the accompanying motion for leave to file. As outlined in that motion, IRLI is a nonprofit 501(c)(3) public-interest law firm incorporated in the District of Columbia. IRLI is dedicated to litigating immigration-related cases on behalf of, and in the interests of, United States citizens, and to assisting courts in understanding and accurately applying federal immigration law. IRLI has litigated or filed *amicus* briefs in many important immigration cases, including in the district court in this matter and in *Trump v. Hawaii*, 585 U.S. 667 (2018); *United States v. Texas*, 579 U.S. 547 (2016); *Save Jobs USA v. U.S. Dep't of Homeland Sec.*, 942 F.3d 504 (D.C. Cir. 2019); *Ariz. Dream Act Coalition v. Brewer*, 855 F.3d 957 (9th Cir. 2017); *Washington All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 74 F. Supp. 3d 247 (D.D.C. 2014); *Matter of Silva-Trevino*, 26 I. & N. Dec. 826 (B.I.A. 2016); and *Matter of C-T-L-*, 25 I. & N. Dec. 341 (B.I.A. 2010). For more than twenty years, the Board of Immigration Appeals has solicited *amicus* briefs drafted by IRLI staff from IRLI's affiliate, the Federation for American Immigration Reform, because the Board considers IRLI an expert in immigration law. For these reasons, IRLI has direct interests in the issues here.

## STATEMENT OF THE CASE

This consolidated appeal of consolidated cases from the district court would

1

benefit from—and arguably *requires*—some untangling before this Court can reach the merits. As explained below, Article III provides a ready solution for the Court to streamline this matter considerably.

The district court cases consist of an action (No. 2:22-cv-01124-SRB) by the United States against the State of Arizona and its Secretary of State in the Secretary's official capacity (collectively, the "Defendants") and several actions by non-federal plaintiffs (the "Non-Federal Complainants"). The various actions in district court were consolidated by a series of orders, with the first-filed case (No. 2:22-cv-509-PHX-SRB) as the lead case. In their various actions, the Non-Federal Complainants named several other official-capacity defendants, including Arizona's Attorney General, the Director of the Arizona Department of Transportation, and County Recorders. Acting through their respective leaders, the two houses of Arizona's Legislature—joined by the Republican National Committee (collectively, the "Defendants-Intervenors")—intervened as defendants. There is a single judgment for all consolidated cases (Defs.-Intervenors 1-ER-0002). After judgment, the Arizona Republican Party moved to intervene, and the ultimate resolution of that motion still is pending.

There are three consolidated appeals in this Court from the consolidated actions in district court: (a) in No. 24-3188, the Defendants-Intervenors appeal the final judgment; (b) in No. 24-3559, the State of Arizona and the Arizona Attorney

General appeal the final judgment; and (c) in No. 24-4029, two Non-Federal Complainants cross-appeal the final judgment.

**Jurisdictional Background**

Under Article III, federal courts cannot issue advisory opinions, *Muskrat v. United States*, 219 U.S. 346, 356-57 (1911), but must confine themselves to cases or controversies presented by affected parties properly before the court. U.S. CONST. art. III, § 2. "All of the doctrines that cluster about Article III—not only standing but mootness, ripeness, political question, and the like—relate in part, and in different though overlapping ways, to ... the constitutional and prudential limits to the powers of an unelected, unrepresentative judiciary in our kind of government." *Allen v. Wright*, 468 U.S. 737, 750 (1984) (internal quotation marks omitted).

Article III's standing doctrine requires a judicially cognizable injury in fact, caused by the defendant, and redressable by the court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-62 (1992). The proof required to establish standing increases as the litigation proceeds:

> "[W]hile the proof required to establish standing increases as the suit proceeds ... the standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome *when the suit was filed*."

*Gonzalez v. U.S. Immigration & Customs Enf't*, 975 F.3d 788, 803 (9th Cir. 2020) (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (emphasis and second alteration in *Gonzalez*). Standing must be present from the inception, *id.*, and

3

it must last until judgment. *Wittman v. Personhuballah*, 578 U.S. 539, 543 (2016). Significantly, courts assess standing claim by claim and defendant by defendant: "standing is not dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996). Instead, "a plaintiff must demonstrate standing for each claim he seeks to press" and "for each form of relief" sought. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (internal quotation marks omitted). In a particular case, it is enough if one party has standing *vis-à-vis* a claim and defendant. *Massachusetts v. Environmental Prot. Agency*, 549 U.S. 497, 518 (2007).

