**Nos. 24-3188, 24-3559 & 24-4029**
*Scheduled for Oral Argument September 10, 2024*

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

MI FAMILIA VOTA, et al.,
*Plaintiffs-Appellees*,

v.

ADRIAN FONTES, et al.,
*Defendants-Appellees*,
and

REPUBLICAN NATIONAL COMMITTEE, et al.,
*Intervenor-Defendants-Appellants*.

On Appeal from the United States District Court
for the District of Arizona
No. 2:22-cv-00509-SRB (Consolidated)
Hon. Susan R. Bolton

**RESPONSE BRIEF OF PLAINTIFFS-APPELLEES PODER LATINX,
CHICANOS POR LA CAUSA, AND CHICANOS POR LA CAUSA ACTION
FUND TO THE PRINCIPAL BRIEF OF INTERVENOR-DEFENDANTS-
APPELLANTS ADDRESSING THE "REASON TO BELIEVE"
PROVISION OF A.R.S. § 16-165(I)**

John A. Freedman
ARNOLD & PORTER KAY SCHOLER LLP
601 Massachusetts Ave., N.W.
Washington, D.C. 20001
(202) 942-5000

Jon Sherman
Michelle Kanter Cohen
Beauregard Patterson
Nina Beck
Emily Davis
FAIR ELECTIONS CENTER
1825 K St. NW, Ste. 701
Washington, D.C. 20006
(202) 331-0114

*Counsel for Plaintiffs-Appellees Poder Latinx, Chicanos Por La Causa, and
Chicanos Por La Causa Action Fund*

# DISCLOSURE STATEMENT

Poder Latinx is a fiscally sponsored project of Tides Advocacy, a California nonprofit social welfare corporation. Tides Advocacy does not have a parent corporation. No publicly held corporation owns 10% or more of its stock.

Chicanos Por La Causa, Inc. is a 501(c)(3) nonprofit organization and community development organization. No publicly held corporation owns 10% or more of its stock. As a nonprofit corporation, it does not issue stock.

Chicanos Por La Causa Action Fund is a 501(c)(4) nonprofit advocacy organization. No person or entity owns 10% or more of its stock. As a nonprofit advocacy organization, it does not issue stock.

# TABLE OF CONTENTS

DISCLOSURE STATEMENT ................................................................ i

TABLE OF AUTHORITIES ............................................................... iv

INTRODUCTION ............................................................................. 1

JURISDICTIONAL STATEMENT ...................................................... 3

STATUTORY AUTHORITIES ............................................................ 3

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............. 4

STATEMENT OF THE CASE ............................................................. 4

    A.    Plaintiffs-Appellees' Claims ................................................. 4

    B.    Relevant Summary Judgment Rulings ................................... 6

    C.    Record Evidence ................................................................ 7

    D.    Relevant Bench Trial Rulings ............................................ 12

    E.    Joinder as to Other Appellees' Briefs ................................ 13

STANDARD OF REVIEW ............................................................... 14

SUMMARY OF ARGUMENT ........................................................... 14

ARGUMENT .................................................................................. 16

    I.    The district court's holding that the "reason to believe" provision imposes different voter-qualification practices and procedures on naturalized citizens compared with other voters in violation of 52 U.S.C. § 10101(a)(2)(A) should be affirmed. ..................................... 16

        A.    The Civil Rights Act of 1964, 52 U.S.C. § 10101(a)(2)(A). ..... 17

B.   The district court properly found that A.R.S. § 16-165(I) violates 52 U.S.C. §10101(a)(2)(A) because it requires county officials to subject voters to different standards, practices, and procedures......................................................................19

C.   There is ample additional evidence that would support affirming the district court's Civil Rights Act ruling on alternative grounds. ................................................21

II.   The district court's holding that the "reason to believe" provision violates Section 8(b) of the NVRA should be affirmed. ...................28

A.   Section 8(b) of the National Voter Registration Act. ..............29

B.   The district court correctly held that A.R.S. § 16-165(I) violated Section 8(b) of the NVRA by necessarily subjecting naturalized Arizona voters to a non-uniform and discriminatory voter roll maintenance program. .............................................30

III.   Each of Appellants' arguments fails.................................................32

A.   Appellants' few arguments against the district court's ruling under the Different Practices Provision do not find any support in the plain text of the statute or any other source of authority. ................................................................................32

B.   Appellants' NVRA arguments are similarly untethered from the plain text of either the federal statute or Arizona's "reason to believe" provision....................................................40

CONCLUSION .......................................................42

CERTIFICATE OF COMPLIANCE .......................................44

CERTIFICATE OF SERVICE...............................................44

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Bessmer City*,
    470 U.S. 564 (1985) .................................................................... 14

*Arcia v. Detzner*,
    No. 12-22282-CIV, 2015 WL 11198230 (S.D. Fla. Feb. 12, 2015) ............ 29

*Atel Fin. Corp. v. Quaker Coal Co.*,
    321 F.3d 924 (9th Cir. 2003) ........................................................ 22

*Ballas v. Symm*,
    494 F.2d 1167 (5th Cir. 1974) ...................................................... 38

*Barcamerica Int'l USA Tr. v. Tyfield Importers, Inc.*,
    289 F.3d 589 (9th Cir. 2002) ........................................................ 11

*Brnovich v. Democratic Nat'l Comm.*,
    594 U.S. 647 (2021) ............................................................ 14, 32

*Common Cause Ind. v. Lawson*,
    327 F. Supp. 3d 1139 (S.D. Ind. 2018) ........................................... 25

*Frazier v. Callicutt*,
    383 F. Supp. 15 (N.D. Miss. 1974) ........................................... 18, 27

*Huhmann v. Fed. Express Corp.*,
    874 F.3d 1102 (9th Cir. 2017) ...................................................... 14

*Johnson v. Waller Cnty.*,
    593 F. Supp. 3d 540 (S.D. Tex. 2022) ............................................ 38

*Kirshner v. Uniden Corp. of Am.*,
    842 F.2d 1074 (9th Cir. 1988) ...................................................... 11

*McKenna v. Soto*,
    481 P.3d 695 (Ariz. 2021) ............................................................. 9

*Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*,
    960 F.3d 603 (9th Cir. 2020)...........................................................14

*OneBeacon Ins. Co. v. Haas Indus., Inc.*,
    634 F.3d 1092 (9th Cir. 2011).........................................................14

*Project Vote v. Blackwell*,
    455 F. Supp. 2d 694 (N.D. Ohio 2006).........................................29

*Shivelhood v. Davis*,
    336 F. Supp. 1111 (D. Vt. 1971)............................................18, 27

*Simmons v. Himmelreich*,
    578 U.S. 621 (2016).......................................................................35

*Symm v. United States*,
    439 U.S. 1105 (1979).....................................................................38

*United States v. Boulware*,
    558 F.3d 971 (9th Cir. 2009)..........................................................11

*United States v. Florida*,
    870 F. Supp. 2d 1346 (N.D. Fla. 2012).........................................29

*United States v. Texas*,
    445 F. Supp. 1245 (S.D. Tex. 1978) .............................................38

*Whatley v. Clark*,
    482 F.2d 1230 (5th Cir. 1973)........................................................38

**Statutes**

28 U.S.C. § 1291 .....................................................................................3

28 U.S.C. § 1331 .....................................................................................3

28 U.S.C. § 1343 .....................................................................................3

28 U.S.C. § 2201 .....................................................................................3

28 U.S.C. § 2202 ...................................................................... 3

52 U.S.C. § 10101(a)(1) ......................................................... 35

52 U.S.C. § 10101(a)(2)(A) ............................................. *passim*

52 U.S.C. § 20507(b) .................................................. 1, 6, 12, 41

52 U.S.C. § 20507(b)(1) ................................................. *passim*

52 U.S.C. § 30109(a)(2) ......................................................... 37

A.R.S. § 16-165(A)(10) ............................................................ 5

A.R.S. § 16-165(I) ........................................................ *passim*

A.R.S. § 16-165(J) ................................................................ 36

A.R.S. § 16-166 ..................................................................... 5

A.R.S. § 16-452 ..................................................................... 9

A.R.S. § 16-938(C) ............................................................... 37

## Rules

Fed. R. App. P. 3(a)(1) ............................................................ 3

Fed. R. App. P. 4(a)(1)(B) ...................................................... 3

Fed. R. App. 10(a) ............................................................... 11

Fed. R. App. P. 26(a)(1)(A)–(C) .............................................. 3

## Other Authorities

110 CONG. REC. H 1,695 (1964) .............................................. 17

110 CONG. REC. S 5,004 (1964) .............................................. 18

110 CONG. REC. S 6,734 (1964)..................................................................18

110 CONG. REC. S 6,740 (1964)..................................................................17

## INTRODUCTION

It has been many decades since election officials in any state have been given official sanction to act on their subjective suspicions and prejudices. Yet, Arizona Revised Statutes Section 16-165(I), which was enacted in 2022, did just that. It invited county officials to first make a wholly subjective assessment of a registrant's U.S. citizenship and then required county officials to investigate those registered voters using a Department of Homeland Security ("DHS") system that can be used only to investigate naturalized—but not native-born—citizens.

