**Case No. 24-3188**

(Consolidated)

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

MI FAMILIA VOTA, et al.,
*Plaintiffs-Appellees*,

v.

ADRIAN FONTES, et al.,
*Defendants-Appellants*,

and

WARREN PETERSEN, et al.
*Intervenor-Defendants-Appellants*.

On Appeal from the United States District Court for the District of Arizona, Case
No. 2:22-CV-00509-SRB (and Consolidated Cases)
The Honorable Susan R. Bolton

## APPENDIX

R. Adam Lauridsen, #243780
Ian Kanig, #295623
Imara McMillan, #337519
Sara R. Fitzpatrick, #337360
Courtney J. Liss, #339493
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

Attorneys for *Amici Curiae* League of Women Voters, League of Women Voters
of Arizona, Secure Families Initiative, and Modern Military Association of
America *(additional counsel on following page)*

Additional Counsel:

| | |
|---|---|
| Sarah Brannon*<br>(MD Fed. Bar No. 26139)<br>Patricia Yan*<br>(NY Bar No. 5499173)<br>American Civil Liberties Union<br>Foundation<br>915 15th Street NW<br>Washington, DC 20005<br>Telephone:  (202) 210-7287 | Sophia Lin Lakin*<br>(NY Bar No. 5499173)<br>American Civil Liberties Union<br>Foundation<br>125 Broad Street, 18th Floor<br>New York, NY 10004 |
| Jasleen Singh<br>(CA Bar No. 316596)<br>Sara Carter*<br>(NY Bar No. 5937560)<br>Brennan Center for Justice at NYU<br>School of Law<br>120 Broadway, Suite 1750<br>New York, NY 10271<br>Telephone: (646) 292-8310 | Phi Nguyen* (GA Bar No. 578019)<br>Roni Druks* (NY Bar No. 5594478)<br>DEMOS<br>80 Broad Street, 4th Floor<br>New York, NY 10004<br>Telephone: (212) 633-1405 |

Attorneys for *Amici Curiae* League of Women Voters, League of Women Voters of Arizona, Secure Families Initiative, and Modern Military Association of America

\* Application for Admission Pending

2772971

Exhibit 1          Final NVRA Section 7 Settlement Agreement

Exhibit 2          October 5, 2023 Secretary of State Data Report

2772971

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing APPENDIX with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate ACMS system on August 19, 2024. All participants in the case are registered ACMS users, and service will be accomplished by the appellate ACMS system.


DATED:  August 19, 2024          /s/ R. Adam Lauridsen
                                 R. Adam Lauridsen

2

# EXHIBIT 1

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into this 1st day of August, 2021 ("Effective Date"), by and between Katie Hobbs, in her official capacity as Secretary of State for the State of Arizona ("AZSOS"), the Arizona Health Care Cost Containment System ("AHCCCS"), the Arizona Department of Economic Security ("DES") and the League of Women Voters of Arizona, Mi Familia Vota Education Fund, and Promise Arizona (collectively "the Advocates"). AZSOS, AHCCCS, DES, and the Advocates may be collectively referred to as the "Parties," and each separately as a "Party." In consideration of the agreements and covenants set forth herein, for good and valuable consideration, the sufficiency of which is acknowledged hereby, the Parties agree as follows:

## ARTICLE 1 - RECITALS

1.1    The League of Women Voters of Arizona is a non-partisan political organization that encourages informed and active participation in the democratic process. The League of Women Voters of Arizona works to increase civic participation and education, and advocates for policies in the public interest.

1.2    Mi Familia Vota Education Fund is a national non-profit organization working to unite the Latino community and its allies to promote social and economic justice through increased civic participation.

1.3    Promise Arizona is a non-partisan, faith-based organization that seeks to positively impact Latino and immigrant communities by building leaders, encouraging sustained civic participation, and engaging with the political process for positive change.

1.4    Katie Hobbs is the Secretary of State for the State of Arizona, and chief election officer of Arizona. As Arizona's chief election officer, she is responsible for coordinating the State's responsibilities under the National Voter Registration Act ("NVRA"). *See* 52 U.S.C. § 20509; Ariz. Rev. Stat. § 16-142.

1.5    AHCCCS administers the Medicaid program and Children's Health Insurance Program ("CHIP"or "KidsCare"). Medicaid and CHIP are joint programs between the State of Arizona and the Centers for Medicare and Medicaid Services. AHCCCS administration is governed by federal law and Ariz. Rev. Stat. § 36-2901 *et seq.* Pursuant to § 20506(a) of the NVRA, AHCCCS is an office that provides public assistance.

1.6    DES is an agency of the State of Arizona established pursuant to Ariz. Rev. Stat. § 41-1952. The agency's responsibilities include the administration of employment services, individual and family services, and income maintenance services. *See* Ariz. Rev. Stat. § 41-1954. Pursuant to § 20506(a) of the NVRA, DES is an office that provides public assistance.

1.7     On November 14, 2017, the Advocates sent AZSOS, AHCCCS and DES a notice letter asserting that AZSOS, AHCCCS, and DES were not complying with the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501 *et seq.*, specifically Section 7 of the NVRA, 52 U.S.C. § 20506 ("Section 7"). *See* Exhibit A.

1.8     AHCCCS, AZSOS and DES dispute the allegations that each is noncompliant with Section 7 of the NVRA.

1.9     On August 14, 2018, the Advocates, AHCCCS and DES entered into an Interim Memorandum of Understanding ("MOU") in advance of the November 2018 election. *See* Exhibit B. As a part of that MOU, the parties to the MOU committed to reaching a long-term agreement.

1.10    The Parties seek to resolve the Advocates' claims raised in the notice letter through this Agreement to avoid the uncertainty, burden, and expense associated with litigation.

## ARTICLE 2 - DEFINITIONS

For purposes of this Agreement only, the bolded terms defined within this Article are applicable through the entire Agreement.

2.1     **AHCCCS Office.** "AHCCCS Office" means any AHCCCS location in the State of Arizona in which an individual may conduct an In-Person Transaction.

2.2     **CMS.** "CMS" means the Centers for Medicare and Medicaid Services.

2.3     **County Recorders.** "County Recorders" means the office or official for a given county within the State of Arizona tasked with certain election-related duties, including the maintenance of voter registration rolls, and administration of early voting within that county.

2.4     **Covered Transaction.** "Covered Transaction" means a transaction involving an application for public service or assistance, or a renewal or change of address relating to such service or assistance, as described in Section 7 of the NVRA, 52 U.S.C. § 20506.

2.5     **Customer.** "Customer" means any individual who interacts with AHCCCS or DES with respect to a Covered Transaction.

2.6     **DES Office.** "DES Office" means any DES location in the State of Arizona in which an individual may conduct an In-Person Transaction.

2.7     **Documentary Proof of Citizenship.** "Documentary Proof of Citizenship" means the documents that a voter must provide to prove United States Citizenship in order to be registered as a full ballot voter in the State of Arizona.

2.8    **FNS.** "FNS" means the United States Department of Agriculture Food and Nutrition Services.

2.9    **Health-E-Arizona Plus or HEAplus.** "Health-E-Arizona Plus" or "HEAplus" means the internet application through which an AHCCCS or DES Customer may conduct a Covered Transaction.

2.10    **In-Person Transaction.** "In-Person Transaction" means any Covered Transaction other than a Remote Transaction.

2.11    **Remote Transaction.** "Remote Transaction" means a Covered Transaction conducted by mail, telephone, internet or other electronic means.

2.12    **Voter Preference Form.** "Voter Preference Form" means the form required pursuant to Section 7 of the NVRA, 52 U.S.C. § 20506(a)(6)(B).

2.13    **Voter Preference Question.** "Voter Preference Question" means the question provided in 52 U.S.C. § 20506(a)(6)(B)(i).

2.14    **Voter Registration Application.** "Voter Registration Application" means the mail voter registration application form described in Section 9 of the NVRA, 52 U.S.C. § 20508(a)(2), or the equivalent Arizona state voter registration application form, that is coded to indicate that the source of the application is a Section 7 Agency, as that term is defined in 52 U.S.C. § 20506(a)(2).

## ARTICLE 3 - AGREEMENT TERMS

### 1.    IN-PERSON TRANSACTIONS

3.1    AHCCCS and DES will provide a Voter Preference Form to all Customers engaging in an In-Person Transaction at an AHCCCS or DES Office. The Voter Preference Form will contain the information required under 52 U.S.C. § 20506(a)(6)(B).

3.2    The Voter Preference Form will be provided in both English and Spanish. AHCCCS and DES will ensure that such forms comply with Arizona's obligations under Section 203 of the Voting Rights Act, including, where required by the Voting Rights Act, providing information to Customers on how to receive assistance in Navajo and Apache.

3.3    AHCCCS and DES will distribute a Voter Registration Application with every Covered Transaction, unless the Customer declines, in writing, to register to vote. AHCCCS and DES will distribute a coded Voter Registration Application to those Customers who leave the Voter Preference Question blank.

3.4    AHCCCS and DES will provide to each Customer the same degree of assistance with regard to the completion of the Voter Registration Application as they

provide to Customers with the completion of their own forms. See 52 U.S.C. § 20506(a)(6)(C). As a part of the assistance that DES and AHCCCS will provide to Customers, caseworkers will review the Voter Registration Application and notify the Customer if all of the required questions (indicated by an asterisk/star or red shaded line number on the application) have not been completed or if the application has not been signed, make photocopies of any Documentary Proof of Citizenship that a Customer brings with them to an In-Person Transaction, and attach the copied documents to the Customer's completed Voter Registration Application when submitting it to election officials.

3.5       AHCCCS and DES will include in their "Assistance Eligibility Policy Manual" and "Cash and Nutrition Assistance Policy Manual," respectively, sections that will provide caseworkers who conduct Covered Transactions with informational resources to provide assistance with voter registration and identify the requirements for eligibility and Documentary Proof of Citizenship. DES and AHCCCS will provide Advocates' Counsel and the AZSOS NVRA Coordinator with copies of the new language to be included in the manuals as soon as practicable prior to implementation. DES and AHCCCS agree to consider in good faith any reasonable comments or edits that Advocates' Counsel or the AZSOS NVRA Coordinator provide within fifteen (15) days thereafter.

3.6       AHCCCS and DES will collect and return to County Recorders all Voter Registration Applications they receive from Customers as well as any supporting Documentary Proof of Citizenship provided by the Customer and photocopied in connection with an In-Person Transaction within the time periods required by the NVRA. Each DES office will count and record the number of completed Voter Registration Applications returned to County Recorders each week.

## 2.    REMOTE TRANSACTIONS THROUGH HEALTH-E-ARIZONA PLUS PORTAL

3.7       AHCCCS and DES will provide voter registration services (as defined in 52 U.S.C. § 20506(a)(4)(A)) in connection with all Covered Transactions conducted via HEAplus or any equivalent online platform through which Customers may conduct Covered Transactions.

3.8       AHCCCS and DES will modify HEAplus to ensure that, upon the Customer's completion and submission of the application for benefits, the Customer's screen will immediately and automatically advance to a screen containing the Voter Preference Question. That screen will include the additional language described in Section 3.9 of this Agreement.

3.9       AHCCCS and DES will modify HEAplus to provide Customers who select "yes" in response to the Voter Preference Question, or who do not answer the Voter Preference Question, with the following options for receiving a Voter Registration Application:

      (a)     Select to register to vote online. Customers who select this option will be offered their choice of one of the three additional options listed below. The language providing these options will be accompanied by an explanatory statement that only individuals with an Arizona state ID card or driver's license obtained since 1996 can use the Service Arizona online system to register to vote;

          1)     Be re-directed to the Service Arizona voter registration website (or other official online platform currently in use) at the end of their HEAplus transaction;

          2)     Be texted the link to Service Arizona; or

          3)     Be emailed the link to Service Arizona.

      (b)     Select to receive the Voter Registration Application the same way the Customer receives their other letters and notices from HEAplus.

      (c)     Select to have the Voter Registration Application mailed through the United States Postal Service.

This screen will also include an explanatory statement concerning the requirement in Arizona to provide Documentary Proof of Citizenship to prove eligibility to vote in state and local elections.

3.10     All of the changes to HEAplus outlined in Section 3.9 will appear in both English and Spanish.

3.11     AHCCCS and DES will implement the Customer's election for how to receive the Voter Registration Application as identified in Section 3.9.

3.12     If the Customer fails to answer the Voter Preference Question or fails to select an option for how to receive the Voter Registration Application, a Voter Registration Application will automatically be provided to the Customer through the same method as the Customer's other letters or notices that they receive from HEAplus.

