**Nos. 24-3188, 24-3559, 24-4029**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

MI FAMILIA VOTA, *et al.*,

*Plaintiffs-Appellees,*

v.

ADRIAN FONTES, *et al.*,

*Defendants-Appellees,*

and

WARREN PETERSEN, *et al.*,

*Intervenor-Defendants-Appellants.*

_____

On Appeal from the United States District Court for the District of Arizona
Hon. Susan R. Bolton
Case No. 2:22-cv-00509-SRB

_____

**INTERVENORS' PETITION FOR REHEARING EN BANC**

_____

Tyler R. Green (UT Bar # 10660)
Gilbert C. Dickey (VA Bar # 98858)
Conor D. Woodfin (VA Bar # 98937)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
*Attorneys for Appellant Republican
National Committee*

Kory Langhofer (AZ Bar # 024722)
Thomas Basile (AZ Bar # 031150)
STATECRAFT PLLC
649 North Fourth Avenue, First Floor
Phoenix, Arizona 85003
(602) 382-4078
*Attorneys for Appellants Republican
National Committee, Warren Petersen
and Steve Montenegro*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... ii

RULE 40 STATEMENT .............................................................................1

BACKGROUND ........................................................................................2

    A.   Arizona adopts proof-of-citizenship laws to safeguard elections. ..............2

    B.   Opponents sue over amendments to Arizona's proof-of-citizenship laws..3

    C.   The panel, over Judge Bumatay's dissent, affirms the injunction of Arizona's proof-of-citizenship laws............................................................4

REASONS FOR GRANTING THE PETITION ......................................5

    I.   The panel's holding that the NVRA preempts Arizona's mail voting rules conflicts with Supreme Court and Ninth Circuit precedent. ......................6

    II.  The panel's holding that the NVRA applies to presidential elections conflicts with Supreme Court precedent. ...................................................8

    III. The panel's holding that the NVRA's 90-day provision applies to non-citizens conflicts with Sixth Circuit precedent.........................................10

    IV. Neither the LULAC Decree nor the NVRA precludes Arizona from rejecting state forms lacking proof-of-citizenship or proof-of-residence. 11

    V.  The panel violated Supreme Court precedent by reweighing evidence to find discriminatory intent.....................................................................14

CONCLUSION ........................................................................................19

CERTIFICATE OF COMPLIANCE ..................................................C-1

CERTIFICATE OF SERVICE............................................................C-2

# TABLE OF AUTHORITIES

**Cases**

*Abbott v. Perez*,
  585 U.S. 579 (2018).......................................................................15, 17

*Arizona v. Inter-Tribal Council of Ariz. (ITCA)*,
  570 U.S. 1 (2013)..........................................................................passim

*Arlington Heights v. Metro. Housing Dev. Corp.*,
  429 U.S. 252 (1977)................................................................14, 18, 19

*Beals v. VA Coal. for Immigrant Rts.*,
  __ S.Ct. __, 2024 WL 4608863 (Oct. 30, 2024).................................10

*Bell v. Marinko*,
  367 F.3d 588 (6th Cir. 2004) .........................................................1, 10

*Brnovich v. DNC*,
  594 U.S. 647 (2021)......................................................................passim

*Burroughs v. United States*,
  290 U.S. 534 (1934)..............................................................................9

*CASA de Md., Inc. v. Trump*,
  971 F.3d 220 (4th Cir. 2020) ...............................................................11

*Earp v. Davis*,
  881 F.3d 1135 (9th Cir. 2018) .............................................................16

*Gonzalez v. Arizona*,
  485 F.3d 1041 (9th Cir. 2007) ....................................................1, 7, 13

*Horne v. Flores*,
  557 U.S. 433 (2009)............................................................................12

*McPherson v. Blacker*,
  146 U.S. 1 (1892)...............................................................................3, 8

*Mi Familia Vota  v. Fontes*,
  111 F.4th 976 (9th Cir. 2024) ....................................................1, 3, 7

*Miller v. French*,
530 U.S. 327 (2000) ......................................................................12

*Oregon v. Mitchell*,
400 U.S. 112 (1970) ........................................................................8

*Pierce v. N.C. State Bd. of Elections*,
97 F.4th 194 (4th Cir. 2024) .......................................................16

