Nos. 24-3188, 24-3559, 24-4029

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

MI FAMILIA VOTA, *et al.*,

Plaintiffs-Appellees

v.

ADRIAN FONTES, *et al.*,

Defendants-Appellees

WARREN PETERSEN, *et al.*,

Intervenors-Defendants-
Appellants/Cross-Appellees

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

BRIEF FOR THE UNITED STATES AS APPELLEE SUPPORTING
THE STATE DEFENDANTS' PETITION FOR REHEARING EN BANC

JESUS A. OSETE
  Deputy Assistant Attorney General

ANDREW G. BRANIFF
CHRISTOPHER C. WANG
  Attorneys
  Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C.  20044-4403
  (202) 514-3847

# TABLE OF CONTENTS

**PAGE**

STATEMENT OF THE ISSUE ................................................................ 1

STATEMENT OF THE CASE .............................................................. 1

ARGUMENT

    Arizona's birthplace requirement does not violate the
Materiality Provision. ..................................................................... 7

    A.    The Materiality Provision allows a State to require
information that is important or relevant to the
process of determining an applicant's
eligibility to vote........................................................................ 8

    B.    This Court should defer to Arizona's legislative
judgment that birthplace information is material. .............. 14

    C.    Birthplace information is material because it is
generally information that an election official would
consider important to the process of determining an
applicant's eligibility to vote. ............................................... 16

CONCLUSION ...................................................................................... 20

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**CASES:**                                                              **PAGE**

*Anderson v. Celebrezze*, 460 U.S. 780 (1983) ..........................................14

*Arizona Green Party v. Reagan*, 838 F.3d 983 (9th Cir. 2016) ..............13

*Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647 (2021)...................12

*Chapman v. Houston Welfare Rts. Org.*, 441 U.S. 600 (1979).................9

*Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181 (2008) ...........14-15

*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000)...........9

*Kousisis v. United States*, 145 S. Ct. 1382 (2025)....................................9

*Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*,
    341 F.3d 987 (9th Cir. 2003) (en banc),
    *cert. dismissed per stipulation*, 540 U.S. 1098 (2004) ....................1

*Loughrin v. United States*, 573 U.S. 351 (2014) ....................................12

*Magnuson v. Baker*, 911 F.2d 330 (9th Cir. 1990)..................................18

*Mi Familia Vota v. Fontes*, 719 F. Supp. 3d 929 (D. Ariz. 2024) ..........16

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    572 U.S. 545 (2014) ........................................................................8

*Pennsylvania State Conf. of NAACP Branches v.*
    *Secretary Commonwealth of Pa.*,
    97 F.4th 120 (3d Cir. 2024), *cert. denied*,
    145 S. Ct. 1125 (2025) .........................................................2, 10, 18

*Schwier v. Cox*, 340 F.3d 1284 (11th Cir. 2003) ............................2, 9, 20

**CASE (continued):**                                          **PAGE**

*Shelby County v. Holder*, 570 U.S. 529 (2013) ........................................ 14

*Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560 (2012) ....................... 9

*Trump v. Hawaii*, 585 U.S. 667 (2018) ................................................. 16

*Vote.Org v. Callanen*, 89 F.4th 459 (5th Cir. 2023) ....................... *passim*

*Washington State Grange v. Washington State Republican Party*,
    552 U.S. 442 (2008) ................................................................. 17

*Williams v. Taylor*, 529 U.S. 420 (2000) ................................................. 11

## CONSTITUTION:

Ariz. Const. Art. VII, § 2 ........................................................................ 2

## STATUTES:

Civil Rights Act of 1964
    52 U.S.C. 10101(a)(2)(B) ..................................................... *passim*

22 U.S.C. 2705 ..................................................................................... 18

Ariz. Rev. Stat. Ann. § 16-121.01(A) (2025) .......................................... 3

Ariz. Rev. Stat. Ann. § 16-152 (2025) .................................................... 3

Ariz. Rev. Stat. Ann. § 16-152(A)(7) (2025) .......................................... 3

## RULES:

Fed. R. App. P. 40(b)(2)(D) ................................................................... 8

Fed. R. Civ. P. 41(a)(2) ......................................................................... 7

**RULES (continued):**             **PAGE**

Fed. R. Civ. P. 60(b)(5) ........................................................7

Fed. R. Civ. P. 60(b)(6) ........................................................7

Fed. R. Civ. P. 62.1 ...............................................................7