Plaintiffs cannot establish standing through self-inflicted injuries. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) ("respondents cannot manufacture standing merely by inflicting harm on themselves"); *Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976); *YCS Invs. v. United States Fish & Wildlife Serv.*, 833 F.App'x 712, 714 (9th Cir. 2021) ("self-inflicted harm cannot satisfy standing requirements") (citing *Clapper*); *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024) (diverted resources do not establish standing).

Plaintiffs generally cannot assert a third party's rights, *Kowalski v. Tesmer*, 543 U.S. 125, 128-30 (2004), although membership associations can assert the rights of their membership if at least one member has standing, nothing requires the member's individual participation, and the issue is germane to the association's purpose. *Hunt v. Washington Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977).

4

For merits relief, the association must identify one member by name—with sufficient proof of that member's standing—unless the nature of the litigated issue and the association indicate that *all* members have standing. *Summers v. Earth Island Inst.*, 555 U.S. 488, 497-98 (2009). Of course, an associational plaintiff also can—like anyone else—suffer cognizable injury in its own right.

With consolidated cases, the individual cases remain jurisdictionally distinct. *Hall v. Hall*, 584 U.S. 59, 66 (2018) ("one of multiple cases consolidated under [FED. R. CIV. P. 42(a)] retains its independent character"). Similarly, with respect to intervenors, Article III limits the intervenor to the case brought by the original plaintiff—and the original plaintiff's Article III jurisdiction—unless the intervenor has its own Article III jurisdiction:

> The same [Article III] principle applies to intervenors of right. Although the context is different, the rule is the same: For all relief sought, there must be a litigant with standing, whether that litigant joins the lawsuit as a plaintiff, a coplaintiff, or an intervenor of right. Thus, at the least, an intervenor of right must demonstrate Article III standing when it seeks additional relief beyond that which the plaintiff requests. This result follows ineluctably from our Article III case law[.]

*Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017).

**Substantive Legal Background**

The Constitution's Elector-Qualifications Clause has tied voter qualifications for elections for Representatives to the "Qualifications requisite for Electors of the

most numerous Branch of the State Legislature" in each State. U.S. CONST. art. I, § 2, cl. 2.[1] In addition, the Elections Clause provides that state legislatures shall prescribe the "Times, Places and Manner of holding Elections for Senators and Representatives," U.S. CONST. art. I, § 4, cl. 1, subject to the power of "Congress at any time by Law [to] make or alter such Regulations." *Id.* art. I, § 4, cl. 2. Article II provides that the States "shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in Congress: but no Senator or Representative ... shall be appointed an Elector." *Id.* art. II, § 1, cl. 4.

The National Voter Registration Act, 52 U.S.C. §§ 20501-20511 ("NVRA"), was passed to "increase the number of eligible citizens who register to vote for Federal office," and to "protect the integrity of the electoral process." 52 U.S.C. § 20501(b)(3). The NVRA accomplishes these objectives by "requir[ing] States to provide simplified systems for registering to vote in federal elections." *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 16 (2013) (internal quotation marks omitted) ("*ITCA*"). Chief among the NVRA's "simplified system" is the so-called "Federal Form" that States must "accept and use" to register voters. 52 U.S.C. §

---

[1]    The Seventeenth Amendment extended this same requirement to voter qualifications for elections for Senators. U.S. CONST. amend. XVII, cl. 2.

6

20505(a)(1).

The "Materiality Provision" of the Civil Rights Act of 1964 prohibits denying the right to vote based on errors or omissions that are immaterial to determining whether the person is qualified to vote under state law:

> No person acting under color of law shall … deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election[.]

52 U.S.C. § 10101(a)(2)(B).

Arizona's Legislature enacted Arizona House Bill 2243 ("HB 2243") and Arizona House Bill 2492 ("HB 2492") as part of its efforts to improve election integrity by ensuring that voter qualifications are enforced and that voter rolls are accurate. HB 2492 updates voter qualifications to require documentary proof of citizenship, A.R.S. § 16-101(A)(1), and proof of residence. A.R.S. § 16-579(A)(1). HB 2492 further provides that failure to include proof of citizenship on a state voter registration form is grounds for the application to be rejected by the county recorder. A.R.S. § 16-121.01(C). In accordance with *ITCA*, 570 U.S. at 7, these new documentary proofs are not required for applicants using the Federal Form to register to vote in congressional elections.

HB 2243 enumerates the reasons why a voter's registration may be cancelled.