The district court properly found that Arizona's requirement for county election officials to conduct citizenship checks utilizing the Systematic Alien Verification for Entitlements ("SAVE") system—based solely on a "reason to believe" a registered voter is not a U.S. citizen—discriminates against naturalized citizens because it commands the application of a standard, a practice, and a procedure for naturalized citizens different from the standards, practices, and procedures applied to other qualified voters within the same county, in violation of the 1964 Civil Rights Act, 52 U.S.C. § 10101(a)(2)(A). It further properly held that the "reason to believe" provision is non-uniform and discriminatory against naturalized citizens in violation of Section 8(b) of the National Voter Registration Act of 1993, 52 U.S.C. § 20507(b).

1

The district court's holdings should be affirmed. The holdings rest on factual findings that the "reason to believe" provision and the SAVE checks could only be utilized against non-native voters—findings that were not clearly erroneous and indeed were amply supported by the record below. Indeed, the evidence at trial that the SAVE system could only be used to check the citizenship of individuals who have immigrated to the United States was undisputed, as was the district court's related finding that the "reason to believe" provision unlawfully singled out naturalized citizens for differential, non-uniform, and discriminatory treatment. Moreover, Arizona's local election officials, the fifteen county recorders and their staff, must interpret and apply the statute's "reason to believe" trigger without statutory or regulatory guidance as to its meaning. The Secretary of State has determined that what constitutes a "reason to believe" a registered voter is not a citizen is a matter for the county recorders' discretion. As the record demonstrated, there is no uniform understanding of the subjective term "reason to believe" among the county recorders.

As the district court correctly found, the provision unlawfully subjects naturalized Arizona voters to different standards, practices, and procedures in determining voter qualifications and causes a non-uniform and discriminatory effect on them. Respectfully, the district court's judgment should be affirmed.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331 and 1343 because this case arises under the laws of the United States. The district court had jurisdiction to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

On May 2, 2024, the district court entered final judgment in this action, among other things, enjoining enforcement of A.R.S. § 16-165(I). 1-ER-00002–06; *see also* 1-ER-0114–15. On May 8, 2024, Intervenor-Defendants-Appellants Republican National Committee, Warren Petersen, and Ben Toma ("Appellants") timely filed their Notice of Appeal pursuant to Fed. R. App. P. 3(a)(1), 4(a)(1)(B), and 26(a)(1)(A)–(C). 7-ER-1617–20. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291. Accordingly, this Court has jurisdiction over this appeal as it is a direct appeal of a final order and judgment entered by the U.S. District Court for the District of Arizona. 28 U.S.C. § 1291.

## STATUTORY AUTHORITIES

The text of the pertinent statutory and regulatory authorities is contained in Appellants' Principal Brief (hereafter "Appellants' Br.") and Addendum, *see* ECF 101.1 at 61.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.     Whether the district court's ruling that Arizona's requirement for county election officials to conduct citizenship checks utilizing the Department of Homeland Security's SAVE system based solely on a "reason to believe" a registered voter is not a U.S. citizen commands the application of a standard, practice, or procedure for naturalized citizens different from the standards, practices, or procedures applied to other qualified voters within the same county in violation of the Civil Rights Act of 1964, 52 U.S.C. § 10101(a)(2)(A), was clearly erroneous in light of the record before it.

2.     Whether the district court's ruling that Arizona's requirement for county election officials to conduct citizenship checks utilizing the SAVE system based solely on a "reason to believe" a registered voter is not a U.S. citizen is non-uniform and discriminatory against naturalized citizens in violation of Section 8(b) of the National Voter Registration Act of 1993, 52 U.S.C. § 20507(b)(1), was clearly erroneous in light of the record before it.

## STATEMENT OF THE CASE

### A.     *Plaintiffs-Appellees' Claims*

Following Arizona's 2022 legislative session, the United States and seven other plaintiff groups sued, challenging Arizona's H.B. 2492 and H.B. 2243 as violating various provisions of federal law. *See Poder Latinx, et al. v. Hobbs, et al.*,

4

No. 2:22-cv-1003 (D. Ariz. filed Jun. 9, 2022), *consol. under Mi Familia Vota, et al. v. Fontes, et al.*, No. 2:22-cv-509 (D. Ariz. filed Mar. 31, 2022). As relevant to this brief, Plaintiffs-Appellees Poder Latinx, Chicanos Por La Causa, and Chicanos Por La Causa Action Fund (collectively, "Appellees" or "Poder Appellees"), among other Plaintiffs-Appellees, brought suit against several provisions in those new statutes, including a provision enacted as part of H.B. 2243, 55th Leg., 2d Reg. Sess. (Ariz. 2022), A.R.S. § 16-165(I).[1] This statute, in relevant part, directs Arizona county recorders to subject registered Arizona voters whom a recorder has "reason to believe" are not United States citizens—and *only* those voters—to an additional citizenship investigation exclusively using the SAVE system. *Id.*; 1-ER-0013.[2] That additional citizenship investigation can lead to cancellation of the voter's registration under A.R.S. § 16-165(A)(10).

Among other claims, Appellees asserted that the "reason to believe" provision violated the Civil Rights Act of 1964, 52 U.S.C. § 10101(a)(2)(A), by

---

[1] Poder Appellees do not challenge the other part of A.R.S. § 16-165(I) regarding registered Arizona voters who have not provided satisfactory evidence of citizenship as prescribed by § 16-166.

[2] The U.S. Citizenship and Immigration Services ("USCIS") administers the SAVE system, which is used to retrieve immigration and citizenship data from different DHS agencies. 1-ER-0017–18; 3-ER-0692; 1-PoderSER-0005, 08. Arizona's county recorders access SAVE pursuant to a memorandum of agreement (the "SAVE MOA") between the Secretary of State and USCIS, 1-PoderSER-0009–20, which was admitted at trial as Exhibit 266 and upon which the district court relied. *See* D. Ct. Dkt. 689 (Civil Exhibit List); 1-ER-0018.

imposing different voter-qualification standards, practices, and procedures on different groups of voters. Second Am. Compl., D. Ct. Dkt. 169 ¶¶ 99–106.[3] Absent the district court's injunction, A.R.S. § 16-165(I) would have effected this differential treatment by conducting this investigation using SAVE whenever an election official had any "reason to believe" the person was not a United States citizen. *Id.* ¶¶ 101–04. Plaintiffs also challenged the "reason to believe" provision under Section 8(b) of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20507(b), asserting the provision mandates that county recorders treat registered voters in a non-uniform and discriminatory manner. *Id.* ¶¶ 86–98. Appellees' suit was consolidated for all purposes with the other challenges to H.B. 2492 and H.B. 2243. D. Ct. Dkt. 79.

### B. *Relevant Summary Judgment Rulings*

Appellees moved for summary judgement as to their claim under 52 U.S.C. § 10101(a)(2)(A). D. Ct. Dkt. 397. The State of Arizona and Attorney General, joined by the Republican National Committee ("RNC"), moved for partial summary judgment as to all consolidated plaintiffs' claims under Section 8(b) of the NVRA, seeking to limit its scope to the investigation and cancellation of currently registered voters as to all challenged provisions of H.B. 2492 and H.B.

---

[3] Unless otherwise stated, District Court "D. Ct. Dkt." references refer to the lead case docket in the consolidated litigation, *Mi Familia Vota et. al. v. Fontes, et al.*, 2:22-cv-509 (D. Ariz. filed Mar. 31, 2022).