3.13     Any time that AHCCCS or DES provides a Voter Registration Application to a Customer in connection with a Remote Transaction, AHCCCS or DES shall include an explanatory letter ("Explanatory Letter") or a link to an Explanatory Letter, in English and Spanish. The Explanatory Letter shall:

      (a)     Explain that the Customer should mail or hand-deliver their completed Voter Registration Application to the AZSOS or

to the County Recorder in the county in which the Customer lives, or if needed the Customer can also mail or hand-deliver their completed Voter Registration Application to any AHCCCS or DES Office, including when returning other documents requested by AHCCCS or DES;

(b) Explain that the Customer can visit any AHCCCS or DES Office in person to receive assistance with registering to vote or updating their voter registration address;

(c) Explain that Customers may call the toll-free number maintained by the AZSOS for assistance with voter registration and information on upcoming deadlines to register; and

(d) Include the notices required by 52 U.S.C. § 20506(a)(6)(B).

3.14    For purposes of interpreting the obligations in Sections 8 and 9 of this Agreement that emanate from the changes to HEAplus described in Sections 3.7 through 3.10, the implementation date of those changes to HEAplus will be deemed to be May 31, 2021, concurrent with the start of the Term of this Agreement.

3.15    Within 180 days of the Effective Date, DES and AHCCCS will modify HEAplus so that it will include references in Navajo and Apache to the availability of language assistance services and will provide the telephone numbers for the AHCCCS and DES language assistance hotlines.

## 3.    REMOTE TRANSACTIONS VIA TELEPHONE

3.16    AHCCCS and DES will ensure that during every Covered Transaction that occurs via telephone, the notices required by 52 U.S.C. § 20506(a)(6)(B) and the Voter Preference Question will be conveyed to the Customer. Unless the Customer states that they do not wish to register to vote, during the same telephone transaction, AHCCCS and DES will offer the three options listed in Section 3.9 as options for how the Customer will receive the Voter Registration Application. If the Customer does not select one of the options listed in Section 3.9, DES and AHCCCS will automatically provide voter registration materials to the Customer through the same method as the Customer's other letters that they receive from HEAplus. If the Customer declines to register to vote the declination will be recorded in writing or electronically.

3.17    AHCCCS and DES will endeavor to record all Remote Transactions via telephone and will develop a system that allows for regular audits to ensure that Customers who engage in a Covered Transaction over the telephone receive both the NVRA notices required by 52 U.S.C. § 20506(a)(6)(B) and the Voter Preference Question, and that Customers' responses are accurately recorded. Notwithstanding the foregoing, the Parties

acknowledge that from time to time, and for reasons unknown, any given call may not record or may not record correctly or completely.

## 4.    MEDICAID RENEWALS

3.18        For automated Medicaid renewals, AHCCCS and DES will provide to the Customer, as a part of the renewal, a voter information packet that contains a Voter Registration Application, and an Explanatory Letter as described in Section 3.13 of this Agreement.

3.19        For Medicaid renewals that require additional information from the beneficiary, AHCCCS and DES will ask that the Customer provide a response to the Voter Preference Question. AHCCCS and DES will then provide a Voter Registration Application and an Explanatory Letter as described in Section 3.13 of this Agreement to any Customer who either: (1) returns a Voter Preference Form on which the Customer has marked "Yes" in response to the Voter Preference Question; (2) returns a Voter Preference Form on which the Customer has not marked any response to the Voter Preference Question; or (3) does not return the Voter Preference Question.

## 5.    REMEDIAL MAILINGS

### On-going Remedial Mailings

3.20        AHCCCS confirms that as of May 1, 2020 it is sending a Voter Registration Mailing to the household of each Customer who engages in a Covered Medicaid or KidsCare Transaction through HEAplus without worker intervention, and who receives an automated Medicaid or KidsCare Renewal Letter or Notice.

3.21        AHCCCS confirms that the Voter Registration Mailing described in Section 3.20 of this Agreement includes:

   (a)    An Arizona State Voter Registration Form marked with a specific code in accordance with Arizona Secretary of State's 2019 Election Procedures Manual Chapter 1, Section III (B) Tracking and Reporting Source of Registration, to track voter registration applications that originate from public assistance clients; and

   (b)    An Explanatory Letter as described in Section 3.13.

3.22        The Voter Registration Mailing outlined in Section 3.21 of this Agreement will continue until such time as the changes to HEAplus outlined in Sections 3.7-3.10 of this Agreement are implemented.

3.23      The Voter Registration Mailing outlined in Section 3.21 of this Agreement shall be sent within a week of the date upon which the Customer's Medicaid or KidsCare Renewal Letter or Notice was sent.

3.24      AHCCCS confirms that the Voter Registration Mailing outlined in Section 3.21 of this Agreement is sent bearing the return address of AHCCCS as appropriate for the Customer, using envelopes similar to those the Agency regularly uses to correspond with Customers.

## 6.    SIGNAGE IN AHCCCS AND DES OFFICES

3.25      Within 120 days of the Effective Date, AHCCCS and DES shall display information regarding the availability of language assistance in prominent locations in waiting areas in each AHCCCS Office and DES Office where an In-Person Transaction can occur. These displays will explain the availability of language assistance services and will provide the telephone numbers for the AHCCCS and DES language assistance hotlines. AHCCCS and DES may display this information digitally, in print, via audio recording or in any other medium that effectively communicates the existence of voter registration assistance to Customers who may require it. These displays will be in English, Spanish and, where required by Section 203 of the Voting Rights Act, will also include references to language assistance in Navajo and Apache.

## 7.    NVRA CONTACTS

3.26      AZSOS shall designate a staff position whose duties include being the "AZSOS NVRA Coordinator." The AZSOS NVRA Coordinator does not need to be a new position, the designee may be an existing staff member. The AZSOS NVRA Coordinator will have the duty to coordinate and oversee compliance with the requirements of Section 7 of the NVRA and to fulfill the monitoring and oversight obligations set forth in this Agreement. The AZSOS NVRA Coordinator may assign tasks to staff at the AZSOS to assist in fulfilling this duty. AZSOS shall notify Advocates' Counsel of the identity of the AZSOS NVRA Coordinator within 30 days of the Effective Date of this Agreement.

3.27      AHCCCS and DES shall each designate an individual, office or officer who will be the "[AHCCCS or DES] NVRA Point of Contact." The AHCCCS and DES NVRA Points of Contact will serve as the designated points of contact for the AZSOS NVRA Coordinator where such contacts are required for purposes of compliance with the provisions of this Agreement. The AHCCCS and DES NVRA Points of Contact do not need to be new positions or new offices; an existing employee or office in each of AHCCCS and DES may be designated as the AHCCCS and DES Point of Contact, respectively. DES and AHCCCS each shall notify Advocates' Counsel of the NVRA Point of Contact within 30 days of the Effective Date of this Agreement.

## 8.    TRAINING

3.28        Within forty-five days of the Effective Date of this Agreement, AHCCCS and DES shall each provide training to staff and supervisors who process Covered Transactions regarding the procedures they must follow in connection with voter registration services (as defined in 52 U.S.C. §20506(a)(4)(A)) during a Covered Transaction. The DES and AHCCCS NVRA Points of Contact and the AZSOS NVRA Coordinator shall work collaboratively to develop the training.

3.29        The trainings outlined in Section 3.28 will also be provided to all new DES and AHCCCS staff, supervisors, and contracted agents prior to their processing of a Covered Transaction.

3.30        Within ninety days of the implementation of the changes to HEAplus outlined in Sections 3.7-3.10 of this Agreement, AHCCCS and DES shall each provide training to staff and supervisors who process Covered Transactions through HEAplus regarding the updates to the procedures that they must follow in connection with voter registration services (as defined in 52 U.S.C. §20506(a)(4)(A)) during a Covered Transaction through HEAplus. The DES and AHCCCS NVRA Points of Contact and the AZSOS NVRA Coordinator shall work collaboratively to develop the training.

3.31        The training outlined in Section 3.30 of this Agreement will be provided to all new AHCCCS and DES staff, supervisors and contracted agents who are hired after the changes to HEAplus outlined in Sections 3.7-3.10 are implemented and who process or supervise the processing of Covered Transactions as part of new-hire training.

3.32        All AHCCCS and DES staff and supervisors who process Covered Transactions will receive annual training regarding NVRA compliance.

3.33        DES and AHCCCS provided Advocates' Counsel with copies of their existing NVRA policies and training materials in March of 2020. Advocates' Counsel provided suggested edits to those training materials in May 2020. DES and AHCCCS agree to consider in good faith those edits.

3.34        DES and AHCCCS will provide Advocates' Counsel and the AZSOS NVRA Coordinator with copies of the new training materials to be used in the trainings outlined in Section 3.28 and 3.30 as soon as practicable prior to implementation. DES and AHCCCS agree to consider in good faith any reasonable comments or edits to the training materials that Advocates' Counsel and the AZSOS NVRA Coordinator provide within fifteen days thereafter.

3.35        Copies of the most up-to-date NVRA training materials and any written guidance relating to changes to voter registration materials or procedures pursuant to this Agreement shall be available for on-demand access by staff through the AHCCCS and DES intranets.

3.36        As to any trainings that occur on or after the Effective Date and through the Term of this Agreement, AHCCCS and DES will maintain an NVRA training history for each staff member who processes Covered Transactions. AHCCCS and DES shall not be required to maintain any such records following the expiration of the Term of this Agreement.

3.37        AZSOS will provide bi-annual training to County Recorders relating to how to identify and process Voter Registration Applications received from Section 7 Agencies. The first training will occur during the regularly-scheduled Election Officer Certification trainings in 2021 provided by the AZSOS pursuant to Ariz. Rev. Stat. § 16-407. The training will include notice of the changes to HEAplus described in Section 3.7- 3.10.

## 9.    DATA COLLECTION AND REPORTING

3.38    Beginning within 60 days of the implementation of the changes to HEAplus described in Sections 3.7- 3.10, and continuing for each upcoming quarter of a calendar year for the duration of the Term of this Agreement, the DES and AHCCCS NVRA Points of Contact shall collect and report to the AZSOS NVRA Coordinator the following data:

(a)    The total number of In-Person Transactions processed at DES Offices or AHCCCS Offices;

(b)    The total number of Remote Transactions processed by DES and AHCCCS combined;

(c)    The total numbers of each response to the Voter Preference Question (Yes, No, and blank) recorded in HEAplus;

(d)    The total number of individuals who, in connection with a Remote Transaction, select the option for online voter registration to be redirected to Service Arizona;

(e)    The total number of individuals who, in connection with a Remote Transaction, elect to receive a text with the online voter registration information;

(f)    The total number of individuals who, in connection with a Remote Transaction, elect to receive an email with the online voter registration information;

(g)    The total number of individuals who, in connection with a Remote Transaction, elect to receive the Voter Registration Application mailed through the United States Postal Service.

3.39    During the Term of this Agreement, the AZSOS NVRA Coordinator shall review the data reported by the DES and AHCCCS NVRA Points of Contact described in Section 3.38.

3.40    For each upcoming quarter of a calendar year beginning after the implementation of the changes to HEAplus described in Section 3.7-3.10 of this Agreement and continuing during the Term of this Agreement, the AZSOS NVRA Coordinator shall determine and review by county the total number of coded Section 7 Voter Registration Applications processed by each county recorder. This count shall include the total number of registrants in the statewide voter registration database with a Section 7 registration source code and an original registration date or effective date of change within the applicable calendar quarter (e.g., April 1 to June 30, 2021), broken down by status and status reason.

3.41    For each upcoming quarter of a calendar year beginning after the implementation of the changes to HEAplus described in Section 3.7-3.10 and continuing during the Term of this Agreement, the AZSOS NVRA Coordinator shall compare the total number of In-Person Transactions by DES and AHCCCS as described in Section 3.38(a) with the total number of Section 7 coded Voter Registration Applications processed by each of the County Recorders.

3.42    For each upcoming quarter of a calendar year beginning after the implementation of the changes to HEAplus described in Section 3.7-3.11 of this Agreement and continuing during the Term of this Agreement, the AZSOS NVRA Coordinator shall compare the total number of Remote Transactions processed by DES or AHCCCS as described in Section 3.38(b) with the total number of individuals who, in connection with a Remote Transaction, (i) select the option for online voter registration to be redirected to Service Arizona, (ii) elect to receive an text with the online voter registration information as described in Section 3.38(f), (iii) elect to receive an email with the online voter registration information as described in 3.38(g), and (iv) elect to receive the Voter Registration Application mailed through the United States Postal Service as described in Section 3.38(h).

3.43    For each upcoming quarter of a calendar year beginning after the implementation of the changes to HEAplus described in Section 3.7-3.10 and continuing during the Term of this Agreement, the AZSOS NVRA Coordinator shall compare the total number of individuals who, in connection with a Remote Transaction, elect to receive the Voter Registration Application mailed through the United States Postal Service each quarter with the total number who elected to receive the Voter Registration Application mailed through the United States Postal Service the quarter before.