*Purcell v. Gonzalez*,
549 U.S. 1 (2006) .......................................................................1, 2

*RNC v. Mi Familia Vota*,
145 S. Ct. 108 (2024) ..............................................................11, 14

*Smiley v. Holm*,
285 U.S. 355 (1932) ........................................................................9

*Taylor v. United States*,
181 F.3d 1017 (9th Cir. 1999) .................................................11, 12

*United States v. Carrillo-Lopez*,
68 F.4th 1133 (9th Cir. 2023) ..................................................15, 19

*United States v. Sanchez-Garcia*,
98 F.4th 90 (4th Cir. 2024) ..........................................................16

**Statutes**

52 U.S.C. §20508 ............................................................................14

52 U.S.C. §20505 ............................................................................14

52 U.S.C. §20506 ............................................................................14

Fed. R. App. P. 40 .............................................................................5

Fed. R. Civ. P. 60 ...........................................................................12

A.R.S. §16-121.01 .......................................................................3, 11

A.R.S. §16-123 ...............................................................................11

A.R.S. §16-127 ..............................................................................3, 7

A.R.S. §16-165 ..................................................................................3

**Other Authorities**

Exec. Order 14248, 90 Fed. Reg. 14007 (Mar. 25, 2025) .........................2

**Constitutional Provisions**

U.S. Const., Art. II, §1 ........................................................................8

Ariz. Const., Art. VII, §2 ....................................................................2

## RULE 40 STATEMENT

This case "is of grave concern to the public." Op.32 n.3. At issue is Arizona's authority to require proof-of-citizenship to access the ballot. This matter of exceptional importance warrants "careful consideration" by every judge as it affects the right of "honest citizens" to vote and implicates Arizona's "compelling interest" in election integrity. *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (cleaned up).

This "Circuit has in fact *already resolved this question* under similar circumstances" and it "could not have been clearer." *Mi Familia Vota (MFV) v. Fontes*, 111 F.4th 976, 991 (9th Cir. 2024) (Bumatay, J., dissenting). Federal law "conditions eligibility to vote on United States citizenship" and it "plainly allow[s] states" to "require their citizens to present evidence of citizenship." *Gonzalez v. Arizona*, 485 F.3d 1041, 1050-51 (9th Cir. 2007). The Supreme Court has said as much. *Arizona v. Inter-Tribal Council of Ariz. (ITCA)*, 570 U.S. 1, 12, 17-18 (2013). So has the Sixth Circuit. *See Bell v. Marinko*, 367 F.3d 588, 591-92 (6th Cir. 2004).

The divided panel issued an "[u]nprecedented" decision "completely invalidat[ing]" Arizona's proof-of-citizenship laws. Dissent.82. Their opinion conflicts with "*Gonzalez*," "contradict[s] *ITCA*" and other Supreme Court precedent, and splits with "the Sixth Circuit." Dissent.88, 115, 129.  It also disregards the Supreme Court's directive of deference to trial court findings concerning legislative intent. *Brnovich v. DNC*, 594 U.S. 647, 655 (2021). It is ripe for en banc review.

1

## BACKGROUND

**A.    Arizona adopts proof-of-citizenship laws to safeguard elections.**

Arizona has had a citizenship requirement for voting since it became a State in 1912. Ariz. Const., Art. VII, §2. It was Arizona's "voters" who first "adopted" the State's requirement that applicants for voter registration produce "satisfactory evidence of citizenship" through "a ballot initiative designed in part 'to combat voter fraud.'" *ITCA*, 570 U.S. at 6 (cleaned up). A year after the people of Arizona approved Arizona's proof-of-citizenship requirement, those "procedures" were "precleared under §5 of the Voting Rights Act of 1965." *Id.* at 6 n.2.

When Arizona's proof-of-citizenship requirement was later challenged and appealed to this Court, the case was deemed of exceptional importance warranting en banc review. *Id.* at 7. Indeed, before this Court first reviewed Arizona's proof-of-citizenship requirement en banc, the Supreme Court itself intervened to vacate a Ninth Circuit panel's injunction of Arizona's law. *Purcell*, 549 U.S. at 2-3. Then, after this Court engaged in en banc review, the Supreme Court granted certiorari. *ITCA*, 570 U.S. at 7.