**REGULATION:**

Exec. Order 14,248, *Preserving and Protecting the Integrity
    of American Elections*, 90 Fed. Reg. 14,005 (Mar. 25, 2025) ...........8

**MISCELLANEOUS:**

*Black's Law Dictionary* (12th ed. 2024) ...................................9

U.S. Dep't of State, DS-11,
    Application for a U.S. Passport (Dec. 2020),
    https://eforms.state.gov/Forms/ds11_pdf.PDF .............................18

*Webster's Third New International Dictionary* (2002).........................9-10

## STATEMENT OF THE ISSUE

The United States will address the following issue of exceptional importance:

Whether Arizona law violates the Materiality Provision of the Civil Rights Act of 1964, 52 U.S.C. 10101(a)(2)(B), by requiring election officials to reject state voter-registration applications that do not include the applicant's place of birth.[1]

## STATEMENT OF THE CASE

1. The Materiality Provision of the Civil Rights Act of 1964 prohibits States from denying individuals the right to vote "because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is

---

[1] The United States has focused on the Materiality Provision issue in this brief due to the length limits Ninth Circuit Rule 40-1(b) imposes on responses to petitions for rehearing. The United States considers the other issues raised by petitioners as important and intends to address them if this panel grants rehearing but takes no position on them in this brief. *See Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 995 (9th Cir. 2003) (en banc) (observing that if the Ninth Circuit votes to rehear this case en banc, it assumes jurisdiction over the entire case regardless of the issues that may have caused any member of the Court to vote for rehearing and can choose to limit the issues it considers), *cert. dismissed per stipulation*, 540 U.S. 1098 (2004).

not material in determining whether such individual is qualified under State law to vote in such election." 52 U.S.C. 10101(a)(2)(B). This provision "was intended to address the practice of requiring unnecessary information for voter registration with the intent that such requirements would increase the number of errors or omissions on the application forms, thus providing an excuse to disqualify potential voters." *Schwier v. Cox*, 340 F.3d 1284, 1294 (11th Cir. 2003). Accordingly, it "forbids the practice of disqualifying potential voters for their failure to provide information irrelevant to determining their eligibility to vote," *ibid.*, such as "failing to calculate their age to the day, misspelling 'Louisiana,' [or] underlining 'Mr.' when it should have been circled," *Pennsylvania State Conf. of NAACP Branches v. Secretary Commonwealth of Pa.*, 97 F.4th 120, 126 (3d Cir. 2024) (alteration, internal quotation marks, and citation omitted), *cert. denied*, 145 S. Ct. 1125 (2025).

To be qualified to vote in Arizona, a person must be a United States citizen, a resident of Arizona, and at least 18 years of age. Ariz. Const. Art. VII, § 2. Arizona provides its own voter-registration application, known as the State Form, which allows individuals to

register to vote for federal, state, or local elections.  *See* Ariz. Rev. Stat. Ann. § 16-152 (2025).  Since at least 1979, Arizona's State Form has contained a space for prospective voters to write their "state or country of birth" (*i.e.*, birthplace).  *Id.* § 16-152(A)(7).  In 2022, Arizona enacted a new voter-registration law, H.B. 2492.  As relevant here, the law requires anyone who registers to vote using the State Form to identify his place of birth and mandates election officials reject any State Forms that leave the birthplace field blank (the birthplace requirement).  *Id.* § 16-121.01(A).[2]

2.  Prior to the implementation of the law, the United States preemptively filed suit against the State of Arizona and the Arizona Secretary of State (collectively, state defendants) in district court, alleging that the birthplace requirement violates the Materiality Provision because an applicant's place of birth is not material to determining whether the applicant meets Arizona's voter eligibility requirements.  The district court consolidated the United States' suit

---

[2] If an applicant leaves the birthplace field blank, a state official must notify the applicant of the omission and must not register the applicant until the birthplace information is provided.  Ariz. Rev. Stat. Ann. § 16-121.01(A) (2025).

with suits brought by several private plaintiffs and allowed the Republican National Committee and state legislative leaders to intervene as defendants (collectively, defendants-intervenors). In February 2024, after a bench trial, the district court issued an order holding the birthplace requirement unlawful and entering a permanent injunction prohibiting Arizona from enforcing that requirement. Following entry of final judgment, defendants-intervenors appealed to the Ninth Circuit.