7

It also provides that, before a registration can be cancelled, the election official must provide written notice of the impending cancellation with instructions for the voter to remedy their registration. A.R.S. § 16-165. The notice must "include a list of documents the person may provide" to establish his or her citizenship as well as "a postage prepaid preaddressed return envelope." *Id.* Registration will thus only be cancelled following written notice and an opportunity to establish eligibility. Furthermore, once a registration is cancelled, written notice is again provided to the person explaining the cancellation and including instructions on how to register to vote if and when the person is qualified. A.R.S. § 16-165(K).

**Factual Background**

The United States filed a two-count complaint alleging that HB 2492 violates the NVRA—specifically, 52 U.S.C. § 20505—and the Civil Rights Act of 1964—specifically, 52 U.S.C. § 10101(a)(2)(B)—by either requiring documentary proof of citizenship ("DPOC") or by placing restrictions on voters or prospective voters based on their DPOC status or how they completed their registration forms. Compl. 14-16, *United States v. Arizona*, No. 2:22-cv-01124-SRB (D. Ariz. filed July 5, 2022) (ECF #1). The United States's complaint seeks the following relief:

> (1) [a declaratory judgment] that Sections 4 and 5 of House Bill 2492 violate Section 6 of the National Voter Registration Act of 1993, 52 U.S.C. § 20505(a)(1);
>
> (2) [a declaratory judgment] that Sections 4 and 5 of House Bill 2492 violate Section 101 of the Civil Rights

8

Act of 1964, 52 U.S.C. § 10101(a)(2)(B);

(3) [an injunction prohibiting] Defendants, their agents and successors in office, and all persons acting in concert with them from enforcing the requirements of Sections 4 and 5 of House Bill 2492 that violate Section 6 of the National Voter Registration Act of 1993, 52 U.S.C. § 20505(a)(1);

(4) [an injunction prohibiting] Defendants, their agents and successors in office, and all persons acting in concert with them from enforcing the requirements of Sections 4 and 5 of House Bill 2492 that violates Section 101 of the Civil Rights Act of 1964, 52 U.S.C. § 10101(a)(2)(B);

(5) [an order that] Defendants, their agents and successors in office, and all persons acting in concert with them … take appropriate action to ensure uniform compliance with this Court's order by state, county, and local authorities administering the State's electoral processes[.]

*Id.* 16-17. As explained in this *amicus* brief, the United States's complaint is the only jurisdictionally proper complaint before this Court.

## STANDARD OF REVIEW

This Court conducts *de novo* review of a district court's rulings on summary judgment motions. Defs.-Intervenors' Br. 8; Defs.' Br. 39; *accord Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883, 912 (9th Cir. 2008).

In their *de novo* review, appellate courts review jurisdictional issues before merits issues. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94-95 (1998) ("requirement that jurisdiction be established as a threshold matter spring[s] from the nature and limits of the judicial power of the United States and is inflexible

9

and without exception") (citations and interior quotations omitted, alteration in original). Appellate courts "presume that federal courts lack jurisdiction unless the contrary appears affirmatively from the record." *Renne v. Geary*, 501 U.S. 312, 316 (1991). If the record does not establish jurisdiction, the appellate court must dismiss:

> [I]f the record discloses that the lower court was without jurisdiction [an appellate] court will notice the defect, although the parties make no contention concerning it. [When the lower federal court] lack[s] jurisdiction, we have jurisdiction on appeal, not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit.

*Steel Co.*, 523 U.S. at 95 (first and second alterations added, interior quotations omitted). Although the parties do not dispute jurisdiction, "no action of the parties can confer subject-matter jurisdiction upon a federal court." *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). Instead, "every federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (interior quotations omitted). "And if the record discloses that the lower court was without jurisdiction [an appellate] court will notice the defect." *Id.* (interior quotations omitted). If the district court lacked jurisdiction over any claims or cases, this Court must dismiss them.

## SUMMARY OF ARGUMENT

The Non-Federal Complainants lack Article III standing because they have not identified a member with standing for associational standing (Section I.A), and their diverted resources are self-inflicted injuries that cannot support standing (Section I.B). Significantly, the consolidation of these actions in the district court does not absolve the plaintiffs in each individual action from Article III's jurisdictional requirements (Section I).

The United States's two-count complaint presents the only issues properly before this Court. This Court should reject the first count—namely, that the NVRA preempts HB 2492—because Arizona accepts and uses the Federal Form as required by the NVRA and *ITCA* (Section II.B). This Court should reject the second count— namely, that HB 2492 seeks immaterial information under the Civil Rights Act of 1964—because place of birth is material to Arizona's voter qualification laws (Section II.C). Finally, although the *Anderson-Burdick* framework[2] is inapposite to these two statutory counts, HB 2492's burdens are minimal and thus permissible under the *Anderson-Burdick* framework, assuming *arguendo* that the framework applied (Section II.D).