2243. D. Ct. Dkt. 364. Additionally, the RNC moved for summary judgment on the grounds that Section 10101 of the Civil Rights Act could not be enforced by private litigants. D. Ct. Dkt. 367. The court denied the motion as to the Appellants' argument against the private enforceability of 52 U.S.C. § 10101(a)(2)(A). 1-ER-0135 n.10. As to the NVRA argument, the district court held that, as a threshold matter, Section 8(b) only applies to post-registration voter roll *maintenance* programs and does not apply to the treatment of voter registration *applicants*. 1-ER-0134–35. The State of Arizona and Attorney General's motion was otherwise denied. 1-ER-0150. The RNC's motion was denied. *Id.* Appellees' claims arguing that the "reason to believe" provision of A.R.S. § 16-165(I) violated both 52 U.S.C. § 10101(a)(2)(A) and Section 8(b) of the NVRA thus proceeded to a bench trial in November 2023.

## C. Record Evidence

Evidence at trial confirmed that A.R.S. § 16-165(I) mandates differential treatment of naturalized and native-born voters based on their national origin: only naturalized citizens will ever be subject to A.R.S. § 16-165(I)'s SAVE citizenship checks under the "reason to believe" provision. This provision solely impacts naturalized citizens because, as the district court found, SAVE contains no information on native-born citizens and, thus, cannot be utilized if the subject of the inquiry is a native-born citizen. *See* 3-ER-0692–93; 1-ER-0018, 31–32; 1-

PoderSER-0005–07. As the district court further found, "because SAVE requires an immigration number,"[4] the SAVE system can only verify the citizenship status of naturalized or derived U.S. citizens.[5] 3-ER-0692–93; 3-ER-0711–12; 1-PoderSER-0006–07; 1-PoderSER-0032–33; *see also* 1-ER-0018, 79; 1-PoderSER-0024. Native-born citizens obviously do not have immigration numbers, and SAVE cannot be used to investigate the citizenship of such persons—a fact with which even Appellants' own expert agreed. 1-PoderSER-0032–33. By mandating the use of SAVE to check citizenship, A.R.S. § 16-165(I) necessarily limited the "reason to believe" provision to a specific subset of the electorate—persons with immigration numbers. Accordingly, the practical import of the statutory language is that county recorders would only have been able to conduct SAVE citizenship checks on naturalized citizens whom county recorders had "reason to believe" were not U.S. citizens. *See* 1-ER-0079. These facts are uncontradicted by any testimony or evidence in the trial record.

---

[4] An "immigration number" includes an alien registration number (or "A-Number"), a naturalization certificate number, a certificate of citizenship, or any other unique immigration-related numeric identifier that can be used in querying the SAVE system. *See* 1-ER-0018. Hereinafter, Appellees use "immigration number" as shorthand for these categories.

[5] "A derived citizen is an individual born abroad who derives U.S. citizenship at birth from a U.S. parent or automatically acquires U.S. citizenship as a minor under specific provisions of U.S. naturalization law." 1-ER-0018 n.15.

The database-matching procedure using SAVE outlined in A.R.S. § 16-165(I) is triggered whenever election officials have a "reason to believe" a registered voter is not a U.S. citizen. Neither this statutory provision nor the 2023 revised Arizona Election Procedures Manual ("2023 EPM") specify what constitutes a "reason to believe" a person is not a citizen in the context of A.R.S. § 16-165(I). *See* 2-ER-0198–477, 3-ER-0479–583. The operative 2023 EPM was ultimately approved by the Arizona Secretary of State, Governor, and Attorney General on December 30, 2023. *See* 2-ER-0196–201; 1-ER-0014. Although the EPM carries the force of law, A.R.S. § 16-452, and generally attempts to "ensure election practices are consistent and efficient throughout Arizona," *McKenna v. Soto*, 481 P.3d 695, 699–700, ¶¶ 20-21 (Ariz. 2021), the 2023 EPM contains *no guidance* on how county recorders should interpret and apply the statute's "reason to believe" provision. *See* 2-ER-0250–55; *see also* 1-ER-0014–15. In the absence of such guidance, Arizona law leaves this determination to the discretion of the State's fifteen county recorders and their staff. *See* A.R.S. § 16-165(I); *see also* 1-PoderSER-0022–23, 25–30; *see also* 1-PoderSER-0042; *see also* 1-PoderSER-0045–48; *see also* 1-PoderSER-0050; *see also* 1-PoderSER-0083, 92 ¶¶ 41, 114. Lastly, the district court also heard evidence at trial that the Attorney General's Office has not done *any* training with county recorders on what "reason to believe" means. 1-PoderSER-0055.

9

Critically, the Secretary of State's office never issued any uniform guidance on this question and instead, at trial, took the position that what constitutes a "reason to believe" a registered voter is not a U.S. citizen is "a decision that has to be made by the county recorder[.]" 1-PoderSER-0042; *see generally* 1-PoderSER-0037–43; *see also* 1-PoderSER-0052 (trial testimony of Ms. Petty, testifying that the Secretary of State has not provided any guidance to county recorders on how to implement H.B. 2243). This is according to the undisputed testimony of Colleen Connor, Arizona's Elections Director, who oversees the Elections Division of the Secretary of State's office and guides the development of the EPM. 1-PoderSER-0035–36; 1-ER-0014. The Secretary of State also unequivocally admitted that A.R.S. § 16-165(I) "requires a different 'standard, practice, or procedure' for determining a voter's qualifications for voters who a county recorder 'has reason to believe are not United States citizens' than for voters who a county recorder does not have reason to believe are not United States citizens." 1-PoderSER-0065 ¶ 44; 1-PoderSER-0090 ¶ 102. The Secretary further admitted that "voters who are not suspected of lacking U.S. citizenship will not be subjected to the investigation and potential cancellations provisions set forth in HB 2243." 1-PoderSER-0065 ¶ 45; 1-PoderSER-0090 ¶ 103.

Furthermore, testimony established that there is no uniform understanding of the subjective term "reason to believe" among county recorders. 1-PoderSER-

0025–30; 1-PoderSER-0053; *see also* 1-PoderSER-0099–100; 1-PoderSER-0102–103; 1-PoderSER-0105–07; 1-PoderSER-0109–10; 1-PoderSER-0112–13; 1-PoderSER-0115; 1-PoderSER-0117–18; 1-PoderSER-0120–21.[6] For example, county recorders have different understandings regarding whether:

- a phone call or email from the registered voter in question would provide reason to believe that a registered voter is not a U.S. citizen. Some county recorders testified that it would not (*e.g.*, 1-PoderSER-0099; 1-PoderSER-0102), while others testified that it would (*e.g.*, 1-PoderSER-0105–06; 1-PoderSER-0109–10);

- a signed letter from the voter in question would give their office reason to believe that a registered voter was not a U.S. citizen. Some testified that it would not (*e.g.*, 1-PoderSER-0099; 1-PoderSER-0102), while others testified that it would (*e.g.*, 1-PoderSER-0106; 1-PoderSER-0109), and another testified that it might (1-PoderSER-0112–13);

- an email or letter from Arizona law enforcement could provide a reason to believe that a registered voter is not a U.S. citizen. Some testified that it would not (*e.g.*, 1-PoderSER-0109); another testified

---

[6] Following the conclusion of trial, the parties filed with the district court revised, final deposition designations, including the above-referenced deposition transcript excerpts. *See* D. Ct. Dkt. 679, 679-1–679-3. In its March 7, 2024 Order, the district court denied as moot a motion to overrule specific objections to these deposition designations, because the court had not ultimately "relied on such testimony in its Findings of Fact and Conclusions of Law." *See* D. Ct. Dkt. 710. Deposition designations filed with and considered by the district court are part of the entire record on appeal. Fed. R. App. P. 10(a); *see United States v. Boulware*, 558 F.3d 971, 975 (9th Cir. 2009) (citation omitted) ("[I]n evaluating an offer of proof on appeal, we are not confined to the four corners of the formal offer, but may evaluate 'evidence . . . made known to the court.'"); *see also Barcamerica Int'l USA Tr. v. Tyfield Importers, Inc.*, 289 F.3d 589, 595 (9th Cir. 2002) ("Federal Rule of Appellate Procedure 10(a) indicates that only those documents that were 'filed' with the district court are, in fact, part of the record on appeal."); *see also Kirshner v. Uniden Corp. of Am.*, 842 F.2d 1074, 1077 (9th Cir. 1988).

that they "would need something documented" (1-PoderSER-0115); and others testified that it might (*e.g.*, 1-PoderSER-0100; 1-PoderSER-0103); and

- an anonymous phone call or email would give their office reason to believe that a registered voter is not a U.S. citizen. While many county recorders have testified that this would not give them such a reason to believe the voter is not a U.S. citizen (*e.g.*, 1-PoderSER-0100; 1-PoderSER-0106–07), one county recorder testified that it was something they would have to "act upon" (1-PoderSER-0118).