3.44    The AZSOS NVRA Coordinator shall follow up on any potential material discrepancies or variations over time that may be identified from review of data described in Sections 3.39 -3.43 from quarter-to-quarter. Material discrepancies requiring follow-up include, but are not limited to, a significant drop in the number of coded Section 7 Voter Registration Applications processed by County Recorders, a significant change in the ratio

of In-Person Transactions reported by DES or AHCCCS pursuant to Section 3.38(a) to the total number of coded Section 7 Voter Registration Applications processed by County Recorders, and a significant decline in the total number of individuals who elect to receive the Voter Registration Application mailed through the United States Postal Service.

3.45    Steps to address any material discrepancies as described in Section 3.44 of this Agreement include, but are not limited to, speaking with the DES or AHCCCS NVRA Points of Contact, conducting remedial AZSOS NVRA trainings, checking on the operation of the underlying systems within the control of the AZSOS, such as the AZSOS voter registration database, and speaking with staff in County Recorder offices. Regarding DES or AHCCCS staff, contracted agents, or the operation of HEAplus, the AZSOS shall direct all inquiries related to any material discrepancies to the DES and AHCCCS NVRA Points of Contact for resolution.

3.46    Beginning the first complete quarter of a calendar year after the implementation of the changes to HEAplus described in Section 3.7- 3.10, or in May 2021, whichever is later, and continuing during the Term of this Agreement, AZSOS shall submit to the Advocates' Counsel, or post publicly on the AZSOS website, a report that shall include the following components:

       (a)    All data collected and reviewed under the Data Collection and Reporting portion of this Agreement;

       (b)    Beginning the third full quarter of this agreement, a summary of any material discrepancies identified by the AZSOS NVRA Coordinator when evaluating the data per the requirements of this Agreement, and a summary of any follow-up conducted; and

       (c)    Copies of all new or revised AZSOS NVRA policies or procedures, rules or regulations, advertisements, notices, and training materials used in the preceding reporting period and not previously disclosed or those to be used in the future.

       (d)    The total number of Section 7 Agency Voter Registration Applications reported to the U.S. Election Administration Commission ("EAC").

3.47    If the Advocates believe there are material discrepancies over time in the data reported pursuant to Section 3.46(a) they may request that the AZSOS NVRA Coordinator work with the DES and AHCCCS NVRA Points of Contact to identify and resolve any underlying causes of the discrepancies. The Advocates may request follow up once a quarter for each quarter of a calendar year, beginning after the first complete quarter of a calendar year after the implementation of the changes to HEAplus described in Sections

3.7-3.10 of this Agreement and continuing during the Term of this Agreement. The AZSOS NVRA Coordinator will inform Advocates' Counsel within 30 days from the date of their request as to what remedial measures, if any, were taken or are planned by DES, AHCCCS or AZSOS in response to the material discrepancies or changes over time in the data as identified by Advocates.

3.48    If an AHCCCS or DES employee determines, at any point, that a Customer did not receive a Voter Registration Application as required under Section 7 of the NVRA or this Agreement the employee shall, within 5 days send a remedial mailing to the Customer and enclose a Voter Registration Application and Explanatory Letter.

## ARTICLE 4 - DISPUTE RESOLUTION PROCEDURES

4.1    The Parties agree that it is in their mutual interests to resolve disputes arising under this Agreement informally, and further agree that compliance with the process described in Sections 4.2-4.4 is required prior to the pursuit of any legal remedies.

4.2    In the event that any Party contends that another Party has failed to substantially perform a material obligation in this Agreement, the Party shall provide written notice of said failure to all Parties and shall identify which Party they allege to be in breach. This notice shall state the nature of the breach, and if applicable and known, the date(s), location(s), and person(s) with knowledge of the breach ("Notice"). The Notice may propose a plan to cure any breach. The Notice shall request a meeting or telephone conference with all Parties for the purpose of resolving the alleged breach. The Parties to the Notice shall use their best efforts to meet (or confer by telephone) on the issues identified in the Notice within 30 calendar days of receipt of said Notice. For purposes of this section only, a "material obligation" means an obligation which, if not performed, would defeat the purpose of this Agreement for the non-breaching Party.

4.3    The Party identified in the Notice shall have 30 calendar days from the date the written Notice is received to respond in writing. The Notice shall be deemed received five calendar days following the date post-marked on the envelope denoting deposit in the United States Postal Service. The response shall state: whether the Party agrees there has been a breach of a material obligation and, if the Party does not agree, the basis for the disagreement; the Party's proposed method of, and the timing of, any required cure; any mitigating factors causing or tending to cause the delay or breach; and such other information as the Party may deem necessary or proper ("Response"). The Response shall be directed to the Party alleging the breach and shall also be distributed to all Parties to this Agreement.

4.4    The Party to whom the Response is addressed shall have thirty (30) calendar days from the date the Response is received to reply in writing. The Response shall be deemed received five calendar days following the date post-marked on the envelope denoting deposit in the United States Postal Service. The Parties shall negotiate in good faith and use all reasonable efforts to resolve disputed issues.

4.5     This Agreement may be enforced only by the Parties to this Agreement. Nothing in this Agreement is intended to confer any rights or remedies on any person or entity other than the Parties hereto.

## ARTICLE 5 - ATTORNEYS FEES AND EXPENSES

5.1     The Parties agree that each Party shall bear their own costs and attorneys' fees that relate in any way to this Agreement, the negotiations attendant to this Agreement, any other matter arising out of or related in any way to the Advocates' November 14, 2017 letter, and all actions taken or contemplated thereafter. However, if an action becomes necessary to enforce the terms of this Agreement, then the prevailing Party shall be entitled to an award of its reasonable attorneys' fees and costs, as determined by a Court of competent jurisdiction, in seeking to enforce the terms of this Agreement. An award of reasonable attorneys' fees and cost does not include any activity engaged pursuant to Article 4 of this Agreement.

## ARTICLE 6 - ADDITIONAL PROVISIONS

6.1     **Binding Nature.** This Agreement is binding on the Parties upon full execution by each of the Parties. The terms of this Agreement shall be binding on all Parties. Upon signature, Advocates release and waive any and all claims against DES, AHCCCS and AZSOS regarding the voter registration activities of DES, AHCCCS and AZSOS that are based on Section 7 of the NVRA and that have been asserted or could have been asserted up until the Effective Date of this Agreement. Nothing in this Agreement shall be deemed to release, waive or adjudicate any claim arising after the execution of the Agreement. Nothing in this Agreement will prevent Advocates' Counsel from taking action to enforce compliance with the NVRA if DES, AHCCCS and/or AZSOS do not act in good faith to take the steps as required in this Agreement.

6.2     **Effective Date.** For purposes of this Agreement, the Effective Date will be the date set forth in the first paragraph above.

6.3     **Entire Agreement.** This Agreement embodies the entire agreement of the Parties with regard to the subject matter hereof. There are no representations, promises, warranties, understandings, or agreements expressed or implied, oral or otherwise, in relation thereto, except those expressly referred to or set forth herein. The Parties acknowledge that the execution and delivery of this Agreement is their respective free and voluntary act and deed, and that said execution and delivery have not been induced by, nor done in reliance upon, any representations, promises, warranties, understandings, or agreements made by any other Party, its agents or representatives.

6.4     **Changes in Writing.** This Agreement shall not be amended orally or by performance. Any amendment must be made in written form and signed by duly authorized representatives of all the Parties.

6.5     **Interpretation.** The Parties have participated in the drafting of this Agreement and, accordingly, any claimed ambiguity shall not be presumptively construed for or against any Party.

6.6     **Time of the Essence.** Time is expressly made of the essence in this Agreement.

6.7     **Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall be considered an original counterpart. Any signed Agreement or signature page to this Agreement that is transmitted by facsimile or in the portable document format (.pdf) shall be treated in all respects as an original Agreement or signature page.

6.8     **Warranty of Right and Authority.** Each of the Parties to this Agreement expressly acknowledges that the execution, delivery, and performance of this Agreement has been duly authorized by all necessary action on its behalf. The Parties further warrant that the person signing on their behalf is duly authorized by appropriate corporate or other action to sign this Agreement and bind their respective entities to it.

6.9     **Jurisdiction.** The Parties acknowledge and agree that the United States District Court, District of Arizona (the "Court") shall have the exclusive jurisdiction over the interpretation, enforcement, and any other matter relating to this Agreement and that any claims arising out of, in connection with, or otherwise related in any manner to this Agreement shall be properly brought only before that Court.

6.10    **Construction.** Should any paragraph, clause, or provision of this Agreement be construed to be against public policy or determined by the Court of competent jurisdiction to be void, invalid, or unenforceable, such construction and decision shall affect only those paragraphs, clauses, or provisions so construed or interpreted, and shall in no way affect the remaining paragraphs, clauses, or provisions of this Agreement, which shall remain in force.

6.11    **No Admission of Liability.** This Agreement is not an admission of any liability by any of the Parties but is a compromise, and this Agreement shall not be treated as an admission of liability.

6.12    **Term.** The term of this Agreement shall be twenty-four (24) months from the date that the changes to HEAplus outlined in Sections 3.8-3.10 are completed, or the 31st day of May 2021, whichever is later ("Term").

6.13    **Notices.** All notices or other communications to any Party to this Agreement shall be in writing and shall be personally delivered or sent by a reputable overnight mail service (e.g., Federal Express), by first class mail (certified or registered), or by email and shall be given to the respective Parties hereto at the following addresses. Any Party hereto may change the name and address of the person designated to receive Notice on behalf of such Party by Notice given as provided in this paragraph. Notices shall be deemed received on the date that delivery is confirmed or on the date that the Notice is sent via email.

For Advocates:

Ceridwen Cherry, ACLU, 915 15th St NW, Washington DC 20005, ccherry@aclu.org, 202.675.2337

For AZSOS:

Bo Dul, Office of the Secretary of State, 1700 West Washington, 7th Floor, Phoenix, AZ 85007, bdul@azsos.gov

Kara Karlson, Office of the Attorney General, State Government Division, 2005 N. Central Ave., Phoenix, AZ 85007, Kara.Karlson@azag.gov, 602.542.8118.

For AHCCCS and DES:

Brian Schulman, Ballard Spahr LLP, One East Washington Street, Suite 2300, Phoenix, Arizona, 85004, schulmanb@ballardspahr.com, 602.798.5407.

Matthew J. Devlin, General Counsel, Arizona Health Care Cost Containment System, 801 E. Jefferson Street, Phoenix, Arizona 85034, matt.devlin@azahcccs.gov, 602.417.4008.

Nicole C. Davis, General Counsel and Chief Governance Officer, Arizona Department of Economic Security, 1789 W. Jefferson, P.O. Box 6123, Mail Drop 1113, Phoenix Arizona 85007.

Section Chief Counsel, Child and Family Protection Division, Civil Criminal Litigation and Advice, Office of the Attorney General, 2005 North Central Avenue, Site Code 040A, Phoenix, Arizona 85004.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date set forth on page one hereof.

| League Of Women Voters of Arizona | Katie Hobbs, in her official capacity as Secretary of State for the State of Arizona |
|---|---|
| By:<br>Its: | Katie Hobbs, Secretary of State, State of Arizona |
| Mi Familia Vota Education Fund | Arizona Department of Economic Security |
| By: HECTOR SANCHEZ BARBA<br>Its: EXECUTIVE DIRECTOR AND CEO | By:<br>Its: |
| Promise Arizona | Arizona Health Care Cost Containment System |
| By:<br>Its: | By:<br>Its: |

| Promise Arizona | Arizona Health Care Cost Containment System |
|---|---|
| By: _Petra Falcon_<br>Its: _Executive Director_ | By:<br>Its: |

Section Chief Counsel, Child and Family Protection Division, Civil Criminal Litigation and Advice, Office of the Attorney General, 2005 North Central Avenue, Site Code 040A, Phoenix, Arizona 85004.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date set forth on page one hereof.

| League Of Women Voters of Arizona | Katie Hobbs, in her official capacity as Secretary of State for the State of Arizona |
|---|---|
| By: _Piny Sherran_<br>Its: _President Elect,_<br>_State Advocacy Chair_ | Katie Hobbs, Secretary of State, State of Arizona |
| Mi Familia Vota Education Fund | Arizona Department of Economic Security |
| By:<br>Its: | By:<br>Its: |
| Promise Arizona | Arizona Health Care Cost Containment System |
| By:<br>Its: | By:<br>Its: |

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date set forth on page one hereof.

| League Of Women Voters of Arizona | Katie Hobbs, in her official capacity as Secretary of State for the State of Arizona |
|---|---|
| By:<br>Its: | 7/26/21<br>Katie Hobbs, Secretary of State, State of Arizona |
| Mi Familia Vota Education Fund | Arizona Department of Economic Security |
| By:<br>Its: | By:<br>Its: |
| Promise Arizona | Arizona Health Care Cost Containment System |
| By:<br>Its: | By:<br>Its: |