The Supreme Court reasoned that while Congress can require Arizona to "accept and use" a Federal Form for voter registration for "congressional elections," *id.* at 15, "state-developed forms may require information the Federal Form does not," including "proof-of-citizenship," *id.* at 12. It observed: "Arizona is correct that

2

it would raise serious constitutional doubts if a federal statute precluded a State from obtaining the information necessary to enforce its voter qualifications," such as "citizenship." *Id*. at 16-17.

**B.  Opponents sue over amendments to Arizona's proof-of-citizenship laws.**

Arizona "has done exactly what the Court recognized as possible in *ITCA*." *MFV*, 111 F.4th at 991 (Bumatay, J., dissenting). In 2022, it "added a requirement to its own [voter registration] form to ensure its ability to verify citizenship." *Id*. (discussing A.R.S. §16-121.01(C)). Arizona's Legislature also exercised its "plenary" authority to regulate presidential elections, *McPherson v. Blacker*, 146 U.S. 1, 10 (1892), by prohibiting applicants who fail to provide proof-of-citizenship from voting in those elections, A.R.S. §16-127(A)(1). And Arizona's Legislature exercised its authority to regulate "*who* may vote" in all federal elections, *ITCA*, 570 U.S. at 16, by prohibiting applicants who haven't provided proof-of-citizenship from voting early by mail, A.R.S. §16-127(A)(2), and empowering county recorders to verify a voter's citizenship through a federal database and periodically check available databases to cancel the registrations of ineligible non-citizens, *id*. §16-165(A)(10),(G),(H),(I),(J),(K).

Before these amendments took effect, "Voting Law Opponents," including the Democratic National Committee and Biden Administration "sought to stop" Arizona's proof-of-citizenship laws "in their tracks." Dissent.81. They sued alleging

violations of the Constitution, the National Voting Rights Act, the Civil Rights Act of 1964, and a consent decree. In an "unprecedented ruling," the district court gave them "virtually everything they wanted," enjoining Arizona's proof-of-citizenship laws "months before the 2024 election." *Id*. The Republican National Committee and Arizona's legislative leaders applied to this Court to stay the injunction. *Id*. While a partial stay was granted by a motions panel, a divided merits panel vacated the stay two weeks later. Dissent.81-82. The Supreme Court "quickly reversed the merits-panel majority," reinstating the stay and allowing Arizona's "proof-of-citizenship requirement to be enforced." Dissent.82.

### C. The panel, over Judge Bumatay's dissent, affirms the injunction of Arizona's proof-of-citizenship laws.

"[I]gnoring the Supreme Court's direction," the panel held that the district court's "unprecedented" ruling "*didn't go far enough* in overturning Arizona's voter-verification laws." *Id*. It not only affirmed the injunction after concluding that Arizona's proof-of-citizenship laws violate the NVRA, the Civil Rights Act, the Equal Protection Clause, and a consent decree. Op.79. It also criticized a companion law prescribing database checks to identify ineligible voters ("H.B. 2243") as "the product of intentional discrimination" in keeping with Arizona's purported "history of discrimination against minorities" that it traces back to before Arizona was a State. Op.19-20, 69.

As Judge Bumatay observed in dissent, the panel's opinion is "[u]nprecedented yet again." Dissent.82. It "contradict[s]" Supreme Court precedent, conflicts with a decision of "our own court" which previously "refus[ed] to enjoin Arizona's documentary proof-of-citizenship requirement," and it splits with "the Sixth Circuit." Dissent.88, 115, 129. "The majority's acontextual interpretation" of federal law "creates an absurdity that Congress never established." Dissent.128. It would mean that "foreign citizens are immune from removal" from the voter rolls. Dissent.129. And it would "forc[e] States to accept foreign citizens in their voting booths." Dissent.128. Judge Bumatay would have "vacated and substantially narrowed the injunction." Dissent.82.

## REASONS FOR GRANTING THE PETITION

The full Court should decide whether "forcing States to accept foreign citizens in their voting booths" is going to be the law of this Circuit. Dissent.128. Rehearing en banc is appropriate because the panel's decision "conflicts with" decisions of the Supreme Court, decisions of this Court, and authoritative decisions of other Courts of Appeals; and it "involves one or more questions of exceptional importance." F.R.A.P. 40(b)(2). Though one of these grounds is sufficient, all apply here.[1]

---

[1] The Republican Intervenors join the portion of the State's petition arguing that the panel's interpretation of 52 U.S.C. § 10101(a)(2)(B) is important and conflicts with this Court's precedents.