3. In February 2025, a divided panel of this Court affirmed the district court's judgment as to the birthplace requirement. The panel majority first determined that "[t]he Materiality Provision requires invalidation of any voting prerequisite that does not convey 'material' information that has a *probability of affecting* an election official's eligibility determination." Op. 56 (emphasis added).[3] Applying this standard, the panel majority held that the birthplace requirement "violates the Materiality Provision because disclosing one's birthplace has no probable impact on and 'is not material in determining' an

---

[3] "Op. __" refers to the panel opinion.

applicant's eligibility to vote."  Op. 58 (quoting 52 U.S.C.

10101(a)(2)(B)).  In reaching this conclusion, the panel majority first

observed that Arizona did not require birthplace information until 2022

and allows individuals qualified to vote prior that time who did not

provide birthplace information to vote, which "strongly indicates that

birthplace has no probable impact in determining eligibility to vote."

Op. 58.  The panel majority then noted that Arizona does not require

election officials to verify an individual's birthplace or to reject State

Forms with ambiguous birthplaces, suggesting that the substance of the

birthplace field does not matter and that birthplace information has no

use in determining a voter's qualifications.  Op. 59.

　　4.  Judge Bumatay dissented.  He argued that materiality in this

context merely requires an error or omission that "could have affected"

the decision that an individual was eligible to vote and observed that

"an omitted birthplace may affect or influence verification of a person's

registration application."  Op. 131-133 (Bumatay, J., dissenting).  He

then interpreted plaintiffs' argument to be a pre-enforcement facial

challenge that lacked merit because plaintiffs failed to show that there

were no circumstances under which the law would be valid.  Op. 133-

135.  In Judge Bumatay's view, "[a]n omitted birthplace could be material in determining an applicant's identity in at least two situations."  Op. 133.  First, birthplace information could help resolve a "soft match" that occurs when an old voting record does not provide sufficient information to conclusively match a new registration form by providing election officials with an additional data point to determine whether the applicant and an existing voter are the same person.  Op. 134-135.  Second, birthplace information "could be material when an applicant submits a birth certificate as proof of citizenship that includes a last name different from the applicant's current last name."  Op. 135-136.

5.  State defendants and defendants-intervenors filed timely Petitions for Rehearing En Banc.  State defendants argued that the panel majority's erroneous application of the Materiality Provision to invalidate the birthplace requirement warranted review by the full court.  After the change in Administration, the United States has reversed its position on this issue and now supports state defendants'

Petition for Rehearing En Banc with respect to the birthplace requirement.[4]

## ARGUMENT

### Arizona's birthplace requirement does not violate the Materiality Provision.

The panel majority erroneously held that Arizona's birthplace requirement violates the Materiality Provision. In doing so, the panel majority got it wrong on an exceptionally important issue: a State's authority to regulate its voter-registration procedures that utilize its own state-registration form in order promote election integrity. *See*

---

[4] After deciding that it would no longer seek to press the claims that it brought in this case in 2022, on April 8, 2025, the United States filed a motion in the district court under Federal Rule of Civil Procedure 62.1 for an indicative ruling on the United States' requests under Rule 60(b)(5) or (6) for relief from the final judgment in *United States v. Arizona*, No. 2:22-cv-1124 (D. Ariz.), and for voluntary dismissal of the United States' claims under Rule 41(a)(2) once judgment has been vacated. The United States also asked this Court to stay appellees' deadlines for responding to the Petitions for Rehearing En Banc, pending resolution of the United States' Motion for an Indicative Ruling and associated requests for relief. This Court granted the United States' stay request. On May 27, 2025, the district court issued an Order granting the United States' request for an indicative ruling. Order (May 27, 2025). The Order indicated that if this Court were to issue a limited remand to permit the district court to rule on the United States' Motion for Relief from Judgment and for Voluntary Dismissal, the motion would be denied. *Id.* at 3.

Fed. R. App. P. 40(b)(2)(D).  Rehearing en banc to address and correct the panel majority's error is thus warranted.[5]

**A.   The Materiality Provision allows a State to require information that is important or relevant to the process of determining an applicant's eligibility to vote.**

*1. The Materiality Provision's Plain Language.*  The Materiality Provision prohibits a State from utilizing error or omission on a voting application to deny an individual the right to vote "if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election."  52 U.S.C. 10101(a)(2)(B).  Determining whether this provision invalidates Arizona's birthplace requirement "begins and ends with the text." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553 (2014).  When, as here, "term[s]" like "material" and "determining" "go[] undefined in a statute," courts give "the term[s] [their] ordinary meaning," and may consult dictionary definitions in this endeavor.