---

[2]     *See Anderson v. Celebrezze*, 460 U.S. 780 (1983), *Burdick v. Takushi*, 504 U.S. 428 (1992).

## ARGUMENT

I. **THIS COURT AND THE DISTRICT COURT LACK ARTICLE III JURISDICTION OVER THE NON-FEDERAL COMPLAINANTS' ACTIONS.**

This Court's first obligation is to assure itself not only of its jurisdiction but also of the district court's jurisdiction. *Steel Co.*, 523 U.S. at 95. As explained in this Section, the record before this Court does not affirmatively establish the Non-Federal Complainants' Article III standing. Under *Renne*, 501 U.S. at 316, this Court therefore must assume that jurisdiction is lacking. The parties' willingness to concede standing, *see* Arizona Opening Br. 13 n.5, is irrelevant. *Insurance Corp. of Ireland*, 456 U.S. at 702; *In re Kieslich*, 258 F.3d 968, 970 (9th Cir. 2001) ("subject matter jurisdiction cannot be created by waiver or consent"). Each of the Non-Federal Complainants' cases nonetheless retains its own discrete jurisdictional character, *Hall*, 584 U.S. at 66, and each of those cases was—and remains—independently subject to Article III. *Town of Chester*, 581 U.S. at 439. While this Court has Article III jurisdiction to consider the United States's two claims against Arizona and its Secretary of State, that is the extent of this Court's jurisdiction.

Moreover, the United States's standing cannot cure the Non-Federal Complainants' lack of standing when the Non-Federal Complainants filed their own independent actions. *See Gonzalez*, 975 F.3d at 803 (Article III standing required from inception of suit). As a practical matter, these independent suits are

12

unnecessary because—if the United States prevails—the relief will extend to all purported members of the Non-Federal Complainants. The only difference will be whether the Non-Federal Complainants' counsel recover fees, *see*, *e.g.*, 42 U.S.C. § 1988(b); 52 U.S.C. § 20510(c), but a question about entitlement to fees "is insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." *Steel Co.*, 523 U.S. at 107 (internal quotation marks omitted).

### A. The Non-Federal Complainants lack associational standing.

Although the Non-Federal Complainants may have members, they do not have associational standing based on their membership's alleged injuries. To show associational standing, a membership organization must have put forward affidavits showing at least one member who has had standing throughout the pendency of the Non-Federal Complainant's case from inception to judgment. *Summers*, 555 U.S. at 497-98; *Gonzalez*, 975 F.3d at 803.

### B. The Non-Federal Complainants lack standing in their own right.

The district court found standing based on the organizational plaintiffs' self-inflicted injury of diverting their resources. Diverted resources are simply not a basis that qualifies as a cognizable injury caused by the defendants. *All. for Hippocratic Med.*, 602 U.S. at 395; *Clapper*, 568 U.S. at 416.

## II. HB 2492 COMPLIES WITH FEDERAL LAW.

The right to vote has long been recognized as a fundamental right of U.S.

citizens. *See*, *e.g.*, *Illinois Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979) ("voting is of the most fundamental significance under our constitutional structure"); *Wesberry v Sanders*, 376 U.S. 1, 17 (1964) ("[o]ther rights, even the most basic, are illusory if the right to vote is undermined"); *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886) (right to vote is "preservative of all rights"); *cf. Foley v. Connelie*, 435 U.S. 291, 296 (1978) (recognizing the "right[] of the people to be governed by their citizen peers"). The fundamental nature of the right to vote requires rules and regulations to ensure fairness and faith in elections. *See Storer v. Brown*, 415 U.S. 724, 730 (1974) ("as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes").

## A.    The Constitution gives States significant power over voting.

States have compelling interests in protecting the integrity and reliability of the electoral process by deterring and detecting voter fraud and—relatedly—safeguarding voter confidence. *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 191 (2008); *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) ("[a] State has a compelling interest in preserving the integrity of the election process") (internal quotation marks omitted). Accordingly, "States … must regulate their elections to ensure that they are conducted in a fair and orderly fashion." *Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182, 206 (1999). Notwithstanding that valid federal law supersedes

state law when the two conflict, U.S. CONST. art. VI, cl. 2, the Constitution vests control over voting qualifications and—outside of time-place-manner issues—election provisions in the States.