Absent the district court's injunction, county recorders and their staff would use their discretion and interpret and apply this standard in inevitably inconsistent case-by-case determinations. 1-PoderSER-0042; *see also* 1-PoderSER-0025–30; 1-ER-0031.

### D.    *Relevant Bench Trial Rulings*

In February 2024, U.S. District Court Judge Susan Bolton ruled in Appellees' favor, finding that the "reason to believe" provision of A.R.S. § 16-165(I) was unlawful under both 52 U.S.C. § 10101(a)(2)(A) and Section 8(b) of the NVRA, 52 U.S.C. § 20507(b). *See* 1-ER-0114.

Specifically, the district court ruled that this "reason to believe" provision, by mandating the exclusive use of SAVE, caused the unlawful differential treatment of naturalized registered voters. 1-ER-0078–80, 85. If county recorders have a "reason to believe" a registered voter is a non-citizen, then they must check the SAVE system and can only do so for individuals who have immigration numbers, *not* native-born voters. *Id*. For this reason, the district court held the

12

requirement violated the 1964 Civil Rights Act's prohibition on different voter-qualification practices and procedures, 52 U.S.C. § 10101(a)(2)(A), and the NVRA requirement that voter list maintenance be conducted in a uniform and nondiscriminatory manner, 52 U.S.C. § 20507(b)(1). *Id*. As the district court found, the provision unlawfully subjects naturalized Arizona voters to a different practice and a different procedure in determining voter qualifications and causes a discriminatory and non-uniform effect on them. *Id*.

The district court enjoined the enforcement of the "reason to believe" provision in A.R.S. § 16-165(I). 1-ER-0005–06. Final judgement was entered on May 2, 2024. 1-ER-0002–06. The Intervenor-Defendants below (here, "Appellants") filed their notice of appeal on May 8, 2024. Only the RNC and the legislators appeal these rulings. ECF 8.1.

### E.    *Joinder as to Other Appellees' Briefs*

This brief addresses the district court's ruling as to the "reason to believe" provision in A.R.S. § 16-165(I). Poder Appellees join the LUCHA Appellees' Brief as it pertains to Appellants' standing to bring this appeal, and the DNC/Equity Appellees' Response Brief to the extent it pertains to remedies as to Poder Appellees' NVRA claims, *see* Second Am. Compl., D. Ct. Dkt. 169 ¶¶ 86–98, 145–52.169 ¶¶ 86–98, 145–52.

13

## STANDARD OF REVIEW

A district court's findings of fact after a bench trial are reviewed for clear error, and its conclusions of law are reviewed de novo. *Huhmann v. Fed. Express Corp.*, 874 F.3d 1102, 1106 (9th Cir. 2017) (citing *OneBeacon Ins. Co. v. Haas Indus., Inc.*, 634 F.3d 1092, 1096 (9th Cir. 2011)). "If the district court's view of the evidence is plausible in light of the entire record, an appellate court may not reverse even if it is convinced that it would have weighed the evidence differently in the first instance." *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 687 (2021) (citing *Anderson v. Bessemer City*, 470 U.S. 564, 573–74 (1985)).

Findings of fact may not be disturbed unless the district court's findings are "illogical, implausible, or without support in inferences from the record." *Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, 960 F.3d 603, 613 (9th Cir. 2020).

## SUMMARY OF ARGUMENT

I.     The district court correctly held that the "reason to believe" provision imposes different voter-qualification practices and procedures on naturalized citizens compared with other voters in violation of 52 U.S.C. § 10101(a)(2)(A). Because the district court's finding that this provision requires different voter-qualification practices and procedures for naturalized citizens as compared with native-born citizens was not clearly erroneous but rather is clearly supported by the

14

record, its ruling should be affirmed. The district court's finding that A.R.S. § 16-165(I) violates 52 U.S.C. § 10101(a)(2)(A) is also supported by extensive, unrebutted evidence that A.R.S. § 16-165(I) relies upon a subjective "reason to believe" standard as a trigger for a citizenship check procedure whenever election officials suspect a registered voter is not a U.S. citizen.

II. The district court's finding that the "reason to believe" provision violates Section 8(b) of the NVRA should be affirmed. A.R.S. § 16-165(I) mandates county recorders' treatment of registered naturalized voters in a non-uniform and discriminatory manner in violation of Section 8(b) of the NVRA. Based on the challenged law's plain text and the record evidence, the district court properly found that A.R.S. § 16-165(I) violated Section 8(b).

III. Appellants' arguments fail because (1) they make no effort to show why the district court's findings are implausible in light of the entire record; (2) their arguments under the Different Practices Provision find no support in the plain text of the statute or any other source of authority; and (3) their arguments under Section 8(b) of the NVRA are similarly divorced from the plain text of both the NVRA and the challenged "reason to believe" provision.

## ARGUMENT

**I.    The district court's holding that the "reason to believe" provision imposes different voter-qualification practices and procedures on naturalized citizens compared with other voters in violation of 52 U.S.C. § 10101(a)(2)(A) should be affirmed.**

After a ten-day bench trial, the district court found that the "reason to believe" clause in A.R.S. § 16-165(I) violates 52 U.S.C. § 10101(a)(2)(A) (hereinafter "the Different Practices Provision"). A.R.S. § 16-165(I) requires county recorders to perform a citizenship check using the SAVE system for "persons who are registered to vote in that county and who the county recorder has reason to believe are not United States citizens" and for "persons who are registered to vote without satisfactory evidence of citizenship." A.R.S. § 16-165(I). Because the district court's finding that this provision mandates different voter-qualification practices and procedures for naturalized citizens and native-born citizens was not clearly erroneous but rather is clearly supported by the record, the district court's ruling should be affirmed.

Moreover, because there was extensive, unrebutted evidence that A.R.S. § 16-165(I) relies upon a subjective "reason to believe" standard, triggering a different voter-qualification practice or procedure whenever election officials suspect a registered voter is not a U.S. citizen, the district court's finding that A.R.S. § 16-165(I) violates 52 U.S.C. § 10101(a)(2)(A) is more than plausible in light of the entire record and should be affirmed under the clear error standard.

16

### A.    The Civil Rights Act of 1964, 52 U.S.C. § 10101(a)(2)(A)

The Different Practices Provision prohibits election officials from subjecting voters to different voter-qualification standards, practices, and procedures. It provides that:

> No person acting under color of law shall—(A) in determining whether any individual is qualified under State law or laws to vote in any election, apply any standard, practice, or procedure different from the standards, practices, or procedures applied under such law or laws to other individuals within the same county, parish, or similar political subdivision who have been found by State officials to be qualified to vote[.]

52 U.S.C. § 10101(a)(2)(A). Congress "directed [Section 1010(a)(2)(A)] primarily at discriminatory practices applied in the process of registering voters. It requires the application of uniform practices in determining whether an individual is qualified to vote." 110 CONG. REC. H 1,695 (Feb. 3, 1964).

Congress enacted the Different Practices Provision to prevent election officials from subjecting would-be voters to different voter-qualification practices or procedures like the unequally applied citizenship investigation required by A.R.S. § 16-165(I). Congress explicitly sought to prohibit "arbitrary exercises of discretion on the part of" registrars. 110 CONG. REC. S 6,740 (Apr. 1, 1964). Noting that by 1964 "many of the more blatant forms of discrimination" had been made "subject to judicial review and invalidation," supporters of Title I worried that registrars might "rel[y] on [their] discretionary powers" to engage in

17

discrimination. 110 CONG. REC. S 6,734 (Apr. 1, 1964). Accordingly, Congress prohibited the "unequal application of [a] rule" or the "prejudiced application of a standard," 110 CONG. REC. S 5,004 (Mar. 11, 1964), explicitly intending to prevent election officials from acting on suspicions, biases, or their standardless discretion when deciding which voters to subject to which registration processes.