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date set
forth on page one hereof.

| League Of Women Voters of Arizona | Katie Hobbs, in her official capacity as Secretary of State for the State of Arizona |
| --- | --- |
| *By:*<br>*Its:* | Katie Hobbs, Secretary of State, State of Arizona |
| Mi Familia Vota Education Fund | Arizona Department of Economic Security |
| *By:*<br>*Its:* | *By:* _____<br>*Its:* Deputy Director of Operations/ Chief Operations Officer |
| Promise Arizona | Arizona Health Care Cost Containment System |
| *By:*<br>*Its:* | *By:*<br>*Its:* |

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date set forth on page one hereof.

| League Of Women Voters of Arizona | Katie Hobbs, in her official capacity as Secretary of State for the State of Arizona |
|---|---|
| *By:*<br>*Its:* | Katie Hobbs, Secretary of State, State of Arizona |
| Mi Familia Vota Education Fund | Arizona Department of Economic Security |
| *By:*<br>*Its:* | *By:*<br>*Its:* |
| Promise Arizona | Arizona Health Care Cost Containment System<br>*K. Cohn Challacombe* |
| *By:*<br>*Its:* | *By:* *Deputy Director of*<br>*Its:* *Business Operations* |

Exhibit A

  

November 14, 2017

*Via certified mail and email*

Michele Reagan
Arizona Secretary of State
Office of the Secretary of State
1700 W Washington Street, 7th Floor
Phoenix, AZ 85007-2808

RE: *Arizona's Compliance with the National Voter Registration Act*

Dear Secretary Reagan:

Recognizing that the right to vote is "at the heart of our democracy," *Burson v. Freeman*, 504 U.S. 191, 198 (1992), and the burdens imposed on that right by onerous registration requirements, Congress enacted the National Voter Registration Act of 1993 ("NVRA") to ease obstacles to voting by providing individuals with additional opportunities to register to vote. *See* S. Rep. No. 103-6 (1993). In enacting the NVRA, Congress specifically found that "unfair registration laws and procedures can have a direct and damaging effect on voter participation in elections for Federal office and disproportionately harm voter participation by various groups, including racial minorities." 52 U.S.C. § 20501(a)(3).

We are writing on behalf of the League of Women Voters of Arizona, Mi Familia Vota Education Fund and Promise Arizona, as well as persons eligible to register to vote that these organizations represent, and others similarly situated, to notify you that the State of Arizona is not in compliance with Section 5, Section 7, or Section 8 of the NVRA, 52 U.S.C. §§ 20504; 20506; 20507, and that State agencies are failing to meet their obligations under Section 203 of the Voting Rights Act ("VRA") in counties covered by its protections.

Section 5 of the NVRA requires states to provide individuals with an opportunity to register to vote when they conduct certain driver license and non-driver identification card transactions. Section 7 requires states to provide the opportunity to register to vote and to provide assistance with that voter registration during public assistance applications, recertifications, renewals, and changes of address. Section 8 of the NVRA requires states to ensure that every eligible applicant is in fact added to the voter registration rolls when they submit their voter registration application to a designated voter registration agency before the prescribed deadline. Section 8 also requires that if an individual moves to another address within the same registrar's jurisdiction, the registrar shall update the registrant's addresses on the voter registration rolls. Arizona is failing to comply fully with the requirements of these three Sections of the NVRA. Extensive review of available voter registration data, and public documents and an extensive on-the-ground investigation of agency practices have directed us to this conclusion.

As Arizona's chief election official, you are ultimately responsible for the State's compliance with the NVRA. *See* Ariz. Rev. Stat. § 16-142 ("The secretary of state or the secretary's designee is . . . [the] chief state election officer who is responsible for coordination of state

1

responsibilities under the national voter registration act of 1993"); *Harkless v. Brunner*, 545 F.3d 445, 451- 53 (6th Cir. 2008). We urge you to take immediate steps, in conjunction with relevant state agencies, including the Arizona Department of Transportation (ADOT), the Arizona Department of Economic Security (DES), and the Arizona Health Care Cost Containment System (AHCCCS), and relevant Arizona counties, to bring the State of Arizona into compliance with Sections 5, 7, and 8 of the NVRA, and bring Arizona into compliance with Section 203 of the Voting Rights Act.

ACLU, ACLU of Arizona, Dēmos, and the Lawyers' Committee for Civil Rights Under Law have years of experience in working with states to ensure compliance with the NVRA and other federal voting rights statutes. We hope to work amicably with you to remedy Arizona's non-compliance but will pursue litigation if necessary.

## I.    VIOLATIONS OF SECTION 5 OF THE NVRA

### A.    Arizona's Obligations Under Section 5 of the NVRA

Section 5 of the NVRA requires the Arizona Department of Transportation ("ADOT") and its Motor Vehicle Division ("MVD") to provide individuals with an opportunity to register to vote in conjunction with an initial or renewal application for a driver license or state-issued identification card ("ID card"). 52 U.S.C. § 20504(a)(1), (d).[1] The NVRA mandates that when an individual applies for or renews a driver license or ID card that application also "serve as an application for voter registration . . . unless the applicant fails to sign the voter registration application." 52 U.S.C. § 20504(a)(1). A voter registration application "shall" be included as part of every application for state driver license or ID card. *Id.* § 20504(c)(1). If an individual is already registered, their driver license application or renewal shall "update any previous voter registration[.]" 52 U.S.C. § 20504(a)(2).

Additionally, Section 5(d) of the NVRA requires that any request ADOT receives to change the address associated with a driver license must serve to automatically update the client's voter registration information unless the client affirmatively opts out. *Id.* § 20504(d) (noting that "[a]ny change of address form submitted in accordance with state law shall serve as a notification of change of address for voter registration . . . unless the registrant states on the form that the change of address is not for voter registration purposes").[2]

ADOT must provide these voter registration services regardless of whether a transaction takes place in person at an ADOT office or remotely via phone, mail, email, or internet. *See, e.g.,* *Stringer v. Pablos*, No. 5:16-CV-257-OLG, 2017 WL 1861910, at *7 (W.D. Tex. Mar. 31, 2017) (holding that online transactions are covered by Section 5); *Action NC v. Strach*, 216 F. Supp. 3d

---

[1] Throughout this letter, references to driver licenses include state personal identification cards, which are available in Arizona. *See* https://www.azdot.gov/motor-vehicles/driver-services/driver-license-information/identification-(id)-card; *see also* 52 U.S.C. § 20502(3) (defining "motor vehicle driver's license" to "include[] any personal identification document issued by a State motor vehicle authority").

[2] Because the NVRA requires that address updates must be performed for "any" address update submitted to ADOT, the corresponding update to the voter registration record when a registered voter reports to ADOT they have moved should be performed whether the individual moves within the same county or to a new county within the state of Arizona.

597, 623 (M.D.N.C. 2016) (holding that requirements of Section 5 "apply equally to in-person and remote covered transactions"); U.S. Department of Justice, Civil Rights Division, The National Voter Registration Act of 1993 (NVRA): Questions and Answers, Q4, *available at* https://www.justice.gov/crt/national-voter-registration-act-1993-nvra (last visited Oct. 20, 2017) ("to the extent that the State provides for remote applications for driver licenses, driver license renewals, or driver license changes of address, via mail, telephone, or internet or other means, then provision must be made to include the required voter registration opportunity as well").

### B.     Arizona's Violations of Section 5 of the NVRA

ADOT's current and on-going failure to comply with its voter registration obligations under Section 5 of the NVRA is established by several sources, including site visits,[3] certain ADOT forms, information publicly available on ADOT's website (Service Arizona, https://servicearizona.com), and internal policy and other documents addressing the voter registration services provided by ADOT. Specifically, ADOT violates the NVRA during change of address transactions.[4]  As described below, ADOT clients who conduct a change-of-address transaction in person or online through Service Arizona are not provided with the voter registration services mandated under the NVRA.  ADOT requires—in violation of Section 5(d) of the NVRA—that individuals who report a change of address take affirmative steps to update their voter registration information by requiring that the applicant request to "apply for an address change on his or her voter registration."[5]

#### 1.     In-Office Change-of-Address Transactions Require ADOT Clients to Opt In to Changing their Voter Registration Information.

During change of address transactions conducted in ADOT offices, rather than using the opt-out procedure required by Section 5, ADOT requires voters to opt in to have their voter registration address updated.  In Arizona, a change of address is reported to ADOT in office using a Duplicate/Credential Update Application (https://www.azdot.gov/docs/default-source/mvd-forms-pubs/40-5145_fillable.pdf?sfvrsn=4).  This form requires an ADOT client to affirmatively request that their voter registration information be updated when submitting a request to update their address on their license (rather than automatically updating the information unless the individual declines that such a change be made).  This process is an "opt-in" process; not the "opt-out" process required by Section 5 of the NVRA.

---

[3] In summer 2017, staff and volunteers from our organizations visited nine ADOT offices as part of an investigation into NVRA compliance.

[4] There may be additional NVRA violations during ADOT covered transactions.

[5] Arizona has a number of "Authorized Third Party offices" for driver services that are operated by private individuals or businesses, and contract with and are monitored by MVD.  *See* https://www.azdot.gov/motor-vehicles/hours-and-locations.  As explained *infra* at II.A, third-party contractors that are providing services covered by the NVRA must comply with the NVRA.  The Authorized Third Party offices in Arizona are not fully compliant with the NVRA, as they provide, for the most part, the same voter registration services as ADOT itself.  Any efforts to bring ADOT into compliance with the NVRA must also include the Authorized Third Party offices.

ADOT offices which do not use the Duplicate/Credential Update Application, and instead use the initial driver license application to update addresses, also appear to be in violation of the NVRA.[6]  When used as a process to report a change of address, the initial application form violates the NVRA, as this form, like the Duplicate/Credential Update Application, requires an individual to take affirmative steps to update their voter registration, and thus does not function as an automatic voter registration update.

>    2.    **ADOT Does Not Offer Clients Who Conduct Change-of-Address Transactions Online Through "Service Arizona" the Voter Registration Services Required by the NVRA.**[7]

In Arizona, it is possible to update a driver license address through Service Arizona (https://servicearizona.com/addressChange?popularclick).  But, like the in-office processes for change of address, voter registration offered through Service Arizona is not compliant with the NVRA because it requires voters to take affirmative steps if they want to update their voter registration.  Below is a screenshot from Service Arizona through which clients report a change of address, showing the voter registration language:



Rather than *automatically* updating an applicant's address for voter registration purposes at the same time as the applicant's address for their driver license is updated, all that is provided is an opportunity to click a button about voter registration.  After taking the affirmative step of clicking the button to indicate that they would like to register to vote, clients must also complete a new voter registration application through Service Arizona's online voter registration portal. Unless clients go through this entire additional process, their voter registrations are not updated. This process, where the client must take affirmative steps to ensure that their voter registration record is updated, is a clear violation of Section 5.

## II.    VIOLATIONS OF SECTION 7 OF THE NVRA

### A.    Arizona's Obligations Under Section 7 of the NVRA

The NVRA requires Arizona to "designate as voter registration agencies . . . all offices in the State that provide public assistance.  *See* 52 U.S.C. § 20506(a)(2)(A).  "Public assistance" offices include state offices that administer the Supplemental Nutritional Assistance Program ("SNAP"), Medicaid, Children's Health Insurance Program ("CHIP"), and Temporary Assistance for Needy

---

[6] As mentioned above, in the summer of 2017, staff and volunteers from our organizations visited nine ADOT offices as part of an investigation into NVRA compliance.  Of those nine offices, three did not have any Duplicate/Credential Update Applications available.

[7] Service Arizona can also be accessed through kiosks located at MVD offices throughout the state.  *See* https://www.azdot.gov/motor-vehicles/hours-and-locations.  The Service Arizona processes are basically the same whether they are accessed through the internet or through a kiosk in an MVD office, so the NVRA violations are the same.

Families ("TANF"). *See* H.R. Rep. No. 103-66, at 19 (1993) (Conf. Rep.); Department of Justice, The National Voter Registration Act of 1993 (NVRA): Questions and Answers, Q13.[8] In Arizona, these programs are administered by DES and AHCCCS, and therefore, these agencies are "voter registration agencies."

Section 7 of the NVRA requires these Arizona public assistance offices to (i) distribute voter registration application forms; (ii) assist applicants in completing the voter registration application forms; and (iii) accept completed voter registration application forms and forward them to the appropriate election official. *See* 52 U.S.C. § 20506(a)(4)(A).