I.  **The panel's holding that the NVRA preempts Arizona's mail voting rules conflicts with Supreme Court and Ninth Circuit precedent.**

The panel's interpretation of the NVRA conflicts with the Supreme Court's interpretation in *ITCA*. The NVRA establishes "a complex superstructure of federal regulation atop state *voter-registration* systems." *ITCA*, 570 U.S. at 5 (emphasis added). Since the NVRA is "about voter *registration*," it "doesn't conflict with state-specific rules for *voting* by mail in federal elections." Dissent.101.

This isn't "a narrow view." Op.37. It's the view the Supreme Court adopted to avoid the "serious constitutional doubts" that would arise if "a federal statute precluded a State from obtaining the information necessary to enforce its voter qualifications." *ITCA*, 570 U.S. at 17. "Prescribing voting qualifications" forms "no part of the power" of "the national government" under "the Elections Clause." *Id.* (cleaned up). Rather, Arizona alone has the "constitutional authority" to not only "establish qualifications (such as citizenship) for voting" but also "enforce" those qualifications by "obtaining the information necessary" to verify a voter's citizenship. *Id.* at 16-17. The panel's interpretation of the NVRA strips Arizona of the "power to enforce" its citizenship qualification by "preclud[ing]" Arizona from obtaining citizenship "information" before sending out mail ballots. *Id.* at 17.

In contrast to *ITCA*, where the NVRA provided "another means by which Arizona may obtain information needed for enforcement," *id.* at 18, there are no NVRA-authorized alternative means for Arizona to verify citizenship before sending

6

out "early ballot[s] by mail," A.R.S. §16-127 (A)(2). Arizona can't "request" the "EAC alter" the arrangement as it could in *ITCA*. 570 U.S. at 19. So the panel's interpretation of the NVRA creates "constitutional doubt." *Id.*

The panel's interpretation has been rejected by both the Supreme Court, *id.*, and the Ninth Circuit, *Gonzalez*, 485 F.3d at 1050-51. This Court held that the "NVRA clearly conditions eligibility to vote on United States citizenship" and it "plainly allow[s] states, at least to some extent, to require their citizens to present evidence of citizenship." *Id.* The panel said that *Gonzalez* didn't decide "to what extent states may 'require their citizens to present evidence of citizenship when registering to vote.'" Op.54. But *Gonzalez* forecloses the notion that answer is "nothing." And "nothing" is all States are allowed to do if the panel's opinion becomes the law of this Circuit. Indeed, the panel's boundless view of "the NVRA's ability to preempt," Op.37, displaces "the whole field of mail-in voting rules," Dissent.103. It "create[s] a major upheaval" by "preclud[ing] States" from adopting "anti-fraud measures" to prevent non-citizen voting. Dissent.104. And it "mean[s] that *all* state limitations on absentee and mail voting would be preempted." *Id.* As the panel's opinion "cannot abrogate the plain import of *ITCA* and the even more specific reasoning in *Gonzalez*," *MFV*, 111 F.4th at 992 (Bumatay, J., dissenting), en banc review is warranted.

## II. The panel's holding that the NVRA applies to presidential elections conflicts with Supreme Court precedent.

The panel's holding that the NVRA preempts State voter registration requirements for presidential elections "contradict[s] *ITCA*." Dissent.88. The Supreme Court recognized that "the Elections Clause empowers Congress to regulate *how* federal elections are held, but not *who* may vote in them" and "[o]ne cannot read the Elections Clause as treating implicitly" what "other constitutional provisions regulate explicitly." *ITCA*, 570 U.S. at 16. The Electors Clause empowers state legislatures to regulate the "Manner" of appointing presidential electors. U.S. Const., Art. II, §1. "Congress is empowered to determine the time of choosing the electors and the day," "otherwise the power and jurisdiction of the state is exclusive." *McPherson*, 146 U.S. at 11. "Any shadow of a justification for congressional power with respect to congressional elections therefore disappears utterly in presidential elections." *Oregon v. Mitchell*, 400 U.S. 112, 212 (1970) (Harlan, J., concurring in part); *see also ITCA*, 570 U.S. at 16 & n.8 (citing Harlan's opinion approvingly and noting Harlan's opinion "underlies our analysis here."). Consequently, "the NVRA can't preempt state laws governing presidential elections" because the Constitution "forecloses congressional authority to control voter-registration requirements for presidential elections." Dissent.86-87.