---

[5] This issue also implicates the executive order in which the President directed the federal government to promote election integrity and to help States ensure that voters are eligible to vote.  *See* Exec. Order 14,248, *Preserving and Protecting the Integrity of American Elections*, 90 Fed. Reg. 14,005 (Mar. 25, 2025).

*Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566-568 (2012). Moreover, these terms "must be read in their context and with a view to their place in the overall statutory scheme." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000). "As in all cases of statutory construction, [a court's] task is to interpret the words of th[e] statute[] in light of the purposes Congress sought to serve." *Chapman v. Houston Welfare Rts. Org.*, 441 U.S. 600, 608 (1979).

First, under the relevant and ordinary definition of "material," a provision is material if the State "would attach importance to it in deciding how to proceed." *Kousisis v. United States*, 145 S. Ct. 1382, 1396 (2025); *see Material*, *Black's Law Dictionary* (12th ed. 2024) (defining "material" to mean "[o]f such a nature that knowledge of the item would affect a person's decision-making"); *Webster's Third New International Dictionary* 1392 (2002) (*Webster's Third*) (defining "material" as "relevant, pertinent"). Consistent with this definition, the Materiality Provision focuses on the *relevance* of the information, or lack thereof, applicants provide to the State on a voter-registration form. *See Schwier v. Cox*, 340 F.3d 1284, 1294 (11th Cir. 2003) (forbidding the State from disqualifying potential voters under the

Materiality Provision for "fail[ing] to provide information irrelevant to determining their eligibility to vote"). Accordingly, the omitted information here needs to be important and relevant for the State in determining voter eligibility, but it need not be "essential" to be material. *See Vote.Org v. Callanen*, 89 F.4th 459, 478 (5th Cir. 2023).

The Materiality Provision broadens the definition of "material" in this context by asking whether the omitted information is material "in determining" whether the applicant is qualified to vote—not whether the information is material "to" whether the applicant is qualified to vote. In this context, "determine" means "to come to a decision concerning as the result of investigation or reasoning." *Webster's Third* 616. Accordingly, the phrase "in determining" focuses on the overall "process" of "determining whether an individual is qualified to vote." *Pennsylvania State Conf. of NAACP Branches v. Secretary Commonwealth of Pa.*, 97 F.4th 120, 131 (3d Cir. 2024), *cert. denied*, 145 S. Ct. 1125 (2025). Information is "material" if it is important "in" that process; the information need not, on its own, be determinative of a voter's eligibility or ineligibility.

*2. The Panel Majority's Erroneous Holding.* The panel majority created its own definition of "material" and held that the birthplace requirement "violates the Materiality Provision because disclosing one's birthplace has no probable impact on and 'is not material in determining' an applicant's eligibility to vote." Op. 58 (quoting 52 U.S.C. 10101(a)(2)(B)). This was error. The one case the panel majority cited (*see* Op. 55) to support its probable-effect definition of the term "material," *Williams v. Taylor*, 529 U.S. 420, 431 (2000), stands for the unremarkable proposition that a court must give statutory terms their ordinary, contemporary, common meaning absent contrary congressional intent. The panel majority's subsequent citation of *Black's Law Dictionary*'s definition of "material" (*see* Op. 58 & n.5) does not provide the definition the majority seeks, as nowhere does it suggest that materiality requires a probabilistic analysis. From the get-go, then, the panel majority's legal analysis is tainted with an erroneous probability test found nowhere in the federal statute's text.

The panel majority has also improperly read the Materiality Provision as coterminous with voter eligibility requirements. In defining materiality merely to require that erroneous or omitted

- 11 -

information "have probable impact on eligibility to vote" (Op. 56), the panel majority violated "the cardinal principle of interpretation that courts must give effect, if possible, to every clause and word of a statute" (*Loughrin v. United States*, 573 U.S. 351, 358 (2014) (internal quotation marks and citation omitted)). Under this normal reading of the statute, eligibility- or identity-based questions that are not related to determining citizenship or state residence may be deemed immaterial. But the Materiality Provision does not infringe on States seeking to gather evidence through the registration process that a potential voter is a noncitizen.