Specifically, the power of Congress to regulate the "time, place, and manner" of elections in one section of Article I neither applies to nor limits the States' plenary power to set elector qualifications under a different section of Article I. *Compare* U.S. CONST. art. I, § 2, cl. 2 *with id.* art. I, § 4, cl. 2. On voter qualifications, State law controls:

> One cannot read the Elections Clause as treating implicitly what these other constitutional provisions regulate explicitly. "It is difficult to see how words could be clearer in stating what Congress can control and what it cannot control. Surely nothing in these provisions lends itself to the view that voting qualifications in federal elections are to be set by Congress."

*ITCA*, 570 U.S. at 16 (quoting *Oregon v. Mitchell*, 400 U.S. 112, 210 (1970) (Harlan, J., concurring in part and dissenting in part)).[3] While Congress's authority under the Elections Clause to enact time-place-manner requirements is broad, *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 799 (2018) (Breyer, J., dissenting), Congress has only the authority "to regulate *how* federal elections are held, but not *who* may

---

[3]    In its *ITCA* reply, Arizona argued for the first time that registration is a voter qualification, not a time-place-manner restriction, *ITCA*, 570 U.S. at 17 n.9, and the Supreme Court did not consider—much less resolve—that issue. *Id.*

vote in them." *ITCA*, 570 U.S. at 16 (emphases in original).

**B.**     **The NVRA does not preempt HB 2492.**

The United States's first count claims that 52 U.S.C. § 20505 preempts HB 2492. Neither the NVRA nor *ITCA* should be read to infringe on States' constitutional authority over voter qualifications in federal elections, nor to bar States from performing their constitutional duty to safeguard election integrity. Nothing in those authorities requires States conclusively to presume the truth of any assertion an applicant makes on the Federal Form, forbids States from verifying assertions made on that form, or precludes States from establishing their own election procedures or purging their voter rolls of ineligible voters.

**1.     Arizona law does not conflict with the NVRA's requirement that States accept and use the Federal Form.**

The Supreme Court confirmed that—by requiring that "[e]ach State accept and use the" Federal Form for voter registration, 52 U.S.C. § 20505(a)(1)—NVRA precludes States from requiring applicants using the Federal Form to provide information beyond that required within the Form itself. *ITAC*, 570 U.S. at 15 (explaining that "a state-imposed requirement of evidence of citizenship not required by the Federal Form is inconsistent with the NVRA's mandate that States 'accept and use' the Federal Form"). HB 2492 does not conflict with that requirement as the Supreme Court interpreted it in *ICTA*.

Specifically, the NVRA's "accept and use" requirement "does not preclude

16

States from deny[ing] registration based on information in their possession establishing the applicant's ineligibility." *ITAC*, 570 U.S. at 15 To the contrary, the "NVRA clearly contemplates that not every submitted Federal Form will result in registration." *Id.* HB 2492 complies with the NVRA and *ITCA* because HB 2492 does not interfere with Arizona's accepting and using the Federal Form.

Arizona does not require Federal Form applicants to submit evidence of citizenship or residence with the Federal Form; such requirements are only applicable to the state registration form. For state form applicants, HB 2492 requires automatic rejection without evidence of citizenship, but that requirement expressly excludes applicants who submit the Federal Form. *See* A.R.S. § 16-121.01(C) (requiring rejection where proof of citizenship is lacking "[e]xcept for [applications submitted via] a form produced by the United States election assistance commission").

With respect to the Federal Form, election officials are instructed to "use all available resources to verify the citizenship status of the [Federal Form] applicant." *Id.* § 16-121.01(D). Those resources include—without limitation—databases for the Department of Transportation, Social Security Administration, and the United States Citizenship and Immigration Service Systematic Alien Verification for Entitlements Program. *See id.* § 16-121.01(D)(1)-(5). If citizenship cannot be verified based on this information, the election official must provide written notice that "the applicant

17

will not be qualified to vote in a presidential election or by mail with an early ballot in any election until satisfactory evidence of citizenship is provided." *Id.* § 16-121.01(E). But the applicant is otherwise registered unless the election official affirmatively determines that the applicant is not a U.S. citizen. *Id.* These procedures do not conflict with the mandate that States "accept and use" the Federal Form as clarified in *ITCA*.

### 2. States retain the power to create and use their own mail-in voter registration forms under the NVRA.

Although the NVRA requires States to "accept and use" the Federal Form, the NVRA also permits States to "develop and use a mail voter registration form that meets all of the criteria stated in section 9(b)[.]" 52 U.S.C. § 20505(a)(2). In other words, although "the NVRA imposes certain mandates on states, describing those mandates in detail[,]" the NVRA "still leaves [the States] room for policy choice." *Young v. Fordice*, 520 U.S. 273, 286 (1997). Here, Arizona has made a "policy choice" that the NVRA does not preempt.