In keeping with the statute's plain text and legislative history, courts have found violations of the Different Practices Provision when voters have been held to different standards for consideration of their eligibility or required to satisfy an additional confirmation of their eligibility beyond what other registrants must meet. For example, in *Shivelhood v. Davis*, 336 F. Supp. 1111 (D. Vt. 1971), the court held that registrars could not require college students to provide more proof of residence than non-students merely because they suspect college students are not in fact residents of a town. *Id.* at 1114–15. If the registrar wanted to enforce this requirement, "all applicants [would need to be] required to complete the same questionnaire." *Id.* at 1115. Similarly, in *Frazier v. Callicutt*, 383 F. Supp. 15 (N.D. Miss. 1974), the court found a violation of 52 U.S.C. § 10101(a)(2)(A) where the county's registrar "ha[d] applied one set of standards in approving or disapproving applications for registration to [college student] applicants" and "another set of standards" for "all other applicants." *Id.* at 17–18.

**B.     The district court properly found that A.R.S. § 16-165(I) violates 52 U.S.C. § 10101(a)(2)(A) because it requires county officials to subject voters to different standards, practices, and procedures.**

Here, the record contains ample evidence to support the district court's finding that A.R.S. § 16-165(I) violates the Different Practices Provision, because it requires county recorders to subject "*only* naturalized citizens to database checks," thereby employing a different standard, a different practice, and a different procedure than would be used on their native-born counterparts. 1-ER-0080 (emphasis original); *see also* 1-ER-0018, 31–32; 3-ER-0692–93; 1-PoderSER-0005–07. As the district court emphasized, the "reason to believe" clause requires county recorders to check the voter's citizenship against the SAVE system—and *only* the SAVE system. *See* 1-ER-0079. The district court found that the SAVE system "can only verify the citizenship status of naturalized or derived U.S. citizens by searching the individual's immigration number and contains no information on native-born citizens." 1-ER-0018; *see also* 3-ER-0692–93; 3-ER-0711–12; 1-PoderSER-0006–07. The district court further found that although the "reason to believe" provision "purport[s] to confirm the citizenship status of all voters," the mandatory use of only the SAVE system means that only naturalized voters will ever have their citizenship investigated in this way. 1-ER-0079. And the district court found that because the SAVE system does not include data on all registered voters in Arizona, "county recorders can only ever conduct SAVE

checks on naturalized citizens who county recorders have 'reason to believe' are non-citizens." *Id*. None of these findings are clearly erroneous, and indeed, they were all supported by the undisputed trial evidence.

For starters, both Appellees' expert, Dr. Michael McDonald, and Appellants' expert, Dr. Jesse Richman, concluded that SAVE contains no data on native-born citizens. 1-PoderSER-0024 (testifying "the information is only for non-native born citizens"); 1-PoderSER-0032–33. No witness contested this point, including the Senior Director of Voter Registration in Maricopa County and representatives from USCIS, which administers SAVE. *See* 1-ER-0018, 31–32; 3-ER-0692–93; 3-ER-0711–12; 1-PoderSER-0005–07. As Appellants' expert agreed, SAVE cannot be used to investigate the citizenship of native-born citizens since they have no immigration number with which to query the system. 1-PoderSER-0032–33.

These undisputed facts establish that A.R.S. § 16-165(I) requires Arizona county recorders to do what the Different Practices Provision forbids. It directs county recorders to subject registered voters whom they have "reason to believe" are not United States citizens—and *only* those voters—to an additional citizenship investigation using the SAVE system and ultimately to potential cancellation. Because A.R.S. § 16-165(I) mandates the exclusive use of SAVE, as the district court properly found, naturalized citizens are the only ones "at risk of county recorders' subjective decision to further investigate [their] citizenship status." 1-

20

ER-0079; *see also* 1-ER-0018; *see also* 3-ER-0692–93; *see also* 1-PoderSER-0005–07. "[T]he Reason to Believe Provision will never apply to native-born citizens." 1-ER-0079.

The district court found evidence of clear differential treatment between naturalized and native-born Arizona voters on the rolls. Therefore, A.R.S. § 16-165(I) violates the Different Practices Provision because, if allowed to go into effect, it would subject naturalized Arizona voters to different voter-qualification standards, practices, and procedures than would be used on native-born citizens. Accordingly, the district court's finding to this effect was not clearly erroneous and should be affirmed.

**C.    There is ample additional evidence that would support affirming the district court's Civil Rights Act ruling on alternative grounds.**

The district court's bottom-line conclusion that the "reason to believe" clause in A.R.S. § 16-165(I) violates the Different Practices Provision is also amply supported by another body of undisputed evidence in the record. At trial, there was extensive evidence presented that the "reason to believe" provision requires county recorders to employ a different standard, practice, or procedure depending on whether a county recorder has *any* "reason to believe" a voter is not a U.S. citizen. 1-PoderSER-0042; *see also* 1-PoderSER-0022–23, 0025–30; *see also* 1-PoderSER-0045–48; *see also* 1-PoderSER-0050; *see also* 1-PoderSER-0065 ¶ 44; *see also* 1-PoderSER-0083, 90, 92 ¶¶ 41, 102, 114. That this provision's

21

operation is triggered by county recorders' subjective and arbitrary suspicion of registered voters and would result in inconsistent treatment of qualified, registered voters is substantiated by ample evidence in the record. This Court may affirm the district court's decision on any basis supported by the record, regardless of whether the district court relied on the same grounds or reasoning. *Atel Fin. Corp. v. Quaker Coal Co.*, 321 F.3d 924, 926 (9th Cir. 2003).

Though the district court's ruling that A.R.S. § 16-165(I) violates the Different Practices Provision emphasized different evidence, *see supra* Section I.B, the district court specifically found that the application of the "reason to believe" clause in this subsection impermissibly turned on county recorders' "subjective decision to further investigate these voters' citizenship status" based on their "subjective beliefs that a naturalized individual is a non-citizen." 1-ER-0079, 114. This finding was not clearly erroneous, and the finding of arbitrary, subjective *re*-investigation of voter qualifications is exactly what the Different Practices Provision prohibits.

The case record cements these conclusions. It demonstrates the extent of county recorders' discretionary control over the interpretation and enforcement of the subjective "reason to believe" standard. Critically, the Secretary of State's representative testified at trial that what constitutes a "reason to believe" a registered voter is not a U.S. citizen would not be defined by the Secretary and

would be "a decision that has to be made by the county recorder[.]" 1-PoderSER-0042. Consistent with this testimony, the 2023 EPM, the document the Arizona Secretary of State uses to issue binding guidance to county recorders, does not provide any guidance to Arizona's county recorders regarding what constitutes "reason to believe" a voter is not a citizen. *See* 1-PoderSER-0036–43. Without any clarification from the Secretary of State,[7] a county recorder's mere suspicion can trigger the reexamination of a voter's citizenship status and potentially tee up their cancellation.

Both on its face and as substantiated by trial testimony and evidence, A.R.S. § 16-165(I) commands the application of different "standards, practices, [and] procedures" to qualified and registered voters within the same county whenever county recorders or their staff merely suspect a registered voter is not a U.S. citizen. Under the plain terms of the statute and as corroborated by the record, such a "reason to believe" a registered voter lacks U.S. citizenship—when left to the complete discretion of county recorders—could be premised on the voter's accent, use of a language other than English, or dress, or a private individual's or private group's accusation.

---

[7] The Secretary of State has admitted that H.B. 2243 "does not include any indicia or criteria that would provide a predicate for the county recorder's 'reason to believe' a person is not a United States citizen." 1-PoderSER-0083, 92 ¶¶ 41, 114; 1-PoderSER-0042.

Unsurprisingly, the district court also heard testimony that illustrated the near certainty of disparate treatment resulting from the county recorders' discretion in determining when "reason to believe" has been shown. 1-PoderSER-0025–30. As noted previously, the record shows that county recorders have already arrived at vastly different understandings of how the "reason to believe" provision should be interpreted and enforced. *See supra* at 10–12. For example, some county recorders testified that a phone call or email from the registered voter in question would provide a reason to believe that a registered voter is not a U.S. citizen, 1-PoderSER-0105–06, 1-PoderSER-0109–10, while others testified that it would not, 1-PoderSER-0099 and 1-PoderSER-0102. Similarly, county recorders have different understandings regarding whether an anonymous phone call or email would give their office reason to believe that a registered voter is not a U.S. citizen. While many county recorders have testified that this would not give them such a reason to believe the voter is not a U.S. citizen, *e.g.*, 1-PoderSER-0100 and 1-PoderSER-0106–07, one county recorder testified that it was something they would have to "act upon," 1-PoderSER-0118. There is also no consensus as to whether contact from law enforcement constitutes a "reason to believe." *Compare* 1-PoderSER-0100; 1-PoderSER-0103; 1-PoderSER-0106; 1-PoderSER-0109; 1-PoderSER-0115.