More specifically, each office must (i) distribute a voter registration application form with each application for public assistance and with each recertification, renewal or change of address form ("covered transactions"), except under limited circumstances as explained below; (ii) inquire in writing, through statutorily-prescribed language, whether the applicant would like to register to vote or change their voter registration address ("voter preference question"); (iii) provide, in writing, several statutorily-prescribed disclaimer statements, including notice that the decision whether to register to vote will not affect the amount of public assistance provided by the agency; and (iv) provide assistance in completing the voter registration application form to the same degree the agency provides assistance in completing its own forms, including assistance with providing information necessary to establish eligibility to register to vote. 52 U.S.C. § 20506(a)(6). The NVRA's requirements are very specific and states must comply strictly with those obligations. *See, e.g., United States v. Louisiana*, 196 F. Supp. 3d 612, 673-75 (M.D. La. 2016) (holding that substantial compliance with the NVRA is not sufficient; "the Court reads Section 7 to prescribe strict compliance with its commands, finding no support for any other standard in the NVRA's plain and unambiguous language").

The NVRA further provides that public assistance offices must distribute a voter registration application to each public assistance applicant or client engaging in a covered transaction unless the applicant or client affirmatively declines to register to vote *in writing*. *Valdez v. Squier*, 676 F.3d 935, 945-47 (10th Cir. 2012) (citing 52 U.S.C. § 20506(a)(6)). To decline "in writing," a client must affirmatively opt out by answering "no" in response to the voter preference question. *Id.* at 945-46 ("[A]n applicant's failure to check either the 'YES' or 'NO' box on the voter declination form does not constitute a declination 'in writing.' . . . [The NVRA] requires an applicant to affirmatively, by way of writing, 'opt out' of receiving a voter registration form.").

Public assistance offices must provide voter registration during each covered transaction, regardless of whether the transaction takes place in an agency office, over the Internet or via email, telephone, fax, or other remote means. *See, e.g., Louisiana*, 196 F. Supp. 3d at 669 ("[J]urisprudence compels this Court to honor Section 7's specific language and hold the NVRA to cover what its text also commands: remote transactions."); *Action NC*, 216 F. Supp. 3d at 623 (concluding, in denying defendant's motion to dismiss, that plaintiffs have sufficiently pled a plausible claim that "Sections 5 and 7 of the NVRA apply equally to in person and remote covered transactions"); *Ga. State Conf. of the NAACP v. Kemp*, 841 F. Supp. 2d 1320, 1329

---

[8] Section 7 also imposes voter registration services requirements on additional programs, including Women, Infants, and Children ("WIC") and state run disability programs. NVRA compliance by those additional programs is not addressed in this notice letter.

(N.D. Ga. 2012); *see also* U.S. Department of Justice, The National Voter Registration Act of 1993 (NVRA): Questions and Answers, Q24.

The NVRA also requires effective distribution of voter registration applications for each covered transaction. Section 7 explicitly requires agencies to "distribute" the federal voter registration mail-in form or the state's version of the same. 52 U.S.C. § 20506(a)(6)(A). "Distribute is defined as 'deliver[ing]' or 'to disperse.' . . . The statute is very clear in that with each transaction the applicant must be given a form that is described in Section 9 of the NVRA." *Ferrand v. Schedler*, No. 11-cv-926, 2012 WL 1570094, at \*9 (E.D. La. May 3, 2012) (quoting Black's Law Dictionary (9th ed. 2009)). Merely providing a link to a voter registration application that must be downloaded and printed out by applicants in order to be used effectively fails to comply with the Section 7 requirement to *distribute* a voter registration application. Furthermore, providing only access to an online voter registration system that cannot be accessed by all citizens does not comply with the requirement to distribute. In order to be NVRA-compliant during remote transactions, covered agencies must offer to mail a paper voter registration application directly to any client who requests it. The failure to provide clients completing a remote transaction the option of having a voter registration application mailed to them is not just a technical violation of the NVRA; it has a real impact on the ability of public assistance applicants—who are low income and thus less likely to have driver licenses (enabling them to register online) or access to a printer (enabling them to print a hard copy of the application themselves)—to engage in the political process. Unless there is a method of physical distribution available, many eligible voters will not receive actual distribution of the form.

Finally, the NVRA's requirements cannot be circumvented simply by contracting the underlying transaction to a third party. U.S. Department of Justice, The National Voter Registration Act of 1993 (NVRA): Questions and Answers, Q5 ("When a state contracts with a private entity to administer services in an agency that is required to offer voter registration, the ultimate responsibility for ensuring provision of voter registration services remains with the state, and the voter registration requirements under the NVRA remain the same."); *see also Louisiana*, 196 F. Supp. 3d at 675 ("[T]he NVRA compel[s] this Court to hold [the Louisiana Department of Health] responsible for the violations of its chosen agents when the power to appoint, to monitor, and to maintain rests upon it alone and when each agent receives payment from LA by virtue of its contracts.").

### B.    Arizona's Non-Compliance with Section 7 of the NVRA

ACLU, ACLU of Arizona, Dēmos, and the Lawyers' Committee for Civil Rights Under Law recently completed a comprehensive investigation of Arizona's compliance with Section 7 of the NVRA. The investigation included (1) analyzing voter registration and public assistance data; (2) examining public assistance agencies' forms, policies, and practices; and (3) speaking with public assistance employees and clients. Taken together, the evidence indicates that Arizona's public assistance offices are systematically failing to provide the voter registration services mandated by the NVRA, including (1) when individuals leave the voter preference question blank, (2) during certain change of address transactions, (3) during some remote transactions, (4) in connection with certain renewals and recertifications, and (5) when transactions are conducted by third-party contractors.

### 1. Voter Registration Data Indicating Non-Compliance

According to data Arizona reported to the U.S. Election Assistance Commission, the number of voter registration applications originating from Arizona public assistance offices decreased precipitously over the past decade and a half, from 32,137 in the 1999-2000 reporting period[9] to just 13,135 in 2015-2016,[10] a reduction of nearly 60%. Even more telling, Arizona's reported number of voter registration applications actually went down between 2013-2014 and 2015-2016,[11] even though 2016 was a presidential election year when voter registration rates typically increase and Arizona officials purported to be working on NVRA compliance.

Moreover, this decrease is not due to a decline in social services provided in Arizona or a lack of need for voter registration services. The number of initial food stamp applications through the SNAP program in Arizona around the same general time frame has nearly doubled, from 529,556 in 2004[12] to 965,046 in 2016.[13] And, in 2016, only 58% of Arizona citizens earning an annual income of less than $30,000 were registered to vote, while 76% of those earning $60,000 or more were registered to vote.[14] In other words, there is a substantial voter registration gap between low- and high-income Arizona citizens, and only slightly more than half of low-income Arizona citizens are registered to vote.

In our experience, such a decrease, in the face of rising caseloads and persistent need, is an important consideration and likely indicates systematic non-compliance and disproportionate harm to voter participation by low-income groups and people of color.

---

[9] U.S. Election Assistance Commission, *The Impact of the National Voter Registration Act of 1993 on the Administration of Elections for Federal Office 1999-2000* (June 2001), Table 2 page 1, *available at* https://www.eac.gov/assets/1/6/The%20Impact%20of%20the%20National%20Voter%20Registration%20Act%20on%20Federal%20Elections%201999-2000.pdf.

[10] U.S. Election Assistance Commission, *The Election Administration and Voting Survey: 2016 Comprehensive Report* (June 2017), NVRA Appendix A, Table 2, *available at* https://www.eac.gov/assets/1/6/2016_EAVS_Comprehensive_Report.pdf.

[11] *See id.*; U.S. Election Assistance Commission, *The Election Administration and Voting Survey: 2014 Comprehensive Report* (June 2017), NVRA Appendix A, Table 2, *available at* https://www.eac.gov/research-and-data/2014-election-administration-voting-survey/.

[12] U.S. Department of Agriculture, Food and Nutrition Services, Program Accountability Division, *Food Stamp Program State Activity Report, 2004* (Feb. 2006), available at https://fns-prod.azureedge.net/sites/default/files/2004_state_activity.pdf.

[13] U.S. Department of Agriculture, Food and Nutrition Services, *Supplemental Nutrition Assistance Program (SNAP), State Level Participation and Benefits* (September 2017), *available at* https://fns-prod.azureedge.net/sites/default/files/pd/29SNAPcurrPP.pdf.

[14] Dēmos analysis of the 2016 Current Population Survey Voting and Registration Supplement. Data *available at* https://www.census.gov/cps/data/.

### 2.    Specific NVRA Violations Identified

In addition to general concerns highlighted by the precipitous drop in voter registration applications generated by Arizona's public assistance agencies, our on-the-ground investigation and review of agency policies and procedures highlight several compliance problems that constitute violations of the NVRA.

#### a.  *Blank Voter Preference Questions*

The NVRA requires designated agencies to present each client with a written voter preference question and to distribute a voter registration application to the client unless the client declines the opportunity to register in writing.  It appears from our investigation that DES and AHCCCS are not distributing voter registration applications to clients who leave the voter preference question blank when filling out initial applications, renewal applications, or change of address forms.  As noted above, leaving the question blank is not equivalent to declining to register in writing.  This is especially troubling with respect to change of address transactions given the high likelihood that the affected client should also have their address changed for voter registration purposes and, without the opportunity to update their registration, will no longer be properly registered to vote.

Documents obtained from the agencies through Arizona's Public Records law show ambiguous, incomplete, and in some cases inaccurate guidance for agency staff concerning the voter preference question.  Most concerning are recent training documents.  A DES "CBT System Check" training form concerning voter registration (dated 1-4-2017) instructs employees to complete the NVRA-5 forms with "no" answers when the clients have not completed the form themselves.  (Arizona uses a form called the NVRA-5 form as a voter preference form, where the voter registration question is provided to clients, along with the NVRA disclosures).  Similarly, the DES current Voter Registration Policy, Policy 1-01-24-1, states that "[i]f the applicant or participant does not sign [the NVRA-5 voter preference form], staff shall circle "No" and initial and date the form indicating the individual declined the opportunity to register to vote."  Furthermore, a supplementary policy document called "Voter Registration Policy and Procedure" states that if the client does not answer the voter preference question, the staff shall complete the form and indicate that the client's response was "no" and do nothing more.  As explained above, this practice violates the NVRA's requirement that a voter registration application be distributed to all clients unless *the client* declines in writing.

While there appears to have been some attempt to correct this violation, the policy manual itself has not changed and, as noted, the most recent training materials do not provide the legally correct guidance about how to respond when a client leaves the voter registration question blank.  Moreover, DES and AHCCCS have issued conflicting information to their employees in recent years.  On January 12, 2015, DES and AHCCCS issued "News Flash, #14-084F" stating that if the voter preference question was left unanswered, it should be treated as "yes" and clients should receive a voter registration application.  But then just a few weeks later on January 30, 2015, DES and AHCCCS rescinded this notice, stating that "an offer of voter registration left unanswered must be treated the same as if the client had answered 'no.'"

AHCCCS has issued more recent policy and training documents to its employees that appear to comply with the law on this issue except for the change of address issue discussed below. However, DES has not taken similar steps and, as a result, DES employees are not adhering to the law.[15]  Critically, our field investigation found that front line agency staff appear to be violating the NVRA when the voter preference question is left blank.  Five out of the eight DES offices surveyed indicated that a blank voter preference question is treated as a "no" and results in no voter registration application being distributed to the client.  This evidence establishes that DES is engaged in on-going systematic violation of Section 7 because it is does not provide voter registration applications to all clients who do not decline in writing.

### b.  Change of Address

AHCCCS' processes for offering voter registration when a client reports a change of address appear to violate the NVRA.  The AHCCCS policy manual addresses voter registration in Sections 1301, 1401, and 1502. While there is additional information addressing "offering voter registration" that makes it clear that voter registration must be offered during a transaction involving a change of address, there is no guidance provided about how this should be accomplished if a client does not come into the office.  There is language stating explicitly that no action by agency staff is necessary if the change is submitted through the Health-e-Arizona Plus portal.  *See infra* at II.B.2.c.  Furthermore, if the change of address is conducted over the telephone, it is not possible for a client to decline the offer of voter registration in writing, so a voter registration form must be distributed, usually through the mail, to all clients reporting a change of address over the telephone.[16]

There also does not appear to be any guidance in the policy manual or elsewhere for providing the required NVRA disclosures, which must be provided in writing.  *See* 52 U.S.C. § 20506(a)(6)(B).  Given this lack of guidance, AHCCCS most likely is violating the requirements of the NVRA whenever clients report a change of address.