The panel "invent[ed] a surprising new balance of power between the States and the federal government divorced from constitutional text" only by

8

"misread[ing]" the Supreme Court's decision in *Burroughs v. United States*. Dissent.98. The panel concluded that *Burroughs* supported the notion that "Congress has the power to control registration for presidential elections." Op.39.

But *Burroughs* merely "recognized the difference between regulating third parties involved in presidential elections and regulating the States' administration of presidential elections." Dissent.95. *Burroughs* concerned a campaign finance law that regulated third parties and "[n]either in purpose nor in effect" interfered with "the manner" in which "state" a chose "to appoint electors." 290 U.S. 534, 544 (1934). Indeed, *Burroughs* reaffirmed "the power of a state to appoint electors" and determine "the manner in which their appointment shall be made." *Id*. When the Constitution uses the word "Manner," it "cannot be doubted" that this "comprehensive" word "embrace[s] authority to provide a complete code" for "elections" in relation to voter "registration." *Smiley v. Holm*, 285 U.S. 355, 366 (1932) (interpreting "Manner" in Elections Clause). "'Manner' in the Electors Clause is broad." Dissent.93 "And it leaves States with the exclusive right to regulate voter registration for presidential elections." *Id*. Because the panel's opinion "alters the original public meaning of the Electors Clause" and undermines "the plenary authority of the States to decide the requirements for voting in presidential elections," *id*. at 99, it contradicts *ITCA* and justifies en banc review.

### III.  The panel's holding that the NVRA's 90-day provision applies to non-citizens conflicts with Sixth Circuit precedent.

The panel's holding that the NVRA prohibits Arizona from canceling non-citizen registrations within 90 days before an election clashes with the Sixth Circuit's decision in *Bell v. Marinko*. The Sixth Circuit held that "[t]he National Voter Registration Act protects only 'eligible' voters from unauthorized removal" and does not apply to non-residents who are "improperly registered in the first place." *Bell*, 367 F.3d at 592. As the court observed: "Were we to find" that "removal" of persons who "were improperly registered in the first place" violates the NVRA, "we would effectively grant, and then protect, the franchise of persons not eligible to vote." *Id.* Since non-citizens "are never 'eligible applicant[s]' having the right to be registered to vote," the NVRA "in no way protects" them "from removal from the voter rolls." Dissent.124-25 (citing *Bell*). Because the panel's "acontextual interpretation" of the NVRA "protects foreign citizens improperly registered from removal from the voter rolls," *id*. 124-25, 128, en banc review is needed.

Last election cycle, the Supreme Court issued a stay consistent with that understanding. Virginia applied for a stay of an order requiring Virginia to return certain non-citizens to the voter rolls because Virginia had removed them within 90 days of an election. *See Beals v. VA Coal. for Immigrant Rts.*, __ S.Ct. __, 2024 WL 4608863 (Oct. 30, 2024). The Court granted the stay request. *Id.* En banc review is warranted to correct the panel's error on this important issue.

10

### IV. Neither the LULAC decree nor the NVRA precludes Arizona from rejecting state forms lacking proof-of-citizenship or proof-of-residence.

Section 16-121.01(C) of Arizona law provides that an individual who uses the state form will not be registered to vote in any federal or state election unless proof-of-citizenship accompanies the application. Prior to §16-121.01(C)'s enactment, state forms missing proof-of-citizenship were processed under the LULAC Consent Decree, which required county recorders to register such applicants as "federal-only" voters if no proof-of-citizenship could be located on file for them. Op.22. The Supreme Court stayed the district court's injunction against §16-121.01(C)'s enforcement. *RNC v. Mi Familia Vota*, 145 S. Ct. 108, 108 (2024). "[E]very maxim of prudence suggests that" a lower court should heed a Supreme Court stay. *CASA de Md., Inc. v. Trump*, 971 F.3d 220, 230 (4th Cir. 2020). Declining to "take[] the hint," Dissent.106, the panel held that §16-121.01(C) must yield to the LULAC Decree, and that the NVRA prevents Arizona from requiring proof-of-citizenship (or proof-of-residence[2]) when using the state form to register to vote in federal elections, Op.52-53. Both determinations collide with Supreme Court precedents.