The panel majority's justifications for its holding that the birthplace requirement violates the Materiality Provision similarly miss the mark. First, the panel majority emphasized that Arizona applies the birthplace requirement only prospectively, not retrospectively to voters who registered before H.B. 2492 took effect. *See* Op. 58-59. But nothing in the Materiality Provision precludes a State from tightening previously lax voter-registration laws to limit voting to eligible individuals. *See Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 672 (2021) (observing that preventing fraud in elections is a "strong and

- 12 -

entirely legitimate state interest").  Moreover, this specious reasoning would invalidate every voter-registration form update unless the law enacting that update required every currently registered voter to re-register using the new form.

Second, the panel majority suggested that state law does not require rejecting voter-registration forms with ambiguous birthplace information.  *See* Op. 59.  But a form that lists an ambiguous birthplace provides more information than one that lists *no* birthplace because it provides a starting point for further investigation into an applicant's eligibility to vote.  Regardless, the Materiality Provision does not prohibit under-inclusiveness; the fact that the State could have adopted an even stricter statute does not show that the statute it did adopt violates federal law.  *See Arizona Green Party v. Reagan*, 838 F.3d 983, 991-992 (9th Cir. 2016) (holding that even if Arizona could streamline its election primary process to accommodate a minor political party, "it [wa]s not required to adopt a system that is the most efficient possible" (internal quotation marks and citation omitted)).

**B.    This Court should defer to Arizona's legislative judgment that birthplace information is material.**

The need for this Court to defer to Arizona's legislative judgment on voter qualifications further supports a broad reading of materiality in this context and validation of the birthplace requirement.  The Supreme Court has often recognized that States retain broad authority to run elections.  *See, e.g.*, *Shelby County v. Holder*, 570 U.S. 529, 543 (2013).  Although state election laws governing voter qualifications "inevitably affect[]" an individual's right to vote, "the [S]tate's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions."  *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983).  Among the most legitimate and important of these is "the State's interest in counting only the votes of eligible voters."  *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 196 (2008).

The Fifth Circuit's decision in *Vote.Org* is particularly instructive on how these general principles apply to the Materiality Provision issue in this case.  In *Vote.Org*, the court addressed whether a Texas law requiring an original signature on a voter-registration form attesting that the applicant is qualified to vote violated the Materiality Provision.

- 14 -

89 F.4th at 468-469, 488. After recognizing the "considerable deference" courts owe to non-discriminatory state election procedures, *id.* at 481, the Fifth Circuit determined that it "must give weight to a state legislature's judgment when it created 'evenhanded restrictions that protect the integrity and reliability of the electoral process,'" *id.* at 489 (quoting *Crawford*, 553 U.S. at 189-190). Applying these principles, the Fifth Circuit held that Texas possessed a legitimate justification that an original signature advanced its substantial interest in voter integrity— *i.e.*, "assuring that those applying to vote are who they say they are"— and thus, the signature was a material requirement. *Ibid.*

So too here. It is beyond cavil that Arizona, like Texas, has a substantial interest in assuring that potential voters are qualified to vote under state law and are who they say they are. To further this interest, Arizona enacted the birthplace requirement, an evenhanded restriction on all new applicants that protects the integrity of the electoral process by helping the State confirm an applicant's identity. *See* pp. 17-19, *infra*. Arizona's legislative judgment that birthplace is important to determining whether an applicant is qualified to vote under Arizona law warrants more deference from this Court than what

- 15 -

the panel majority gave. *See Vote.Org*, 89 F.4th at 489. The mere fact, found by the district court and relied on by the panel majority, that prior to H.B. 2492's enactment election officials "d[id] not use birthplace information to determine an applicant's eligibility to vote" or "need birthplace to verify an applicant's identity" (Op. 58), does not undermine this interest.[6] *See Vote.Org*, 89 F.4th at 489 (holding that requiring an original signature advanced Texas's substantial interest in voter integrity despite plaintiff's argument that such signatures "are, in practice, not used to verify anyone's identity or to check for fraud"). This historical practice does not and cannot undermine a plain reading of the statute. *See Trump v. Hawaii*, 585 U.S. 667, 692-693 (2018).

## C. Birthplace information is material because it is generally information that an election official would consider important to the process of determining an applicant's eligibility to vote.