Under the Elector-Qualifications Clause, Arizona has permissibly decided to require evidence of citizenship on its state mail voter registration form, a decision that is within the NVRA's bounds. First, the NVRA provides what a mail registration form "may require ... to assess the eligibility of the applicant." 52 U.S.C. § 20508(b)(1). But "[t]he NVRA does not list, for example, all other information the State may—or may not—provide or request." *Young*, 520 U.S. at 286. Because

18

Section 9(b) does not contain any prohibitions on requiring that documentary evidence be submitted in conjunction with a mail voter registration, States are free to require such information. Accordingly, the fact that the Federal Form does not require documentary proof of citizenship does not preclude States from requiring such information on their own forms.

Next, the NVRA indicates what mail registration forms must contain. It provides that the registration form "shall include a statement that specifies each eligibility requirement (including citizenship); contains an attestation that the applicant meets such requirement; and requires the signature of the applicant, under penalty of perjury." 52 U.S.C. § 20508(b)(2). The NVRA's only prohibition is in subsection (b)(3), which provides that the registration form "may not include any requirement for notarization or other formal authentication." 52 U.S.C. § 20508(b)(3). The Arizona mail voter registration form does not violate anything expressly in the NVRA.

Additionally, "state-developed forms may require information the Federal Form does not." *ITCA*, 570 U.S. at 12. Therefore, under the NVRA, "States retain the flexibility to design and use their own registration forms." *Id.* Nothing in the NVRA prohibits Arizona's requiring more information—including documentary evidence—in its own mail registration form than the Federal Form requires. *Id.* The purpose of the Federal Form is to provide a simple, streamlined method for voter

registration, not to interfere with the States' authority to conduct elections.

### 3.    NVRA does not prevent the States from purging ineligible voters from the voter rolls.

The NVRA requires that States "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of the death of the registrant; or a change in address of the registrant." 52 U.S.C. § 20507(a)(4). The NVRA further provides examples of how States may conduct these programs, including the requirement that such programs be completed "not later than 90 days prior to the date of a primary or general election for Federal office." 52 U.S.C. § 20507(c). Finally, names are not to be removed for change of residence reasons absent written confirmation of an address change or failure to respond to written notice combined with failure to vote. 52 U.S.C. § 20507(d). HB 2492 complies with these requirements. Because the NVRA does not prohibit the States from removing voters based on ineligibility, Arizona is free to remove persons it has determined are not U.S. citizens.

### C.    HB 2492 does not violate the Materiality Clause.

The United States's second count claims that HB 2492 violates the Civil Rights Act of 1964's "Materiality Provision," 52 U.S.C. § 10101(a)(2)(B), by denying the right to vote based on the omission of immaterial information. As Arizona explains, its election forms have asked the location of a voter's birth since statehood. *See* Arizona Opening Br. 4-5. The United States's argument that the

information is not material to Arizona's interest under the Elector-Qualifications Clause in identifying noncitizens is simply not credible. Arizona wants to identify people not born in the United States analogously to why Willie Sutton robbed banks: "that's where the money is." Pamela S. Karlan, *Discrete and Relational Criminal Representation: The Changing Vision of the Right to Counsel*, 105 HARV. L. REV. 670, 683 (1992). Here, instead of money, the search is for noncitizens, who are exponentially more prevalent among those born outside the United States than among those born in the United States. Thus, identifying the subset of people *not born in the United States* obviously provides useful information.

The United States's "materiality" count poses the question whether an applicant's place of birth is or "is not material in determining whether such individual is qualified under State law to vote in such election[.]" 52 U.S.C. § 10101(a)(2)(B); *accord* Civil Rights Act of 1964, PUB. L. NO. 88-352, §101(a), 78 Stat. 241 (same). The phrase "not material" or "immaterial" means "lacking any logical connection with the consequential facts." BLACK'S LAW DICTIONARY 896 (11th ed. 2019); *cf. Basic Inc. v. Levinson*, 485 U.S. 224, 239 (1988) ("[n]o particular event or factor short of closing the transaction need be either necessary or sufficient by itself to render merger discussions material") (discussing necessity and sufficiency in the context of materiality in securities transactions). Sixty years ago, when the Civil Rights Act of 1964 was enacted, immateriality was a real thing. *See*,

21

*e.g.*, Gloria J. Browne-Marshall, THE VOTING RIGHTS WAR: THE NAACP AND THE ONGOING STRUGGLE FOR JUSTICE 110 (2016) (requiring prospective Black voters "to count the number of jelly beans in a large jar just by looking at it"). As a simple matter of statutory construction and leaving aside the lack of a federal interest under the Elector-Qualifications Clause, the United States's claim that foreign birth is *immaterial* to citizenship exceeds what Congress meant in 1964.