The practical reality of election administration in Arizona also drives inconsistent understanding and enforcement of the "reason to believe" provision. One county recorder testified that A.R.S. § 16-165(I) would require *multiple* staff members at county recorders' offices to use their discretion to determine whether certain information or situations give rise to a "reason to believe" a particular registered voter is not a U.S. citizen. 1-PoderSER-0047–48. For example, in the Pima County Recorder's office, an estimated fifteen or sixteen individuals would have discretionary authority to determine what constitutes a "reason to believe" a registered voter is not a U.S. citizen under A.R.S. § 16-165(I). 1-PoderSER-0048. Considered in its context, the "reason to believe" provision of H.B. 2243's removal program is, therefore, also non-uniform and arbitrary because "local county officials [are left to] interpret and apply the [laws] differently." *Common Cause Ind. v. Lawson*, 327 F. Supp. 3d 1139, 1149–50, 1153 (S.D. Ind. 2018).

And the past is prologue. The district court also heard county officials testify that county recorders have, in implementing other provisions, failed to establish uniform policies for handling questions about voters' eligibility. *See, e.g.*, 1-PoderSER-0045–47 (explaining that Pima County Recorder's Office did not issue any written, standardized guidance or policy for all staff on how to handle allegations of voter ineligibility from third parties); 1-PoderSER-0050 (same for Apache County Recorder's Office). The district court also heard expert witness

testimony from Dr. McDonald explaining that "this discretion that will be afforded by these new laws will exacerbate the existing trends that we see right now in non-uniform implementation of [documentary proof of citizenship] requirements." 1-PoderSER-0023, 25–26; *see, e.g.*, 1-PoderSER-0029–30. As he testified, Dr. McDonald observed that a number of county recorders had varying understandings of the "reason to believe" standard. For instance, he noted that the Santa Cruz County Recorder would view information received from a neighbor, an anonymous call, or by mail as information that they would need to act upon and that might give them a reason to believe a voter was not a citizen. 1-PoderSER-0028–29; *see also* 1-PoderSER-0117-18. He further noted that the Maricopa County recorder indicated that her office would need guidance on whether information from a neighbor, an anonymous call, or by mail constituted a reason to believe an individual was not a citizen. 1-PoderSER-0028–29; *see also* 1-PoderSER-0052–53. And he observed that in the view of the Cochise County recorder, information from a neighbor, an anonymous call or by mail would not constitute reason to believe an individual was not a citizen. *Id.*

The Secretary of State also admitted that A.R.S. § 16-165(I) requires county recorders to treat two groups of voters differently in making voter-qualification determinations, specifically conceding that it directs county recorders to sort voters into two categories: those who will be subjected to the additional SAVE system

26

verification procedure and those who "are not suspected of lacking U.S. citizenship [and] will not be subjected to the investigation and potential cancellations provisions set forth in HB 2243." 1-PoderSER-0065 ¶¶ 44, 45; 1-PoderSER-0090 ¶¶ 102–03. The Secretary of State further admitted that, under A.R.S. § 16-165(I), those who "are not suspected of lacking U.S. citizenship will not be subjected to the investigation and potential cancellations provisions set forth in [A.R.S. § 16-165(I)]." 1-PoderSER-0090 ¶¶ 102–03.

All told, A.R.S. § 16-165(I) commands county recorders to act based upon wholly subjective evaluations of registered voters' eligibility as in *Frazier*, *see supra* Section I.A, *i.e.* whether a county recorder identifies any reason they personally believe the voter is not a citizen. 383 F. Supp. at 18–20. And, as in *Shivelhood*, voters suspected to lack U.S. citizenship are forced in effect to pass a different citizenship test. 336 F. Supp. at 1114–15. By requiring Arizona county recorders to subject any voter to investigation and other additional procedures based on an undefined, arbitrary "reason to believe" the voter is not a citizen, A.R.S. § 16-165(I) makes voter-qualification investigations turn on election officials' unrestrained discretion—exactly what Congress sought to banish from the voter registration process.

\*       \*       \*

27

To summarize, the district court properly found that A.R.S. § 16-165(I) directs Arizona county recorders to subject some—but indisputably not all— registered voters to additional citizenship investigation procedures based on any subjective "reason to believe" those voters are not U.S. citizens. On its face and buttressed by the evidence adduced at trial, any application of this statute will violate the Different Practices Provision. Unless county recorders and their staff would subject *all* of Arizona's millions of registered voters to a citizenship investigation using SAVE (which is impossible—*see supra* Section I.B), then the use of this provision will cause the application of different standards, practices, and procedures to scrutinize the voting qualifications of only certain voters suspected to lack U.S. citizenship.

Appellees thus respectfully request that this Court affirm the district court's ruling that A.R.S. § 16-165(I)'s "reason to believe" clause violates the Different Practices Provision.

## II. The district court's holding that the "reason to believe" provision violates Section 8(b) of the NVRA should be affirmed.

The district court also found that the "reason to believe" clause in A.R.S. § 16-165(I) violates Section 8(b) of the NVRA. 1-ER-0085. Ample evidence in the record supports the district court's finding that "[o]nly naturalized citizens would be subject to scrutiny under the Reason to Believe Provision, who if 'confirmed' as non-citizens, would be required to provide [documentary proof of citizenship]." *Id.*

28

This finding, which draws upon the same record evidence that supported the Different Practices Provision violation above, was not clearly erroneous.

### A.    Section 8(b) of the National Voter Registration Act

Under the NVRA, a voter list maintenance program must be "uniform [and] nondiscriminatory." 52 U.S.C. § 20507(b)(1). A maintenance program or activity violates Section 8(b) of the NVRA if it is *either* non-uniform *or* discriminatory. *Id*. This requirement is violated when such a maintenance program causes the non-uniform or discriminatory treatment of classes of registered voters, or where the program has a discriminatory effect on a group of registered voters. *See United States v. Florida*, 870 F. Supp. 2d, 1350–51 (N.D. Fla. 2012) (noting that rescinded state purge program "probably ran afoul of [Section 8(b) of the NVRA]" because its methodology made it likely that newly naturalized citizens were the primary individuals who would have to respond and provide documentation), *abrogation on other grounds recognized by Arcia v. Detzner*, No. 12-22282-CIV, 2015 WL 11198230 (S.D. Fla. Feb. 12, 2015); *Project Vote v. Blackwell*, 455 F. Supp. 2d 694, 703–04 (N.D. Ohio 2006) (violation of Section 8(b) based on law that treated different classes of registration drive participants differently).

**B.** **The district court correctly held that A.R.S. § 16-165(I) violated Section 8(b) of the NVRA by necessarily subjecting naturalized Arizona voters to a non-uniform and discriminatory voter roll maintenance program.**

As discussed *supra* in Section I, the district court found that A.R.S. § 16-165(I)'s "reason to believe" clause is non-uniform and discriminatory because it mandates the use of a single system that only contains data on foreign-born individuals and can only be used to investigate naturalized voters, not native-born voters. 1-ER-0085; *see also* 1-ER-0079 (discussing Civil Rights Act violation). Based on this key factual finding, the district court correctly held that, even though A.R.S. § 16-165(I) is purportedly neutral, naturalized Arizona voters would necessarily be subjected to a non-uniform and discriminatory voter roll maintenance program in violation of the NVRA. The district court's ruling under Section 8(b) of the NVRA should be affirmed because it is supported by the record at trial and not clearly erroneous.