---

[15] AHCCCS is responsible for administering the online benefits application in Arizona that can be used to apply for SNAP, Medicaid, CHIP and TANF called Health-e-Arizona Plus ("HEAplus"). *See* https://www.healthearizonaplus.gov/Default/Default.aspx.  There is a voter preference question incorporated into this online application.  It appears as though the voter preference question must be answered before an individual can submit the application.  Clients, therefore, must always answer the voter preference question during these online benefits transactions, avoiding the circumstance of a blank answer.  This is a best practice to achieve NVRA compliance.  But if this is not correct and there is not a hard stop for the voter preference question in HEAplus, AHCCCS is also most likely violating Section 7 in a manner similar to that described *supra* at II.B.2.a.  None of the AHCCSS policy or training manuals address how to respond if a client does not answer the voter preference questions in HEAplus, so it is likely that staff do not distribute voter registration applications to clients in this circumstance.

[16] This is true during any telephone transaction.  While AHCCCS may conduct few renewal transactions over the telephone, the policy manual sections refer to telephone renewal transactions.  As with a change of address, it is not possible to obtain a declination in writing over the telephone, so any client conducting a renewal transaction exclusively over the telephone, must be sent a voter registration application.

c. *Distribution of Voter Registration Applications through the Health-e-Arizona Plus Portal*

As noted, AHCCCS is responsible for administering the online benefits applications in Arizona for SNAP, Medicaid, CHIP and TANF called Health-e-Arizona Plus ("HEAplus") (https://www.healthearizonaplus.gov/app/Info_Family_Individual.aspx?TokenID=0.7530142175 131413). Although the HEAplus benefits application interface contains a voter registration question, none of AHCCCS' training, policy or guidance documents explain the process for providing voter registration applications to clients who indicate they would like to register to vote in response to the required voter registration question. AHCCCS staff do not take any affirmative steps to ensure that voter registration applications are distributed to all clients using the HEAplus application interface when they want to register to vote. Instead, when a client applies for Medicaid, SNAP, or TANF through HEAplus and indicates a desire to register to vote, the client is provided with a link to the Secretary of State's voter registration page where they may register online (if they meet certain requirements) or download a voter registration application, which then must be printed and submitted to the appropriate county recorder or Secretary of State. *See* https://www.azsos.gov/elections/voting-election and then https://www.azsos.gov/elections/voting-election/register-vote-or-update-your-current-voter-information. This same process also occurs if an individual clicks the "voter registration button" on the AHCCCS home page. *See* https://www.healthearizonaplus.gov/app/ Info_Family_Individual.aspx?TokenID=0.7530142175131413. As noted previously, however, this procedure does not satisfy the NVRA's requirement that designated agencies effectively distribute voter registration applications. In addition, Arizona's online voter registration system cannot be used by all Arizona citizens, as it can only be used if an individual has a valid Arizona driver license or a non-operating identification.[17] *See* https://servicearizona.com/webapp/evoter/ register?execution=e1s4. Furthermore, many clients who do not qualify to register online may not have access to a printer. Providing only a link to the Secretary of State's webpage is a violation of the NVRA.

d. *AHCCCS Automatic Renewal Processes*

As noted above, any renewal or recertification of benefits constitutes a "covered transaction" under the NVRA. And, as AHCCCS policies acknowledge, NVRA-compliant voter registration opportunities must be provided during all Medicaid renewals. However, AHCCCS' Medicaid renewal process currently violates the NVRA. The forms sent to clients who are approved for an automatic renewal of their benefits mention voter registration; however, unless a client returns this form indicating that they do not want to register to vote by checking the box "no," they have not declined in writing and should receive an actual voter registration application. Because, in most cases, these clients are not required to return these forms, there is generally no opportunity for them to answer the voter registration question in writing. Therefore, a blank voter registration application should be distributed as part of this renewal documentation to ensure that

---

[17] Furthermore, even some individuals with an Arizona driver license cannot effectively register to vote online because if that driver license was issued before October 1, 1996, and the individual has not been registered to vote before in that county, the voter registration will not be accepted unless the individual provides some other "acceptable" proof of citizenship. *See State of Arizona's Election Manual*, revised 2014, ¶ 17, at 20, *available at* https://www.azsos.gov/sites/azsos.gov/files/election_procedure_manual_2014.pdf (last visited October 13, 2017).

there is distribution of a voter registration application to every client who does not decline in writing.[18]

### e. Use of Third-Party Contractors

DES operates a program called "SNAP Partnership" with the Arizona Community Action Association and nearly 50 partner organizations.[19] The purpose of this program is to engage community organizations in the process of SNAP enrollment. While organizations may participate in the partnership program at different levels, many of these organizations are "Full-Service Partners" that are actively engaged in assisting with actual enrollment of individuals in SNAP.[20] It is our understanding that these organizations contract with the State to provide assistance with completing and processing SNAP applications and receive reimbursements approved by DES for their enrollment work.[21]

It thus appears that some of these Partners are an integral part of the process by which Arizona and DES provide public assistance services. However, it is our understanding that transactions conducted or assisted by the Partners do not include the voter registration services required by the NVRA. None of the partner contracts we reviewed even mention voter registration.

As noted above, Arizona and DES have an obligation under the NVRA to provide voter registration as part of covered public assistance transactions, regardless of whether the transaction is conducted by a state agency or is conducted in whole or in part by a Full-Service Partner. The Secretary of State and DES are responsible for ensuring that the voter registration services required by the NVRA are offered as part of SNAP applications and recertifications handled by the Full-Service Partners. This may involve writing voter registration requirements into third-party contracts and providing training to the Full-Service Partners.

Finally, we note that if the Arizona public assistance agencies have contracts with other third-party organizations to provide assistance in completing applications and/or recertifications for any forms of public assistance, the State and its agencies similarly must ensure voter registration is offered in connection with the public assistance transactions.

---

[18] As explained herein, just providing the link to the Secretary of State's voter information page at the bottom of the renewal documentation is not sufficient "distribution."

[19] *See, e.g.*, Arizona Community Action Association, "SNAP PARTNERSHIP," http://www.azcaa.org/partnerships/snap (last visited October 2017).

[20] *See id.*

[21] *Supplemental Nutrition Assistance (SNAP) Outreach Partnership: Application and Budget Training, available at* http://www.azcaa.org/wp-content/uploads/2014/04/Application-and-Budget-Training-FFY-2015-FINAL.pdf.

## III.    DOCUMENTARY PROOF OF CITIZENSHIP AND VIOLATIONS OF SECTIONS 7 AND 8 OF THE NVRA

### A.    Legal Requirements

With respect to voter registration at designated voter registration agencies, Section 8 of the NVRA requires that Arizona "ensure that any eligible applicant is registered to vote in an election" when the individual submits their voter registration form at a designated "voter registration agency not later than the lesser of 30 days, or the period provided by State law, before the date of the election." 52 U.S.C. § 20507(a)(1)(C).  When eligible applicants have submitted their voter registration forms at one of these agencies, it is the duty of Arizona to ensure that the applicants are then actually registered to vote.  And as noted above, in addition to offering the opportunity to register, each voter registration agency must assist applicants in completing voter registration forms, accept completed voter registration forms, and transmit the forms to the appropriate state official, 52 U.S.C. § 20506(a)(4)—in Arizona, the county recorders, Ariz. Rev. Stat. § 16-134(A).

Furthermore, Arizona law states that if a state voter registration form is submitted unaccompanied by "satisfactory evidence of United States citizenship," which is limited to an Arizona driver license number or a set of particular documents, it is "reject[ed]." Ariz. Rev. Stat. § 16-166(F).  However, under federal law, documentary proof of citizenship is not required for registration in federal elections. *Arizona v. Inter Tribal Council of Arizona, Inc.*, 133 S. Ct. 2247 (2013); *Fish v. Kobach*, 840 F.3d 710 (2016).

### B.    Arizona's Non-Compliance with Sections 7 and 8 of the NVRA

As described above, the ACLU, ACLU of Arizona, Dēmos, and the Lawyers' Committee for Civil Rights Under Law conducted a comprehensive investigation of the availability of voter registration at designated voter registration agencies.  The information gathered shows Arizona is systematically failing to "ensure" that applicants are registered to vote after completing voter registration forms through designated voter registration agencies in violation of Section 8 of the NVRA and systematically failing to assist applicants in completing voter registration forms in violation of Section 7 of the NVRA.

Only one of the agency offices visited indicated that they copied and submitted documentary proof of citizenship with the state voter registration form.  At another office, a front line staff member expressed surprise that a voter registration form submitted without a copy of proof of citizenship would be rejected, even though the form states, "A complete voter registration form must contain proof of citizenship or the form will be rejected."  And six of the eight agencies reviewed did not have federal voter registration forms as an option for applicants who did not have proof of citizenship available at the voter registration agency.  By failing to make copies of documentary proof of citizenship when an applicant completes a state voter registration form, or by failing to provide and assist in the completion of federal voter registration forms to those who do not have accompanying proof of citizenship, Arizona's voter registration agencies have not assisted eligible applicants in completing their voter registration applications as required by Section 7 of the NVRA. 52 U.S.C. § 20506(a)(4).  This deficiency is especially glaring as DES's Cash and Nutrition Assistance Policy Manual requires those applying for benefits to provide

"primary citizenship documents to verify U.S. citizenship," as part of the application for benefits. *See* Cash and Nutrition Assistance Policy Manual at FAA2.N.06.A.01, *available at* https://extranet.azdes.gov/faapolicymanual/wwhelp/wwhimpl/js/html/wwhelp.htm# href=FAA2/2.N_IDCI.15.17.html. As DES requires presentation of these documents, the voter registration agencies should make copies in order to assist applications in completing their voter registration applications as required by the NVRA.

Similarly, there is no information provided to applicants through the HEAplus application process about the role of documentary proof of citizenship in voter registration, and no training for AHCCCS workers assisting clients using HEAplus about providing the necessary proof of citizenship documents during these transactions. So any client engaged in a covered transaction through HEAplus is not provided sufficient assistance in completing a voter registration application. Moreover, the current voter registration process available through an HEAplus covered transaction— a link to the Secretary of State's website—does not provide any method for clients to successfully register to vote (which requires complying with the documentary proof of citizenship requirements or submitting a federal voter registration form) unless they can use the online voter registration system or have access to a printer and a copy machine. And as explained above, many eligible registrants cannot use the online system to successfully register to vote. Again, this violation of the NVRA disproportionately harms voter participation by certain groups, including low income Arizonans and people of color.

Likewise, by submitting state voter registration forms collected by voter registration agencies to the county recorder without including accompanying proof of citizenship that is in the possession of the relevant voter registration agencies administering the covered transactions, Arizona has failed to ensure that eligible applicants are registered to vote as required by Section 8 of the NVRA. 52 U.S.C. § 20507(a)(1)(C).

## IV.    ADDITIONAL VIOLATIONS OF SECTION 8 OF THE NVRA

### A.    Arizona's Obligations Under Section 8 of the NVRA

Section 8 of the NVRA also governs the circumstances under which voters can be removed from the voter registration rolls. Among other things, when a registered voter moves within the same jurisdiction, "the registrar shall correct the voting registration list accordingly." 52 U.S.C. § 20507(f). Additionally, after updating this information, the voter may not be removed except through the process specified by Section 8. *Id.*

### B.    Arizona's Non-Compliance with Section 8 of the NVRA

Arizona law states that the "county recorder *shall* cancel a registration . . . [w]hen the county recorder receives written information from the person registered that the person has a change of residence within the county and the person does not complete and return a new registration form within twenty-nine days after the county recorder mails notification of the need to complete and return a new registration form with current information." Ariz. Rev. Stat. § 16-165(A)(8) (emphasis added). This law violates Section 8 of the NVRA in two ways. One, it requires the voter to take an extra additional step to update their voter registration, as opposed to requiring

the county recorder to correct the voting registration list. Two, it contemplates cancellation of the voter's registration without following the procedural safeguards of Section 8.

## V.     VIOLATIONS OF SECTION 203 OF THE VOTING RIGHTS ACT

Section 203 of the Voting Rights Act states, "whenever any state or political subdivision (covered by this section) provides any *registration* or voting notices, forms, instructions, assistance, or other materials or information relating to the electoral process, including ballots, it shall provide them in the language of the applicable minority group as well as in the English language." 52. U.S.C. § 10503(c). A number of Arizona counties are covered for Spanish or a Native American language under Section 203.[22]

Unfortunately, it appears that many state agencies operating in Section 203 covered jurisdictions are not providing language assistance in the covered language for voter registration activities. For instance, we did not observe any language assistance offered for voter registration at ADOT or DES offices in counties covered by Section 203 for Native American languages. Furthermore, ten ADOT offices in jurisdictions covered by Section 203 for Spanish were surveyed, but none of the ADOT forms that provide a voter registration opportunity (as required by the NVRA) are available in any language but English. There is a related guidance document providing a Spanish translation of the initial driver license application. However, only two of the ten offices visited had this guidance available in Spanish. Moreover, none of these offices had a Spanish translation of the Duplicate/Update Credential Application used for change of address transactions.