1.      State form registrations submitted after §16-121.01(C)'s effective date are governed by the statute, not the LULAC Decree. The panel invoked *Taylor v. United States*, 181 F.3d 1017 (9th Cir. 1999) (en banc), for the proposition that the

---

[2] A.R.S. §§16-121.01(A), 16-123.

11

Arizona Legislature may not "nullify a final judgment entered by an Article III court." Op.52. But the underlying judgment in *Taylor* "awarded no prospective equitable relief." 181 F.3d at 1025. *Taylor* merely affirmed that legislative bodies cannot "retroactively command[] the federal courts to reopen final judgments" after such judgments have been fully "executed." *Id.* at 1023, 1024. Importantly, *Taylor* eschewed the question of whether a statute could abrogate "consent decrees that *do* put injunctions in place to govern [defendants] prospectively." *Id.* at 1018. The Supreme Court has since answered it, explaining that when a legislative body "changes the law underlying a judgment awarding prospective relief, that relief is no longer enforceable to the extent it is inconsistent with the new law." *Miller v. French*, 530 U.S. 327, 347 (2000) (analyzing the same statute as *Taylor*).

This bifurcation makes sense. Federal court injunctions that purport to "bind state and local officials to the policy preferences of their predecessors" corrode norms of federalism and democratic accountability. *Horne v. Flores*, 557 U.S. 433, 449 (2009). That is particularly so here; the Arizona Legislature was not a party to the LULAC proceedings, never ratified the consent decree, and, as a non-party, cannot (and need not) seek its modification under F.R.C.P. 60(b). *Martin v. Wilks*, 490 U.S. 755, 763 (1989) (non-party can collaterally attack consent decree). The panel accordingly erred in holding that the LULAC Decree can perpetually and preemptively constrain the Arizona Legislature in regulating voter registration.

12

2.    Proof-of-citizenship and proof-of-residence verify substantive voting qualifications: citizenship and residency. The NVRA hence permits Arizona to reject state-form submissions that lack either element. The NVRA requires states to "accept and use" the federal form, but also authorizes them to create their own form to register voters in federal elections. 52 U.S.C. §20505(a)(1)-(2). State forms may mandate any identifying information "necessary to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration and other parts of the election process." *Id.* §20508(b)(1).

The panel deemed the proof-of-citizenship and proof-of-residence requirements inconsistent with the NVRA because they are not "essential," noting that the state form has other mechanisms—namely, a citizenship checkbox and sworn attestations—to ascertain eligibility. Op.41, 53. But the panel's novel adoption of an "essentiality" rubric and *de facto* narrow-tailoring criterion are untethered from the statutory text and dissonant with the case law. This Court previously recognized that the NVRA "allows states, at least to some extent, to require their citizens to present evidence of citizenship when registering to vote." *Gonzalez*, 485 F.3d at 1050-51. The Supreme Court agreed, citing proof-of-citizenship as an example of how "state-developed forms may require information the Federal Form does not." *ITCA*, 570 U.S. at 12. Because proof-of-citizenship and proof-of-residence corroborate voting qualifications, those requirements comply

13

with the NVRA. That the Supreme Court sided with Petitioners on this issue, *RNC*, 145 S. Ct. at 108, and the panel ignored that ruling, Dissent.106, is reason enough for en banc review.