Because plaintiffs brought a pre-enforcement facial challenge to the birthplace requirement, they must show that "no set of

---

[6] Indeed, the district court acknowledged that election officials "can sometimes use birthplace in Arizona's voter registration process," although the court dismissed birthplace information as "of little utility in nearly all cases." *Mi Familia Vota v. Fontes*, 719 F. Supp. 3d 929, 962-963 (D. Ariz. 2024).

circumstances exists under which the [Arizona law] would be valid, *i.e.*, that the law is [preempted] in all of its applications." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008) (internal quotation marks and citation omitted). Said differently, Arizona must prevail if "[a]n omitted birthplace could be material . . . in at least [some] situations." Op. 133 (Bumatay, J., dissenting).

Plaintiffs cannot make the required showing. Birthplace information is "material in determining" whether someone is qualified to vote, 52 U.S.C. 10101(a)(2)(B), because it is generally information an election official would consider important to this *process*. To understand why, consider date of birth, which also is a required field on the State Form. Although a date of birth may not be material to determine the eligibility of a *particular* applicant—say, someone who an election official knows is over 18 years of age and not registered to vote, or who lists "the Territory of Alaska" as their place of birth—no one would dispute that it is information an election official would find important in *some* circumstances, such as to confirm the identity of applicants who share a name with a registered voter.

- 17 -

The same goes for place of birth, which also is a routine piece of identifying information sought on government forms. Indeed, to obtain a United States passport, which can serve as "conclusive proof of citizenship," *Magnuson v. Baker*, 911 F.2d 330, 333 (9th Cir. 1990) (citing 22 U.S.C. 2705)), an applicant must provide a "place of birth." U.S. Dep't of State, DS-11, Application for a U.S. Passport (Dec. 2020), https://eforms.state.gov/Forms/ds11_pdf.PDF. Birthplace information is, therefore, "material in determining" whether someone is a United States citizen and thus qualified to vote under Arizona law. 52 U.S.C. 10101(a)(2)(B); *cf. Pennsylvania State Conf.*, 97 F.4th at 125 (holding that the statute prohibits voter disqualification for failure to provide "irrelevant" information).[7]

Birthplace information is also material in determining an applicant's identity, which is "the most basic qualification to vote." *Vote.Org*, 89 F.4th at 489. First, just like a middle name, birthplace information provides an additional data point to assist the State in

---

[7] Nowhere in its opinion did the panel majority state or suggest that transferring birthplace information from a passport to a voter registration form would render the birthplace requirement immaterial or otherwise burdensome to the voter.

differentiating between two individuals with the same name, maybe even the same birthdate or street address as well. Consider the example of two individuals with the same name who both check the United States citizen box on a state voter-registration form and list the same street address in different cities (which they mistakenly omit) in the State. If the individuals list different places of birth, such information is undoubtedly material in distinguishing between them. Second, birthplace information can also help confirm the identity of an applicant who submits a birth certificate as proof of citizenship that includes a name that is different from the applicant's current last name. *See* Op. 134-135 (Bumatay, J., dissenting).

* * *

In sum, the Materiality Provision's plain language makes clear that information omitted from a voter-registration form—in this case, an applicant's birthplace—is material if an election official would attach importance to such information in the process of determining whether the applicant is eligible to vote. This interpretation serves the statute's purpose of limiting the State's ability to disqualify potential voters based on errors or omissions on a voter-registration form to those errors

or omissions that are relevant to this determination. *See Schwier*, 340 F.3d at 1294. Arizona's birthplace requirement, which is a product of its considered legislative judgment that birthplace is important to determining whether an applicant is qualified to vote, satisfies this standard and thus does not violate the Materiality Provision.

## CONCLUSION

This Court should grant the Petitions for Rehearing En Banc and hold that Arizona law's requirement that election officials reject state voter-registration applications that do not include the applicant's place of birth does not violate the Materiality Provision.

Respectfully submitted,

JESUS A. OSETE
  Deputy Assistant Attorney General

s/ Christopher C. Wang
ANDREW G. BRANIFF
CHRISTOPHER C. WANG
  Attorneys
  Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C.  20044-4403
  (202) 514-3847

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form:* https://www.ca9.uscourts.gov/forms/form11instructions.pdf

**9th Cir. Case Number(s)** 24-3188, 24-3559, 24-4029

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 40-1, the attached petition for panel

rehearing/petition for rehearing en banc/response to petition is *(select one)*:

◉ Prepared in a format, typeface, and type style that complies with Fed. R. App. P.
32(a)(4)-(6) and **contains the following number of words:** 3803 .
*(Petitions and responses must not exceed 4,200 words)*

**OR**

○ In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** s/ Christopher C. Wang **Date** June 10, 2025
*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 11** *Rev. 12/01/24*