Although *ITCA* rejected a full-fledged presumption against preemption for federal legislation under the Elections Clause,[4] *ITCA,* 570 U.S. at 13-14 ("[we] have never mentioned such a principle in our Elections Clause cases") (*citing Ex parte Siebold,* 100 U.S. 371, 384 (1880)), the Supreme Court did not reject deference to State law and consideration of States' competing interests in a federalist system as tools of statutory construction. *See id.* To the contrary, even without a presumption against preemption, the Supreme Court's Elections Clause precedents require clear statements from Congress before displacing State authority. Thus, under the *Siebold* decision on which *ITCA* relied, courts "presume that Congress has [exercised its authority] in a judicious manner" and "that it has endeavored to guard as far as possible against any unnecessary interference with State laws." *Siebold,* 100 U.S. at

---

[4]    When the "presumption against preemption" applies, courts do not assume preemption "unless that was the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230 (1947).

393. Similarly, the Supreme Court's Elections Clause precedents not only require Congress to "have expressed a clear purpose to establish some further or definite regulation" before supplanting State authority over elections but also "consider[] the policy of Congress not to interfere with elections within a state except by clear and specific provisions." *United States v. Bathgate,* 246 U.S. 220, 225-26 (1918); *United States v. Gradwell,* 243 U.S. 476, 485 (1917); *cf. United States v. Bass*, 404 U.S. 336, 349 (1971) (requiring clear congressional statement before statute "will … be deemed to have significantly changed the federal-state balance"); *accord Gonzales v. Oregon*, 546 U.S. 243, 275 (2006) (same). In the Elections Clause context, *Siebold, Gradwell,* and *Bathgate* make clear that federal courts construing federal election statutes will consider the States' independent constitutional authority and federalism, even without a full-fledged presumption against preemption.

If Congress wants to update the Civil Rights Act to cover information that a State considers important under the Elector-Qualifications Clause, but where the federal Department of Justice disagrees, Congress perhaps could write that law. In doing so, Congress would be working against the canon against constitutional doubt, *ITCA*, 570 U.S. at 17 (quoted *infra*) and the recent demise of the *Chevron* doctrine. *Loper Bright Enters. v. Raimondo*, 144 S.Ct. 2244, 2273 (2024) (overruling deference under *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 842-45 (1984)). But it stretches credulity to argue that Congress in 1964 meant the phrase "not

material" to include Arizona's wanting to know whether applicants were born abroad to narrow the field of applicants who warrant further inquiry about their citizenship status. There is an obvious "logical connection" between the two issues.

**D.    The Court should not apply the Anderson-Burdick test, but—if the Court considers that test—HB 2492 meets the test.**

The United States's two claims arise under the NVRA and the Civil Rights Act of 1964's "Materiality Provision." Compl. 14-16, *United States v. Arizona*, No. 2:22-cv-01124-SRB (D. Ariz. filed July 5, 2022) (ECF #1). The United States's two claims do not arise under the Constitution. As such, *amicus* IRLI respectfully submits that the *Anderson-Burdick* framework for analyzing constitutional issues in the voting context is simply inapposite.[5]

Under the *Anderson-Burdick* framework, "[w]hen the burdens on voting imposed by the government are severe, strict scrutiny applies," *Dudum*, 640 F.3d at 1106, although "voting regulations are rarely subjected to strict scrutiny." *Id.* When the burdens are not severe, "less exacting review, and a State's important regulatory interest will usually be enough to justify reasonable, nondiscriminatory restrictions." *Id.* Neither the NVRA nor the Materiality Provision compel anything more than

---

[5]    *See Dudum v. Arntz*, 640 F.3d 1098, 1106 n.15 (9th Cir. 2011) (First Amendment, Due Process Clause, and Equal Protection Clause); *Acevedo v. Cook Cnty. Officers Electoral Bd.*, 925 F.3d 944, 948 (7th Cir. 2019) (First and Fourteenth Amendment challenges); *Ariz. Democratic Party v. Hobbs*, 18 F.4th 1179, 1195 (9th Cir. 2021) (similar).

traditional tools of statutory construction. Indeed, with respect to federal laws that impede or encroach upon Arizona's ability to enforce the Elector-Qualifications Clause, a federal court should consider the doubt canon that *ITCA* invoked:

> Since the power to establish voting requirements is of little value without the power to enforce those requirements, Arizona is correct that *it would raise serious constitutional doubts if a federal statute precluded a State from obtaining the information necessary to enforce its voter qualifications*.