Additionally, the trial record contains ample evidence independently supporting this decision. Both the statutory text and the 2023 EPM are silent as to how Arizona's local officials should evaluate whether there is "reason to believe" someone is not a citizen. *See supra* at 9; *see also* 1-PoderSER-0036–43 (Ms. Connor testifying 2023 EPM contains no guidance on how county recorders should interpret and apply the "reason to believe" clause); *see also* 2-ER-0198–477, 3-ER-0479–583 (showing absence of any guidance in the 2023 EPM). There is extensive

evidence in the record that county recorders across Arizona and their staff would interpret and apply the subjective "reason to believe" standard in a non-uniform manner. *See supra* Section I.C (citing 1-PoderSER-0042 (Secretary of State's representative testified that it is a discretionary "decision that has to be made by the county recorder"); 1-PoderSER-0083, 92 ¶¶ 41, 114 (Secretary of State admitted that H.B. 2243 "does not include any indicia or criteria that would provide a predicate for the county recorder's 'reason to believe' a person is not a United States citizen."). And testimony the district court heard at trial established that county recorders—and individual staff members within their offices—would be left to their own devices to define and apply the "reason to believe" standard. *See supra* at 9–10 (citing 1-PoderSER-0055 (representative from the Attorney General's office testified that the office had not done *any* training with county recorders on what "reason to believe" means)); *see supra* Section I.C (discussing expert testimony from Dr. McDonald and testimony for county recorders regarding differing understandings of what constitutes a "reason to believe" a voter is not a U.S. citizen).

In sum, there is ample evidence in the trial record establishing that the "reason to believe" clause in A.R.S. § 16-165(I) would divide registered voters into two groups: those who are suspected of lacking U.S. citizenship and those who are not. And then only naturalized citizens would be subject to the additional

citizenship check in the SAVE system. The statute mandates county recorders'
treatment of registered voters in a non-uniform and discriminatory manner in
violation of Section 8(b) of the NVRA. Based on the challenged law's plain text
and the record evidence, the district court properly found that A.R.S. § 16-165(I)
violated Section 8(b). These findings were not clearly erroneous. Appellants have
failed to show, let alone establish, that the trial court's findings are implausible in
light of the entire record. Accordingly, this Court should affirm. *Brnovich*, 594
U.S. at 687.

**III.    Each of Appellants' arguments fails.**

In their brief, Appellants advance several conclusory arguments. While each
argument fails on its own merits, importantly, Appellants completely fail to apply
the proper standard of review. Appellants make no effort to show why the district
court's key findings concerning A.R.S. § 16-165(I) are implausible in light of the
entire record, and thus have not demonstrated clear error. *See Brnovich*, 594 U.S.
at 687. Moreover, Appellants' legal arguments find no support in the plain text of
the relevant statutes or any other source of authority.

**A.    Appellants' few arguments against the district court's ruling
under the Different Practices Provision do not find any support in
the plain text of the statute or any other source of authority.**

Appellants posit that A.R.S. § 16-165(I)'s "reason to believe" clause is
"standardized," "neutral on its face," and "applies in equal terms to all registered

voters." Appellants' Br. at 40–42. This argument is wrong and should be rejected for several reasons.

First, Appellants' contention is directly contrary to the trial court's factual findings, which are well-supported by the evidence—including testimony from Appellants' own expert. That evidence reflects that: (1) the SAVE system "can only verify the citizenship status of naturalized or derived U.S. citizens by searching the individual's immigration number and contains no information on native-born citizens," 1-ER-0018; (2) only naturalized voters will ever have their citizenship investigated in this way, 1-ER-0079; and (3) "county recorders can only ever conduct SAVE checks on naturalized citizens who county recorders have 'reason to believe' are non-citizens." *Id*.

Appellants cite no record evidence in support of their contrary conclusion—because nothing in the trial record, the statutory text, or the 2023 EPM supports their interpretation. By mandating exclusive use of a system (SAVE) that *only* contains information on people who have immigrated to the U.S and that can be used *only* if election officials have an immigration-related numeric identifier for that voter, A.R.S. § 16-165(I) singles out naturalized citizens on the voter rolls for different and discriminatory treatment. *See* 1-ER-0018, 31-32; *see also* 3-ER-0692–93; 3-ER-0711–12; 1-PoderSER-0005–07. Appellants do not and cannot explain how such differential treatment of naturalized Arizona voters imposes a

"standardized" check rather than, as the district court found, the unlawful differential treatment of naturalized citizens. *See* 1-ER-0018, 31–32, 79–80. Nor do they come close to establishing clear error for any of these findings.

More fundamentally, Appellants' argument misses the mark: A state statute may be facially neutral but nonetheless impose unlawful differential voter-qualification standards, practices, or procedures on different groups of voters in violation of the Different Practices Provision. Appellants' contention that "the statutory 'reason to believe' trigger is not directly or indirectly conditioned on a voter's naturalization status," Appellants' Br. at 42, is demonstrably wrong. One need only imagine a law that triggers an investigation based upon a "reason to believe a person has been convicted of a felony" and then mandates the consultation of a single database that only contains information on naturalized citizens' offenses. Such a statutory "trigger" would be facially "neutral," but the selected data source would cause the de facto differential treatment of naturalized U.S. citizens. So too here.

Accordingly, Appellants' neutrality argument simply ignores the plain text of both the Civil Rights Act and A.R.S. § 16-165(I). The Different Practices Provision means what it says and prohibits "different standards, practices, or procedures" in determining voter qualifications, regardless of whether the trigger is

superficially "neutral." *See Simmons v. Himmelreich*, 578 U.S. 621, 627 (2016) ("Congress says what it means and means what it says.").

Instead of addressing the Different Practices Provision's plain language, Appellants posit that the Civil Rights Act requires that the challenged law "entail . . . invidious discrimination or animus against any protected class," Appellants' Br. at 41, but there is no basis for such a requirement in the statutory text. Appellants' half-baked attempt to graft such an intent requirement onto this federal law lack any textual support.[8] Appellants make an additional inapposite, textually unsupported argument in reliance upon the district court's finding that "Arizona's citizenship-verification protocols are reliable." Appellants' Br. at 41. But under the Different Practices Provision, reliability is beside the point. There is no tension between the district court's finding that the SAVE system is generally "reliable," *see* 1-ER-0018–19, and its holding that A.R.S. § 16-165(I)'s mandated

---

[8] *Amicus Curiae* Republican Party of Arizona similarly argues that the Civil Rights Act's prohibitions only reach racial discrimination—an argument that no party made during post-trial briefing and that lacks any support in the text of the Different Practices Provision. *See* ECF 107.2 at 35–37. While there is one provision in the Civil Rights Act that is so limited, there is no such restriction in the Different Practices Provision. *Cf.* 52 U.S.C. § 10101(a)(1) (limited to "race, color, or previous condition of servitude"). And even if such a reading of the Different Practices Provision were sound, the record evidence unquestionably supports the conclusion that naturalized citizens in Arizona are disproportionately Latino and Asian/Pacific Islander, and therefore, that targeting naturalized citizens in fact targets voters on the basis of race, ethnicity, and national origin. 1-ER-0008.

use of SAVE causes differential voter-qualification practices and procedures for naturalized Arizona voters.

Similarly, Appellants also seek to rewrite or erase a key difference in the Arizona statute at issue. They note the district court upheld other required database comparisons as part of Arizona's newly enacted citizenship investigation procedures but fail to acknowledge those comparisons do not rely *solely* on SAVE. Appellants' Br. at 45; *see* 1-ER-0079–80, 85–89 (denying challenges under NVRA Section 8(b) as to portions of H.B. 2492 and H.B. 2243 other than the "reason to believe" provision). Instead, those other citizenship investigation provisions utilize a group of databases that collectively contain information on native-born, not just naturalized, Arizona voters. A.R.S. § 16-165(J); 1-ER-0016–17 (noting Motor Vehicles Division database contains information on both native-born and naturalized citizens); 1-ER-0019–20 (noting National Association for Public Health Statistics and Information Systems' Electronic Verification of Vital Events system has information on native-born voters because it contains domestic birth certificate information); 1-ER-0080 (requirement in other provisions to check voters without DPOC against multiple databases contrasts with application of "reason to believe" provision only to naturalized citizens). Those provisions do not single out naturalized citizens by mandating use of the SAVE system alone like A.R.S. § 16-165(I) does; nor do they employ the inherently arbitrary and subjective

"reason to believe" trigger. In this regard, A.R.S. § 16-165(I) has unique legal infirmities not presented by other aspects of H.B. 2492 and H.B. 2243.