Ariz. Rev. Stat. § 16-452 requires the Secretary of State to "consult[] with each county board of supervisors or other officer in charge of elections" and then "prescribe rules to achieve and maintain the maximum degree of correctness, impartiality, uniformity and efficiency on the procedures for early voting and voting." As the Chief Election Officer for the state, we believe that, in order to help maintain the correctness, impartiality, uniformity and efficiency of voting in Arizona, it is your duty to work with the state agencies within counties covered by Section 203 to ensure that they meet their language assistance obligations.

## VI.     CONCLUSION

The Arizona Department of Transportation, the Arizona Department of Economic Security, and the Arizona Health Care Cost Containment System are engaged in current and on-going violations of the NVRA. In addition, state agencies covered by the NVRA are in violation of Section 203 of the VRA. Together, these violations deprive many State residents of their right to vote and have a particularly harmful impact on low-income Arizonans and people of color. As Arizona's chief election official, you are responsible for ensuring that these agencies comply with the NVRA. This letter serves as notice pursuant to 52 U.S.C. § 20510(b) of violations by Arizona of Section 5 of the NVRA, *id.* § 20504, Section 7 of the NVRA, *id.* § 20506, and Section 8 of the NVRA, *id* § 20507.

---

[22] Voting Rights Act Amendments of 2006, Determinations Under Section 203, 81 Fed. Reg. 87,532, 87,533, *available at* https://www.census.gov/rdo/pdf/1_FRN_2016-28969.pdf.

We are prepared to meet with you and other State officials at your earliest convenience to discuss these violations and to assist in your development of a comprehensive plan that addresses the problems identified in this letter. In the absence of such a plan, we will have no alternative but to initiate litigation at the conclusion of the statutory 90-day waiting period.

Sincerely,

/s/ Sarah Brannon
Sarah Brannon
Senior Staff Attorney for Motor-Voter Enforcement
Voting Rights Project
American Civil Liberties Union
915 15th Street, NW
Washington, DC 20005-2313
202-675-2337
sbrannon@aclu.org

/s/ Theresa J. Lee
Theresa J. Lee
Staff Attorney
Voting Rights Project
American Civil Liberties Union
125 Broad St.
New York, NY 10004
212-549-2500
tlee@aclu.org

/s/ Darrell Hill
Darrell Hill
Staff Attorney
American Civil Liberties Union (ACLU) of Arizona
P.O. Box 17148
Phoenix, AZ 85011-0148
602-650-1854, ext. 108
dhill@acluaz.org

/s/ Adam Lioz
Adam Lioz
Counsel and Senior Advisor, Policy & Outreach
Dēmos
740 6th Street NW., 2nd Floor
Washington, DC 20001
202-864-2735
alioz@demos.org

/s/ Arusha Gordon
Arusha Gordon
Associate Counsel
Lawyers' Committee for Civil Rights Under Law
1401 New York Avenue NW #400
Washington, DC 20005
202-662-8306
agordon@lawyerscommittee.org

cc:    John S. Halikowski, Director of the Arizona Department of Transportation
       Thomas Betlach, Director of the Arizona Health Care Cost Containment System
       Michael Trailor, Director of the Arizona Department of Economic Security
       Eric Spencer, State Election Director

# Exhibit B

## INTERIM MEMORANDUM OF UNDERSTANDING

This Memorandum of Understanding ("MOU") is made by and among the ACLU, ACLU of Arizona, Dēmos, and the Lawyers' Committee for Civil Rights Under Law, on behalf of the League of Women Voters of Arizona, Mi Familia Vota Education Fund and Promise Arizona (hereinafter collectively the "Advocates"), and the Arizona Department of Transportation, the Arizona Department of Economic Security and the Arizona Health Care Cost Containment System (hereinafter collectively the "Parties").

### Recitals

WHEREAS, on November 14, 2017, the League of Women Voters of Arizona, Mi Familia Vota Education Fund, and Promise Arizona sent a letter (hereinafter the "Notice Letter") to the Arizona Secretary of State ("SOS"), who is the Chief Election Official, alleging that the State of Arizona is not in compliance with Section 5, Section 7, or Section 8 of the National Voter Registration Act ("NVRA"), 52 U.S.C. §§ 20504, 20506, and 20507, and that State agencies are failing to meet their obligations under Section 203 of the Voting Rights Act ("VRA") in counties covered by its protections. This letter was sent on behalf of the above civic engagement organizations by the ACLU, ACLU of Arizona, Dēmos, and the Lawyers' Committee for Civil Rights Under Law;

WHEREAS, the agencies whose voter registration activities were addressed in the Notice Letter are Arizona Department of Transportation ("ADOT"), the Arizona Department of Economic Security ("DES"), and the Arizona Health Care Cost Containment System ("AHCCCS") (herein after collectively the "Agencies"). ADOT administers motor vehicle driver license service transactions in Arizona that are covered by Section 5 of the NVRA. DES and AHCCCS administer public assistance transactions in Arizona that are covered by Section 7 of the NVRA, including the Supplemental Nutritional Assistance Program ("SNAP"), Medicaid, Children's Health Insurance Program ("CHIP"), and Temporary Assistance for Needy Families ("TANF"). *See* H.R. Rep. No. 103-66, at 19 (1993) (Conf. Rep.); Department of Justice, The National Voter Registration Act of 1993 (NVRA): Questions and Answers, Q13. In addition, the Agencies must comply with Section 203 of the VRA;

WHEREAS, the Agencies deny that they are in violation of the NVRA or VRA;

WHEREAS, the Parties now desire to resolve this matter without the need to resort to litigation;

WHEREAS, Advocates and Agencies share the goal of ensuring that all eligible Arizonans receive the opportunity to register to vote in accordance with the NVRA and the VRA;

1

WHEREAS, Advocates and Agencies have agreed to engage in on-going negotiations to ensure compliance with the NVRA and VRA, including making changes to the ADOT forms, online systems, and processes concerning changes of address that the parties agree are necessary;

WHEREAS, ADOT currently periodically sends the Secretary of State a delimited text file containing change of address information with respect to driver licenses and non-driver identification cards submitted by all ADOT customers who are over 18 years of age and whose driver license type does not indicate they are non-citizens;

WHEREAS, in recognition of the demands of the November 2018 General Election and needed technology upgrades, the Parties agree to the following Interim Remedial Measures that will be put into place before the General Election;

WHEREAS, Advocates do not concede that the "Interim Measures" described herein remedy all alleged NVRA or VRA violations, but in exchange for the Agencies agreeing to undertake the described actions and the Parties' agreement to engage in comprehensive negotiations concerning long term NVRA compliance, the Advocates are willing to forebear from initiating formal litigation against the Agencies until December 1, 2018, if at all.

NOW, THEREFORE, the undersigned Parties hereby agree to the following Interim Remedial Measures:

**Remedial Mailings – Section 7 Clients:**

1) A one-time Remedial Voter Registration Mailing shall be sent by the Agencies to each primary contact ("Client") who engaged in an application, recertification, renewal, and/or change of address ("Covered Transaction") with DES or AHCCCS between August 1, 2017 and July 31, 2018 (hereinafter the "relevant time period"), whether in person, online, by phone, or by mail.

   a) This Remedial Voter Registration Mailing shall be sent to the primary contact who engaged in a Covered Transaction during the relevant time period through Health-e-Arizona Plus, through the telephone with DES, or through an in-person transaction with DES or AHCCCS; or who received a Medicaid Renewal Letter during the relevant time period, except that the one-time Remedial Voter Registration Mailing need not be sent to the primary contact if that person is not a U.S. Citizen.

   b) The Remedial Voter Registration Mailing will include:
      i. A State Voter Registration Form marked with a specific code in accordance with Sections 1.5 and 1.6.2 of the Arizona Secretary of State's draft 2018 election procedures manual to track voter registration applications that originate

from public assistance clients. This form already exists and provides opportunity to register to vote in both Spanish and English.

    ii. An Explanatory Letter, an exemplar of which is attached to this MOU as Exhibit A. This Explanatory Letter will be provided both in English and Spanish.

c) The Remedial Voter Registration Mailing will be sent bearing the return address of either DES or AHCCCS as appropriate for the client, using envelopes similar to those the Agency regularly uses to correspond with clients.

d) Only one mailing to each household is required.

e) Sending of the Remedial Voter Registration Mailings will be completed no later than August 31, 2018.

**On-going Remedial Measures:**

2) *Policy:*

a) From execution of this MOU, until such time as a permanent resolution of this matter is reached, a voter registration application shall be distributed to each Client during each in-person Covered Transaction conducted by DES and AHCCCS at an office, unless the Client declines to register to vote *in writing* in response to the voter registration question on the NVRA Form-5.

b) Caseworkers shall not complete the NVRA Form-5s or their equivalent unless specifically requested by the Client. A client's failure to complete the NVRA Form-5 does not, without more, constitute a request by the client for the caseworker to complete the form but the caseworker may document on the top portion of the NVRA-5 form that a voter registration application was provided to the Client.

c) DES and AHCCCS staff will offer assistance with voter registration to each Client engaged in a Covered Transaction.

3) *Training:*

a) By August 31, 2018, DES will conduct a WebEx training and policy broadcast for each employee that engages with clients during Covered Transactions. The training shall include an explanation that it is the policy of the state to require distribution of a voter registration application to each Client engaged in a Covered Transactions unless they decline to register to vote in response during in-person transactions to the voter

3

registration question by marking "no" on the NVRA Form-5, and that assistance with voter registration will be offered. The training will also instruct staff that the Form-5s shall not be completed by case workers unless requested by the Client but the caseworker may document on the top portion of the NVRA-5 form that a voter registration application was provided to the Client if the Client leaves the voter preference question blank.

b) Any new DES employee orientation program conducted through October 9, 2018 will include an explanation of the procedures outlined in paragraph 3(a).

c) AHCCCS will continue to require voter registration training for employees who engage with Clients during Covered Transactions. The training includes an explanation of the requirement for distribution of a voter registration application to each Client engaged in a Covered Transaction during in-person transactions unless the Client declines to register to vote by marking "no" to the voter registration question on the NVRA Form-5 and that assistance with voter registration will be offered. AHCCCS will also conduct mandatory refresher training by August 31, 2018.

4) *Reporting:*

a) Not later than September 14, 2018, the Agencies shall report to the Advocates the final number of the Remedial Voter Registration Mailings sent pursuant to paragraph (1) of this MOU.

b) DES shall report to the Advocates when the training required by paragraph 3(a) of this MOU is completed and when the policy broadcast required by paragraph 3(a) of this MOU is issued and provide Advocates with a copy.

## 203 of the VRA:

5) By August 31, 2018, ADOT will ensure that the current paper ADOT Driver's License/Identification Card Application shall be translated into Spanish and distributed for use in all MVD offices in counties covered by 203 (Maricopa, Pima, Santa Cruz, and Yuma), including Authorized Third Party offices that are authorized to conduct driver license transactions. Clients shall be allowed to complete forms in Spanish and submit them to Agencies for processing. At the start of each day, there shall be sufficient numbers of Spanish-language forms in each MVD office and offices operated by an Authorized Third Party for each such office's typical daily volume of clients based on past observations.

**Additional Terms:**

6) ADOT agrees to provide the SOS any data necessary to achieve compliance with any future agreement between the Advocates and the SOS related to compliance with the requirements of Section 5 of the NVRA or any Court order issued against the SOS related to compliance with Section 5 of the NVRA, including but not limited to providing to the SOS a list of all ADOT clients who reported a new address to ADOT during any Covered Transactions (initial application, renewal, Duplicate/Credential Update or change of address) whether online or in-person since November 9, 2016. This list shall include as much information as ADOT can provide, including, but not limited to, the person's name, current address, previous address, driver license number and type, partial social security number, and date of birth. This data will be provided in a delimited text file similar to the address change delimited text file ADOT currently provides to the Secretary of State.

7) The Parties agree to engage in on-going settlement discussions regarding a final resolution of this matter. The goal of these discussions will be to enter into a final agreement resolving all outstanding issues within six months of the execution of this MOU. The final agreement shall set specific benchmarks and timelines for completion of the necessary technology upgrades.

8) To facilitate such discussions, the Advocates shall prepare and present to Agencies within eight weeks of the date of this MOU a comprehensive list of the issues that the Advocates believe should be addressed in any final resolution of this action.

9) Advocates and Agencies acknowledge that this MOU represents a collaborative effort by all parties to enhance voter registration opportunities for Arizona citizens.

**Binding Effect:**

10) The terms of this MOU shall be binding on all Parties.

11) Upon execution of this MOU, Advocates agree not to raise any claims against DES or AHCCCS that have been asserted or could have been asserted up until the date of execution of this MOU that are based on Section 7 of the NVRA at any time before December 1, 2018.