A corollary is that Arizona may distribute the state form in public-assistance agencies under NVRA Section 7 because it is "equivalent" to the federal form. 52 U.S.C. §20506(a)(6)(A)(ii). Although the federal form and the state form are promulgated by different government actors, Section 9 demarcates the outer parameters of both forms' content. *See id.* §§20508(a)-(b), 20505(a)(2); *ITCA*, 570 U.S. at 12 (Section 9 allows states "to create their own, state-specific voter-registration forms," while the federal form "provides a backstop"). It would be "odd if Congress gave States the flexibility to create their own form [in Sections 6 and 9] but then took away all that freedom through the 'public assistance agencies' provision" in Section 7. Dissent.118. A Section 9-compliant state form is thus "equivalent" to the federal form under Section 7. *Id.*

## V.    The panel violated Supreme Court precedent by reweighing evidence to find discriminatory intent.

The district court's finding that the Legislature was not motivated by national origin animus when it enacted H.B. 2243 was "plausible in light of the entire record." *Brnovich*, 594 U.S. at 687. While casting its vacatur as disagreement with the district

14

court's application of an ostensibly "heightened version of the *Arlington Heights*[3] analysis to the facts," Op.64, the panel's reasoning impermissibly reweighed the evidence. The district court properly applied the four key *Arlington Heights* factors. And it examined all the circumstantial evidence cited by the panel; "it just found it *unconvincing*." Dissent.151.

      1.   <u>Historical Background</u>. The district court was correct that Plaintiffs must establish a "nexus" between historical discrimination and an enacted law. 1-ER-0043. "Past discrimination cannot, in the manner of original sin, condemn governmental action that is not itself unlawful," and thus Plaintiffs must affirmatively "prove[]" that this historical animus imbues current legislation. *Abbott v. Perez*, 585 U.S. 579, 603 (2018) (cleaned up); *United States v. Carrillo-Lopez*, 68 F.4th 1133, 1141 (9th Cir. 2023) (government need not "show that a subsequent legislature 'somehow purged the taint'").

      The district court considered circumstantial historical evidence—namely, past voting-related discrimination and historical experts' testimony—but found it lacking. It correctly recognized that discriminatory laws enacted decades ago are poor proxies for contemporary motivations. *Carrillo-Lopez*, 68 F.4th at 1151. And the district court discounted Plaintiffs' experts' opinions not because it adopted a stringent standard of proof, but because it deemed them not credible. It found one

---

     [3] *Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252 (1977).

expert's analysis "incomplete or misleading," 1-ER-0038, and "question[ed] the reliability of" the other expert's "testimony regarding Arizona history" and current election laws, 1-ER-0037. The panel did not identify clear error in these determinations. *Earp v. Davis*, 881 F.3d 1135, 1145 (9th Cir. 2018) (appellate court "cannot substitute" witness credibility judgments (cleaned up)); *Pierce v. N.C. State Bd. of Elections*, 97 F.4th 194, 221 (4th Cir. 2024) ("it is emphatically not our duty 'to duplicate the role of the lower court'" (cleaned up)).

      2.    <u>Legislative History</u>. The district court reasonably concluded that Arizona's "political climate" and "the Free Enterprise Club's involvement" in lobbying for the challenged laws, Op.71, were not persuasive evidence of discriminatory intent. The panel emphasizes that the Legislature's stated concerns regarding fraud and non-citizen voting were factually unsound. But there is no record evidence to sustain the untenable inferential leap that the Legislature must therefore have been propelled by racial or national-origin prejudices. *See Brnovich*, 594 U.S. at 689 ("partisan motives are not the same as racial motives;" neither are "'sincere, though mistaken'" perceptions of fraud). And "[t]he Arizona Legislature was not obligated to wait" for wrongdoing to occur before enacting prophylactic legislation. *Id.* at 686.

      Even crediting the dubious assumption that Free Enterprise Club's isolated use of the word "illegal" manifested community animus, the district court reasonably

declined to impute it to the Legislature as a whole. "[T]he legislators who vote to adopt a bill are not the agents of the bill's sponsor or proponents." *Brnovich*, 594 U.S. at 689; *United States v. Sanchez-Garcia*, 98 F.4th 90, 101-02 (4th Cir. 2024) ("disturbing" remarks "by a handful of members … are not 'evidence that the legislature as a whole was imbued with racial motives'"). If a fellow legislator is not the "cat's paw" of the body, then an outside private organization certainly cannot personify a legislature's intentions. And the single "illegals" reference notwithstanding, none of the numerous disclosed communications between the Club and legislators evoked any racial or ethnic valence whatsoever. PromiseSER-947-976.