*ITCA*, 570 U.S. at 17 (emphasis added). Even without applying the doubt canon against the United States's position, the United States's two claims do not call into question any heightened scrutiny against Arizona law. At best for the United States, the question is simply what the two statutes—the NVRA and the Materiality Provision—mean. As shown in Sections II.B-II.C, *supra*, the United States's claims must fail.

To the extent that the *Anderson-Burdick* framework would apply to the United States's statutory claims, the burden that HB 2492 imposes on qualified voters is minimal. By way of comparison, for voter-identification laws, the trip to a licensing authority, gathering paperwork, and posing for a photograph—far more than is required here—hardly even registered as a burden:

> For most voters who need them, the inconvenience of making a trip to the [licensing authority], gathering the required documents, and posing for a photograph surely *does not qualify as a substantial burden on the right to vote*, or *even represent a significant increase over the*

25

*usual burdens of voting*.

*Crawford*, 553 U.S. at 198; *Burdick*, 504 U.S. at 433-34 ("[e]lection laws will invariably impose some burden upon individual voters"). "Lesser burdens … trigger less exacting review, and a State's important regulatory interest will usually be enough to justify reasonable, nondiscriminatory restrictions." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997). Indeed, "because a government has such a compelling interest in securing the right to vote freely and effectively, this Court never has held a State 'to the burden of demonstrating empirically the objective effects on political stability that [are] produced' by the voting regulation in question." *Burson v. Freeman*, 504 U.S. 191, 210 (1992) (quoting *Munro v. Socialist Workers Party*, 479 U.S. 189, 195 (1986)) (alteration in *Burson*). The United States's claims here are wholly unwarranted by the minimal burden at issue.[6]

## CONCLUSION

For the foregoing reasons, the Court should reverse the District Court's ruling with respect to the United States's two claims against HB 2492 and should remand the Non-Federal Complainants' claims with instructions to dismiss for lack of jurisdiction. Indeed, even if the Court affirms the District Court *vis-à-vis* the United

---

[6]    Similarly, if the Court determines any of the Non-Federal Complainants have standing for a constitutional claim, the lack of burden here should suffice under the *Anderson-Burdick* framework.

26

States's claims, the Court nonetheless should remand the Non-Federal Complainants' claims with instructions to dismiss for lack of jurisdiction.

Dated: August 5, 2024                    Respectfully submitted,


/s/ Lawrence J. Joseph
_____

Christopher J. Hajec                      Lawrence J. Joseph, Cal. Bar #154908
Director of Litigation                    Law Office of Lawrence J. Joseph
Immigration Reform Law Institute          1250 Connecticut Av NW, Ste 700-1A
25 Massachusetts Ave, NW, Ste 335         Washington, DC 20036
Washington, DC 20001                      Tel: 202-669-5135
Tel: 202-232-5590                         Fax: 202-318-2254
Fax: 202-464-3590                         Email: ljoseph@larryjoseph.com
Email: chajec@irli.org

                                          *Counsel for Amicus Curiae Immigration*
                                          *Reform Law Institute*

27

## <u>CERTIFICATE OF COMPLIANCE</u>

1.     This brief complies with the type-volume limitation of FED. R. APP. P.

32(a)(7)(B) and 29(a)(5) because:

    This brief contains 6,208 words, including footnotes, but excluding the parts
    of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of FED. R. APP. P.

32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because:

    This brief has been prepared in a proportionally spaced typeface using
    Microsoft Word 365 in Times New Roman 14-point font.


Dated: August 5, 2024                    Respectfully submitted,


                                         /s/ Lawrence J. Joseph
                                         Lawrence J. Joseph, Cal. Bar #154908
                                         1250 Connecticut Ave, NW, Suite 700-1A
                                         Washington, DC 20036
                                         Tel: 202-355-9452
                                         Fax: 202-318-2254
                                         Email: ljoseph@larryjoseph.com

                                         *Counsel for Amicus Curiae Immigration
                                         Reform Law Institute*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 5, 2024, I electronically submitted the foregoing *amicus curiae* brief—as an exhibit to the accompanying motion for leave to file—to the Clerk via the Court's CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the participants in this appeal who are registered CM/ECF users.

/s/ Lawrence J. Joseph
Lawrence J. Joseph, Cal. Bar #154908
1250 Connecticut Ave, NW, Suite 700-1A
Washington, DC 20036
Tel: 202-355-9452
Fax: 202-318-2254
Email: ljoseph@larryjoseph.com