Moreover, Appellants fail to explain how the "reason to believe" provision would apply in a neutral, uniform manner within Arizona counties or across the state in compliance with the Civil Rights Act. By its plain terms, this clause not only invites, but commands, county recorders to conduct an extra citizenship investigation any time their suspicions are aroused. As recounted above, *see supra* Section I.C, the trial record confirms that county recorders would enforce this subjective standard inconsistently by exercising their own discretion and judgment to interpret and apply it. Appellants' assertion that this subjective standard is commonplace and "entrenched in numerous areas of the law, including electoral contexts," is belied by the fact that Appellants themselves have located and cited only one use of the "reason to believe" trigger—in a federal campaign finance law, 52 U.S.C. § 30109(a)(2), *not* in any law that governs voters' rights to register and cast a ballot. Appellants' Br. at 41.[9] That dearth of analogous examples makes sense given the Different Practices Provision has for sixty years prohibited such arbitrary and subjective voter-qualification standards, practices, and procedures.

---

[9] Appellants' citation to A.R.S. § 16-938(C) is inapposite because it uses the phrase "reasonable cause," which is not synonymous with the subjective "reason to believe" standard.

Appellants also argue the obvious and unremarkable point that "the statutory 'reason to believe' standard is tethered directly to the verification of an undisputedly valid voting qualification—*i.e.*, U.S. citizenship." *Id.* at 42. But this is no defense, as the actual text of the Different Practices Provision makes plain. Appellants fail to address the non-uniform and discriminatory treatment of naturalized registered voters identified by the district court. A.R.S. § 16-165(I)'s connection to a uniform eligibility requirement—here, U.S. citizenship—obviously does not permit the discriminatory or differential voter-qualification practices found by the district court.[10]

Finally, Appellants make a convoluted argument to attempt to prove that no additional registration cancellations would occur from SAVE searches conducted

---

[10] In making this argument, Appellants contend *Ballas v. Symm* rejected a Different Practices Provision challenge to a registrar's policy of issuing a questionnaire to voters when the registrar was uncertain of the voter's residency status because "[t]he standard for registration is the same for all applicants." 494 F.2d 1167, 1171–72 (5th Cir. 1974); Appellants' Br. at 42–43. But 52 U.S.C. § 10101(a)(2)(A) does not only prohibit different voter-qualification *standards*, but also different voter-qualification practices and procedures in ascertaining satisfaction of those standards. Furthermore, as Appellees noted in their district court briefing, D. Ct. Dkt. 474 at 12, *Ballas*'s reasoning above has not been good law since 1979. The Texas statute at issue in *Ballas*, which presumed non-residency of college students, and the county registrar's practice of requiring students to complete a residency questionnaire, were both subsequently enjoined. *See Whatley v. Clark*, 482 F.2d 1230, 1234 (5th Cir. 1973) (enjoining statute); *Symm v. United States*, 439 U.S. 1105 (1979) (summarily affirming *United States v. Texas*, 445 F. Supp. 1245 (S.D. Tex. 1978) (three-judge panel)); *see generally Johnson v. Waller Cnty.*, 593 F. Supp. 3d 540, 615 (S.D. Tex. 2022) (summarizing history).

pursuant to the "reason to believe" trigger beyond those resulting from the other trigger in A.R.S. § 16-165(I), when the voter is registered without showing DPOC. Appellants' Br. at 43–45; *see also id*. at 45 ("[C]rucially—federal-only voters are already subject to monthly SAVE checks under another clause of A.R.S. §16-165(I) . . . .") (emphasis omitted). This argument rests on the unfounded assumption that all SAVE searches conducted pursuant to the "reason to believe" clause must and will occur at the same time as A.R.S. § 16-165(I)'s mandatory SAVE searches for "persons who are registered to vote without satisfactory evidence of citizenship" such that the former trigger is fully subsumed within the latter. But county recorders may conduct "reason to believe" SAVE searches at any time, and they must conduct them if they have "reason to believe" a voter is not a U.S. citizen, even if the registrant previously provided DPOC. But even ignoring this flaw, Appellants' argument could only prove that the "reason to believe" trigger is fully duplicative of the other trigger in A.R.S. § 16-165(I), which the district court upheld. It is unclear why Appellants believe this argument helps their cause, as an unlawful statutory provision interpreted to be surplusage is still unlawful.

Moreover, Appellants also try to leverage the notion that such SAVE checks are duplicative to argue there is no burden on voters, stating that "the interplay between A.R.S. § 16-165(I) and other statutes ensures that SAVE checks

conducted under this provision will not exact cognizable burdens on qualified electors." Appellants' Br. at 21. This suggests an attempt to rewrite the Civil Rights Act (and the NVRA, *see id*. at 46–47) to include a burden-weighing requirement. However, the Different Practices Provision does not create or include any kind of balancing test. The inquiry as to whether a state law violates the Different Practices Provision turns on whether the challenged provision creates a different "standard, practice, or procedure;" it does not inquire how burdensome that different standard, practice, or procedure is.

**B.     Appellants' NVRA arguments are similarly untethered from the plain text of either the federal statute or Arizona's "reason to believe" provision.**

Appellants' arguments fail as to the NVRA for similar reasons. The district court found the SAVE search itself is neither uniform nor nondiscriminatory because it can only be used for naturalized citizens for whom election officials possess an immigration-related numeric identifier like an A-Number or a naturalization certificate number. Appellants' assertion that the SAVE search trigger "is conditioned on the receipt of information implicating a voter's substantive qualifications," Appellants' Br. at 45, is mere supposition that has no basis in the record, statute, or administrative guidance. 2023 EPM at Chapter 1, 2-ER-0198-264; *see supra* Section II.B. As recounted above, the record shows otherwise—that A.R.S. § 16-165(I) commands county recorders to conduct

40

citizenship checks based on their varying judgment calls regarding the subjective "reason to believe" standard. For some, mere suspicion will suffice. Once again, Appellants do not come close to establishing clear error.

Similarly, Appellants posit that "the statutory trigger for an eligibility determination facially applies to all registered voters in the jurisdiction," and that they "apply uniformly across the jurisdiction." Appellants' Br. at 46. Again, these suppositions are directly contrary to the evidence and the trial court's findings that by investigating naturalized citizens alone, the required inquiries do not apply uniformly, either within a local jurisdiction or across the state. 1-ER-0018, 1-ER-0079. Appellants do not come close to establishing clear error concerning these findings.

Similar to their Civil Rights Act argument, Appellants posit that the "reason to believe" provision's "interplay with other registration and list maintenance statutes ensures that the 'reason to believe' provision will not burden qualified electors with additional prerequisites to establishing their eligibility." Appellants' Br. at 46–47. But like the Different Practices Provision, the mandate of Section 8(b) of the NVRA does not create any balancing test or turn on establishing burden.

Lastly, no statutory text supports Appellants' position that the only uniformity 52 U.S.C. § 20507(b) requires is for a law to apply across a whole

jurisdiction. While Appellants argue that "[a]s long as the conditions precedent for instigating such inquiries apply uniformly across the jurisdiction," *id.* at 46, this argument boils down to a position that the "reason to believe" provision, no matter its practical effect, applies uniformly merely because it is a state law. Appellants ignore the district court's findings of non-uniformity and discriminatory effects on naturalized Arizona voters. And their argument would also lead to the absurd result that any law that has statewide effect would be exempted from Section 8(b)'s requirement of uniform and nondiscriminatory voter roll maintenance.

## CONCLUSION

For all the foregoing reasons, respectfully, this Court should affirm the district court's judgment enjoining A.R.S. § 16-165(I)'s "reason to believe" provision.

Dated: August 12, 2024           Respectfully submitted,

                            */s/ Michelle E. Kanter Cohen*

John A. Freedman            Jon Sherman
ARNOLD & PORTER KAY SCHOLER LLP  Michelle Kanter Cohen
601 Massachusetts Ave., N.W.    Beauregard Patterson
Washington, D.C. 20001        Nina Beck
(202) 942-5000               Emily Davis
                            FAIR ELECTIONS CENTER
                            1825 K St. NW, Ste. 701
                            Washington, D.C. 20006
                            (202) 331-0114

*Counsel for Plaintiffs-Appellees Poder Latinx, Chicanos Por La Causa, and Chicanos Por La Causa Action Fund*

**CERTIFCIATE OF COMPLIANCE**

In compliance with Federal Rules of Appellate Procedure 32(g), I certify that according to the word count feature of the word processing program used to prepare this brief, this brief contains 9,629 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f), and complies with the typeface requirements and length limits of Fed. R. App. P. 32(a) and Circuit Rule 32-1(a).

*/s/ Michelle E. Kanter Cohen*


**CERTIFICATE OF SERVICE**

I certify that I electronically filed the foregoing brief on August 12, 2024, with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

*/s/ Michelle E. Kanter Cohen*