12) Upon execution of this MOU, Advocates agree not to raise any and all claims against ADOT that have been asserted or could have been asserted up until the date of execution of this MOU that are based on Section 5 of the NVRA before December 1, 2018. Although Advocates will not raise any claims against ADOT unless required by the Court, the parties acknowledge and understand that nothing in the agreement prevents the

SOS or any other party from bringing a claim against ADOT in any NVRA enforcement proceeding.

13) The Advocates and the Agencies will engage in comprehensive negotiations concerning long term NVRA compliance in a mutual effort to negotiate a resolution to this dispute without the need for formal litigation. However, nothing in this MOU shall preclude the Advocates from bringing any claims related to any NVRA violations or VRA violations against the Agencies after December 1, 2018, if the Advocates and Agencies are unable to reach an agreement. Nothing in this MOU shall be interpreted to preclude the Advocates, within such lawsuit, from asserting or offering proof of any claims or facts alleging widespread past and ongoing violations of Section 5 and 7 of the NVRA or VRA by the Agencies that the Advocates have alleged prior to entering into the negotiations leading to MOU, including in the Notice Letter.

14) Nothing in this MOU will prevent Advocates from acting to enforce compliance with the NVRA or VRA if future NVRA or VRA violations occur; or if DES, AHCCCS or ADOT do not take the steps as required in this MOU regardless of when those actions occur.

15) In entering into this MOU, the Agencies do not admit to any liability or wrongdoing under the NVRA, VRA, or any other law, or waive any of their defenses, and Advocates do not waive or release any claims based on violations of Section 5 or 7 of the NVRA, or Section 203 of the VRA.

16) Before pursuing any legal remedies for an alleged breach of this MOU, Parties agree to make their best effort to resolve any dispute without judicial intervention. If any Party believes that another Party is in breach of this MOU, or any other dispute arises under the terms of this MOU, the aggrieved Party shall, within 30 days of the Party becoming aware of the asserted breach or dispute, notify the other Party in writing of the asserted breach or dispute. The Parties will work cooperatively and make their best effort to promptly remedy the asserted breach or dispute without judicial intervention. If reasonable good-faith efforts to resolve the asserted breach or dispute fail, the Parties may pursue all legal remedies available.

## Joint Negotiation and Drafting

17) The Parties hereto have participated jointly in the negotiation and drafting of this MOU with the assistance of counsel and other advisors and, in the event any ambiguity or question of intent or interpretation arises, this MOU shall be construed as jointly drafted by the parties hereto and thereto, and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any provision of this MOU, or any other documents attached or referenced therein.

6

**Costs:**

18) As consideration for this MOU, the Advocates agree to waive any claim for attorneys' fees or costs incurred in connection with the negotiation, implementation and monitoring of this MOU. In exchange, the Agencies agree to be bound by the terms of this MOU and to implement its terms in good faith and in cooperation with the Advocates.

19) Nothing in this Agreement shall be construed to prevent the Advocates from pursuing attorneys' fees and costs incurred before or after December 1, 2018, as permitted by 52 U.S.C. § 20510 and Section 14(e) of the VRA, if the Agencies breach the terms of this MOU, and nothing in this MOU will be construed to prevent the Advocates from seeking fees and costs related to preparing any such litigation. In the event of such litigation, however, the Advocates will not seek attorneys' fees and costs related to time spent negotiating, implementing, or monitoring this MOU.

**Execution in Counterparts:**

20) This Agreement may be executed in counterpart originals, and any copies and facsimiles of such counterparts shall be considered originals.

21) The undersigned attorneys represent and warrant that they have authority to enter into this agreement on behalf of the respective parties they represent, and that this agreement shall be binding upon, and inure to the benefit of, the heirs, personal representatives, successors and assigns of the parties hereto.

*[Signatures on Following Page]*

BRYAN CAVE LEIGHTON PAISNER LLP

By _____

Lawrence G. Scarborough
Teresa P. Meece
Julie M. Birk
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406

Darrell Hill
AMERICAN CIVIL LIBERTIES UNION
OF ARIZONA
P.O. Box 17148
Phoenix, Arizona 85011-0148

Sarah Brannon**
Ceridwen Cherry
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 5th Street, NW
Washington, DC 20005-2313

Theresa J. Lee
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street
New York, New York 10004

Stuart Naifeh
DEMOS
80 Broad Street, 4th Floor
New York, New York 10004

Chiraag Bains**
DEMOS
740 6th Street, NW, 2nd Floor
Washington, DC 20001

Ezra D. Rosenberg
Arusha Gordon
Anastasia Erikson
LAWYERS' COMMITTEE FOR CIVIL
RIGHTS UNDER LAW
1500 K Street, NW
Suite 900
Washington, DC 20005

** *Not admitted in the District of*
*Columbia; practice limited pursuant*
*to D.C. App. R. 49(c)(3)*

Attorneys for Advocates

DATE: August 14, 2018

13069663

BALLARD SPAHR LLP

By _____

Joseph A. Kanefield
One East Washington Street, Suite 2300
Phoenix, Arizona 85004-2555

Attorneys for Agencies

DATE: August 14, 2018

8

# EXHIBIT 2



Ceridwen Cherry
American Civil Liberties Union
915 15th St NW
Washington, D.C., 20005

October 5, 2023

Dear Ms. Cherry:

In accordance with Article 3, Paragraph 9, Section 3.46 of the Settlement Agreement entered into between the Arizona Secretary of State (AZSOS), the Arizona Health Care Cost Containment System (AHCCCS), the Arizona Department of Economic Security (DES), and the Advocates, the AZSOS is to submit the enclosed report to the Advocates' Counsel.

The report corresponds to the following time period:
- **Q1 2023**: *January 1, 2023 through March 31, 2023*

Please let me know if you would like to discuss any of the information in this report.

Sincerely,

Yolanda Morales
Sr. Elections Policy Manager
Election Services Division

Cc: Amy Chan, General Counsel, Arizona Secretary of State's Office
    Brian Schulman, Ballard Spahr LLP
    Gina Relkin, Chief Deputy General Counsel, AHCCCS
    Kathy Reynolds, AHCCCS NVRA Point of Contact
    Nicole Davis, General Counsel, DES

Office of the Secretary of State
1700 W. Washington St., FL 7
Phoenix, AZ  85007-2808
Telephone: (602) 542-1809 Fax: (602) 542-6172
www.azsos.gov/elections

# Contents

Part I: Data Collected and Reviewed ................................................................................... 3

Part II: AZSOS Data Reporting ........................................................................................... 4

Part III: AZSOS Training Materials ..................................................................................... 6

Part IV: EAC Reporting ....................................................................................................... 7

Appendix ............................................................................................................................... 8

    Definitions: Status Codes and Status Reasons ................................................................. 8

## Part I: Data Collected and Reviewed

The table below shows the statistics that were reported to the AZSOS by DES and AHCCCS for **Q1 2023** *(January 1, 2023 through March 31, 2023)*.

|  | **Q1 2023** |
|---|---|
| (a) Total number of In-Person Transactions processed at DES Offices or AHCCCS Offices | 3409 |
| (b) Total number of Remote Transactions processed by DES and AHCCCS combined | 409952 |
| (c) Total number of each response to the Voter Preference Question (Yes, No, Blank) recorded in HEAplus |  |
| *YES* | 9472 |
| *NO* | 151835 |
| *BLANK* | 252054 |
| (d) Total number of individuals who, in connection with a Remote Transaction, select the option for online voter registration to be redirected to Service Arizona | 25 |
| (e) Total number of individuals who, in connection with a Remote Transaction, elect to receive a text with the online voter registration information | 330 |
| (f) Total number of individuals who, in connection with a Remote Transaction, elect to receive an email with the online voter registration information | 687 |
| (g) Total number of individuals who, in connection with a Remote Transaction, elect to receive the Voter Registration Application mailed through the United States Postal Service | 6457 |

3

# Part II: AZSOS Data Reporting

The attached .xlsx file shows the number of Section 7 Voter Registration Applications processed by each county recorder within **Q1 2023** *(January 1, 2023 through March 31, 2023)*, broken down by status and status reason. During this time, a total of **1203** transactions were recorded in the statewide voter registration database as originating from a voter registration form provided by a covered agency.

The Arizona Voter Information Database (AVID) is the statewide voter registration database. AVID does not provide historical information, therefore it is not possible to provide data at a certain point in time. The data provided here includes records originating or updated as of January 1, 2023 through March 31, 2023. However, if a person originally registered in January 2023, for example, using a form provided by a covered agency and subsequently updated their registration via a different method, then that registrant would not be captured in this data. These numbers also only reflect any registrations submitted on paper forms coded with a covered agency and not via online registration. The data captured in the chart is limited only to the following registration sources: DES, AHCCCS, and NVRA-Mandated Public Assistance Agency. Status codes and status reasons are further defined on Page 8 of this report.

The table below shows the total number of In-Person Transactions reported by DES and AHCCCS compared with the total number of Section 7 coded Voter Registration Applications processed by each of the County Recorders for **Q1 2023** *(January 1, 2023 through March 31, 2023)*.

|  | **Q1 2023** |
|---|---|
| Total number of In-Person Transactions processed at DES Offices or AHCCCS Offices | 3409 |
| Total number of Section 7 coded Voter Registration Applications processed by each of the County Recorders | 1203 |

The table below shows the total number of Remote Transactions reported to have been processed by DES or AHCCCS compared with the total number of individuals who, in connection with a Remote Transaction, (i) select the option for online voter registration to be redirected to Service Arizona, (ii) elect to receive a text with the online voter registration information, (iii) elect to receive an email with the online voter registration information, and (iv) elect to receive the Voter Registration Application mailed through the United States Postal Service for **Q1 2023** *(January 1, 2023 through March 31, 2023)*.

|  |  | **Q1 2023** |
|---|---|---|
| Total number of Remote Transactions processed at DES Offices or AHCCCS Offices combined |  | 409952 |
| (i) | Select the option for online voter registration to be redirected to Service Arizona | 25 |
| (ii) | Elect to receive a text with the online voter registration information | 330 |
| (iii) | Elect to receive an email with the online voter registration information | 687 |
| (iv) | Elect to receive the Voter Registration Application mailed through the United States Postal Service | 6457 |

4

The table below shows the total number of individuals who, in connection with a Remote Transaction, elect to receive the Voter Registration Application mailed through the United States Postal Service in **Q1 2023** *(January 1, 2023 through March 31, 2023)* compared to **Q4 2022** *(October 1, 2022 through December 31, 2022)*, **Q3 2022** (*July 1, 2022 through September 30,* 2022) compared to **Q2 2022** (*April 1, 2022 through June 30, 2022*), **Q3 2021** (*August 1, 2021 through September 30, 2021*), **Q4 2021** (*October 1, 2021 through December 31, 2021*) and **Q1 2022** (*January 1, 2022 through March 31, 2022*).

|  | **Q1 2022** | **Q2 2022** | **Q3 2022** | **Q4 2022** | **Q1 2023** |
|---|---|---|---|---|---|
| Elect to receive the Voter Registration Application mailed through the United States Postal Service | 5283 | 5224 | 6677 | 5912 | 6457 |

5

## Part III: AZSOS Training Materials

There were no new or revised AZSOS NVRA policies or procedures, rules or regulations, advertisements, notices, or training materials used during the **Q1 2023** *(January 1, 2023 through March 31, 2023)* reporting period.

# Part IV: EAC Reporting

On March 16, 2023 data was reported to the U.S. Election Administration Commission ("EAC") by the AZSOS for the **Q1 2023** *(January 1, 2023 through March 31, 2023)* reporting period.

Below we are providing links to the 2022 EAVS Report Survey Report, along with links to the EAVS data codebook, the EAVS dataset and the EAVS glossary.

- o **2022 Election Administration and Voting Survey Report (Full PDF Version)**
- o EAVS: Data Codebook
- o EAVS Dataset Version 1.0 (released June 29, 2023): Excel
- o 2022 Election Administration and Voting Survey Instrument
- o 2022 EAVS Glossary

# Appendix

## Status and Corresponding Status Reason Codes

| | |
|---|---|
| **ACTIVE** | An "active" status is assigned to a registrant who meets the standards for registration. |
| *Valid Registration* | Registrant submitted a complete voter registration and is registered as a federal-only or full-ballot voter depending on DPOC status. |
| **INACTIVE** | An "inactive" status is assigned to a registrant who has an inactive mailing address and has been placed in the "NVRA process." |
| *NVRA Inactive Address* | Registrant has been placed in inactive status based on the "NVRA process," (i.e., a first notice was returned undeliverable, and the registrant was sent a final notice, to which the registrant did not respond within 35 days). |
| **SUSPENSE** | A "suspense" status is assigned to a registrant who submitted an incomplete voter registration or where further information is required to complete processing of the registration application. |
| *Registrant – Waiting Verification* | Registrant submitted incomplete voter registration form (other than failure to provide DPOC) or voter registration form with invalid residence address, and status remains pending until registrant provides the requested information. |