3.    <u>Legislative Process</u>. The district court did not clearly err in finding that H.B. 2243 traversed normal legislative channels. The panel emphasizes the "abrupt passage of th[e] bill," Op.72—but "the brevity of the legislative process" does not "give rise to an inference of bad faith," *Abbott*, 585 U.S. at 610. Further, the panel's characterization of certain facts is at odds with the full record. According to the panel, so-called "strike-everything amendments" (the vehicle used to adopt H.B. 2243) late in the legislative session "are not a common occurrence." Op.72. But then-Speaker Toma testified that strikers "happen all the time" throughout the legislative session and are "not unique by any stretch." 2-PromiseER-217. Speaker Toma also cited a previously vetoed bill regarding ballot images that was revived in a late-

17

session striker. *Id.* Although the striker did not pass, it underscores that strikers are not a procedural aberration. More to the point, that the panel may "have weighed the evidence differently in the first instance," *Brnovich*, 594 U.S. at 687, does not establish clear error below.

4.    <u>Disparate Impact</u>.  The dissent correctly notes (at 154) that the district court's explication of *Arlington Heights*' disparate-impact facet "essentially paraphras[es]" this Court's precedents. And the panel's criticisms obscure that Plaintiffs presented no credible evidence that H.B. 2243—which requires periodic checks on an array of databases to identify potential non-citizen and non-resident voters—disproportionately affects naturalized citizens or any minority group. The relevant databases contain records on both natural-born and naturalized citizens alike. Of the approximately 19,439 federal-only voters (*i.e.*, the subset of registered voters who lack proof-of-citizenship on file), only 65 are susceptible to being flagged during routine MVD database checks. 1-ER-0100. More generally, just 0.33% of white voters and approximately 0.67% of minority voters have federal-only status. 1-ER-0092; *Brnovich*, 594 U.S. at 651 (no disparate impact when 98% of "minority and non-minority [voters] alike" were unaffected). And unrebutted defense evidence indicated that, using Arizona's total population as the benchmark, the predicted demographic composition of federal-only voters is approximately proportionate to minority groups' representation in the population, and white

18

individuals comprise a numerical majority of federal-only voters. *See* FER-172-177, 182-184. On this record, the district court's finding that "any disparate impact … is markedly small," 1-ER-0092, was not clearly erroneous.

* * *

The district court properly distilled and applied the *Arlington Heights* factors, carefully weighing all admitted evidence, both direct and circumstantial. The panel's reasoning vitiated "the strong 'presumption of good faith' on the part of legislators," *Carrillo-Lopez*, 68 F.4th at 1140, and reweighed the evidence in derogation of the district court's fact-finding prerogative, *see Brnovich*, 594 U.S. at 687.

## CONCLUSION

The Court should grant the petition.

Dated: April 11, 2025

Tyler R. Green
CONSOVOY MCCARTHY PLLC
222 S Main Street, 5th Floor
Salt Lake City, UT 84101
(703) 243-9423
tyler@consovoymccarthy.com

Gilbert C. Dickey
Conor D. Woodfin
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
gilbert@consovoymccarthy.com
conor@consovoymccarthy.com

*Counsel for Appellant Republican
National Committee*

Respectfully submitted,

*/s/ Thomas Basile*

Thomas Basile
Kory Langhofer
STATECRAFT PLLC
649 North Fourth Ave., First Floor
Phoenix, Arizona 85003
(602) 382-4078
kory@statecraftlaw.com
tom@statecraftlaw.com

*Counsel for Appellants Republican
National Committee, Warren
Petersen, and Steve Montenegro*

20

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form:* https://www.ca9.uscourts.gov/forms/form11instructions.pdf

**9th Cir. Case Number(s)** 24-3188, 24-3559, 24-4029

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 40-1, the attached petition for panel

rehearing/petition for rehearing en banc/response to petition is *(select one)*:

◉    Prepared in a format, typeface, and type style that complies with Fed. R. App. P.
32(a)(4)-(6) and **contains the following number of words:** 4,191            .
*(Petitions and responses must not exceed 4,200 words)*

**OR**

○    In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** /s/ Thomas Basile          **Date** April 11, 2025
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 11**                                                          *Rev. 12/01/24*

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing petition on April 11, 2025, with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.


Dated: April 11, 2025          */s/ Thomas Basile*